FILED IN CLERK'S OFFICE
U.S.D.C. Rome

AUG 0 8 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

IN RE: TRI-STATE
CREMATORY LITIGATION     :     MDL DOCKET NO. 1467

:

CAROL A. BECHTEL,     :
PAULA YOCKEL,     :
NAOMI WEBB,     :
THOMAS G. CONYERS,     :
LINDA HAMIL,     :
KATHI KELLY,     :
THOMAS EDKINS, MD,     :
RICHARD REID, and     :
JAMES SHIRLEY,     :
on behalf of themselves and others similarly :
situated,     :     Civil Action No.
    :     4:02-CV-041-HLM
Plaintiffs,     :     JURY DEMAND
    :
v.     :
    :
TRI-STATE CREMATORY, INC.,     :
T. RAY BRENT MARSH,     :
CLARA C. MARSH,     :
RHAMES L. MARSH,     :
CLARA C. MARSH, as Administrator of     :
The Estate of TOMMY RAY MARSH     :
BOB FOSTER d/b/a FOSTER &     :
SON FUNERAL HOME     :
BURT FUNERAL HOMES, INC.,     :
CAGLE FUNERAL HOME, INC.     :
CUMBERLAND FUNERAL SERVICES,     :
INCORPORATED,     :
CUMBERLAND FUNERAL HOME,     :
CUMBERLAND FUNERAL HOME -     :
TRACY CITY     :
COVENANT FUNERAL SERVICE,     :
ERWIN PETTIT FUNERAL HOME, INC., :

263321.1

458

EWTON FUNERAL HOME, INC.,                    :
FAMILY MORTUARY, INC.                        :
FOSTER & LAY FUNERAL HOME,                   :
FRANKLIN-STRICKLAND FUNERAL                  :
HOME, INC.,                                  :
HAROLD B. GILMORE f/d/b/a                    :
GILMORE FUNERAL HOME,                        :
GILMORE FUNERAL HOME, LLC,                   :
HARDWICK & SONS FUNERAL                      :
HOME, INC.,                                  :
HOUSE OF OVERSTREET                          :
MORTUARY, INC.,                             :
J. AVERY BRYAN FUNERAL                       :
HOME, INC.,                                  :
JESSE JONES FUNERAL HOME, INC.,   :
JULIAN PEEPLES MEMORIAL CHAPEL :
INC., d/b/a JULIAN PEEPLES                   :
FUNERAL HOME                                 :
KERBY FUNERAL HOME, INC.,                    :
KERBY FUNERAL HOME, LLC.,                    :
LAYNE FUNERAL HOME. INC.,                    :
LOVE FUNERAL HOME, INC.,                     :
PATTON'S FUNERAL HOME,                       :
PEEPLES FUNERAL HOME, INC.                   :
d/b/a PEEPLES FUNERAL HOME,                  :
PINKARD & MEE FUNERAL SERVICE    :
INC., ,                                      :
PRIME SUCCESSION, INC.,                      :
PRIME SUCCESSION HOLDINGS, INC.  :
PRIME SUCCESSION OF TENNESSEE,   :
INC.,                                        :
BUCKNER-RUSH ENTERPRISES, INC.,  :
PUTNAM FUNERAL HOME, INC. (THE), :
R.D. MOORE FUNERAL HOME, INC.,    :
R. DUDLEY BARTON & SON                       :
FUNERAL HOME, INC.,                          :
RYAN FUNERAL HOME, INC.,                     :
SCI ALABAMA FUNERAL SERVICES     :
INC., f/d/b/a KERBY FUNERAL HOME,  :
SCI GEORGIA FUNERAL SERVICES     :

INC., d/b/a J.D. HILL FUNERAL HOME,          :
SCI GEORGIA FUNERAL SERVICES          :
INC., d/b/a JENNINGS FUNERAL HOME, :
SCI GEORGIA FUNERAL SERVICES          :
INC., d/b/a JENNINGS HERITAGE          :
CHAPEL FUNERAL HOME          :
SCI GEORGIA FUNERAL SERVICES          :
INC., d/b/a PARNICK JENNINGS          :
FUNERAL HOME,          :
SCI GEORGIA FUNERAL SERVICES          :
INC., f/d/b/a ERWIN PETTIT          :
FUNERAL HOME          :
SCI GEORGIA FUNERAL SERVICES          :
INC., f/d/b/a J. AVERY BRYAN OF          :
CHICKAMAUGA,          :
SCI GEORGIA FUNERAL SERVICES          :
INC.,  f/d/b/a KENEMER BROTHERS          :
FUNERAL HOME,          :
SCI GEORGIA FUNERAL SERVICES          :
INC., f/d/b/a WALLIS STEWART          :
FUNERAL HOME,          :
SCI TENNESSEE FUNERAL SERVICES :
INC. d/b/a CHATTANOOGA FUNERAL          :
HOME-EAST CHAPEL,          :
SCI TENNESSEE FUNERAL SERVICES :
INC. d/b/a CHATTANOOGA FUNERAL          :
HOME-NORTH CHAPEL,          :
SCI TENNESSEE FUNERAL SERVICES :
INC. d/b/a CHATTANOOGA FUNERAL          :
HOME-VALLEY VIEW CHAPEL,          :
SCI TENNESSEE FUNERAL SERVICES :
INC. d/b/a CHATTANOOGA FUNERAL          :
HOME-WEST CHAPEL,          :
SCI TENNESSEE FUNERAL SERVICES :
INC., d/b/a FIKE FUNERAL HOME,          :
SCI TENNESSEE FUNERAL SERVICES :
INC., f/d/b/a HOOPER FUNERAL          :
HOMES, INC.,          :
WALLIS STEWART FUNERAL HOME          :
SEQUATCHIE VALLEY MEMORIAL          :

FUNERAL HOME & GARDENS, INC.,    :
TAYLOR FUNERAL HOME OF           :
CHATTANOOGA, INC.,               :
THOMAS AND SON FUNERAL           :
HOME, INC.,                      :
TURNER FUNERAL HOME, INC.,       :
WALLIS-WILBANKS FUNERAL          :
HOME, LLC,                       :
WANN FUNERAL HOME, INC.,         :
WILLIS FUNERAL HOME, INC., and   :
W.L. WILSON & SONS FUNERAL       :
HOME, INC.,                      :
                                 :
          Defendants.            :

## MASTER COMPLAINT

## SECOND AMENDED CLASS ACTION COMPLAINT

The above named plaintiffs, on behalf of themselves and all others similarly situated, the members of the plaintiff class described and defined herein, allege as follows:

### INTRODUCTION

1.    This is a class action complaint that arises from the macabre mishandling, abuse and desecration of the bodies of the deceased loved ones of hundreds of citizens of Tennessee, Georgia, Alabama and other states. The remains of the decedents came to this disrespectful and undignified end because the defendants funeral homes to whom the decedents' family members entrusted with the duty of properly and

263321.1                         4

respectfully handling their loved ones' remains chose to hire, and failed to

monitor or supervise, Defendant Tri-State Crematory, Inc. (hereinafter "Tri-

State"), an unlicensed cremator in Noble, Georgia.  Upon information and

belief, Tri-State had been the subject of complaints and investigations

regarding its cremation practices since at least the early 1990s.

