# ORIGINAL

FILED IN CLERK'S OFFICE

SEP 1 5 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: TRI-STATE | : | |
| CREMATORY LITIGATION | : | MDL DOCKET NO. 1467 |
| | : | |

## W.L. WILSON & SONS' MOTION TO STRIKE
## AFFIDAVIT OF LUIS LLORENS

Comes now W.L. Wilson & Sons Funeral Home (hereinafter "Wilson"),

Defendant in the above-styled civil action, and files its Motion to Strike Affidavit

of Luis Llorens, respectfully showing the Court as follows:

### I.   PLAINTIFFS FAILED TO IDENTIFY EXPERT WITNESS WITHIN THE DEADLINE FOR PROVIDING EXPERT REPORTS.

Plaintiffs Paula Yockel and Carol Bechtel failed to identify its expert witness

(see affidavit of Luis Llorens) at any time during the previous sixteen months of

discovery in this case.  Not only was the filing of this expert's affidavit untimely, it

was also in direct violation of this Court's Order of September 4, 2003.  This Court's

Order states in relevant part:

> "During the September 4, 2003, case management conference, the Court
>
> stated that it would extend the deadlines for providing expert reports by
>
> thirty days.  The existing schedule, however, as set forth in the Court's
>
> April 18, 2003, June 24, 2003, and June 26, 2003, required Plaintiffs to

provide their expert reports by April 29, 2003, and required Defendants to provide their expert reports by June 30, 2003. The Court therefore vacates the portion of its oral order issued during the September 4, 2003, case management conference that extended the time for providing expert reports."

Based on the plain reading of the above-referenced language, Plaintiffs are not at liberty to introduce any expert reports that have not already been provided to Funeral Home Defendants. Therefore, the affidavit of Luis Llorens should be stricken from the record.

Not only did Plaintiffs fail to provide any expert report of Luis Llorens prior to April 29, 2003 deadline set by this Court, Plaintiffs have never identified Luis Llorens as a potential expert in response to Funeral Home Defendants' interrogatories. Local Rule 26.1, in accordance with Fed.R.Civ.P. 26(a)(1) and Fed.R.Civ.P. 26(a)(2), requires that Plaintiffs identify all witnesses, including expert witnesses who might express an opinion under Federal Rules of Evidence, Rule 702, 703 or 705. The interrogatories submitted by Funeral Home Defendants also required Plaintiffs to state the subject matter on which any expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Fed. R.Civ. P. 26(e)(1) also imposes a

continuing duty upon the parties to amend in a timely manner any prior interrogatory response if the party obtains additional information.   Plaintiffs have never supplemented their interrogatory responses to identify Luis Llorens.

Funeral Home Defendants served their First Continuing Interrogatories to Plaintiffs on August 21, 2002. (A true and accurate copy of same is attached hereto as Exhibit A).  Interrogatory No. 21 requested Plaintiffs identify all experts along with all opinions of any such experts.  Plaintiffs Paula Yockel and Carol Bechtel responded to these First Master Interrogatories on September 27, 2002.  These responses never identified Luis Llorens as a potential expert.  (A true and accurate copy of Plaintiff Paula Yockel and Carol Bechtel's Responses to the Funeral Home Defendants Interrogatories is attached hereto as Exhibit B and Exhibit C).  Yet suddenly, without supplementing their interrogatory responses, and outside the Court dictated deadline for submitting expert reports, the Plaintiffs introduce its expert Luis Llorens, by way of affidavit.  Plaintiffs apparently failed to obtain this expert during the previous sixteen months of discovery.  Defendants have not had an opportunity to obtain any discovery from or depose the purported expert.  Defendants do not know of the facts upon which this expert bases his opinions.  For these reasons, the affidavit of Luis Llorens, should be stricken from the record and disregarded by the Court.  See Hancock v. Hobbs, 967 F.2d 462, 467-68 (11th Cir. 1992).

3

## II.   **SPECIFIC OBJECTIONS TO AFFIDAVIT OF LUIS LLORENS.**

The affidavit of Luis Llorens constitutes nothing more than speculation. Mr. Llorens alleges in paragraph 5 of his affidavit that Tri-State Crematory did not purchase enough gas in 1990, 1991, 1994, 1995, 1996, 1997, 1998, 1999, 2000 and 2001 to cremate the number of bodies sent to Tri-State crematory in those years. However, Mr. Llorens concedes in paragraph 6 of his affidavit that he needs more information in order to form a more accurate opinion and that he has not even inspected the retort at Tri-State Crematory. The Eleventh Circuit has held that where an expert's testimony amounts to no more than mere guess or speculation and conjecture, the Court should exclude it. U.S. v. 0.161 Acres of Land, More or Less, Situation in City of Birmingham, 837 F.2d 1036, 1040 (11th Cir. 1988). Expert testimony is not admissible merely to advance some plausible theory. U. S. v. Howard, 855 F.2nd 832, 837 (11th Cir. 1988). Relevant testimony from the qualified expert is admissible only if the expert knows of facts which enable him to express reasonably accurate conclusions as opposed to conjecture or speculation. Jones v. Otis Elevator Co., 861 F.2d 655, 662-63 (11th Cir. 1988). An expert's mere guess or conjecture should be properly excluded because the expert is a conduit of facts and not merely a subjective speculator relying on stature alone. Fed. R. Evid., Rule 702; Porter v. Whitehall Laboratories, Inc., 791 F. Supp. 1335, aff'd, 9 F.3d 607 (S.D.Ill.

4

1992). An affidavit in opposition to a motion for summary judgment is no place for ultimate facts and conclusions of law, nor for argument of the parties' cause. <u>See</u> <u>Benton-Volvo-Metairie, Inc. v. Volvo S.W., Inc.</u>, 479 F.2d 135 (5th Cir. 1973); <u>Sherman v. Hallbauer</u>, 455 F. 2nd 1236 (5th Cir. 1972); <u>Weiss v. Kay Jewelry Stores</u>, 470 F.2d 1259 (CA DC 1972).

WHEREFORE, for the above and foregoing reasons, Defendants respectfully pray that the affidavit of Luis Llorens be stricken from the record.

Respectfully submitted this 15th day of September 2003.

SWIFT, CURRIE, McGHEE & HIERS, LLP

By: _Stephen L. Cotter (by JDJ)_

Stephen L. Cotter
Georgia State Bar No. 189725
Maren R. Frost
Georgia State Bar No. 278448
James D. Johnson
Georgia State Bar No. 394598

Attorneys for Defendant
W. L. Wilson & Sons Funeral Home

SWIFT, CURRIE, McGHEE & HIERS, LLP
The Peachtree
1355 Peachtree Street, N.E.
Suite 300
Atlanta, Georgia 30309-3238
(404) 874-8800

(signatures continued)

BRINSON, ASKEW, BERRY, SEIGLER,
RICHARDSON & DAVIS, LLP

The Omberg House
615 West First Street
Post Office Box 5513
Rome, GA  30162-5513
Phone  706/291-8853
Fax 706/234-3574

Robert M. Brinson
Georgia Bar No. 082900

By: _____

J. Anderson Davis
Georgia Bar No. 211077

Lead and Liaison Counsel for Defendant
Funeral Homes

# EXHIBIT "A"



# EXHIBIT / ATTACHMENT

A

(To be scanned in place of tab)

# ORIGINAL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE          )          MDL DOCKET NO. 1467
CREMATORY LITIGATION      )
                          )
This relates to all actions.     )

## **FUNERAL HOME DEFENDANTS' FIRST MASTER INTERROGATORIES AND REQUEST FOR DOCUMENTS**

In accordance with the Court's instruction of August 8, 2002 and FRCP 26,

33 and 34, the Funeral Home Defendants propound the following First

Interrogatories and Requests to Produce to each individual Plaintiff, as follows:

## PART I -DEFINITIONS

These definitions apply throughout these First Interrogatories and internally

within the text of these definitions.  When a definition requires a multiple-part

response it will be incorporated in the body of the Interrogatory in capital letters

(i.e. "IDENTIFY").

(1)    "Person" or "Persons" as used in these First Interrogatories means any

individual, firm, partnership, corporation or other entity.

