**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C. Rome

SEP 2 4 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | |
|---|---|
| **In re: Tri-State** ) | |
| **Crematory Litigation** ) | **MDL Docket No. 1467** |
| _____ ) | |

## PSC MOTION FOR ENTRY OF AN ORDER
## ESTABLISHING A "COMMON BENEFIT" FUND

The Plaintiffs' Steering Committee ("PSC") hereby respectfully moves the Court for entry of an Order establishing a "Common Benefit" fund.[1] The purpose of this Motion, as more fully set forth in the accompanying Memorandum, is to provide for the fair and equitable sharing among plaintiffs of the cost of the services performed and expenses incurred by attorneys acting for the common benefit of all plaintiffs in this complex litigation. This Motion derives from the well-established "common benefit" doctrine under which the costs of successful litigation are spread equitably among all beneficiaries.

The PSC seeks an assessment of 6% (six percent) of the gross monetary recovery, defined as all monetary compensation paid by a defendant, including the present value of any fixed and certain future payments, that would be divided between the attorney and the client. The

---

[1] The PSC's proposed Order is attached as Exhibit 1.

515

PSC proposes that this division be 1/3 of the assessment (2% of the gross recovery) from the attorney's fees; and 2/3 (4% of the gross recovery) from the client as litigation expenses.  If the fee agreement does not allow for recovery of expenses, the entire assessment (6% of the gross recovery) would be paid out of attorneys' fees.  Class Counsel will make application for an award of fees and costs from any class/subclass settlements and judgments, when appropriate, and intend to honor pre-existing, reasonable individual contingent fee agreements.  The proposed assessment is intended to provide, from all settlements and judgments, a source of compensation and reimbursement to PSC members and others who perform work or advance costs for the common benefit of plaintiffs.

The proposed details of the collection and disbursements of any funds are further explained in the accompanying Memorandum.

[SIGNATURES ON FOLLOWING PAGE]

Respectfully submitted,

Dated this 23rd day of September, 2003.

McCAMY, PHILLIPS, TUGGLE &
FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia
Telephone:  (706) 278-4499
Facsimile:  (706) 278-5002

*Plaintiffs' Liaison Counsel*

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA  94111-3339
Telephone:  (415) 956-1000
Facsimile:  (415) 956-1008

*Plaintiffs' Lead Counsel*

Kathryn E. Barnett
3319 West End Avenue, Suite 600
Nashville, Tennessee  37203
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi  39095
Telephone:  (662) 834-2376
Facsimile:  (662) 834-2628

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee  37203
Telephone:  (615) 386-8391
Facsimile:  (615) 386-8392

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Leslie J. Bryan
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 881-8900
Facsimile:  (404) 881-3007

SIMS, GRADDICK & DODSON, PC
Charles Graddick
Todd Strohmeyer
205 St. Emanuel Street
Mobile, Alabama  36602

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee  37402
Telephone:  (423) 265-2214
Facsimile:  (423) 266-1842

MABRY & MCCLELLAND, LLP
Robert M. Darroch
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia  30345

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-3591
Facsimile: (423) 266-5455

DAVID RANDOLPH SMITH &
ASSOCIATES
David Randolph Smith
Hillsboro Village, 1910 Acklen Avenue
Nashville, Tennessee 37212
Telephone: (615) 742-1775
Facsimile: (615) 742-1223

COPPEDGE & LEMAN, PC
Joe Leman
508 South Thornton Avenue
Dalton, Georgia 30720
Telephone: (706) 226-0040
Facsimile: (706) 226-0040

*Plaintiffs' Steering Committee*





EXHIBIT ATTACHMENT

(To be scanned in place of tab)



UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

In re: Tri-State         )
Crematory Litigation    )    **MDL Docket No. 1467**
_____ )

**[Proposed] CASE MANAGEMENT ORDER
(Establishing Plaintiffs' Litigation Expense Fund
to Compensate and Reimburse Attorneys
for Services Performed and Expenses
Incurred for Common Benefit)**

This Order is entered pursuant to the "common benefit" doctrine. See

e.g. *In re: Air Crash Disaster at Florida Everglades on December 29, 1972*,

549 F.2d 1006 (5th Cir. 1977). Its purpose is to provide for the fair and

equitable sharing among all beneficiaries of the cost of the services

performed and expenses incurred by plaintiffs' attorneys acting for the

common benefit in this complex litigation.