2.     Rather than appropriately discharging the solemn duties

entrusted to the funeral homes by the grieving families, Defendant Tri-State

Crematory strewed the remains of countless decedents in wooded areas, in

rudimentary mass graves and in a nearby lake in violation of all applicable

laws and in violation of basic human decency.   Furthermore, for years Tri-

State Crematory has failed to follow basic industry practices and acted in

total disregard of human decency and the rights and feeling of the decedent's

families by improperly cremating bodies, commingling the remains of the

bodies in its custody, and fraudulently returning to families non-human

materials such as concrete dust that were represented as being human

remains.

3.     This defendants in this action include the unlicensed

crematory, Tri-State, and the funeral companies, including the parent and

affiliate entities of these funeral companies, that contracted with and

delivered bodies to Tri-State for cremation, then failed to ensure that Tri-State performed these cremations were carried out in accordance with human dignity, and all applicable laws and regulations. The suit seeks equitable relief and damages on behalf of the families of all decedents whose remains were consigned to Tri-State and alleges breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, fraudulent concealment, negligent misrepresentation, negligence, intentional mishandling of a corpse, negligent mishandling of a corpse, intentional infliction of emotional distress, negligent infliction of emotional distress and unjust enrichment.

## PARTIES

4.     Plaintiff Carol A. Bechtel is a citizen and resident of Idaho. She is the daughter and the next of kin of Robert Gladstone Swofford and Willie Florence Swofford.

5.     Plaintiff Paula Yockel is a citizen and resident of Pittsburgh, Pennsylvania. She is the daughter, and the next of kin, of Gilbert Schuchman.

6.     Plaintiff Naomi Webb is a citizen and resident of Brooksville, Florida.  She is the mother, and next of kin, of Samantha Webb Swinney.

7.     Plaintiff Thomas G. Conyers, is a citizen and resident of Cincinnati, Ohio.  He is the son and next of kin of Thomas J. Conyers.

8.     Plaintiff Linda Hamil is a citizen and resident of Hickman, Kentucky.  She is the daughter and next of kin of Reed Morgan, Jr., who was unmarried when he passed away in 1998.

9.     Plaintiff Kathi Kelly is a citizen and resident of New London, New Hampshire.  She is the daughter and next of kin of Daniel J. Kelly, Jr. and Nancilee Davis Kelly.

10.     Plaintiff Thomas Edkins, M.D. is a citizen and resident of Pennsylvania.  He is the son and next of kin of John Edkins who was unmarried when he passed away.

11.    Plaintiff Richard Reid is a citizen and resident of Blytheville, Arkansas.  He is the father and next of kin of Greg Reid, who was unmarried and had no children when he passed away on April 1, 2000.

12.     Plaintiff James Shirley is a citizen and resident of Omaha, Nebraska. He is the son and next of kin for Marie Annette Shirley, who was a widow when she passed away on September 14, 2001.

13.     At all material times, the plaintiffs and the class members the plaintiffs seek to represent were and are persons who presently possess or who may subsequently acquire the right to the immediate custody and possession of the remains of their respective decedents; who were and are entrusted with the right to and responsibility of disposition of those remains and/or who were and are the persons who entered into written contracts with one or more of the defendants for disposition services, paid for such services and/or represent the estate of their decedents who entered into such written contracts and paid for such services.

14.     Defendant Tri-State Crematory, Inc. ("Tri-State") is a Georgia corporation with its principal place of business in Noble, Georgia. Tri-State may be served by service on its attorney of record, McCracken K. Poston, Jr., 62 Nance Lane, PO Box 1130, Ringgold, GA 30736. Tri-State Crematory, Inc., was apparently administratively dissolved by the Georgia Secretary of State in 1995 for failure to file appropriate administrative returns.

15.     Defendant T. Ray Brent Marsh is a natural person who is a resident of Walker County, Georgia.  He can be served by service on his attorney of record, McCracken K. Poston, Jr., 62 Nance Lane, PO Box 1130, Ringgold, GA  30736.  T. Ray Brent Marsh is the operator and secretary of Tri-State Crematory, Inc.

16.     Defendant Clara C. Marsh is a natural person who is a resident of Walker County, Georgia.  She can be served at Route 4, Box 1170A, LaFayette, Walker County, Georgia 30728.  Clara Marsh is the chief financial officer of Tri-State Crematory, Inc.

17.     Defendant Rhames L. Marsh is a natural person who is a resident of Walker County, Georgia.  She can be served at Route 4, Box 1170A, LaFayette, Walker County, Georgia 30728.  Rhames Marsh is the chief executive officer of Tri-State Crematory, Inc.

18.     Defendant Tommy Ray Marsh is a natural person who is a resident of Walker County, Georgia.  He can be served at Route 4, Box 1170A, LaFayette, Walker County, Georgia 30728.  Tommy Ray Marsh is the registered agent and former owner and operator of Tri-State Crematory, Inc.  The defendants listed in paragraphs 8 through 12 of the complaint are collectively referred to as the "Tri-State Defendants."

19.     At all material times, Defendant Tri-State was hired, engaged, and retained by the other defendants to effectuate, as their agent, ostensible agent, servant, employee, representative, joint venturer, and associate, the process of cremating the remains that are the subject matter of this action.  At all material times, Defendant Tri-State was acting within the course and scope of that authority and with the knowledge, authorization, consent, permission or ratification of each of the other defendants.  The funeral home defendants owed a contractual duty to each plaintiff to ensure that the remains of their loved one were cremated and that the cremation was handled in accordance with all legal obligations.  The funeral homes breached that duty and thus are vicariously liable for the actions of Tri-state, regardless of whether Tri-state was an agent of defendants or an independent contractor.

20.     Defendant Bob Foster d/b/a Foster & Son Funeral Home is a Tennessee sole proprietorship with its principal place of business in Tracy City, Tennessee.  Bob Foster d/b/a Foster & Son Funeral Home may be served by service on its attorney of record: Christopher E. Penna, Esq. Penna & Mendicino, PC, 1902 Old Covington Hwy, Conyers, GA  30012-3920.

21.    Defendant Burt Funeral Homes, Inc. is an Alabama Corporation with its principal place of business in Ft. Payne, Alabama.  Burt Funeral Home, Inc. may be served by service on its attorney of record: Roger Sumrall, Hall, Booth, Smith & Slover, PC, 230 Peachtree St. NW, Suite 2500, Atlanta, GA  30303.

22.    Defendant Cagle Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Jasper, Georgia.  Cagle Funeral Home, Inc. may be served by service on its registered agent: Robert Cagle, 364 East Church St., Jasper, GA  30143.

23.    Defendant Cumberland Funeral Services, Incorporated is a Tennessee Corporation with its principal place of business in Monteagle, Tennessee.  Cumberland Funeral Services, Incorporated may be served by service on its registered agent: William C. Killian, Courthouse Square, Jasper, TN  37347.

24.    Defendant Cumberland Funeral Home is a Tennessee Company with its principal place of business in Monteagle, Tennessee. Cumberland Funeral Home may be served at 210 Fairmont, P.O. Box 247, Monteagle, TN  37356.

25.     Defendant Cumberland Funeral Home – Tracy City is a Tennessee Company with its principal place of business in Tracy City, Tennessee.  Cumberland Funeral Home – Tracy City may be served at 210 Fairmont, P.O. Box 247, Monteagle, TN  37356.

26.   Defendant Covenant Funeral Service has its principal place of business in Chattanooga, Tennessee.  Covenant Funeral Service may be served by service on: Walter L. Crox or Barbara Crox at 2114 Chapman Road, Chattanooga, TN  37421.