(2)    "Document" as used in these First Interrogatories is used in its broad

and liberal sense and means written, typed, printed, recorded or graphic matter,

however produced or reproduced, of any kind and description and whether an

114093.1

original, master, duplicate, or copy, including, but not limited to, papers, notes, accounts, books, advertisements, logs, catalogs, manuals, publications, correspondence, cablegrams, mailgrams, telegrams, memoranda, letters, e-mails, documents, communications, including inter-office and intra-office communications, reports, studies, analyses, pamphlets, calculations, projections, contracts, charts, plans and specifications, drawings, sketches, surveys, agreements, working papers, business records, minutes of board of directors and committee meetings, books of account, ledger books, note books, vouchers, bank checks, cashiers' checks, receipt for cashier's checks, canceled checks, check stubs, bills, receipts, invoices, desk calendars, appointment books, diaries, diary entries and notes, minutes, transcriptions or sound recordings of any type of personal or telephone conversations or of negotiations, meetings or conferences or similar to any of the foregoing, telefax transmission letters, x-rays, photographs, office notes, and all other papers, writings or physical things containing information, including preliminary drafts of or marginal notes appearing on any document, however denominated or described. "Document" shall further collectively include the original, duplicate original, and any and all copies or reproductions of the original document, to the extent that any or all of said documents are within the possession, custody or control of any Plaintiff or his/her

114093.1                                         2

agents or attorneys.

(3)   "IDENTIFY" as used in these First Interrogatories in connection with any person or persons requires the following information for each person:

(a)   the person's full name;

(b)   the person's last known business address and telephone number;

(c)   the person's last known home address and telephone number;

(d)   the name of the person's last known employer; and

(e)   the person's last known title, position or business.

(4)   "SPECIFY" as used in these First Interrogatories in connection with any document requires the following information for each document:

(a)   the title of the document with sufficient particularity to permit its identification;

(b)   the name, position of employment or title and business address of each person who prepared or participated in the preparation of each document;

(c)   the date on which each document was prepared;

(d)   the identity of each person who received or obtained a copy of each document;

(e)   if all copies of the document have been destroyed, please IDENTIFY the person or persons authorizing the destruction of the document and

the date of the description of the document.

(5)   "DESCRIBE" as used in these First Interrogatories in connection with the INCIDENT (as hereinafter defined) or any act, occurrence, omission or series of acts, occurrences or omissions requires the following information:

(a)   the identity of each and every person involved in the INCIDENT, act, occurrence, omission or series of acts, occurrences, or omissions as provided in the definition of "IDENTIFY";

(b)   the date or dates of each and every INCIDENT, act, omission or occurrence;

(c)   a brief description of the INCIDENT,  act, omission, occurrence or series of acts, omissions or occurrences; and

(d)   a description of each and every document involved in the INCIDENT, act, omission, occurrence or series of acts, omissions or occurrences as provided in the definition of "SPECIFY".

(6)   Documents specified and persons identified in answer to an Interrogatory may thereafter be specified or identified only by name or title in answers to subsequent Interrogatories.

(7)   "INCIDENT" as used in these First Interrogatories shall mean the occurrence of any act or omission or other incident complained of by any Plaintiff,

at which time such Plaintiff allegedly was injured or damaged and from which the claim arose.

(8)    "Plaintiff" as used in these First Interrogatories shall mean and include, in addition to said Plaintiff, all agents, servants, representatives, private investigators and others who are in a position of, or may have obtained information for or on behalf of, the Plaintiff.

## PART II -INSTRUCTIONS

Supplemental Responses Required:    These interrogatories are continuing and therefore require supplemental answers if you obtain further responsive information between the time your answers are served and the time of trial.

Scope of Responses:    If a complete answer to a particular interrogatory is not possible, the interrogatory should be answered to the extent possible and a statement should be made indicating why only a partial answer is provided.

Privileged Information and Documents: If you contend that an answer to an interrogatory is privileged, in whole or in part, or otherwise object to any part of any interrogatory, or contend that any document shall be immune from production during discovery, the following information should be supplied.

(i) The reason or reasons for such objection or ground for exclusion; and

114093.1                                  5

(ii)    The identity of each person having knowledge of the factual basis, if any, upon which privilege, objection or the ground for exclusion is based.

## INTERROGATORIES

1.

Separately as to each funeral home defendant, please DESCRIBE:

a.  The inquiry you made to assure that the allegations of the third sentence in Paragraph 1 have evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

2.

Separately as to each funeral home defendant, please DESCRIBE:

a.  The inquiry you made to assure that the allegations that Defendants "turned a knowing blind eye to its practices" in Paragraph 3 have evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

3.

Separately as to each funeral home defendant, please DESCRIBE:

a.  The inquiry you made to assure that the allegations of  Paragraph 12 have

    evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

4.

Separately as to each funeral home defendant, please DESCRIBE:

a.  The inquiry you made to assure that the allegations of  Paragraphs 15, 24

    and 28 have evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness which supports said allegations; and

d.  SPECIFY each document which supports said allegations.

5.

Separately as to each funeral home defendant, please DESCRIBE:

a.  The inquiry you made to assure that the allegations of the second sentence

    of Paragraph 74 have evidentiary support or are likely to have evidentiary

    support;

b.  What that evidentiary support is;

c. IDENTIFY each witness which supports said allegations; and

d. SPECIFY each document which supports said allegations.

6.

Separately as to each funeral home defendant, please DESCRIBE:

a. The inquiry you made to assure that the allegations of the second, third, and fourth sentences of Paragraph 76 have evidentiary support or are likely to have evidentiary support;

b. What that evidentiary support is;

c. IDENTIFY each witness who supports said allegations; and

d. SPECIFY each document which supports said allegations.

7.

Separately as to each funeral home defendant, please DESCRIBE:

a. The inquiry you made to assure that the allegations concerning a "conspiracy of silence in Paragraph 76, "efforts to conceal" in Paragraph 81, "concealment" in Paragraph 82, and "concealing" in Paragraph 96 have evidentiary support or are likely to have evidentiary support;

b. What that evidentiary support is;

c. IDENTIFY each witness who supports said allegations; and

d. SPECIFY each document which supports said allegations.

8.

Please state the equitable, injunctive and declaratory relief you seek as to each of the funeral home defendants and describe the basis therefor.

9.

Separately as to each funeral home defendant, please DESCRIBE the basis of your claims for punitive damages.

10.

Identify your deceased loved one(s) by name, address at death, date(s) of death, cause(s) of death and custodian or attending practitioner of the healing arts at the time of death. If your loved one(s) was married and/or divorced, specify the date and place of each marriage/divorce and whether the spouse is surviving.

11.

Identify yourself by name, address, Social Security number, date of birth and relationship to your loved one.

12.

Only if you are not the surviving spouse of your loved one, identify all other surviving relatives of the decedent and all claimed beneficiaries of any claim or cause of action arising out of the incident forming the basis of your complaint. If you are aware of any person (including, but not limited to the above) who is asserting, may assert, or has legal right to assert any claim on account of the circumstances forming the basis of your complaint, identify such individual (including his/her name, address

and relationship to your loved one) and detail such individual's claims.

### 13.

IDENTIFY all persons and entities who assisted in or communicated regarding making final arrangements, including but not limited to the funeral and cremation for your loved one. State the date, time, method of communication and those involved in each such communication, and fully describe all documents related thereto.

### 14.

With respect to your loved one's cremation, IDENTIFY person(s) who dealt with the funeral home, Tri-State Crematory or other entity in connection with the possibility of and/or arrangements for cremation, and IDENTIFY the individual such persons dealt with at the funeral home or other entity referenced above.

### 15.

With respect to cremation, please describe (by communicator, funeral home, witnesses present, exact text thereof, time and date) all representations and information (attach documentation) provided to you (or to anyone else who participated in the final arrangements for your loved one) regarding the cremation services to be performed.

16.

With respect to Tri-State Crematory, did you (or anyone affiliated with you or your loved one) travel to, make inquiry to, communicate with any of its owners or agents, or gain any knowledge regarding Tri-State Crematory before February, 2002? If so, IDENTIFY the individuals involved, the nature of the activity or communication, and all documentation related thereto.

17.

With respect to your loved one's remains or cremains, state when and IDENTIFY from whom you received any remains or cremains of your loved one and (in order of possession) each individual, entity or agency who has had possession of said remains or cremains, or any portion thereof, and the time and place of possession for each segment of time involved; describe the container; and if the container was opened, state the date, persons involved, circumstances and purpose.

18.

Since February of 2002, have you or anyone associated with you received remains or cremains of your loved one or documentation relating thereto, such as testing of any kind or nature, including, but not limited to, DNA testing from any law enforcement authorities or agencies and attorneys-at-law? If so, describe such remains, cremains or documentation with reasonable particularity and explain why and how any such remains or cremains have been lost or otherwise left your

possession for any time.

19.

Only if you contend that your loved one(s) identified in your Response to Interrogatory No. 1 was among the approximately 339 bodies recovered in 2002 on the premises of Tri-State Crematory,  please describe with reasonable particularity all facts and personal identifying data and information (such as significant dental and medical histories, records and practitioners, armed service records, distinguishing features and/or other special circumstances and things) bearing on identification and attach all documents or data hereto.