1.      All persons and their attorneys who, after the date of this Order,

either agree (for monetary compensation) to settle, compromise, or

dismiss a claim or recover a judgment for monetary damages or

other monetary relief (including both compensatory and punitive

damages) related to or arising from the February 15, 2002

discovery of human remains at the Tri-State Crematory premises

are hereby assessed 6% (six percent) of the "gross monetary recovery."

2.    "Gross monetary recovery" means all monetary compensation paid by or on behalf of a defendant, including the present value of any fixed and certain future payments.

3.    This Assessment Order applies:

    a.  to all cases now pending, or later filed in, transferred to, or removed to this court and treated as part of the coordinated proceeding known as In re Tri-State Crematory Litigation, MDL Docket No. 1467;

    b.  to all persons who come within the class definition approved by this Court in its Class Certification Order of March 17 2003, and to all persons who come within the definition of any settlement class certified by this Court;

    c.  to all actions and persons for whom an attorney has obtained the documents and information through investigation or discovery in this litigation, or the related work-product of the members of Plaintiffs' Steering Committee;

    d.  to all actions in which a plaintiff's attorney has agreed in writing or on the record to be bound by this Order, whether

those actions are pending in state or federal court;

e. to all actions pending in state court in which a plaintiff's attorney has a joint representation or fee-sharing agreement with any other attorney who is subject to this Order; and

f. to all actions in a state court to the extent so ordered by the judges presiding over such actions.

4. The 6% assessment will be divided between the attorney and his or her client as follows:

a. The attorney will pay 2% (two percent) of the gross monetary recovery from his or her attorney's fees.

b. The client will pay 4% (four percent) of the gross monetary recovery as litigation expenses.

c. In the event that the attorney's contingent fee agreement does not provide for reimbursement of expenses, then the full amount of the assessment will be paid by the attorney.

d. The Court reserves the right to relieve, wholly or partly, a plaintiff from the obligations of this order upon a showing of exceptional circumstances.

5. All amounts paid pursuant to this Order are to be withheld by the defendants from any payments made by or on behalf of defendants

to settle claims or to satisfy judgments. The withheld sums are to be deposited into an account to be established by Plaintiffs' Liaison Counsel in this MDL litigation. When the account is established, Plaintiffs' Liaison Counsel shall provide the relevant routing information to Defendants' Liaison Counsel.

6. Application for disbursements from the common benefit account may be made by attorneys who provide services or incur expenses for the joint and common benefit of plaintiffs in addition to their own client or clients.

7. No amounts will be disbursed without review and approval by the Court. If deemed necessary, the Court may appoint a Special Master for the purpose of reviewing and making recommendations concerning applications for disbursement.

8. If the amount in the common benefit account, after payment of all approved applications, exceeds the amount of money needed for those payments, the Court will order a refund to those who have contributed.

9. The court reserves the power to modify the terms of this Order.

This the ___ day of _____, 2003.

_____
United States District Judge

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: TRI-STATE CREMATORY LITIGATION | ) ) ) ) ) | MDL DOCKET NO. 1467 This document relates to all cases. |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all counsel of record with the

foregoing PSC Motion for Entry of an Order Establishing a "Common Benefit"

Fund by depositing a copy of the same in the United States mail, postage prepaid

and properly addressed as follows:

J. Anderson Davis
Brinson, Askew, Berry, Seigler,
   Richardson & Davis, LLP
The Omberg House
P.O. Box 5513
Rome, Georgia 30162

McCracken K. Poston, Jr.
62 Nance Lane
P. O. Box 1130
Ringgold, Georgia 30736

Frank E. Jenkins, III
Jenkins & Olson, P.C.
15 South Public Square
Cartersville, Georgia 30120

This 23rd day of September, 2003.

_____
Leslie J. Bryan
Georgia State Bar No. 091175

DOFFERMYRE, SHIELDS, CANFIELD,
   KNOWLES & DEVINE
1355 Peachtree Street
Suite 1600
Atlanta, Georgia 30309

Plaintiffs' Steering Committee

2

**ORIGINAL**

FILED IN CLERK'S OFFICE
U.S.D.C  Rome

SEP 2 4 2003

LUTHER D. THOMAS, Clerk
By: _____
        Deputy Clerk

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| **In re: Tri-State** | ) | |
| **Crematory Litigation** | ) | **MDL Docket No. 1467** |
| | ) | |

### MEMORANDUM IN SUPPORT OF
### PSC MOTION FOR ENTRY OF AN ORDER
### ESTABLISHING A "COMMON BENEFIT" FUND

Plaintiffs' Lead Counsel, Plaintiffs' Liaison Counsel, and the

Plaintiffs' Steering Committee ("PSC") have moved for the entry of the

accompanying [Proposed] Case Management Order, establishing Plaintiffs'