27.     Defendant Erwin-Petitt Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Summerville, Georgia. Defendant Erwin-Petitt Funeral Home, Inc. may be served by service on its attorney of record: Edward H. Lindsey, Jr., Goodman, McGuffey, Aust & Lindsey, 2100 Tower Place, 3340 Peachtree Rd, NE, Atlanta, GA  30325.

28.     Defendant Ewton Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Dunlap, Tennessee. Ewton Funeral Home, Inc. may be served by service on its attorney of record: Michael G. Luhowiak, Strang, Fletcher, Carriger, Walker, Hodge & Smith, One Union Square, Suite 400, Chattanooga, TN  37402.

29.     Defendant Family Mortuary, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. Family Mortuary, Inc. may be served by service on its registered agent: Phillip C. Lawrence, 633 Chestnut St., Suite 760, Chattanooga, TN 37450.

30.     Defendant Foster & Lay Funeral Home is a Tennessee Company with its principal place of business in Tracy City, Tennessee. Foster & Lay Funeral Home may be served at 116 St. Clair St. P.O. Box 459, Tracy City, TN 37387.

31.     Defendant Franklin-Strickland Funeral Home, Inc. is a Tennessee Corporation with a business located in Chattanooga. Franklin-Strickland Funeral Home, Inc. may be served by service on its attorney of record: David C. Higney, Grant, Konvalinka & Harrison, PC, 900 Republic Centre, 633 Chestnut St., Chattanooga, TN 37450.

32.     Defendant Harold B. Gilmore d/b/a Gilmore Funeral Home was entity doing business in Tennessee. Harold B. Gilmore, it is believed, is deceased but was a citizen and resident of Tennessee.

33.     Defendant Gilmore Funeral Home, LLC, the successor in interest to Defendant Harold B. Gilmore d/b/a Gilmore Funeral Home, is a Tennessee Limited Liability Company with its principal place of business in

Manchester, Tennessee. Gilmore Funeral Home, LLC, may be served by service on its attorney of record: Michael G. Luhowiak, Strang, Fletcher, Carriger, Walker, Hodge & Smith, One Union Square, Suite 400 Chattanooga, TN 37402.

34.     Defendant Hardwick & Sons Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. Hardwick & Sons Funeral Home, Inc. may be served by service on its registered agent: Gertrude C. Trammell, 765 ML King Blvd., Chattanooga, TN 37403.

35.     The House of Overstreet Mortuary, Inc. is a Georgia Corporation with its principal place of business in Dalton, Georgia. The House of Overstreet Mortuary, Inc. may be served by service on its registered agent: Waymon Sims, 434 Flat Shoals Ave. S.E., Atlanta, GA 30316.

36.     Defendant J. Avery Bryan Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Chattanooga, Tennessee. J. Avery Bryan Funeral Home, Inc. may be served by service on its attorney of record: Charles B. Zirkle, Jr. Zirkle and Hoffman, Five Concourse Pkwy, Suite 2899, Atlanta, GA 30328.

37.   Jesse Jones Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Tunnel Hill, Georgia. Jesse Jones Funeral Home, Inc. may be served by service on its attorney of record: Roger Sumrall, Hall, Booth, Smith & Slover, PC, 230 Peachtree St. NW, Suite 2500, Atlanta, GA  30303.

38.   Defendant Julian Peeples Memorial Chapel Inc., d/b/a Julian Peeples Funeral Home is a Georgia Corporation with its principal place of business in Dalton, Georgia. Julian Peeples Memorial Chapel Inc., d/b/a Julian Peeples Funeral Home may be served by service on its attorney of record: Roger Sumrall, Hall, Booth, Smith & Slover, PC, 230 Peachtree St. NW, Suite 2500, Atlanta, GA  30303.

39.   Defendant  Kerby Funeral Home, Inc. is an  Alabama Corporation with its principal place of business in Henagar, Alabama. Kerby Funeral Home, Inc. may be served by service on its attorney of record: David C. King, Swift, Currie, McGhee, & Hiers, LLP, 1355 Peachtree St., Suite 300, Atlanta, GA  30309.

40.    Defendant Kerby Funeral Home LLC is an Alabama Limited Liability Corporation with its principal place of business in Albertville, Alabama. Kerby Funeral Home LLC, may be served service on

its attorney of record: David C. King, Swift, Currie, McGhee, & Hiers, LLP, 1355 Peachtree St., Suite 300, Atlanta, GA 30309.

41.    Defendant Layne Funeral Home, Inc. is a Tennessee Corporation with its principal place of business in Palmer, Tennessee. Layne Funeral Home, Inc. may be served by service on its attorney of record: John L. Choate, Cozen O'Connor, SunTrust Plaza, Suite 2200, 303 Peachtree St. NE, Atlanta, GA 30308.

42.    Defendant Love Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Dalton, Georgia. Love Funeral Home, Inc. may be served by service on its attorney of record: Paul L. Weisbecker, Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, 2700 First Union Plaza, 999 Peachtree St. NE, Atlanta, GA 30309.

43.    Defendant Patton's Funeral Home is a Tennessee business with its principal place of business in Cleveland, Tennessee. Patton's Funeral Home may be served at 265 Fair St. SE, PO Box 5513, Cleveland, TN 37311.

44.    Defendant Peeples Funeral Home, Inc., d/b/a Peeples Funeral Home is a Georgia Corporation that has its principal place of business in Chatsworth, Georgia. Defendant Peeples Funeral Home, Inc.,

d/b/a Peeples Funeral Home may be served by service on its attorney of

record: Roger Sumrall, Hall, Booth, Smith & Slover, PC, 230 Peachtree St.

NW, Suite 2500, Atlanta, GA  30303.

45.   Defendant Pinkard & Mee Funeral Service, Inc. is a

Tennessee Corporation with its principal place of business in Chattanooga,

Tennessee.  Pinkard & Mee Funeral Service, Inc. may be served by service

on its attorney of record: James Wilson, 737 Market St., Suite 311

Chattanooga, TN  37402.

46.   Defendant Prime Succession, Inc. is a Delaware

corporation with its principal place of business at 3940 Olympic Blvd., Suite

500 Erlanger, Kentucky 41018.  Defendant Prime Succession, Inc. owns,

operates and controls, directly or through subsidiary corporations,

Defendants Prime Succession Holdings, Inc, Defendant Prime Succession of

Tennessee, Inc. and Buckner-Rush Enterprises, Inc.  It may be served by

service on its attorney or record: Bruce A. Taylor, Jr., Drew Eckl &

Farnham, LLP, 880 West Peachtree St., PO Box 7600, Atlanta, GA  30357-

0600.

47.   Defendant Prime Succession Holdings, Inc. is a Delaware

corporation with its principal place of business at 3940 Olympic Blvd., Suite

500, Erlanger, Kentucky 41018. It may be served by service on its attorney
or record: Bruce A. Taylor, Jr., Drew Eckl & Farnham, LLP, 880 West
Peachtree St., PO Box 7600, Atlanta, GA 30357-0600.

48. Defendant Prime Succession of Tennessee, Inc. is a
Delaware corporation with its principal place of business located at 3940
Olympic Blvd.; Suite 500, Erlanger, Kentucky 41018. It may be served by
service on its attorney or record: Bruce A. Taylor, Jr., Drew Eckl &
Farnham, LLP, 880 West Peachtree St., PO Box 7600, Atlanta, GA 30357-
0600.