20.

IDENTIFY all individuals you claim could be a member of the class you seek to represent, and include the decedent's name, his/her date of death, the funeral home involved, and the full name(s) and address(es) of all such alleged class members.

21.

IDENTIFY each expert you expect to call at trial, by affidavit or otherwise, and state the subject matter on which the expert is expected to testify, the substance of facts and opinions on which the expert is expected to testify, a summary of grounds for each opinion, describing with reasonable particularity all documentation related thereto including, but not limited to, the expert's current professional resumé, current list of testimonies, and inventory of the expert's file materials pertaining to this case

and the facts and authorities upon which the expert bases his or her opinions.

22.

How, where, when and from whom did you first learn of any alleged irregularity involving your loved one or others at the Tri-State Crematory facility, and DESCRIBE such communication?

23.

Please DESCRIBE all communications subsequent to the communication described in your previous Interrogatory answer, from or to any source including, but not limited to the G.B.I., pertaining to your loved one's remains or cremains allegedly being on the property of Tri-State Crematory or at a location other than intended by you and/or being co-mingled, short-weighted, or adulterated in any fashion whatsoever and all documentation related thereto.

24.

Please SPECIFY all documents related to your contentions and proof in this case regarding the alleged acts and/or omissions by each funeral home named in this suit and any investigation and findings of any governmental or private agency or individual regarding same.

25.

Please detail (by each separate category of damages) the type of damages you are claiming for each separate cause of action, how you attempt to calculate or

quantify the loss or amount of compensation which you allege you are owed, and IDENTIFY (by each separate type of damage) the witnesses you intend to call to prove such, the nature of their expected testimonies, and SPECIFY the documentation and information apart from those testimonies which will be used to illustrate or demonstrate the damage suffered.

26.

If you contend you have suffered any bodily injury, personal injury or emotional injury of any type, please describe the injury(ies), the specifics of any treatment you have received therefor, the costs thereof, and IDENTIFY all practitioners of the healing arts (including psychiatrists, psychologists, mental health counselors, pastoral counselors and the like) from whom you have received any treatment or counseling at any time in the last ten (10) years, indicating as to each the nature of the condition(s) treated and of the care received therefore.

27.

Please IDENTIFY all individuals (in addition to those individuals named above in response to the preceding Interrogatories) you believe have pertinent knowledge of any aspect of this case and state the essence or nature of their knowledge.

28.

Please IDENTIFY all relatives, friends and/or representatives of your loved one who attended any meetings (including but not limited to any "family meetings" held

at the Walker County Civic Center) press conferences, court hearings, or other gatherings since February 15, 2002 regarding the alleged irregularity involving your loved one or others at the Tri-State Crematory facility, and specify the purpose of the meeting, the substance or contents discussed therein, and the date and location of such attended meeting.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.

All documents and things SPECIFIED in your answers to the preceding Interrogatories.

2.

All documents and things referring or related to any Defendant in this case or any representative (past or present) of any Defendant in this case.

3.

All documents and physical evidence related to any expert you expect to testify, including their professional resumé, list of testimonies, Rule 26 report, other memoranda, notes, reports, inventory of file, all tests and analysis performed and the results of such, photographs, and radiographs.

4.

All documents and physical evidence related to any expert contacted, retained

or utilized who are not expected to testify on your behalf.

5.

All documents and physical evidence given to or received from any law enforcement or investigative agency relating to the cremation or remains or cremains of your loved one.

6.

Other than communications with your attorneys and/or the court, all documents and physical evidence related to your communication regarding any aspect of the claims forming the basis of your suit which you have made to a diary, calendar, file, computer or other record and/or to anyone else by way of letter, interview, e-mail or otherwise.

7.

All documents related to any damages you are claiming in this suit.

8.

All documents and physical evidence provided by any Defendant funeral home, specifically including the one with whom you (or those associated with your loved one) dealt, regarding your loved one's demise, final arrangements and cremation and all related notes and papers associated therewith.

9.

Any and all documents, radiographs, photographs, medical records, dental

records and other tangible things that were available to or provided to your expert(s),

whether expected to testify on your behalf or not, for use in their examination

regarding each individual decedent whose cremains or remains your expert(s)

examined, tested, or inspected.

Respectfully submitted,

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS**

By: _____
      Robert M. Brinson
      Georgia Bar No. 082900
      J. Anderson Davis
      Georgia Bar No. 211077

The Omberg House
615 West First Street
Post Office Box 5513
Rome, GA 30162-5513
Phone 706/291-8853
Fax 706/234-3574

Counsel for SCI Defendants and Lead
Counsel for Defendant Funeral Homes

SWIFT, CURRIE, McGHEE & HIERS, LLP

By: _____
      Stephen L. Cotter
      Georgia State Bar No. 189725
      Maren R. Frost
      Georgia State Bar No. 278448

Steering Committee Counsel for
Funeral Home Defendants

1355 Peachtree Street, NE, Suite 300
Atlanta, GA 30326-1084
Phone - 404/888-6137
Fax - 404/888-6199

114093.1                                     17

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE                                )        MDL DOCKET NO. 1467
CREMATORY LITIGATION                )
                                                         )
This relates to all actions.                   )

## CERTIFICATE OF SERVICE

This is to certify that on the 21st day of August 2002, I served counsel for all

parties with a copy of **Funeral Home Defendants' First Master Interrogatories**

**and Request for Documents** by causing a copy of same to be placed in first class

U.S. mail with adequate postage affixed thereto and addressed as follows:

Robert H. Smalley, III, Esquire
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Post Office Box 1105
Dalton, GA  30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esquire
OFFICE McCRACKEN POSTON
Post Office Box 1130
Ringgold, GA  30736
Liaison/Lead Counsel for Tri-State
Crematory, Inc. and the Marsh Family

This 21st day of August, 2002

J. ANDERSON DAVIS
Georgia Bar No.: 211077

114102.1



# EXHIBIT / ATTACHMENT

$\mathcal{B}$

**(To be scanned in place of tab)**

# EXHIBIT "B"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: TRI-STATE | ) | MDL DOCKET NO. 1467 |
| CREMATORY LITIGATION | ) | |
| | ) | |
| This relates to all actions. | ) | |

## PLAINTIFF PAULA YOCKEL'S RESPONSES TO FUNERAL HOME DEFENDANTS' FIRST MASTER INTERROGATORIES AND REQUEST FOR DOCUMENTS

Paula Yockel responds to defendants' First Master Interrogatories and

Document Requests as follows:

## GENERAL OBJECTIONS

1.      These responses reflect only the current state of the plaintiffs' knowledge with regard to the funeral home defendants' inquiries. Discovery is in its preliminary stages in this action, and the plaintiffs' responses will be supplemented as necessary as more information becomes available.

2.      Plaintiffs generally note that many of these interrogatories are moot in light of the filing of the Plaintiffs First Amended Complaint.

3.      Plaintiffs object to "Part I – Definitions" and "Part II – Instructions" contained therein to the extent that any "definition" or "instruction" purports to impose any obligation other than those required by the Federal Rules of Civil Procedure (FRCP.)

4.      Plaintiffs object to any interrogatory which, directly or indirectly, seeks disclosure of any communication protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege.

5.      Plaintiffs generally object to any interrogatory which calls for a legal conclusion.

147389.1

6.      Plaintiffs generally object to any interrogatory which is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Any responses hereto which Plaintiffs subsequently provide are notwithstanding and without waiving any general objections.

## INTERROGATORIES

1.

Separately as to each funeral home defendant, please DESCRIBE:

a.  The inquiry you made to assure that the allegations of the third sentence in Paragraph 1 have evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

General news reports published at and around the time this complaint was filed indicated that the State of Georgia's Funeral Services Board investigated Tri-State Crematory in 1995 after having received complaints that the business was operating without a license. *See, e.g.*, ATLANTA JOURNAL CONSTITUTION, *Loophole Kept Tri-State Going*, February 19, 2002 ("State regulators investigated Tri-State Crematory in 1995 after complaints the business was operating without a funeral license, state records obtained Tuesday show.").  Plaintiffs will request

records reflecting the circumstances surrounding this investigation and the complaints that led to its instigation as discovery continues. Should it be necessary to do so, plaintiffs will identify and call witnesses from the Board to testify regarding this investigation.

2.