Litigation Expense Fund to Compensate and Reimburse Attorneys for

Services Performed and Expenses Incurred for Common Benefit.  Class

Counsel will make application for an award of fees and costs from any

class/subclass settlements and judgments, when appropriate, and intend to

honor pre-existing, reasonable individual contingent fee agreements.  The

proposed assessment is intended to provide, from all settlements and

judgments, a source of compensation and reimbursement to PSC members

and others who perform work or advance costs for the common benefit of

plaintiffs.  This proposed "common benefit order" will establish and

implement a comprehensive mechanism to secure a fund for the prospective

award of attorneys fees and costs from settlements or judgments obtained for

*5/5*

Tri-State claimants, in recognition of the efforts expended and costs incurred by the lawyers who are performing work that has and will benefit all Tri-State victims with individual or class claims, whether pending in federal court, state court, or as yet unfiled.[1]

The common benefit doctrine recognizes the federal courts' inherent authority, in the exercise of their equity jurisdiction, to prevent unjust enrichment by those who benefit from the efforts of the lawyers designated by this Court to advance the costs and undertake the efforts to prosecute plaintiffs' claims. Those efforts, which carry substantial risk and investment, establish the liability or protect and enhance the value of the claims of all the victims.

The common benefit doctrine has particular significance and value in the MDL context because MDL transferee courts are charged with conserving the resources of the judicial system and the litigants by reducing

---

[1] The PSC considered, and rejected, requiring plaintiffs' counsel to make upfront assessments, a system that has sometimes been used in multidistrict proceedings. Here, the PSC rejected that funding mechanism as it tends to favor lawyers with many cases and discriminate against those with only a few. The assessment vehicle leads, often, to lawyers creating "inventories" of cases for themselves and to lawyers with fewer cases referring their clients to others in return for a large portion of the contingent fee. That system does not guarantee that the lawyers with the most experience are those who conduct the litigation. The PSC believes that this proposal addresses that potential inequity.

and equitably allocating the transaction costs of complex civil litigation, particularly in the modern "mass tort" context.

I.    THE PSC PROPOSAL

Here, the PSC proposes that the Court impose a six percent (6%) assessment on all settlements or judgments in cases arising out of the discovery of bodies at the Tri-State Crematory.  The assessment would apply to the following categories of cases and claimants:

(a) all cases now pending, or later filed in, transferred to, or removed to this court and treated as part of the coordinated proceeding known as In re Tri-State Crematory Litigation, MDL Docket No. 1467;

(b) all persons who come within the class definition approved by this Court in its Class Certification Order of March 17, 2003,[2] and to

---

[2] The class, as certified, is defined as:

> All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri-State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the n ext of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State.

all persons who come within the definition of any settlement class certified by this Court;

(c)  all actions and persons for whom an attorney has obtained documents and information through investigation or discovery in this litigation, or the related work-product of the member of the PSC;

(d)  all actions in which a plaintiff's attorney has agreed in writing or on the record to be bound by this Order, whether those actions are pending in state or federal court;

(e)  all actions pending in state court in which a plaintiff's attorney has a joint representation or fee-sharing agreement with any other attorney who is subject to this Order; and

(f)  all actions in a state court to the extent so ordered by the judges presiding over such actions.

The 6% assessment would be allocated between the lawyer and the client, with the lawyer paying two percent (2%) from any attorneys' fees and the client paying four percent (4%) as litigation expenses.[3]

---

[3] In the event that the contract between the attorney and the client does not provide for the recovery of expenses, then the full six percent will come from the attorney's fees.

It should be apparent that the work of the PSC, in conducting depositions, retaining expert witnesses, investigating defense expert witnesses, obtaining the benefits of class certification, negotiating settlements, preparing for trial, and generally managing the litigation, is of enormous benefit to other claimants. For example, knowing that trial preparation is being done through the aegis of the PSC has relieved state court litigants from having to conduct the same investigation, invest substantial sums to retain expert witnesses, take all depositions, or obtain relevant documents. That ability to rely on the work of others necessarily results, as it should, in tremendous cost savings to a litigant. But to allow that litigant to escape any ratable share of the costs incurred by the PSC for the strategically practical benefit of all claimants is unfair.

The establishment of a common benefit fund, of course, does not create any entitlement to the funds recovered. Instead, applicants to the fund bear the burden of demonstrating, via application to the Court for compensation, that their time, effort, and expense in fact produced a common benefit. Thus, the Court (or Special Master if the Court should so choose) will have supervision over the distribution of the funds as a means of safeguarding the corpus and protecting the claimants.