49. Defendant Buckner-Rush Enterprises, Inc. is a Tennessee
Corporation with a place of business in Cleveland, Tennessee. Buckner-
Rush Enterprises, Inc. may be served by service on its attorney or record:
Bruce A. Taylor, Jr., Drew Eckl & Farnham, LLP, 880 West Peachtree St.,
PO Box 7600, Atlanta, GA 30357-0600.

50. Defendant Prime Succession, Inc. wholly-owns, controls,
operates and uses its subsidiaries, Defendants Prime Succession Holdings,
Inc. and Prime Succession of Tennessee, Inc. as alter-egos and mere
instrumentalities (collectively, hereinafter, the "Prime Succession
Defendants"). The Prime Succession Defendants wholly own, control and

are the alter-egos of Defendant Buckner-Rush Enterprises, Inc., which they use as a mere instrumentality and alter-ego.  Through this corporate arrangement, the Prime Succession Defendants have used Buckner-Rush Enterprises, Inc. as a sham, to defeat justice, to perpetrate fraud and/or to evade state, contractual and/or tort responsibility, including but not limited to, using Buckner-Rush Enterprises to contract with an unlicensed crematory in Georgia to avoid the requirements of Tennessee law that such services be performed only by licensed persons.  Piercing the corporate veils to hold these parent and affiliate corporations liable for the acts and omissions of their instrumentalities is necessary to accomplish justice.

51.   Defendant Putnam Funeral Home, Inc. (The) is a Tennessee Corporation doing business as Putnam-Reed Funeral Home and Putnam-Standefer-Reed Funeral Home with business locations in Pikeville, Dunlap and Whitwell Tennessee.  Putnam Funeral Home, Inc. (The) may be served by service on its attorney of record: David Noblit, Leitner, Williams, Dooley & Napolitan PLLC, Third Floor, 801 Broad St., Chattanooga, TN 37402.

52.   Defendant R.D. Moore Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Trenton, Georgia.  R.D.

Moore Funeral Home, Inc. may be served by service on its attorney of record: Edward H. Lindsey, Jr., Goodman, McGuffey, Aust & Lindsey, 2100 Tower Place, 3340 Peachtree Rd, NE, Atlanta, GA 30325.

53. Defendant R. Dudley Barton & Son Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Adairsville, Georgia. R. Dudley Barton & Son Funeral Home, Inc. may be served by service on its registered agent: Ovelle P. Barton, 115 South Main St. Box 265, Adairsville, GA 30103.

54. Defendant Ryan Funeral Home, Inc. was a Georgia Corporation with its principal place of business in Trenton, Georgia. Ryan Funeral Home, Inc. may be served by service on its attorney of record: Edward Lindsey, 2100 Tower Place, 3340 Peachtree Rd, NE, Atlanta, GA 30325.

55. Defendant SCI Alabama Funeral Services, Inc. is a Alabama Corporation with its principal place of business in Birmingham, Alabama. Defendant SCI Alabama Funeral Services, Inc. owned, operated and controlled, directly or through subsidiary corporations, Defendant Kerby Funeral Home. SCI Alabama Funeral Services, Inc. may be served through its attorney of record: J. Anderson Davis, Brinson, Askew, Berry, Seigler,

Richardson & Davis, LLP, Omberg House, 615 West First St., PO Box 5513 Rome, GA  30162.

56.   Defendant SCI Georgia Funeral Services, Inc., is a Delaware corporation with its principal place of business at 4550 Peachtree Road, NE, Atlanta, Georgia, 30319.  Defendant SCI Georgia Funeral Services, Inc. d/b/a J.D. Hill Funeral Home, Defendant SCI Georgia Funeral Services, Inc. d/b/a Jennings Funeral Home, Defendant SCI Georgia Funeral Home d/b/a Jennings Heritage Chapel Funeral Home, Defendant SCI Georgia Funeral Services, Inc. d/b/a Parnick Jennings Funeral Home, Defendant SCI Georgia Funeral Home f/d/b/a Erwin-Petitt Funeral Home, Defendant SCI Georgia Funeral Services, Inc., f/d/b/a J. Avery Bryan of Chickamauga, Defendant SCI Georgia Funeral Services, Inc., f/d/b/a Kenemer Brothers Funeral Home, and Defendant SCI Georgia Funeral Services, Inc. f/d/b/a Wallis Stewart Funeral Home may be served by serving its attorney of record: J. Anderson Davis, Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP, Omberg House, 615 West First St., PO Box 5513 Rome, GA  30162.

57.   Defendant SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home-East Chapel, SCI Tennessee Funeral Services,

Inc. d/b/a Chattanooga Funeral Home-North Chapel, SCI Tennessee Funeral

Services, Inc. d/b/a Chattanooga Funeral Home-Valley View Chapel,

Defendant SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral

Home-West Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Fike

Funeral Home, and SCI Tennessee Funeral Services, Inc. f/d/b/a Hooper

Funeral Homes, Inc is a Tennessee Corporation with its principal place of

business at 59 N. Jefferson, Cookeville, TN  38501.  SCI Tennessee Funeral

Services, Inc. may be served through its attorney of record: J. Anderson

Davis, Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP, Omberg

House, 615 West First St., PO Box 5513 Rome, GA  30162.

58.    Defendant Sequatchie Valley Memorial Funeral Home &

Gardens, Inc. is a  Tennessee Corporation with its principal place of business

in Kimball, Tennessee.  Sequatchie Valley Memorial Funeral Home &

Gardens, Inc. may be served by service on its attorney of record: Edward H.

Lindsey, Jr., Goodman, McGuffey, Aust & Lindsey, 2100 Tower Place,

3340 Peachtree Rd, NE, Atlanta, GA  30325.

59.   Defendant Taylor Funeral Home of Chattanooga,

Incorporated is a  Tennessee Corporation with its principal place of business

in Chattanooga, Tennessee.  Taylor Funeral Home of Chattanooga,

Incorporated may be served by service on its attorney of record: Edward H.

Lindsey, Jr., Goodman, McGuffey, Aust & Lindsey, 2100 Tower Place,

3340 Peachtree Rd, NE, Atlanta, GA 30325.

60. Defendant Thomas and Son Funeral Home, Inc. is a

Georgia Corporation with its principal place of business in Calhoun,

Georgia. Thomas and Son Funeral Home, Inc. may be served by service on

its registered agent: Bruce G. Thomas, 535 Red Bud Rd., Calhoun, GA

30701.

61. Defendant Turner Funeral Home, Inc. is a Tennessee

Corporation with its principal place of business in Chattanooga, Tennessee.

Turner Funeral Home, Inc. may be served by service on its registered agent:

James M. Turner, 1101 Dodds Ave., Chattanooga, TN. 37404.

62. Defendant Wallis-Wilbanks Funeral Home, LLC is a

Georgia Limited Liability Company with its principal place of business in

Lafayette, Georgia. Wallis-Wilbanks Funeral Home, LLC may be served by

service on its registered agent: CT Corporation System, 1201 Peachtree

Street, NE, Atlanta, GA 30361.

63. Defendant Wann Funeral Home, Inc. is a Tennessee

Corporation with its principal place of business in Chattanooga, Tennessee.

Wann Funeral Home, Inc. may be served by service on its attorney of record: Boyd M. Patterson, Jr., 735 Broad St., Suite 1200, Chattanooga, TN 37402-1835.

64.   Defendant Willis Funeral Home, Inc. is a Georgia Corporation with its principal place of business in Dalton, Georgia. Willis Funeral Home, Inc. may be served by service on its attorney of record: Harry W. Bassler, Crim & Bassler, LLP, 100 Galleria Pkwy, Suite 1510, Atlanta, GA 30339.