Separately as to each funeral home defendant, please DESCRIBE:

a.    The inquiry you made to assure that the allegations that Defendants

"turned a knowing blind eye to its practices" in Paragraph 3 have

evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure. In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

Plaintiffs note that this Interrogatory is now moot, in light of the filing of the First Amended Complaint. However, plaintiffs answer as follows:

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants selected Tri-State Crematory to perform cremations on their behalf then, over a period of years, failed to inspect, monitor, or otherwise supervise the operations of Tri-State Crematory. Based upon the state of knowledge within the funeral home industry, the funeral home defendants knew or should have known that such monitoring was common practice within the industry. Plaintiffs will demonstrate through the testimony of representatives of the funeral home defendants that no inspections or monitoring took place. Thus, plaintiffs' allege that the funeral home defendants "turned a knowing blind eye" to Tri-State

Crematory's practices.

3.

Separately as to each funeral home defendant, please DESCRIBE:

a.     The inquiry you made to assure that the allegations of Paragraph 12

have evidentiary support or are likely to have evidentiary support;

b.   What that evidentiary support is;

c.   IDENTIFY each witness who supports said allegations; and

d.   SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants delegated the performance of cremations to defendant Tri-State Crematory, which performed the cremations on their behalf.  The specific terms of each defendant funeral home's agreement with Tri-State Crematory for the performance of these cremations is not yet known, but will be learned as discovery progresses.  Plaintiffs will, if necessary, call representatives of the funeral home defendants to testify further as to the nature of their business relationship with Tri-State Crematory.

4.

Separately as to each funeral home defendant, please DESCRIBE:

a.     The inquiry you made to assure that the allegations of Paragraphs 15,

24 and 28 have evidentiary support or are likely to have evidentiary

support;

4

b. What that evidentiary support is;

c. IDENTIFY each witness which supports said allegations; and

d. SPECIFY each document which supports said allegations.

ANSWER: Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure. In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

Plaintiffs allegations regarding the corporate structures of defendants Prime Succession, Inc.; Carriage Services, Inc.; and Service Corporation International, were based upon public knowledge obtained through common news sources and through the defendants own corporate filings. Plaintiffs assert that this interrogatory is now moot, as plaintiffs have revised and refined their allegations with regard to these defendants after further investigation and in direct consultation with their attorneys. These changes will be reflected in the plaintiffs First Amended Complaint.

5.

Separately as to each funeral home defendant, please DESCRIBE:

a.      The inquiry you made to assure that the allegations of the second

sentence of Paragraph 74 have evidentiary support or are likely to have

evidentiary support;

b. What that evidentiary support is;

c. IDENTIFY each witness which supports said allegations; and

d. SPECIFY each document which supports said allegations.

ANSWER: Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal

strategy and preparation for litigation, which is protected from such disclosure. In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants selected Tri-State Crematory to perform cremations on their behalf, then, over a period of years, failed to inspect, monitor, or otherwise supervise the operations of Tri-State Crematory. During this time, defendant Tri-State Crematory engaged in the disrespectful, improper and illegal mishandling, desecration, abuse and commingling of human remains. Plaintiffs allege that because of their failure to monitor, supervise, or inspect, the defendant funeral homes knowingly, recklessly, and/or negligently allowed Tri-State Crematory's practices to continue. Plaintiffs will, if necessary, call representatives of the funeral home defendants to testify further as to the nature of their business relationship with Tri-State Crematory.

6.

Separately as to each funeral home defendant, please DESCRIBE:

a.   The inquiry you made to assure that the allegations of the second, third, and fourth sentences of Paragraph 76 have evidentiary support or are likely to have evidentiary support;

b. What that evidentiary support is;

c. IDENTIFY each witness who supports said allegations; and

d. SPECIFY each document which supports said allegations.

ANSWER: Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure. In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

Plaintiffs repeat their response to Interrogatory No. 5.

7.

Separately as to each funeral home defendant, please DESCRIBE:

a.   The inquiry you made to assure that the allegations concerning a

"conspiracy of silence in Paragraph 76, "efforts to conceal" in Paragraph

81, "concealment" in Paragraph 82, and "concealing" in Paragraph 96

have evidentiary support or are likely to have evidentiary support;

b.   What that evidentiary support is;

c.   IDENTIFY each witness who supports said allegations; and

d.   SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure. In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

Plaintiffs assert that this Interrogatory is now in part moot, in light of the filing of the First Amended Complaint.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants knew or should have known that defendant Tri-State Crematory engaged in the mishandling of human remains and was otherwise operating outside the law of the State of Georgia.  Plaintiffs assert that the funeral home defendants were recklessly or negligently complicit in, and vicariously liable for, the fraudulent concealment by the Tri State defendants of the adulterated nature of the cremated remains returned by the Tri-State defendants to the families by failing to supervise, monitor, and inspect the premises and practices of Tri State, and thereby allowing Tri-State's fraudulent practices to continue.  Plaintiffs will, if necessary, call representatives of the funeral home defendants to testify further as to the nature of their business relationship with Tri-State Crematory.

8.

Please state the equitable, injunctive and declaratory relief you seek as to each of the funeral home defendants and describe the basis therefore.

ANSWER:  Plaintiffs renew their work product objections, previously stated, to the extent that both this interrogatory calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.   In addition, Plaintiffs object to that this interrogatory calls for legal conclusions.

The plaintiffs request the following equitable relief from the funeral home defendants:

- That the defendants be enjoined to cease and desist all mishandling, abuse and desecration of human remains; and
- That the defendants be determined and declared to be financially responsible for the costs and expenses of accomplishing any and all dignified and respectful disposition of the decedents' remains as may be possible.

Complaint ¶ 92(e)-(f).

The plaintiffs seek equitable relief from the funeral home defendants because their legal rights and interests have been injured by the funeral home defendants' actions in delivering the plaintiffs' decedents' remains for cremation to an unlicensed crematory which  they uniformly failed to supervise, monitor, or inspect.  The funeral home defendants' negligent and intentional conduct in so delivering the class members' decedents' remains to an unlicensed crematory that engaged in the systematic desecration and commingling of human remains has injured the class members in ways money cannot now correct.  These injuries form the basis for the plaintiffs' claims for equitable relief.

9.

Separately as to each funeral home defendant, please DESCRIBE the basis

of your claims for punitive damages.

ANSWER:  Plaintiffs renew their work product objections, previously stated, to
the extent that both this interrogatory calls for the revelation of legal strategy and
preparation for litigation, which is protected from such disclosure.   In addition,
Plaintiffs object to that this interrogatory calls for legal conclusions.

The state of public knowledge at the time this complaint was filed indicated to the
plaintiffs that the funeral home defendants' actions with regard to Tri-State
Crematory were intentional, knowing, done with oppression, fraud and malice and
in reckless and conscious disregard of the rights of the families with whom they
contracted to perform cremation services.


10.

Identify your deceased loved one(s) by name, address at death, date(s) of

death, cause(s) of death and custodian or attending practitioner of the healing arts

at the time of death.  If your loved one(s) was married and/or divorced, specify the

date and place of each marriage/divorce and whether the spouse is surviving.

Answer:      Gilbert A. Schuchman
             1103 Salem Road
             Rossville, GA  30741
             12/29/92 from lung cancer
             I do not know the name of his doctor.

My father was married to Doreen Cornett Schuchman in
approximately 1986 and separated from her about nine months later, but they never
divorced.  She passed away around the same time he did.

11.

Identify yourself by name, address, Social Security number, date of birth and

relationship to your loved one.

Answer:     Paula M. Yockel
            72 Transvaal Ave.
            Pittsburgh, PA  15212
            DOB: 7/24/65
            I am the daughter of Gilbert A. Schuchman.

            Plaintiff objects to the inclusion of her Social Security number as
overly burdensome and not reasonably calculated to lead to the discovery of
relevant evidence.

12.

Only if you are not the surviving spouse of your loved one, identify all other

surviving relatives of the decedent and all claimed beneficiaries of any claim or

cause of action arising out of the incident forming the basis of your complaint.  If

you are aware of any person (including, but not limited to the above) who is

asserting, may assert, or has legal right to assert any claim on account of the

circumstances forming the basis of your complaint, identify such individual

(including his/her name, address and relationship to your loved one) and detail

such individual's claims.

ANSWER:   Anthony R. Schuchman
          142 Watkins Ave.

10

Bellevue, PA  15202
father of Gilbert Schuchman

Roy E. Peterson, Jr.
72 Transvaal Ave.
Pittsburgh, PA  15212
grandson of Gilbert Schuchman


13.

IDENTIFY all persons and entities who assisted in or communicated

regarding making final arrangements, including but not limited to the funeral and

cremation for your loved one.  State the date, time, method of communication and

those involved in each such communication, and fully describe all documents

related thereto.