5

To date, the PSC has funded its work through the voluntary assessments and contributions of its members of sums exceeding well in excess of $350,000, and of many hours of professional services, on a fully contingent basis. That will continue. The common benefit fund is not intended to fund the on-going litigation effort but rather to compensate the steering committee members for their work in the context of class, partial, or individual settlements and judgments.

## II.   THE COURT'S INHERENT AUTHORITY

Over one century ago, before the enactment of the multidistrict litigation statute, 28 U.S.C. § 1407, and prior to the era of the modern class action under the 1966 amendments to Rule 23, the Supreme Court made manifest the federal trial courts' equity jurisdiction to reach beyond the confines of formal joinder and case captions, to ensure that all who were the beneficiaries of efforts undertaken for the common good would contribute proportionately to reimburse those services. *Trustees v. Greeough*, 105 U.S. 527 (1881). In essence, the common benefit doctrine acknowledges "the original authority" of the district courts "to do equity in a particular situation" to prevent unjust enrichment. *Sprague v. Ticonic National Bank*, 307 U.S. 161, 166 (1939). As the Supreme Court has observed in reaffirming the common benefit doctrine, "[t]o allow the others to obtain full

6

benefit from the plaintiffs' efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiffs' expense." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 392 (1970).

In *Trustees v. Greenough*, 107 U.S. 527 (1881), the Supreme Court established the common benefit doctrine, under which those whose efforts create a common fund for an identifiable class are entitled to recover their fees and costs from all beneficiaries. This doctrine was further articulated and applied in a series of decisions including *Central R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885); *Sprague v. Ticonic*, 307 U.S. at 161; *Mills v. Electric Auto-Lite*, 396 U.S. 375 (1970); *Boeing v. Van Gemert*, 444 U.S. 472 (1980); and *Blum v. Stenson*, 465 U.S. 886 (1984). As Justice Frankfurter wrote in *Sprague*,

> That the party in a situation like the present neither purported to sue for a class nor formally established by litigating a fund available to the class, does not seem to be a differentiating factor so far as it affects the source of the recognized power of equity to grant reimbursements of the kind for which the petitioner in this case appealed to the chancellor's discretion. Plainly the foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation.
>
> Whether one sues representatively or formally makes a fund available for others may, of course, be relevant circumstances in making the fund liable for his costs in producing it. But when such a fund is for all practical purposes created for the benefit of others, the formalities of the litigation – the absence of an avowed class suit or the creation of a fund, as it were, through stare decisis rather than through a decree

7

– hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.

*Sprague*, 307 U.S. at 166.

The Supreme Court, in *Central R.R. & Banking Co. of Georgia v. Pettus*, 113 U.S. 116 (1885), upheld the authority of an Alabama district court to enforce a 5% assessment on creditors "who accept the fruits of the labors of complainants and their solicitors." *Id.* At 127-28. *Trustees, Pettus, and Sprague* make clear that the district court's authority to impose and enforce the 6% assessment that the plaintiffs' leadership requests here both predates and extends beyond the bounds of class actions and parties to multidistrict proceedings. "The foundation for the historic practice of granting reimbursement for the costs of litigation other than the conventional taxable costs is part of the original authority of the chancellor to do equity in a particular situation." *Mills v. Electric Auto-Lite Co.*, 396 U.S. 375, 393 (1970), quoting *Sprague,* 307 U.S. at 166, noting that the Court in *Sprague* upheld the district court's power to grant such reimbursement from "others . . . not parties before the court. . . ."

Here, the PSC conducts common discovery and liability analyses for the benefit of others, who, like those assessed n *Greenough* and *Sprague*, have avoided the time and expenses of replicating this discovery for their own cases. The PSC's recommended hold back reflects far less than it

8

would cost to reproduce the common efforts. Moreover, the hold back is neither novel nor arbitrary nor excessive. Under the common benefit doctrine, MDL transferee courts have imposed similar assessments. *See e.g. In re MGM Grand Hotel Fire Litigation*, 660 F.Supp. 522, 525-29 (D.Nev. 1987) (7% assessment); *In re Air Crash Disaster at Florida Everglades on December 29, 1972*, 549 F.2d 1006, 1019-21 (5th Cir. 1977) (8% assessment); *In re Silicone Gel Breast Implants Products Liability Litigation*, MDL No. 926 (N.D.Ala. 1993) (6% assessment); *In re Diet Drugs Product Liability Litigation*, MDL No. 1203 (E.D.Pa.) (9%/6% assessment);[4] *In re: Baycol Products Liability Litigation*, MDL No. 1431 (D.Minn) (6% assessment).