65.   Defendant W.L. Wilson & Sons, Inc. is a Georgia Corporation with its principal place of business in Fort Oglethorpe, Georgia. W.L. Wilson & Sons, Inc. may be served by service on its attorney of record: Stephen L. Cotter, Swift, Currie, McGhee & Hiers, LLP, 1355 Peachtree St. NE, Suite 300, Atlanta, GA 30309.

## JURISDICTION AND VENUE

66.   This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the named plaintiffs and defendants; because the amount in controversy exceeds $75,000, exclusive of interest and costs as to each of the named plaintiffs and each and every member of the proposed class who has suffered injuries

and damages as a result of defendants' conduct; and because the Class has a common and undivided interest in obtaining punitive damages and equitable relief, that far exceed the jurisdictional minimum in value.

67.   Venue is properly laid in this district pursuant to 28 U.S.C. § 1391(a) because defendant Tri-State resides in this district of Georgia and because defendants all reside in Georgia, as they all conduct business in Georgia, within the meaning of 28 U.S.C. § 1391(a) as defined in § 1391(c), and because a substantial part of the events giving rise to this claim occurred in this district of Georgia.

## CLASS ACTION ALLEGATIONS

68.   The  plaintiff class consists of the surviving spouses, relatives and/or designated representatives of decedents whose remains were entrusted to the defendants and delivered to Tri-State, during the Class Period commencing at a date certain, presently unknown to the plaintiffs and continuing through February 15, 2002.

69.   This action is brought pursuant to the applicable provisions of Rule 23 of the Federal Rules of Civil Procedure on behalf of a class defined as:

All those who presently possess or who may subsequently acquire the   right to control the disposition of the remains of any decedents delivered for cremation to Defendant Tri-State Crematory, Inc.; all persons who were parties to any contract with any of the defendants regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory, Inc.; and the estates of the decedents and the representatives thereof; and a subclass defined as those families whose decedents' uncremated or otherwise desecrated remains have been recovered from the Tri-State Crematory property.

70.  Ms. Bechtel, Ms. Yockel, Ms. Webb, Mrs. Kelly, Dr. Edkins, Mr. Reid and Mr. Shirley will serve as named plaintiffs for members of the proposed class.  Mr. Conyers, Mrs. Hamil and Mrs. Kelly will serve as a named plaintiff for members of the proposed subclass.

71.  Excluded from the class are the defendants, including any parent, subsidiary, affiliate or controlled person of these entities and their officers, directors, agents, employees and members of their immediate families; and the judicial officers to whom this case is assigned, their staff, and the members of their immediate families.

72.  The class and subclass are so numerous that individual joinder of all its members is impracticable.

73.  The identities of the class and subclass members for purposes of class notice may be readily obtained from the defendants' and public records.

74.   In this action, common issues of law and fact relating to the conduct, duty and resulting liability of the defendants predominate over any issues affecting only individual class members.

75.   The claims of the named plaintiffs are typical of the claims of the class in that they and their families have been subjected to the same unlawful behavior of the defendants, giving rise to common legal and equitable claims.

76.   This Court may elect, in its discretion, to maintain these claims as a class action under Rule 23(b)(1), (2) and/or (3) of the Federal Rules of Civil Procedure.

77.   Class certification is appropriate pursuant to Rule 23(b)(1) of the Federal Rules of Civil Procedure because the prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the defendants and/or because adjudications respecting individual members of the class would, as a practical matter, be dispositive of the interests of the other members or would risk substantially impairing or impeding their ability to protect their interests.

78.   Class certification is also appropriate pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure because the defendants acted on grounds generally applicable to the Class, making appropriate equitable, injunctive and/or declaratory relief.

79.   Class certification is also appropriate pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure because common issues of law and fact predominate over issues involving only individual Class members.

80.   There is a continuity of interest in obtaining appropriate equitable relief for the subject commingled and desecrated remains and in obtaining adequate compensation for the damages, injuries, grief and anguish that the defendants' actions have inflicted on the class.

81.   The named plaintiffs are members of the class and subclass described herein and their claims are typical of the class.

82.   The named plaintiffs will fairly and adequately represent and protect the interests of the members of the class and subclass and neither has any interests that are adverse to the interests of the class.

83. The named plaintiffs have retained counsel competent and experienced in complex tort, consumer and class action litigation, including cases involving the desecration, commingling, mishandling and abuse of remains.

84. A class action approach is superior to other available methods for the fair and efficient adjudication of this dispute because common questions of law and fact predominate over any questions that may affect only individual members of the class and there would be significant economies to the courts and the parties in litigating the common issues on a class wide basis rather than in repetitive individual trials. A class approach would consolidate these matters and create fewer management difficulties because it would provide the benefits of unitary adjudication, judicial economy, economies of scale and comprehensive supervision by a single court.

85. Class certification is also appropriate because this Court can designate particular claims or issues for class wide treatment pursuant to Rule 23(c)(4)(a) and may designate one or more subclasses pursuant to Rule 23(c)(4)(b) of the Federal Rules of Civil Procedure.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

86. The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

87. Commencing at a time certain, presently unknown to the named plaintiffs and the class members, and continuing through February 15, 2002 (hereinafter, "Class Period") the defendants other than Tri-State Crematory, Inc., contracted to provide funeral-related services, for the benefit of the plaintiffs and the class members and to accomplish the cremation of the plaintiffs' decedents remains with dignity and respect in keeping with public sensibilities and in accordance with the law.

88. These defendants then contracted with Defendant Tri-State Crematory, Inc. to carry out this cremation process for the plaintiffs' and the class members' benefit.

89. Contrary to their contractual, fiduciary and non-delegable duties, the defendants commonly and systematically failed, throughout the Class Period, to accomplish the cremation and disposition process with the dignity and respect expected of them by public sensibilities and required of them by law. Rather than discharging their duties to the plaintiffs and the class members by fully and faithfully carrying out their obligations, and

without describing their actual practices or obtaining express written permission therefore, the defendants knowingly, recklessly and/or negligently permitted and facilitated the disrespectful, improper and illegal mishandling, desecration, abuse and commingling of the remains of the decedents.

90.   Throughout the Class Period, commencing upon a date presently unknown to the plaintiffs and the class members, and continuing through February 15, 2002, Defendant Tri-State Crematory, Inc., through the Tri-State defendants, systematically and commonly mishandled, desecrated, abused and commingled the remains of the decedents in a manner offensive to human sensibilities and/or expressly prohibited by law.

91.   The failure of each and every defendant funeral home to discharge its duty of special care to ensure that the remains entrusted to their care were handled respectfully and in accordance with the wishes of the families of the deceased contributed to and caused harm to the plaintiffs and the class as a whole.  Had any one of the defendant funeral homes inspected, supervised or monitored Tri-State's cremation practices, as this special duty requires, Tri-State's practices would have been discovered and stopped before widespread injury took place.  Because each and every defendant

funeral home failed to meet its duty, Tri-State was able to continue, undiscovered, its practice of mishandling, commingling and desecrating the remains of the loved ones of family after family.  Through the defendants' knowing, reckless, or negligent failure to discover and disclose the true nature of the facilities, equipment, practices, and procedures utilized at Tri-State about the true nature of the practices at Tri-State, each defendant contributed to and caused harm to every member of the class by enabling and facilitating the mishandling, commingling and desecration of the decedents' remains.