ANSWER:  Darlene Willhite, with whom my father lived at the time of his death
handled all of the arrangements.  My grandfather Anthony Schuchman talked to
her several time on the telephone relaying our wishes.  I might have spoken with
her also.  My grandfather also paid for the cremation.  We did not receive any
documents from the funeral home.


14.

With respect to your loved one's cremation, IDENTIFY person(s) who dealt

with the funeral home, Tri-State Crematory or other entity in connection with the

possibility of and/or arrangements for cremation, and IDENTIFY the individual

such persons dealt with at the funeral home or other entity referenced above.

ANSWER:  Darlene Willhite dealt with the funeral home.  I do not know who she

spoke to in making arrangements.

### 15.

With respect to cremation, please describe (by communicator, funeral home, witnesses present, exact text thereof, time and date) all representations and information (attach documentation) provided to you (or to anyone else who participated in the final arrangements for your loved one) regarding the cremation services to be performed.

ANSWER:  I did not make the arrangements nor receive any documents from the funeral home.

### 16.

With respect to Tri-State Crematory, did you (or anyone affiliated with you or your loved one) travel to, make inquiry to, communicate with any of its owners or agents, or gain any knowledge regarding Tri-State Crematory before February, 2002?  If so, IDENTIFY the individuals involved, the nature of the activity or communication, and all documentation related thereto.

ANSWER:  No, all arrangements were made through W. L. Wilson & Sons Funeral Home.

### 17.

With respect to your loved one's remains or cremains, state when and

IDENTIFY from whom you received any remains or cremains of your loved one

and (in order of possession) each individual, entity or agency who has had

possession of said remains or cremains, or any portion thereof, and the time and

place of possession for each segment of time involved; describe the container; and

if the container was opened, state the date, persons involved, circumstances and

purpose.

ANSWER:  In January of 1993 my grandfather and I received what was
represented to us as my father's cremated remains through the United States mail.
I believe it was W. L. Wilson & Sons Funeral Home that sent them to us.  My
grandfather kept the cremated remains at his home until June 1993 and at that time
they were buried in my brother's cemetery plot.  They remained there until May,
2002 when they were exhumed and tested by Pennsylvania coroner, Cyril Wecht,
M.D..  We then returned them to my grandfather's home.  The ashes were in a
black box that appeared to be unopened until the coroner's examination.

18.

Since February of 2002, have you or anyone associated with you received

remains or cremains of your loved one or documentation relating thereto, such as

testing of any kind or nature, including, but not limited to, DNA testing from any

law enforcement authorities or agencies and attorneys-at-law?  If so, describe such

remains, cremains or documentation with reasonable particularity and explain why

and how any such remains or cremains have been lost or otherwise left your

possession for any time.

ANSWER:  See answer to Interrogatory Number 17 above.  The ashes tested as

human, but no DNA could be retrieved.

19.

Only if you contend that your loved one(s) identified in your Response to Interrogatory No. 1 was among the approximately 339 bodies recovered in 2002 on the premises of Tri-State Crematory,   please describe with reasonable particularity all facts and personal identifying data and information (such as significant dental and medical histories, records and practitioners, armed service records, distinguishing features and/or other special circumstances and things) bearing on identification and attach all documents or data hereto.

ANSWER:  This contention interrogatory is untimely and will be supplemented when further discovery has been conducted.  Without waiving this objection, I do not know if my father's body is one of the 339 bodies recovered, since they have not all been identified.

20.

IDENTIFY all individuals you claim could be a member of the class you seek to represent, and include the decedent's name, his/her date of death, the funeral home involved, and the full name(s) and address(es) of all such alleged class members.

ANSWER:  Plaintiffs object to this interrogatory to the extent that it exceeds the requirements of Federal Rules of Civil Procedure 23 and 26.  Plaintiffs could not possibly know the names of all potential class members.  Moreover, defendants collectively are substantially in possession of such information.

14

See response to interrogatories Number 10, 12, and 16 above. With respect to other individuals who could be class members, I have no information on other families who had loved ones sent to Tri-State Crematory.

### 21.

IDENTIFY each expert you expect to call at trial, by affidavit or otherwise, and state the subject matter on which the expert is expected to testify, the substance of facts and opinions on which the expert is expected to testify, a summary of grounds for each opinion, describing with reasonable particularity all documentation related thereto including, but not limited to, the expert's current professional resumé, current list of testimonies, and inventory of the expert's file materials pertaining to this case and the facts and authorities upon which the expert bases his or her opinions.

ANSWER:  Plaintiffs object to Interrogatory Number 21 to the extent that such FRCP Rule 26 disclosures are required pursuant to the Court's previously entered Scheduling Order.  Plaintiffs will make such disclosures per the Court's order.

### 22.

How, where, when and from whom did you first learn of any alleged irregularity involving your loved one or others at the Tri-State Crematory facility, and DESCRIBE such communication?

ANSWER:  I found out about the irregularities in February, 2002 by hearing a story on a local T.V. news station.

23.

Please DESCRIBE all communications subsequent to the communication

described in your previous Interrogatory answer, from or to any source including,

but not limited to the G.B.I., pertaining to your loved one's remains or cremains

allegedly being on the property of Tri-State Crematory or at a location other than

intended by you and/or being co-mingled, short-weighted, or adulterated in any

fashion whatsoever and all documentation related thereto.

ANSWER:  I called the GEMA phone number for family members and reported all of the information they requested for identification.  The representative said they would send the information regarding DNA testing for my grandfather and me.  Several weeks went by and no information was received.  I made several calls back to them.  In April both my grandfather and I received letters from the GBI stating that DNA samples were not needed for those families of individuals who died prior to 1995.

24.

Please SPECIFY all documents related to your contentions and proof in this

case regarding the alleged acts and/or omissions by each funeral home named in

this suit and any investigation and findings of any governmental or private agency

or individual regarding same.

ANSWER:  This contention interrogatory is untimely and will be supplemented at

16

a later date.

25.

Please detail (by each separate category of damages) the type of damages you are claiming for each separate cause of action, how you attempt to calculate or quantify the loss or amount of compensation which you allege you are owed, and IDENTIFY (by each separate type of damage) the witnesses you intend to call to prove such, the nature of their expected testimonies, and SPECIFY the documentation and information apart from those testimonies which will e used to illustrate or demonstrate the damage suffered.

ANSWER:

Plaintiffs renew their work product objections, previously stated, to the extent that such interrogatory calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.   In addition, Plaintiffs object to such interrogatory to the extent that it calls for a legal conclusion.

26.

If you contend you have suffered any bodily injury, personal injury or emotional injury of any type, please describe the  injury(ies), the specifics of any treatment you have received therefor, the costs thereof, and IDENTIFY all practitioners of the healing arts (including psychiatrists, psychologists, mental health counselors, pastoral counselors and the like) from whom you have received any treatment or counseling at any time in the last ten (10) years, indicating as to

each the nature of the condition(s) treated and of the care received therefore.

ANSWER:   When I first heard about the irregularities at Tri-State crematory I had a very difficult time finding information on what I needed to do.  Currently, my grandfather is in possession of cremated human remains, but we do not know if they are my father's.  We do not feel comfortable placing them back in by brother's grave, since we don't know whose remains they are.  This has caused me much emotional distress.  I have not received any treatment or counseling.

### 27.

Please IDENTIFY all individuals (in addition to those individuals named

above in response to the preceding Interrogatories) you believe have pertinent

knowledge of any aspect of this case and state the essence or nature of their

knowledge.

ANSWER:   Other than individuals already mentioned in these answers, and defendants in this case, I have talked briefly to friends, co-workers, family and my church pastor.

### 28.

Please IDENTIFY all relatives, friends and/or representatives of your loved

one who attended any meetings (including but not limited to any "family

meetings" held at the Walker County Civic Center) press conferences, court

hearings, or other gatherings since February 15, 2002 regarding the alleged

irregularity involving your loved one or others at the Tri-State Crematory facility,

and specify the purpose of the meeting, the substance or contents discussed therein,

and the date and location of such attended meeting.

ANSWER:  I have not attended any such events and do not know of anyone else who has.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.

All documents and things SPECIFIED in your answers to the preceding

Interrogatories.

RESPONSE:       See documents produced, Bates stamp numbers TRI PY00001-
TRI PY00006.

2.

All documents and things referring or related to any Defendant in this case

or any representative (past or present) of any Defendant in this case.

RESPONSE:       None.

3.

All documents and physical evidence related to any expert you expect to

testify, including their professional resumé, list of testimonies, Rule 26 report,

other memoranda, notes, reports, inventory of file, all tests and analysis performed

and the results of such, photographs, and radiographs.

RESPONSE:       See answer to Interrogatory Number 21 above.

4.

All documents and physical evidence related to any expert contacted, retained or utilized who are not expected to testify on your behalf.