It is now commonly accepted in complex multi-party litigation that a court can, and should, appoint a committee – as this Court has done – to coordinate the litigation on behalf of the plaintiffs. *See generally Manual for Complex Litigation (Third) (Federal Judicial Center 1995)* §20.22 et seq. As a component of this appointment, the Court must be permitted to compensate, fairly, the attorneys who serve in a leadership capacity. As the *Manual for Complex Litigation* suggests, "[e]xpenses incurred and fees

---

[4] The diet drug assessment was subsequently reduced to 6%/4%, further demonstrating the fairness of the overall 6% that the steering committee requests here.

earned by designated counsel acting in that capacity should not be borne solely by their clients, but rather shared equitably by all benefiting from their services." *Id.* at §20.223. That section continues: ". . . the judge has the authority to order reimbursement and compensation and the obligation to ensure that the amounts are reasonable."

As the Court explained in *In re Air Crash Disaster at Florida Everglades on December 29, 1972,* 549 F.2d 1006 (5th Cir. 1977), "[i]f lead counsel are to be an effective tool, the Court must have means at its disposal to order appropriate compensation for them. The Court's power is illusory if it is dependent upon lead counsel's performing the duties desired of them for no additional compensation." 549 F.2d at 1016.

Here, the PSC respectfully requests an assessment – 6% - well within the norm of assessment orders in modern mass tort MDLs. Moreover, we have deferred our request until a point in this litigation at which the common benefit our efforts have obtained is manifest, the class has been certified, a trial date has been set, and substantial partial settlements have been negotiated.

## CONCLUSION

For the foregoing reasons, the PSC respectfully requests that the Court enter the accompanying [proposed] Order to establish a common benefit

10

fund and impose a reasonable assessment on all cases or claims arising from the Tri-State Crematory that are either settled or reduced to judgment.

Respectfully submitted,

Dated this ___ day of September, 2003.

_Jessie J. Buq_

McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

*Plaintiffs' Liaison Counsel*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs' Lead Counsel*

Kathryn E. Barnett
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

11

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi  39095
Telephone:  (662) 834-2376
Facsimile:  (662) 834-2628

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee  37203
Telephone:  (615) 386-8391
Facsimile:  (615) 386-8392

SIMS, GRADDICK & DODSON, PC
Charles Graddick
Todd Strohmeyer
205 St. Emanuel Street
Mobile, Alabama  36602

MABRY & MCCLELLAND, LLP
Robert M. Darroch
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia  30345

DAVID RANDOLPH SMITH &
ASSOCIATES
David Randolph Smith
Hillsboro Village, 1910 Acklen Avenue
Nashville, Tennessee 37212
Telephone: (615) 742-1775
Facsimile: (615) 742-1223

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Leslie J. Bryan
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 881-8900
Facsimile:  (404) 881-3007

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee  37402
Telephone:  (423) 265-2214
Facsimile:  (423) 266-1842

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-3591
Facsimile: (423) 266-5455

COPPEDGE & LEMAN, PC
Joe Leman
508 South Thornton Avenue
Dalton, Georgia 30720
Telephone: (706) 226-0040
Facsimile: (706) 226-0040

*Plaintiffs' Steering Committee*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | | |
|---|---|---|
| IN RE: TRI-STATE CREMATORY LITIGATION | ) ) ) ) | MDL DOCKET NO. 1467 |
| | | This document relates to all cases. |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served all counsel of record with the foregoing Memorandum in Support of PSC Motion for Entry of an Order Establishing a "Common Benefit" Fund by depositing a copy of the same in the United States mail, postage prepaid and properly addressed as follows:

> J. Anderson Davis
> Brinson, Askew, Berry, Seigler,
>   Richardson & Davis, LLP
> The Omberg House
> P.O. Box 5513
> Rome, Georgia 30162
>
> McCracken K. Poston, Jr.
> 62 Nance Lane
> P. O. Box 1130
> Ringgold, Georgia 30736
>
> Frank E. Jenkins, III
> Jenkins & Olson, P.C.
> 15 South Public Square
> Cartersville, Georgia 30120

This 23d day of September, 2003.

Leslie J. Bryan
Georgia State Bar No. 091175

DOFFERMYRE, SHIELDS, CANFIELD,
  KNOWLES & DEVINE                       Plaintiffs' Steering Committee
1355 Peachtree Street
Suite 1600
Atlanta, Georgia 30309

2