92.   The remains of the decedent, Gilbert Schuchman, who died December 29, 1992, were entrusted at or about that time to Defendant W.L. Wilson & Sons by Paula Yockel, his daughter, and thereafter delivered for cremation by Defendant W.L. Wilson & Sons to its agent, Defendant Tri-State.

93.   The remains of the decedent Robert Gladstone Swofford, who died on or about April, 1993, were entrusted at or about that time to Defendant W.L. Wilson & Sons by Carol Bechtel, his daughter, and thereafter delivered by W.L. Wilson & Sons for cremation to its agent, Defendant Tri-State.

94.   The remains of the decedent Willie Florence Swofford, who died on or about April, 1995, were entrusted at or about that time to Defendant W.L. Wilson & Sons by Carol Bechtel, his daughter, and thereafter delivered for cremation by Defendant W.L. Wilson & Sons to its agent, Defendant Tri-State.

95.   The remains of the decedent Samantha Webb Swinney, who died on August 31, 2000, were entrusted at or about that time to Defendant Buckner-Rush Enterprises, by Naomi Webb, her mother, and thereafter delivered for cremation by Defendant Buckner-Rush Enterprises to its agent, Defendant Tri-State.

96.   The remains of the decedent Thomas J. Conyers, who died on August 24, 2001, were entrusted at or about that time to Defendant Franklin-Strickland Funeral Home by Thomas G. Conyers, his son, and thereafter delivered for cremation by Defendant Franklin-Strickland Funeral Home to its agent, Defendant Tri-State.  The uncremated remains of Thomas J. Conyers, were discovered on the property surrounding Tri-State Crematory.

97.   Linda Hamil contracted with Defendant Buckner-Rush Funeral Home to provide for the respectful and dignified cremation of her

263321.1                                33

father, Reed Morgan, Jr., who passed away in 1998. Defendant Buckner-Rush sent the remains of Mrs. Hamil's father to Tri-State Crematory for cremation. The materials Mrs. Hamil received from Buckner-Rush represented to be the cremated remains of her father were scattered. After the discoveries at Tri-State, Mrs. Hamil was told by the Georgia Bureau of Investigation to assume the material she had received from Buckner-Rush were the remains of her father. In January, 2003, however, the uncremated remains of Mrs. Hamil's father were positively identified among the bodies removed from the Tri-State property.

98.     Kathi Kelly's father, Daniel J. Kelly, Jr., passed away on March 31, 1997. Her mother, Nancilee Davis Kelly, passed away on January 9, 1998. At the time of her parents' deaths, Kathi Kelly contracted with Defendant Wann Funeral Home for the respectful and dignified cremation of their remains. She was her parents' only child. Defendant Wann Funeral Home sent Mrs. Kelly's parents' remains to Tri-State for cremation. The remains of her mother, Nancilee Kelly, have been positively identified among the bodies recovered from the Tri-State property. To date, the remains of Mrs. Kelly's father have not yet been positively identified.

99.   John Edkins, father of Dr. Thomas Edkins, contracted with Defendant Julian Peeples Funeral Home prior to his death to provide for his dignified and respectful cremation.  After Mr. Edkins's death in 2000, Defendant Julian Peeples sent his remains to Tri-State for cremation.

100.   Richard Reid's son, Greg Reid, passed away on April 1, 2000.  At the time of his son's death, Richard Reid and his wife contracted with Defendant Turner Funeral Home to provide for the respectful and dignified cremation of their son.  Defendant Turner sent Greg Reid's remains to Tri-State for cremation.

101.   Marie Annette Shirley passed away on September 14, 2001.  She was a widow.  At the time of her death, James Shirley, Mrs. Shirley's son, contracted with Defendant Franklin-Strickland for the respectful and dignified cremation of his mother.  Defendant Franklin-Strickland sent Mrs. Shirley's remains to Tri-State for cremation.  After the discoveries at Tri-State, Mr. Shirley took the remains he had been given by Franklin-Strickland as his mother's for testing by the GBI.  He was told the material he had been given was not human.  The Medical Examiner, Dr. Kris Sperry, noted that the material Mr. Shirley had been given as his mother's

remains "appeared to be cement" and he retained the material as evidence. To date, the true remains of Mr. Shirley's mother have not been located.

102.   The named plaintiffs are now informed and believe, and thereon allege, that their parents and decedents were subjected to the unlawful and improper practices of Tri-State.  Their family members' remains were not cremated with dignity and respect or in accordance with their wishes or the law.  Instead, their remains were subjected by the defendants to commingling, mishandling, abuse and other improper practices and processes and, as a proximate result, were desecrated, mishandled and/or commingled, together with the remains of class members' decedents.

103. Perhaps more horrifying to the plaintiffs and the class members is the knowledge that, because the defendants exercised complete control over the remains of the decedents and due to the defendants' improper and unlawful desecration of the remains, including the efforts to conceal the bad acts, many families whose loved ones were delivered to Tri-State by the other defendants will never know to what treatment the remains of their loved ones were subjected.

104. Moreover, as a proximate result of (a) the representations of defendants that the decedents' remains would be and had been cremated

in the authorized and requested manner, with dignity and respect; (b) the defendants' possession and control of the remains of the decedents' remains, and complete control over the manner of treatment of these remains; and (c) the concealment by the defendants of the mistreatment, mishandling, desecration and abuse of the remains, the plaintiffs and class members did not discover that their decedents' remains were subjected to the defendants' misconduct until within one year preceding the filing of this complaint.

105. Specifically, this discovery of the defendants' misconduct occurred in or about the middle of February, 2002, when the named plaintiffs first learned from public media reports that the remains of decedents delivered to Tri-State had been mishandled, commingled, abused and desecrated.

## FIRST CAUSE OF ACTION

## EQUITABLE (INJUNCTIVE AND/OR DECLARATORY) RELIEF

106.   The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

107.   The plaintiff and the class members and/or their decedents entered into written or oral contracts with the defendants to obtain and ensure the cremation of the plaintiffs' decedents in an individual, dignified, respectful and lawful manner.  The named plaintiffs and the class members and/or their decedents were induced to enter into such contracts by the defendants' representations, which emphasized and assured the dignified and respectful manner in which the decedents' remains would be handled and cremated and omitted any information regarding the actual practices of Tri-State or the defendant's failure to inspect, supervise or monitor Tri-State. The plaintiffs and the class members were the natural and intended beneficiaries of those written and oral contracts.

108.   The plaintiffs and the class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

109. During the Class Period, the defendants breached these contracts by failing to accomplish the cremation of the remains of the decedents in an individual, dignified, respectful and/or lawful manner.

110. Instead, the defendants employed, authorized and/or allowed the employment of processes and practices resulting in the mishandling, abuse and commingling of the decedents' remains.

111. The remains of the decedents were improperly and unlawfully handled while in the defendants' exclusive possession and control, without the authorization, knowledge, permission, consent or ratification of the plaintiffs or the class members.  The remains were abused, desecrated, commingled with each other and with non-human residue and disposed of as no more than garbage, such that the integrity of the remains was violated and the remains were not returned to the plaintiffs and class for disposition.  The decedents' remains were not afforded individual, respectful and dignified disposition and were, instead, mishandled, abused and desecrated.

112. The named plaintiffs and the class members are charged by law, by their own perceived moral obligations and ethical duties and by natural sentiments to accomplish the disposition of their decedents' remains

as requested by the decedents, as set forth in the cremation contracts with the defendants, and in keeping with public sensibilities and the law.