RESPONSE:       See response to Request Number 3 above.

5.

All documents and physical evidence given to or received from any law enforcement or investigative agency relating to the cremation or remains or cremains of your loved one.

RESPONSE:       See attached documents, Bates stamp numbered TRI PY00005-00006.

6.

Other than communications with your attorneys and/or the court, all documents and physical evidence related to your communication regarding any aspect of the claims forming the basis of your suit which you have made to a diary, calendar, file, computer or other record and/or to anyone else by way of letter, interview, e-mail or otherwise.

RESPONSE:       See attached documents, Bates stamp numbered TRI PY00001-00002, and TRI PY00004.

7.

All documents related to any damages you are claiming in this suit.

RESPONSE:        My grandfather paid for the original cremation services when my father died, but I cannot find the cancelled check. When I contacted them, W.L. Wilson and Sons Funeral Home said they could not find the papers regarding my father. The cost of exhuming the ashes was $700.00. I will produce documentation when it has been located.


8.


All documents and physical evidence provided by any Defendant funeral

home, specifically including the one with whom you (or those associated with your

loved one) dealt, regarding your loved one's demise, final arrangements and

cremation and all related notes and papers associated therewith.

RESPONSE:        See response to Request Number 7 above.


9.


Any and all documents, radiographs, photographs, medical records, dental

records and other tangible things that were available to or provided to your

expert(s), whether expected to testify on your behalf or not, for use in their

examination regarding each individual decedent whose cremains or remains your

expert(s) examined, tested, or inspected.

RESPONSE:        See response to Request Number 3 above.

Respectfully submitted,

Dated this 27 day of September, 2002

McCAMY, PHILLIPS, TUGGLE &
FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

Plaintiffs' Liaison Counsel

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Plaintiffs' Lead Counsel

Kathryn E. Barnett
Alistair E. Newbern
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Ken Canfield
Ralph I. Knowles, Jr.
David Hagy
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007

Wendy R. Fleishman
780 Third Avenue, 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi 39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee 37203
Telephone: (615) 386-8391
Facsimile: (615) 386-8392

Charles Graddick
Todd Strohmeyer
Sims, Graddick & Dodson, P.C.
205 St. Emanuel Street
Mobile, Alabama 36602

Plaintiffs' Steering Committee

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Christy Sell
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee 37402
Telephone: (423) 265-2214
Facsimile: (423) 266-1842

Robert M. Darroch
Mabry & McClelland, LLP
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia 30345



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

# EXHIBIT "C"

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE                     )        MDL DOCKET NO. 1467
CREMATORY LITIGATION        )
                                             )
This relates to all actions.          )

## CAROL BECHTEL'S RESPONSES TO FUNERAL HOME DEFENDANTS' FIRST MASTER INTERROGATORIES AND REQUEST FOR DOCUMENTS

Carol Bechtel responds to defendants' First Master Interrogatories and

Document Requests as follows:

## GENERAL OBJECTIONS

1.     These responses reflect only the current state of the plaintiffs' knowledge with regard to the funeral home defendants' inquiries.  Discovery is in its preliminary stages in this action, and the plaintiffs' responses will be supplemented as necessary as more information becomes available.

2.     Plaintiffs generally note that many of these interrogatories are moot in light of the filing of the Plaintiffs First Amended Complaint.

3.     Plaintiffs object to "Part I – Definitions" and "Part II – Instructions" contained therein to the extent that any "definition" or "instruction" purports to impose any obligation other than those required by the Federal Rules of Civil Procedure (FRCP.)

4.     Plaintiffs object to any interrogatory which, directly or indirectly, seeks disclosure of any communication protected by the attorney-client privilege, the work-product doctrine, or any other applicable privilege.

5.     Plaintiffs generally object to any interrogatory which calls for a legal

conclusion.

6.      Plaintiffs generally object to any interrogatory which is over broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

7.      Any responses hereto which Plaintiffs subsequently provide are notwithstanding and without waiving any general objections.

## INTERROGATORIES

1.

Separately as to each funeral home defendant, please DESCRIBE:

a. The inquiry you made to assure that the allegations of the third sentence

   in Paragraph 1 have evidentiary support or are likely to have evidentiary

   support;

b. What that evidentiary support is;

c. IDENTIFY each witness who supports said allegations; and

d. SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

General news reports published at and around the time this complaint was filed indicated that the State of Georgia's Funeral Services Board investigated Tri-State Crematory in 1995 after having received complaints that the business was operating without a license.  *See, e.g.,* ATLANTA JOURNAL CONSTITUTION, *Loophole Kept Tri-StateGoing*, February 19, 2002 ("State regulators investigated

Tri-State Crematory in 1995 after complaints the business was operating without a funeral license, state records obtained Tuesday show.").  Plaintiffs will request records reflecting the circumstances surrounding this investigation and the complaints that led to its instigation as discovery continues.  Should it be necessary to do so, plaintiffs will identify and call witnesses from the Board to testify regarding this investigation.

2.

Separately as to each funeral home defendant, please DESCRIBE:

a.    The inquiry you made to assure that the allegations that Defendants

"turned a knowing blind eye to its practices" in Paragraph 3 have

evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants selected Tri-State Crematory to perform cremations on their behalf then, over a period of years, failed to inspect, monitor, or otherwise supervise the operations of Tri-State Crematory.  Based upon the state of knowledge within the funeral home industry, the funeral home defendants knew or should have known that such monitoring was common practice within the industry. Plaintiffs will demonstrate through the testimony of representatives of the funeral

home defendants that no inspections or monitoring took place. Thus, plaintiffs' allege that the funeral home defendants "turned a knowing blind eye" to Tri-State Crematory's practices.

3.

Separately as to each funeral home defendant, please DESCRIBE:

a.      The inquiry you made to assure that the allegations of Paragraph 12

have evidentiary support or are likely to have evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness who supports said allegations; and

d.  SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants delegated the performance of cremations to defendant Tri-State Crematory, which performed the cremations on their behalf.  The specific terms of each defendant funeral home's agreement with Tri-State Crematory for the performance of these cremations is not yet known, but will be learned as discovery progresses.  Plaintiffs will, if necessary, call representatives of the funeral home defendants to testify further as to the nature of their business relationship with Tri-State Crematory.

4.

Separately as to each funeral home defendant, please DESCRIBE:

a.     The inquiry you made to assure that the allegations of Paragraphs 15,

24 and 28 have evidentiary support or are likely to have evidentiary

support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness which supports said allegations; and

d.  SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information
protected by the work product doctrine, in that it calls for the revelation of legal
strategy and preparation for litigation, which is protected from such disclosure.  In
an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs
upon which all such allegations are based.

Plaintiffs allegations regarding the corporate structures of defendants Prime
Succession, Inc.; Carriage Services, Inc.; and Service Corporation International,
were based upon public knowledge obtained through common news sources and
through the defendants own corporate filings.  Plaintiffs assert that this
interrogatory is now moot, as plaintiffs have revised and refined their allegations
with regard to these defendants after further investigation and in direct consultation
with their attorneys.  These changes will be reflected in the plaintiffs First
Amended Complaint.

5.

Separately as to each funeral home defendant, please DESCRIBE:

a.     The inquiry you made to assure that the allegations of the second

sentence of Paragraph 74 have evidentiary support or are likely to have

evidentiary support;

b.  What that evidentiary support is;

c.  IDENTIFY each witness which supports said allegations; and

d.  SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants selected Tri-State Crematory to perform cremations on their behalf, then, over a period of years, failed to inspect, monitor, or otherwise supervise the operations of Tri-State Crematory.  During this time, defendant Tri-State Crematory engaged in the disrespectful, improper and illegal mishandling, desecration, abuse and commingling of human remains.  Plaintiffs allege that because of their failure to monitor, supervise, or inspect, the defendant funeral homes knowingly, recklessly, and/or negligently allowed Tri-State Crematory's practices to continue.  Plaintiffs will, if necessary, call representatives of the funeral home defendants to testify further as to the nature of their business relationship with Tri-State Crematory.

6.

Separately as to each funeral home defendant, please DESCRIBE:

a.      The inquiry you made to assure that the allegations of the second,

third, and fourth sentences of Paragraph 76 have evidentiary support or

are likely to have evidentiary support;

b. What that evidentiary support is;

c. IDENTIFY each witness who supports said allegations; and

d. SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.  In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

Plaintiffs repeat their response to Interrogatory No. 5.

7.