113. No adequate remedy at law exists to address the abuse of the decedents' remains and, due to the defendants' actions, there may be no way to undo the injustices that have been done. Worse, many family members who entrusted their departed loved ones to the defendants many never be able to learn the true fate of their remains.

114.   Accordingly, the plaintiffs, on behalf of themselves and the class, request the following equitable relief:

(a)    A judicial determination and declaration of the rights of the plaintiffs and the class and the responsibilities of the defendants with respect to the remains that are the subject of this action;

(b)    That the defendants be enjoined to return to the plaintiffs and class members any and all remains of decedents still in the Defendant Tri-State's possession, custody or control so that respectful and dignified disposition of the remains may be accomplished;

(c)    That the defendants disclose to the plaintiffs and the class, insofar as is possible, the whereabouts of the desecrated and

commingled remains and residue containing commingled remains of decedents delivered to Tri-State during the Class Period so that the plaintiffs and the class may carry out the dignified and respectful disposition of same;

(d)    That the property upon which the remains were discovered and in which they were interred, desecrated and commingled be held in trust for the benefit of the class pending the ultimate disposition by the Court;

(e)    That the defendants be enjoined to cease and desist all mishandling, abuse and desecration of human remains; and

(f)    That the defendants be determined and declared to be financially responsible for the costs and expenses of accomplishing any and all dignified and respectful disposition of the decedents' remains as may be possible.

## SECOND CAUSE OF ACTION

### BREACH OF CONTRACT

115.   The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

116.   The named plaintiffs and the class members and/or their decedents entered into written or oral contracts with the defendants to obtain and ensure the cremation of the decedents in an individual, dignified, respectful and lawful manner.  The expectations of the named plaintiffs and the class members, as reasonable persons, were that these contracts, expressly or by reasonable implication, assured the legal, dignified and respectful disposition of their decedents' remains.  These contracts uniformly omitted material information regarding Tri-State's actual practices, Tri-State's unlicensed status, and the defendants' failure to inspect, monitor or supervise Tri-State. The named plaintiffs and the class members were the natural and intended beneficiaries of those written and oral contracts.

117.   The named plaintiffs and the class members and/or their decedents performed all promises, covenants and conditions required on their part to be performed pursuant to the cremation contracts and have fully paid the agreed-upon price for the defendants' services.

118.   The defendants breached their express written and oral contacts, implied contracts with and promises to the plaintiffs, the class and their decedents by improperly handling or causing the improper handling of the decedents' remains as described herein, and by failing to disclose the true nature of Tri-State's practices and procedures.

119.   The class members were the natural and intended beneficiaries of the contracts with the defendants regarding funeral services to be provided for the decedents.

120. As a proximate result of the defendants' breaches of contract, the plaintiffs and the class and/or their decedents have incurred damages in the amounts they previously paid the defendants for cremation services improperly performed, and, as a further result of the defendants' breaches of contract, the plaintiffs and the class have incurred and will incur additional monetary losses in attempting to recover, identify and respectfully dispose of the decedents' remains.

## THIRD CAUSE OF ACTION

## BREACH OF FIDUCIARY DUTY/SPECIAL DUTY

121.   The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

122.   By offering funeral-related services that the plaintiffs and the class reasonably expected would be performed or accomplished in a dignified and respectful manner, the defendants knowingly and intentionally entered into a special relationship of trust and confidence with the plaintiffs, the class and their decedents.  In entering into agreements to effectuate and complete the disposition of remains, the defendants undertook to respectfully, responsibly and lawfully discharge these duties including specifically the duty to perform disposition services in a dignified and respectful manner, within the bounds of industry practice, and in accordance with all applicable law and regulations.

123.   The defendants were, therefore, charged with a fiduciary or special duty to the plaintiffs, the class and their decedents to fully and faithfully perform the disposition duties.

124. By mishandling, abusing and desecrating the decedents' remains as described herein, by negligently or recklessly entrusting Tri-State with the bodies of plaintiffs' loved ones, and by failing to properly perform

or accomplish those services that the defendants had expressly or impliedly agreed to perform, the defendants, and each of them, breached the fiduciary duties owed by them to the plaintiffs, the class and the decedents.

125.  As a direct and proximate result of the defendants' breaches of their fiduciary duties, the plaintiffs and the class have been damaged and injured as set forth above.

126.   Further, the failure of each and every defendant funeral home to faithfully perform the disposition duties, including the failure to ensure that its agent, Tri-State Crematorium, properly and respectfully handled the decedents' remains, contributed to and caused injury to plaintiffs and the class as a whole because but for the failure of each funeral home properly to discharge its duty, Tri-State's horrific practices would have been discovered and stopped before widespread injury took place.

127. Finally, the funeral home defendants were recklessly or negligently complicit in, and vicariously liable for, the fraudulent concealment by the Tri State defendants of the adulterated nature of the cremated remains returned by the Tri-State defendants to the families by failing to supervise, monitor, and inspect the premises and practices of Tri State, and thereby allowing Tri-State's fraudulent practices to continue.

128. The defendants' conduct in breach of their fiduciary obligations, was intentional, knowing, done with oppression, fraud and malice and/or done in reckless and conscious disregard of the rights of the plaintiffs and the class. The plaintiffs and the class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing, enabling, aiding and abetting, or recklessly allowing similar indecencies upon human remains.

## FOURTH CAUSE OF ACTION

### FRAUDULENT CONDUCT

### (AS TO TRI-STATE DEFENDANTS)

129. The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege against the Tri-State defendants:

130. The conduct of the Tri-State operations by the Tri-State defendants, as described in this Complaint, operated as a fraud upon the

plaintiffs and the class in that the actual conduct of these defendants was uniformly and actively concealed from the plaintiffs and the class throughout the class period.

131. Plaintiffs' reliance on all defendants' proper conduct of every stage of the disposition process was justified and reasonable in that the funeral home defendants, with whom the plaintiffs dealt, and to whom they entrusted their loved ones' remains for disposition, held themselves out to be reputable, experienced and trustworthy entities in the business of funeral cremation and related services.

132. The plaintiffs and the class first became aware and could first reasonably have become aware of the concealed misconduct of the Tri-State defendants in or about mid-February, 2002.

133.   As a proximate result of the Tri-State defendants' fraudulent conduct, fraud and deceit, the plaintiffs and the class have suffered damages and injuries described herein.

134.   The Tri-State defendants' fraud and deceit, consisting of 1) their concealment of their unlicensed status, 2) their fraudulent conduct in commingling, desecrating, and adulterating the human remains entrusted to them and the resulting cremated remains, and 3) their uniform concealment

and nondisclosure of this misconduct, and their implicit representation,

through the return of separately packaged cremated remains, that cremations

had been properly accomplished, concealing from the plaintiffs in such a

way that it was difficult or impossible for the plaintiffs to discover the

intrinsically commingled and adulterated nature of the cremated remains,

was intentional, knowing, done with oppression, fraud and malice and done

in reckless and conscious disregard of the rights of the plaintiffs and the

class. The plaintiffs and the class are, therefore, entitled to punitive and

exemplary damages from said defendants in such amount as shall be

necessary and appropriate to punish the defendants and to deter them and

anyone else from ever committing similar indecencies upon human remains.