Separately as to each funeral home defendant, please DESCRIBE:

a.      The inquiry you made to assure that the allegations concerning a

        "conspiracy of silence in Paragraph 76, "efforts to conceal" in Paragraph

        81, "concealment" in Paragraph 82, and "concealing" in Paragraph 96

        have evidentiary support or are likely to have evidentiary support;

b. What that evidentiary support is;

c. IDENTIFY each witness who supports said allegations; and

d. SPECIFY each document which supports said allegations.

ANSWER:  Plaintiffs object that this interrogatory seeks disclosure of information protected by the work product doctrine, in that it calls for the revelation of legal

strategy and preparation for litigation, which is protected from such disclosure. In an effort to comply and to respond, Plaintiffs will provide facts known to Plaintiffs upon which all such allegations are based.

Plaintiffs assert that this Interrogatory is now in part moot, in light of the filing of the First Amended Complaint.

The state of public knowledge at the time this complaint was filed indicated that the funeral home defendants knew or should have known that defendant Tri-State Crematory engaged in the mishandling of human remains and was otherwise operating outside the law of the State of Georgia. Plaintiffs assert that the funeral home defendants were recklessly or negligently complicit in, and vicariously liable for, the fraudulent concealment by the Tri State defendants of the adulterated nature of the cremated remains returned by the Tri-State defendants to the families by failing to supervise, monitor, and inspect the premises and practices of Tri State, and thereby allowing Tri-State's fraudulent practices to continue. Plaintiffs will, if necessary, call representatives of the funeral home defendants to testify further as to the nature of their business relationship with Tri-State Crematory.

8.

Please state the equitable, injunctive and declaratory relief you seek as to

each of the funeral home defendants and describe the basis therefore.

ANSWER: Plaintiffs renew their work product objections, previously stated, to the extent that both this interrogatory calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure. In addition, Plaintiffs object to that this interrogatory calls for legal conclusions.

The plaintiffs request the following equitable relief from the funeral home defendants:

- That the defendants be enjoined to cease and desist all mishandling, abuse and desecration of human remains; and
- That the defendants be determined and declared to be financially responsible for the costs and expenses of accomplishing any and all dignified and

respectful disposition of the decedents' remains as may be possible.

Complaint ¶ 92(e)-(f).

The plaintiffs seek equitable relief from the funeral home defendants because their legal rights and interests have been injured by the funeral home defendants' actions in delivering the plaintiffs' decedents' remains for cremation to an unlicensed crematory which  they uniformly failed to supervise, monitor, or inspect.  The funeral home defendants' negligent and intentional conduct in so delivering the class members' decedents' remains to an unlicensed crematory that engaged in the systematic desecration and commingling of human remains has injured the class members in ways money cannot now correct.  These injuries form the basis for the plaintiffs' claims for equitable relief.


9.


Separately as to each funeral home defendant, please DESCRIBE the basis of  your

claims for punitive damages.

ANSWER:  Plaintiffs renew their work product objections, previously stated, to the extent that both this interrogatory calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.   In addition, Plaintiffs object to that this interrogatory calls for legal conclusions.

The state of public knowledge at the time this complaint was filed indicated to the plaintiffs that the funeral home defendants' actions with regard to Tri-State Crematory were intentional, knowing, done with oppression, fraud and malice and in reckless and conscious disregard of the rights of the families with whom they contracted to perform cremation services.


10.


Identify your deceased loved one(s) by name, address at death, date(s) of

death, cause(s) of death and custodian or attending practitioner of the healing arts

at the time of death.  If your loved one(s) was married and/or divorced, specify the

date and place of each marriage/divorce and whether the spouse is surviving.

ANSWER:   Robert Gladstone Swofford
              Collegedale, TN  37315
              4/4/93 of colon cancer
              Dr. Terry Melvin
              Hospice of Chattanooga
              Married to Willie Florence Rawls, June 1, 1940 in Florida.

              Willie Florence Rawls Swofford
              Collegedale, TN  37315
              4/30/95 of natural causes
              Dr. Terry Melvin
              Hospice of Chattanooga
              see above.

11.

Identify yourself by name, address, Social Security number, date of birth and

relationship to your loved one.

ANSWER:   Carol A. Bechtel
              PO Box 2121
              Coeur d' Alene, ID  83816
              9/24/43
              I am the daughter of Robert Swofford and Willie Swofford.

Plaintiff objects to the inclusion of her Social Security number as
overly burdensome and not reasonably calculated to lead to the discovery of
relevant evidence.

12.

Only if you are <u>not</u> the surviving spouse of your loved one, identify all other surviving relatives of the decedent and all claimed beneficiaries of any claim or cause of action arising out of the incident forming the basis of your complaint. If you are aware of any person (including, but not limited to the above) who is asserting, may assert, or has legal right to assert any claim on account of the circumstances forming the basis of your complaint, identify such individual (including his/her name, address and relationship to your loved one) and detail such individual's claims.

ANSWER:   Florence Evalynn ("Evie") Swofford Buttermore
1211 Old Alabama Rd. SW
McDonald, TN 37353
daughter of Robert and Willie Swofford

Robert Gladstone Swofford, Jr.
300 N. Forest Lake Dr.
Altamonte Springs, FL 32714
son of Robert and Willie Swofford

13.

IDENTIFY all persons and entities who assisted in or communicated regarding making final arrangements, including but not limited to the funeral and

cremation for your loved one. State the date, time, method of communication and those involved in each such communication, and fully describe all documents related thereto.

ANSWER: My sister, brother and I all worked with W.L. Wilson & Sons Funeral Home regarding the final arrangements for my father the week of his death. I spoke with Leroy Wilson over the phone and then my brother toured the funeral home, met several of the staff and felt it would be what our father would want. My sister and I then also visited the funeral home and prepaid for our father's service. I believe we spoke with Leroy Wilson and his brother. We later bought a prepaid funeral package for our mother's cremation and memorial service. We also contacted Collegedale Seventh-Day Adventist Church, Pastor Lorabelle, regarding memorial services for both of our parents after each had passed away and we bought burial plots at Collegedale Cemetery through Wolf Jedamski.

14.

With respect to your loved one's cremation, IDENTIFY person(s) who dealt with the funeral home, Tri-State Crematory or other entity in connection with the possibility of and/or arrangements for cremation, and IDENTIFY the individual such persons dealt with at the funeral home or other entity referenced above.

ANSWER: See Answer to Interrogatory Number 13 above. We did not have any contact with the crematory. W.L. Wilson and Sons Funeral Home made all the arrangements.

15.

With respect to cremation, please describe (by communicator, funeral home,

witnesses present, exact text thereof, time and date) all representations and

information (attach documentation) provided to you (or to anyone else who

participated in the final arrangements for your loved one) regarding the cremation

services to be performed.

ANSWER:  See answer to Interrogatory Number 13 above.  I have not located the documentation.  This Interrogatory will be supplemented as necessary.


### 16.

With respect to Tri-State Crematory, did you (or anyone affiliated with you

or your loved one) travel to, make inquiry to, communicate with any of its owners

or agents, or gain any knowledge regarding Tri-State Crematory before February,

2002?  If so, IDENTIFY the individuals involved, the nature of the activity or

communication, and all documentation related thereto.

ANSWER:  No.


### 17.

With respect to your loved one's remains or cremains, state when and

IDENTIFY from whom you received any remains or cremains of your loved one

and (in order of possession) each individual, entity or agency who has had

possession of said remains or cremains, or any portion thereof, and the time and

place of possession for each segment of time involved; describe the container; and

if the container was opened, state the date, persons involved, circumstances and

purpose.

ANSWER:  Representatives of W. L. Wilson & Sons Funeral Home with whom
we contracted for both of our parents' services delivered what were represented to
us to be our father's cremated remains to the Collegedale Seventh-Day Adventist
Church for the memorial service in April, 1993 and what were represented to us to
be our mother's cremated remains the memorial service in May, 1995.  The
cremated remains were in sealed boxes and were buried at the Collegedale
Cemetery.  The containers were exhumed by Wolf Jedamski on approximately
2/20/02, and given to my sister.  My sister took them the next day, 2/21/02 to the
GEMA site for testing and inspection.

18.

Since February of 2002, have you or anyone associated with you received

remains or cremains of your loved one or documentation relating thereto, such as

testing of any kind or nature, including, but not limited to, DNA testing from any

law enforcement authorities or agencies and attorneys-at-law?  If so, describe such

remains, cremains or documentation with reasonable particularity and explain why

and how any such remains or cremains have been lost or otherwise left your

possession for any time.

ANSWER:  See Answer to Interrogatory Number 17 above.  The authorities at the
GEMA site inspected and tested the materials as human remains, but were unable
to determine if they were my parents' remains.  They told my sister not to rebury
them until the investigation was completed.  The cremated remains are still in my

sister's possession.