## FIFTH CAUSE OF ACTION

## NEGLIGENCE

135.    The plaintiffs, on behalf of themselves and the class, re-

allege and incorporate herein, as if set forth in full, each and every allegation

contained in the preceding paragraphs and further allege:

136.    At all material times, the defendants owed a duty to the

plaintiffs and the class to act with the ordinary care of a reasonable person

with respect to all aspects of the services promised including, but not limited

to, all phases of the cremation process, including but not limited to the hiring, retention, training and supervision of all agents, employees and representatives of the defendants, in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

137.   The defendants negligently and carelessly failed to discharge these duties.

138.   As a proximate cause of the defendants' negligence, the plaintiffs and the class members have been damages and injured as described herein.

## SIXTH CAUSE OF ACTION

## WILLFUL INTERFERENCE WITH REMAINS AND INTENTIONAL MISHANDLING OF A CORPSE

139.   The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

140. The plaintiffs and the class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

141. The plaintiffs and the class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

142. The defendants had the opportunity to comply with the plaintiffs' and the class member's expressed wishes.

143. The defendants, however, willfully and deliberately mishandled the decedents' remains, and/or caused, contributed to, or aided and abetted the Tri-State defendants' mishandling by knowingly failing to assure that Tri-State's operations were conducted properly, respectfully, and in accordance with all applicable law and regulations, and thereby interfered with the rights and responsibilities of the plaintiffs and the class to effect the proper disposition of the remains with utmost dignity, in accordance with the law and their wishes, requests and beliefs.

144. The defendants' mishandling of the remains and their interference with the rights of the plaintiffs and the class precluded the plaintiffs and the class from exercising their rights and performing their responsibilities of appropriately disposing of the remains of their decedents.

145. As a direct, known, foreseeable and proximate result of the intentional mishandling of the remains by the defendants, the plaintiffs and the class have suffered and continue to suffer injury and damages.

146. In mishandling or causing or contributing to the mishandling of the remains of the decedents, the defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the plaintiffs and the class. The plaintiffs and the class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## SEVENTH CAUSE OF ACTION

## NEGLIGENT INTERFERENCE WITH REMAINS AND MISHANDLING OF A CORPSE

147.   The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

148.   The plaintiffs and the class, as the decedents' next of kin, had or have a personal quasi-property right to ensure the proper handling and burial of the decedents' remains.

149.   The plaintiffs and the class expressed their wishes to the defendants regarding the manner in which the remains were to be handled.

150.   The defendants had the opportunity to comply with the plaintiffs' and the class member's expressed wishes.

151.   The defendants negligently, recklessly and carelessly mishandled the decedents' remains and interfered with the rights and responsibilities of the plaintiffs and the class to dispose of the remains in ways unauthorized by the plaintiffs and the class and their decedents, ways that were contrary to the law and contrary to their wishes, requests and beliefs.

152.   The defendants' conduct was accomplished through a common course and practice of improper handling of remains, resulting

from the defendants' own negligence and negligent entrustment of the decedents' remains to persons who lacked the qualifications, training, sensitivity, experience and integrity required to handle the remains properly and by the defendants' negligent failure to control, supervise and investigate the actions of such persons and entities.

153.   As a direct and proximate result of the defendants' negligent interference with the decedents' remains, the plaintiffs have suffered and continue to suffer damages and injuries.

## EIGHTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

154. The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the proceeding paragraphs and further allege:

155. The defendants' conduct directed toward the plaintiff and class members, as described herein, was intentional, knowing, and/or reckless. It is so outrageous that it is not tolerated by civilized society.

156. As a direct and proximate result of the defendants' conduct, the plaintiffs and the class suffered serious mental injuries and

emotional distress that no reasonable person could be expected to endure or adequately cope with.

157.   In their conduct, the defendants acted intentionally, knowingly, with oppression, fraud and malice and in reckless and conscious disregard of the rights of the plaintiffs and the class.  The plaintiffs and the class are, therefore, entitled to punitive and exemplary damages from the defendants in such amount as shall be necessary and appropriate to punish the defendants and to deter them and anyone else from ever committing similar indecencies upon human remains.

## NINTH CAUSE OF ACTION

## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

158.   The plaintiffs, on behalf of themselves and the class, re-allege and incorporate herein, as if set forth in full, each and every allegation contained in the preceding paragraphs and further allege:

159.   At all material times, the defendants owed a duty to the plaintiffs and the class to act with the ordinary care of a reasonable person with respect to all aspects of the services promised including, but not limited to, all phases of the cremation process, including but not limited to the

hiring, retention, training and supervision of all agents, employees and representatives of the defendants, in connection with such services and transactions, the management and administration of the services and transaction, the association with other persons and entities to accomplish the performance of such services, the individual, proper and respectful performance of all steps of the cremation process, and the ascertainment that all such services were being fully and properly undertaken and performed.

160.   The defendants negligently and carelessly failed to discharge these duties.

161.   As a proximate cause of the defendants' negligence, the plaintiffs and the class members have suffered serious and severe mental injuries and emotional distress that no reasonable person could be expected to endure or adequately cope with.

## PRAYER FOR RELIEF

Wherefore, the plaintiffs request the following relief, on behalf of themselves and the class:

(a) Certification of this action as a class action, appointment of the plaintiffs as class representatives and undersigned counsel as class

counsel, and designation of any appropriate subclasses, for any or all claims and issues, under the applicable class action provisions;

(b) Such coordination and cooperation as may be appropriate between this Court and other courts that may exercise jurisdiction over the subject matter of this litigation;

(c) An award of equitable, injunctive and declaratory relief described herein, including judicial supervision of the Tri-State property and a judicial determination of the rights and responsibilities of the parties regarding the remains that are the subject to this action;

(d) An award of compensatory damages in an amount deemed appropriate by the trier of fact, jointly and severally against the defendants;

(e) An award of punitive damages, jointly and severally against the defendants;

(f) The establishment of a constructive trust upon the defendants' property, revenues and/or profits for the benefit of the class and disgorgement and restitution of the past revenues and/or profits to the class;

(g) An award of prejudgment and post-judgment interest;

(h) An award of costs, including but not limited to discretionary costs, attorneys' fees and expenses incurred in pursuing this case;

(i) Any other and further equitable relief this Court deems just and proper; and

(j) Any other and further relief to which they may be entitled at law or in equity.

Respectfully submitted,

Dated this _8_ day of ~~June~~ *AUG*, 2003

McCAMY, PHILLIPS, TUGGLE &
FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia
Telephone:  (706) 278-4499
Facsimile:  (706) 278-5002

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

Plaintiffs' Liaison Counsel

Plaintiffs' Lead Counsel

Kathryn E. Barnett
Alistair E. Newbern
3319 West End Avenue, Suite 600
Nashville, Tennessee  37203
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Ken Canfield
Ralph I. Knowles, Jr.
David Hagy
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 881-8900
Facsimile:  (404) 881-3007

Wendy R. Fleishman
780 Third Avenue, 48th Floor
New York, NY  10017
Telephone:  (212) 355-9500
Facsimile:  (212) 355-9592

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi  39095
Telephone:  (662) 834-2376
Facsimile:  (662) 834-2628

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee  37203
Telephone:  (615) 386-8391
Facsimile:  (615) 386-8392

Charles Graddick
Todd Strohmeyer
Sims, Graddick & Dodson, P.C.
205 St. Emanuel Street
Mobile, Alabama  36602

Plaintiffs' Steering Committee

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Christy Sell
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee  37402
Telephone:  (423) 265-2214
Facsimile:  (423) 266-1842

Robert M. Darroch
Mabry & McClelland, LLP
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia  30345