19.

Only if you contend that your loved one(s) identified in your Response to Interrogatory No. 1 was among the approximately 339 bodies recovered in 2002 on the premises of Tri-State Crematory,   please describe with reasonable particularity all facts and personal identifying data and information (such as significant dental and medical histories, records and practitioners, armed service records, distinguishing features and/or other special circumstances and things) bearing on identification and attach all documents or data hereto.

ANSWER:  This contention interrogatory is untimely and will be supplemented when further discovery has been conducted.  Without waiving this objection, I do not know if my father's or mother's body is among those 339 bodies recovered, since they have not all been identified.

20.

IDENTIFY all individuals you claim could be a member of the class you seek to represent, and include the decedent's name, his/her date of death, the funeral home involved, and the full name(s) and address(es) of all such alleged class members.

ANSWER:  Plaintiffs object to this interrogatory to the extent that it exceeds the requirements of Federal Rules of Civil Procedure 23 and 26.  Plaintiffs could not

147366.1

possibly know the names of all potential class members. Moreover, defendants collectively are substantially in possession of such information.

See response to interrogatories Number 10, 12, and 16 above. With respect to other individuals who could be class members, I have no information on other families who had loved ones sent to Tri-State Crematory.

21.

IDENTIFY each expert you expect to call at trial, by affidavit or otherwise, and state the subject matter on which the expert is expected to testify, the substance of facts and opinions on which the expert is expected to testify, a summary of grounds for each opinion, describing with reasonable particularity all documentation related thereto including, but not limited to, the expert's current professional resumé, current list of testimonies, and inventory of the expert's file materials pertaining to this case and the facts and authorities upon which the expert bases his or her opinions.

ANSWER: Plaintiffs object to Interrogatory Number 21 to the extent that such FRCP Rule 26 disclosures are required pursuant to the Court's previously entered Scheduling Order. Plaintiffs will make such disclosures per the Court's order.

22.

How, where, when and from whom did you first learn of any alleged irregularity involving your loved one or others at the Tri-State Crematory facility, and DESCRIBE such communication?

ANSWER: I learned about it from my sister, Evie Buttermore. My sister called

W. L. Wilson & Sons Funeral Home regarding where our parents had been cremated and found out that both of their bodies had been sent there.


### 23.

Please DESCRIBE all communications subsequent to the communication described in your previous Interrogatory answer, from or to any source including, but not limited to the G.B.I., pertaining to your loved one's remains or cremains allegedly being on the property of Tri-State Crematory or at a location other than intended by you and/or being co-mingled, short-weighted, or adulterated in any fashion whatsoever and all documentation related thereto.

ANSWER: I spoke with both my brother and sister.  I called the GBI, the sheriff's office, and W.L. Wilson and Sons Funeral Home trying to get answers. I searched the internet to obtain information concerning the names of those identified to see if my parents were among them.  I also called a woman at a support group who was named on the GEMA website to see if she had information.


### 24.

Please SPECIFY all documents related to your contentions and proof in this case regarding the alleged acts and/or omissions by each funeral home named in this suit and any investigation and findings of any governmental or private agency or individual regarding same.

ANSWER:  This contention interrogatory is untimely and will be supplemented at a later date.

25.

Please detail (by each separate category of damages) the type of damages you are claiming for each separate cause of action, how you attempt to calculate or quantify the loss or amount of compensation which you allege you are owed, and IDENTIFY (by each separate type of damage) the witnesses you intend to call to prove such, the nature of their expected testimonies, and SPECIFY the documentation and information apart from those testimonies which will be used to illustrate or demonstrate the damage suffered.

ANSWER:  Plaintiffs renew their work product objections, previously stated, to the extent that  such interrogatory calls for the revelation of legal strategy and preparation for litigation, which is protected from such disclosure.   In addition, Plaintiffs object to such interrogatory to the extent that it calls for a legal conclusion.

26.

If you contend you have suffered any bodily injury, personal injury or emotional injury of any type, please describe the  injury(ies), the specifics of any treatment you have received therefor, the costs thereof, and IDENTIFY all practitioners of the healing arts (including psychiatrists, psychologists, mental health counselors, pastoral counselors and the like) from whom you have received

any treatment or counseling at any time in the last ten (10) years, indicating as to

each the nature of the condition(s) treated and of the care received therefore.

ANSWER: :      When I first heard about the irregularities at Tri-State crematory
I had a very difficult time finding information on what I needed to do.  I do not
know if the remains we have are our parents.  This has caused me much emotional
distress.  I have not received any treatment or counseling.

### 27.

Please IDENTIFY all individuals (in addition to those individuals named

above in response to the preceding Interrogatories) you believe have pertinent

knowledge of any aspect of this case and state the essence or nature of their

knowledge.

ANSWER:  Other than individuals already mentioned in these answers, and
defendants in this case, I have talked briefly to friends and family.

### 28.

Please IDENTIFY all relatives, friends and/or representatives of your loved

one who attended any meetings (including but not limited to any "family

meetings" held at the Walker County Civic Center) press conferences, court

hearings, or other gatherings since February 15, 2002 regarding the alleged

irregularity involving your loved one or others at the Tri-State Crematory facility,

and specify the purpose of the meeting, the substance or contents discussed therein,

and the date and location of such attended meeting.

ANSWER:  I did not attend any events.  My sister Evie Buttermore met with GBI officials.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

### 1.

All documents and things SPECIFIED in your answers to the preceding

Interrogatories.

RESPONSE:      See attached documents produced,  Bates stamp numbered TRI CB00001-00003.


### 2.

All documents and things referring or related to any Defendant in this case

or any representative (past or present) of any Defendant in this case.

RESPONSE:      Documents will be produced as they are located.


### 3.

All documents and physical evidence related to any expert you expect to

testify, including their professional resumé, list of testimonies, Rule 26 report,

other memoranda, notes, reports, inventory of file, all tests and analysis performed

and the results of such, photographs, and radiographs.

RESPONSE:      See answer to Interrogatory Number 21 above.

4.

All documents and physical evidence related to any expert contacted, retained or utilized who are not expected to testify on your behalf.

RESPONSE:        See response to Request Number 3 above.

5.

All documents and physical evidence given to or received from any law enforcement or investigative agency relating to the cremation or remains or cremains of your loved one.

RESPONSE:        Documents will be produced as they are located.

6.

Other than communications with your attorneys and/or the court, all documents and physical evidence related to your communication regarding any aspect of the claims forming the basis of your suit which you have made to a diary, calendar, file, computer or other record and/or to anyone else by way of letter, interview, e-mail or otherwise.

RESPONSE:        See attached documents, Bates stamp numbered TRI CB00001- TRI CB00003.

7.

All documents related to any damages you are claiming in this suit.

RESPONSE:        Documents will be produced as they are located.

8.

All documents and physical evidence provided by any Defendant funeral home, specifically including the one with whom you (or those associated with your loved one) dealt, regarding your loved one's demise, final arrangements and cremation and all related notes and papers associated therewith.

RESPONSE:        Documents will be produced as they are located.

9.

Any and all documents, radiographs, photographs, medical records, dental records and other tangible things that were available to or provided to your expert(s), whether expected to testify on your behalf or not, for use in their examination regarding each individual decedent whose cremains or remains your expert(s) examined, tested, or inspected.

RESPONSE:        See response to Request Number 3 above.

Respectfully submitted,

_signature_

McCAMY, PHILLIPS, TUGGLE &
FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

Plaintiffs' Liaison Counsel

Dated this 22 day of September,
2002

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Plaintiffs' Lead Counsel

Kathryn E. Barnett
Alistair E. Newbern
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Ken Canfield
Ralph I. Knowles, Jr.
David Hagy
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007
BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi 39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

Wendy R. Fleishman
780 Third Avenue, 48th Floor
New York, NY 10017
Telephone: (212) 355-9500
Facsimile: (212) 355-9592

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Christy Sell
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee 37402

473661

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties with a copy of the within and foregoing **W.L. Wilson & Sons' Motion to Strike Affidavit of Luis Llorens** by causing a copy of same to be placed in first class U.S. mail with adequate postage affixed thereto and addressed as follows:

Robert H. Smalley, III, Esquire
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Post Office Box 1105
Dalton, GA  30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esquire          Frank E. Jenkins, III, Esquire
OFFICE McCRACKEN POSTON          JENKINS & OLSON
Post Office Box 1130          15 Public Square, South
Ringgold, GA  30736          Cartersville, GA  30120-3350
Liaison/Lead Counsel for Tri-State Crematory, Inc. and the Marsh Family

This 15th day of September 2003.

J. Anderson Davis
Georgia Bar No. 211077