**IN THE UNITED STATES DISTRICT COURT**
**FOR  THE NORTHERN DISTRICT OF GEORGIA**
**ROME DIVISION**

FILED IN CLERK'S OFFICE

**ORIGINAL**

OCT 15 2003

LUTHER D. THOMAS, Clerk

By: _____
Deputy Clerk

| | | |
|---|---|---|
| **IN RE: TRI-STATE** | : | |
| **CREMATORY LITIGATION** | : | **MDL DOCKET NO. 1467** |
| | : | |

### TURNER FUNERAL HOME. INC'S MOTION
### FOR  SUMMARY JUDGMENT

COMES NOW Turner Funeral Home, Inc., Defendant in the above-styled

civil action, and hereby files its Motion for Summary Judgment pursuant to Fed. R.

Civ. P. 56. Defendant moves this Court for summary judgment against the

Plaintiffs because there are no genuine issues as to material facts and Defendant is

entitled to judgment as a matter of law.

WHEREFORE, Defendant Turner Funeral Home, Inc. respectfully requests

this Court enter an order granting its Motion for Summary Judgment.

561

Respectfully submitted this 15th day of October 2003.

**Nelson, Levine, de Luca, & Horst, LLC**

Martin H. Karo, Esquire   *(by gan)*
Georgia State Bar No. 407975
Four Sentry Parkway, Suite 300
Blue Bell, PA 19422
(610) 862-6500
Attorney for Turner Funeral Home, Inc.

**Brinson, Askew, Berry, Seigler, Richardson & Davis, LLP.**

J. Anderson Davis, Esquire
Georgia Bar No. 211077
The Omberg House
615 West First Street
P.O. Box 5513
Rome, GA 30162-5513
(706) 291-8853

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

| | | |
|---|---|---|
| IN RE: TRI-STATE | : | |
| CREMATORY LITIGATION | : | **MDL DOCKET NO. 1467** |
| | : | |

### AFFIDAVIT OF ROBERT K. SCHRADER

STATE OF TENNESSEE,

COUNTY OF HAMILTON.

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, Robert K. Schrader who, after being duly sworn, deposes and states as follows:

1.

I am over the age of twenty-one years, and I make this Affidavit of my own personal knowledge for use in a Motion for Summary Judgment.

2.

Turner Funeral Home, Inc. began using the services of Tri-State Crematory, Inc. ("Tri-State") in 1985. All of the employees at Turner Funeral Home, Inc., including myself, worked with Ray Marsh or Brent Marsh in coordinating cremations between the years 1985 and 2002.

3.

In order to arrange a cremation, Turner Funeral Home would usually call Tri-State Crematory, Inc. and inquire when Tri-State could pick up the decedent for cremation.  The utilization of Tri-State depended on the hours of operation of the crematory and the hours kept by Ray Marsh or Brent Marsh.  Turner Funeral Home had no control over the hours of operation of Tri-State.

4.

Tri-State would pick up the decedent for cremation.  Turner Funeral Home did not instruct Ray Marsh or Brent Marsh on how to perform the cremation.  Turner Funeral Home also never instructed either Mr. Marsh on what specific tools or materials to use nor did Turner Funeral Home instruct him to utilize certain cremation techniques or procedures.

5.

Turner Funeral Home never instructed Tri-State Crematory, Inc. to utilize a certain brand of cremation unit or suggested the time, manner, or method by which the crematory would be serviced, if necessary.

6.

After a cremation was completed, Tri-State Crematory would return the cremated remains to the funeral home.

7.

Prior to February 15, 2002, my understanding was that the Marsh family, and specifically Ray Marsh and Brent Marsh, had a good reputation in their community and among funeral directors. I had no information that any member of the Marsh family had committed any crimes or had any propensity to commit a crime.

8.

Prior to February 15, 2002, and at all times that Turner Funeral Home contracted for the services of Tri-State, I considered the services to be prompt and efficient and in fulfillment of Tri-State's undertaking to effect a proper cremation.

9.

Neither Tri-State, nor Ray Marsh, nor Brent Marsh was ever an agent, employee or servant of Turner Funeral Home.

10.

Prior to February 15, 2002, I never had any information that anything was amiss at Tri-State, or that Tri-State was not performing its undertaking to effect proper cremations.

11.

Prior to February 15, 2002, I had no information that there were on the premises of Tri-State any uncremated bodies.

12.

Prior to February 15, 2002, I had no information that Tri-State had given to anyone any adulterated or misidentified cremated remains.

13.

Prior to February 15, 2002, I had no information that Tri-State, or anyone at Tri-State, had, willfully or intentionally or otherwise, interfered with human remains or mishandled a corpse.

14.

Prior to February 15, 2002, I had no information that even caused me to suspect that Tri-State was not effecting proper cremations, or that there were on the premises of Tri-State any uncremated bodies, or that Tri-State had given to anyone any adulterated or misidentified cremated remains, or that Tri-State had interfered with human remains or mishandled a corpse.

## 15.

I have never, willfully or intentionally or otherwise, interfered with human remains or mishandled a corpse, nor am I aware that any employee of Turner Funeral Home, Inc. ever has done so.

Robert K. Schrader

Sworn to and subscribed before

me this 13th day of October 2003.

NOTARY PUBLIC
My Commission Expires: 8/20/04

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

IN RE:  TRI-STATE                         :
        CREMATORY LITIGATION    :        **MDL DOCKET NO. 1467**
_____:

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

This is to certify that the foregoing document was prepared using Times New

Roman 14 point font in accordance with LR 5.1(B).

This 15th day of October 2003.

BY: _____
                   J. ANDERSON DAVIS
                   Georgia Bar No. 211077

Post Office Box 5513
Rome, GA  30162-5513
(Phone - 706/291-8853)
(Fax - 706/234-3574)

106905.1

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties with a copy of the foregoing **Turner Funeral Home, Inc's Motion for Summary Judgment** by causing a copy of same to be placed in first class U.S. mail with adequate postage affixed thereto and addressed as follows:

Robert H. Smalley, III, Esquire
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Post Office Box 1105
Dalton, GA  30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esquire          Frank E. Jenkins, III, Esquire
OFFICE McCRACKEN POSTON              JENKINS & OLSON
Post Office Box 1130                        15 Public Square, South
Ringgold, GA   30736                       Cartersville, GA   30120-3350
Liaison/Lead Counsel for Tri-State
Crematory, Inc. and the Marsh Family

This 15th day of October 2003.

Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP.

J. Anderson Davis, Esquire
Georgia Bar No. 211077
The Omberg House
615 West First Street
P.O. Box 5513
Rome, GA 30162-5513
(706) 291-8853



ORIGINAL

FILED IN OFFICE
U.S.D.C. Rome

OCT 1 5 2003

LUTHER D. THOMAS, Clerk
By_____
Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION**

IN RE:  **TRI-STATE**            :
     **CREMATORY LITIGATION**  :
                          :   **MDL DOCKET NO. 1467**
_____:

## TURNER FUNERAL HOME, INC.'S BRIEF IN
## SUPPORT OF SUMMARY JUDGMENT

COMES NOW, Defendant Turner Funeral Home, Inc., and files this Brief in Support of its Motion for Summary Judgment, showing the Court as follows:

### I.     STATEMENT OF FACTS

#### 1. Turner Funeral Home, Inc.

Turner Funeral Home, Inc. (hereinafter "Turner") began servicing the Chattanooga area in 1936. The funeral home was, and still is, owned and operated by the Turner family.  (October 24, 2002 Deposition of Robert Schrader ("Schrader Dep.", p. 14)  In 1985, Turner commenced contracting with Tri-State Crematory Inc. for cremation services.  Schrader Dep at 23.  From 1988 to February 2002, Turner sent 216 bodies to Tri-State for cremation. During this period, representatives of Tri-State crematory came to Turner to pick up the bodies for cremation and in each instance promptly returned what were purported to be the cremated remains of the decedents for return to the family.

561

## 2. February 2002 Discovery and Ensuing Investigation at Tri-State Crematory.

On February 15, 2002, uncremated remains from the 1997-2002 era were discovered at the Tri-State location.  (Second Aff. of Kris Sperry, ¶¶ 4, 6-9.)  Three hundred thirty-four sets of human remains were found at Tri-State and 211 of those sets of remains have been identified.  According to Dr. Kris Sperry, Chief Medical Examiner of the State of Georgia, "based upon the scientific evidence analyzed to date...these bodies arrived at Tri-State Crematory no earlier than 1997."  (Second Aff. of Kris Sperry ¶ 2.)  Of the 211 remains identified, 32 of those remains were sent to Tri-State by Turner.

## 3. Plaintiff's Allegations.

Four proposed class representatives filed suit against Tri-State, members of the Marsh family - specifically, T. Ray Brent Marsh, Clara C. Marsh, Rhames L. Marsh and Tommy Ray Marsh (collectively "Tri-State Defendants") and 56 individual funeral homes (collectively "Funeral Home Defendants".)  Amended Complaint ¶¶ 9-62.  In their complaint on behalf of putative class members, Plaintiffs alleged that all decedents sent to Tri-State during its twenty years of operation were improperly cremated in a variety of ways, including failure to cremate, commingling of remains and returning to families non-human materials such as concrete dust represented as being human remains, or the plaintiffs feared

this happened. (Amended Complaint ¶¶ 2, 66.)    Based on these allegations, Plaintiffs raised eleven claims against the collective Defendants.

In its Order of March 17, 2003, the Court certified a class action for the time period 1988 to 2002 on the following four causes of action only: (1) breach of contract; (2) negligence; (3) willful interference with remains and intentional mishandling of a corpse; and (4) negligent interference with remains and mishandling of a corpse.    Turner seeks summary judgment on the negligence claims (2 and 4) and the willful interference claim (3) of Plaintiffs.[1]

The Plaintiffs do not allege the Funeral Homes themselves mishandled bodies[2]; they allege the Funeral Homes should not have used Tri-State.    In essence they are asserting negligent hiring.    Negligent hiring, as all negligence claims, involves foreseeability;    willfulness    involves    more    than    just    negligence. Accordingly, an analysis of the nature of Tri-State and its operators, Ray Marsh and Brent Marsh (and to some extent, the entire Marsh family) is crucial.

### 4. The Marsh Family, Tri-State, Turner Funeral Home and the Concealed Activity.

The **Marsh family**, including Ray Brent Marsh, were not criminals.    There is not one scintilla of evidence even of criminal propensity, much less of any

---

[1] Richard Reid was identified as a class representative; however, Plaintiffs' counsel confirms that Mr. Reid will be removed as a class representative but remain a putative class member.
[2] The Agency and nondelegable duty arguments will be disposed of *infra*.

previous criminal record.  The evidence is clearly to the contrary.  The Marshes were solid citizens, known to be responsible and progressive and enjoyed a good reputation in the community and, indeed, with all who knew them.  See dep. of Walter Wilson, Walker County Coroner ("Coroner Wilson Dep.") at 54-5; Walker County Sheriff Wilson Dep. at 25-27, 183-4, 218, 230; former Coroner William E. McGill Dep. at 13, 28; McGill Dep. at 28; C. Marsh Dep. at 14-17, 106-26; R.L. Marsh Deposition at 12-13,96-98; V. Marsh Dep. at 8, 63; B. Marsh Dep. at 122-26. There is no evidence of any charge against or arrest of Brent Marsh prior to February 2002. (V. Marsh Dep. at 71).

The **Tri-State** property consisted of the crematory, the Ray and Clara Marsh home, the Brent Marsh home, and a lake and recreation area.  The property was visited often by state officials and used by the public on a regular basis.  R.L. Marsh Dep. at 108; B. Marsh Dep. at 89, 93, 95; C. Marsh Dep. at 116; L. Marsh at 10-14; Coroner Wilson Dep. at 20-32, 92; Sheriff Wilson Dep. at 27.  Tri-State was being operated with the knowledge and permission of state and local authorities, and had been so operating for twenty years without incident.  Georgia State Board of Funeral Services Inspector John Massey clearly testified that Tri-State was not required to have a license as it was not open to the public.  (Dep. of John Massey ("Massey Dep."), pp. 23-24, 56, 101.).  Whether Tri-State had to

4

obtain a license was the subject of hearings but there is no evidence of these matters being known by the Funeral Homes. Massey Dep., at 28-38; 56-57; 60-64.

**Turner Funeral Home** contracted with Tri-State from 1985 until 2002 to provide cremation services. At no time did Turner control Tri-States' hours of operation, method of performing cremations, use of tools and materials and techniques for performing cremations. In all of Turner's dealings with Tri-State, Tri-State operated as an independent contractor. Neither Tri-State nor the Marshes were employees, agents or servants of Turner. Schrader Aff. at ¶¶ 2-10. At no time prior to February 15, 2002 did Turner or any of its employees have any information, or even suspicion, that any member of the Marsh family had committed any crimes or had any propensity to commit a crime; that Tri-State was improperly performing cremations; that Tri-State had given anyone any adulterated, commingled or misidentified cremated remains; that Tri-State mishandled a corpse; or that Tri-State had on its premises any uncremated bodies. Schrader Aff. ¶¶ 8-15. No employee of Turner ever willfully, intentionally or otherwise interfered with human remains or mishandled a corpse. (*Id.* at ¶ 16). No employee of Turner ever authorized, ratified or otherwise approved the improper cremation or adulteration of human remains, the interference with human remains

or mishandling of any corpse by Tri-State. (*Id.* at ¶ 17). Indeed, these acts and

omissions by Tri-State were to Turner's detriment. (*Id.* at 18).

Now, in hindsight, and after the fact, the concealed activity of Tri-State has

been discovered. As Plaintiffs themselves have established,

> [t]his action arises from the *recent discovery* that over a
> period of years, Tri-State Crematory failed to cremate
> human remains entrusted to it for cremation services in
> the manner dictated by its obligation to the decedents'
> families, applicable laws, and human decency. Rather,
> Tri-State and the Marsh family defendants who were its
> owners and operators *concealed* uncremated remains and
> commingled cremated remains in rudimentary mass
> graves in wooded areas surrounding their property.

Plaintiffs' Mem. of Law In Support of Plaintiffs' Motion for Class Certification

Pursuant to Fed. R. Civ. Proc. 23 (filed July, 2002), p. 1 (Emphasis added).

That Tri-State's activity was secret and actively concealed is not disputed.[3]

Likewise undisputed is the complete lack of knowledge on the part of Turner of

---

[3] The singularity of Tri-State's acts and the extent of their stealth has now been discovered. In the case of *Joe Oden v. Taylor Funeral Home*, an employee of the funeral home, Mrs. Taylor, took Mrs. Oden's body to Tri-State after the funeral and watched "the body go into the crematory, the switch was hit, that she heard the sound of the unit start up, and the process was to begin." (Joe Oden Dep. at 36-37). "[W]hen my wife's body was located [on the Tri-State property],...the Taylors were as, I guess, surprised as any of us." (*Id.* at 37-38). Even if Tri-State could somehow be determined to be Turner's agent, Tri-State's election to store and bury, rather than cremate, bodies was certainly outside the scope of its employment, and Turner cannot be liable. *Hobbs v. Principal Financial Group*, 230 Ga. App. 410 (1998); *Fortune v. Principal Financial Group*, 219 Ga. App. 367 (1995).

Tri-State's crimes; of its propensity for committing crimes; of the existence of uncremated remains; of any adulterated, commingled or misidentified cremated remains; or of Tri-State's interference with human remains or mishandling of corpses is also undisputed.  Schrader Aff. ¶¶ 8-14.

## II. <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 56 requires the entry of summary judgment on a claim if the evidence shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).  This rule does not require the moving party to negate the claims of the non-movant but requires only that the moving party identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317m 323, (1986).   The movant may discharge its burden by merely "showing -- that is, pointing out to the District Court -- there is an absence of evidence to support the non-moving party's case."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)

Once the moving party asserts its basis for summary judgment, the non-moving party must then go beyond the pleadings and present evidence designating "specific facts showing that there is a genuine issue for trial."  *Id.* at 324.  "The

mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 246 (1986) (Emphasis in original); Brown v. City of Clewiston, 848 F.2d 1534, 1537 (11th Cir. 1988).

An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." Anderson, 477 U.S. at 250. A fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248.

Therefore, to survive a motion for summary judgment, the non-moving party must present specific evidence of every element material to their case so as to create a genuine issue for trial. Celotex, 477 U.S. at 323; Brown, 484 F.2d at 1537. Otherwise, summary judgment must be entered against them. *Id.*

### 1. Issues of Foreseeability and Proximate Cause.

Georgia law provides that, as a general proposition, "questions of negligence, proximate cause, including the related issues of foreseeability,... are for the jury." Stegall v. Central Ga. EMC, 221 Ga. App. 187, 190 (1986). However, "in plain and undisputed cases the court may make a determination as a matter of

law." <u>Jacobs v. Taylor</u>, 190 Ga. App. 520, 525 (1989); see also <u>Atlanta Ob.&Gyn.</u>

<u>v. Coleman</u>, 260 Ga. 569, 570 (1990).

### III. ARGUMENT

Plaintiffs in this case are innocent; they have arguable claims against Tri-

State Crematory. However, with respect to the Funeral Home Defendants,

> [n]o matter how innocent the plaintiff[s] may be, [they are]  not entitled to
> recover unless the defendant[s] did something that [they] should not have
> done, or failed to do something that [they] should have done pursuant to the
> duty owed to the plaintiff[s].

<u>City of Douglasville v. Queen</u>, 270 Ga. 770, 771 (1999) (*citing* <u>Veterans</u>

<u>Organization of Fort Oglethorpe v. Potter</u>, 111 Ga.App. 201, 205, 141 S.E.2d 230

(1965)).  It is well established under Georgia law that the mere "occurrence of an

unfortunate event is not sufficient to authorize an inference of negligence."

<u>Walker v. Martin</u>, 226 Ga. App. 793, 798 (1997).

*1.    Turner Funeral Home, Inc. Should be Granted Summary Judgment on
       Plaintiffs' Negligence Claims.*

This Court certified a class on four claims, two of which are "negligence"

and "negligent interference with remains and mishandling of a corpse."  Both of

these claims involve general principles of negligence, which "consists of exposing

someone to whom a duty of care is owed to a foreseeable, unreasonable probability

of harm." <u>Amos v. City of Butler</u>, 242 Ga. App. 505, 506 (2000).

> As succinctly stated in <u>Amos</u>,

> Foresight requires the ability to anticipate a risk of harm from the conduct in some form. Thus, the legal duty to exercise ordinary care arises from the foreseeable, unreasonable risk of harm from such conduct. Negligence is predicated on *what should be anticipated*, rather than on what happened, because one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible.

242 Ga. App. at 506 (internal citations omitted)(emphasis added).

> Modern Georgia case law speaks to the issue of foreseeability:

> "In order to hold the defendant liable, it must be shown "either that the act complained of was the sole occasion of the injury, or that it put in operation other causal forces, such as were the direct, natural, and probable consequences of the original act, or that the intervening agency could have reasonably been anticipated or foreseen by the as the original wrongdoer[s]." <u>Stapleton v. Amerson</u>, 96 Ga. App. 471, 472 (2d), 100 SE2d 628 (1957). "Negligence is not actionable unless it is the proximate cause of the injury complained of. 'The question of proximate cause depends upon the facts of each particular case, and, in ascertaining in a particular case what was the proximate cause of the injury, the conclusion reached depends upon whether the injury alleged was such a natural and probable consequence, under the circumstances of the case, as that it might and ought to have been foreseen by the wrongdoer as likely to ensue from his act.' '(A) wrongdoer is not responsible for a consequence which is merely possible, according to occasional experience, but only for a consequence which is probable, according to ordinary and usual experience. The nature and probable consequences are those which human foresight can foresee, because they happen so frequently that they may be expected to happen again. The possible consequences

are those which happen so infrequently that they are not expected to happen again. *A man's responsibility for his negligence must end somewhere.*' (Emphasis supplied) <u>Rustin Stamp &c. v. Ray Bros.</u>, 175 Ga. App. 30, 31-32 (1), 332 SE2d 341 (1985).

[T]o judge the transaction according to the natural probabilities which men's minds take as the basis for passing judgment upon the course of human affairs, it may appear that causes other than the negligent one referred to so preponderated in bringing about the result as to lead us to say, from a human point of view, that the injury was just as likely to have ensued (with only its details somewhat varied, perhaps) if the n egligent thing had not occurred. I n such cases w e exempt the author of the negligence from liability." <u>Atlantic Coast Line R. Co. v. Daniels</u>, 8 Ga. App. 775, 779-780 (70 SE 203) (1911).

<u>Jacobs v. Taylor</u>, 190 Ga. App. 520, 525-6 (1989) (emphasis original).

It is beyond peradventure that the criminal acts and omissions of the Tri-State Defendants were not likely or probable. Even the possibility of such occurrence was remote or, as the spontaneous reactions testify to, "unimaginable." As a matter of law, Tri-State was an unanticipatable "mischief", not "the usual", but, instead, a *singular*, "experience of mankind". See <u>Cope v. Enterprise Rent-a-Car</u>, 250 Ga. App. 648, 651 (2001).

Coupled with the bizarre nature of Tri-State's actions is a record which demonstrates the absence of any indications to Turner that such conduct was taking place. As noted, it is undisputed that the Tri-State Defendants had no criminal or derogatory record, and that Turner had no knowledge any mistreatment of human

11

remains or any criminal propensity on the part of the Marshes.   Indeed, the information was just the opposite:   the Marshes were solid and trustworthy members of the community, ostensibly operating a worthwhile business, and Tri-State consistently represented to Turner that the respective cremated remains returned to Turner were those of the respective body sent to be cremated at Tri-State.   Plaintiffs have presented no evidence whatsoever that the criminal activity of the Tri-State Defendants could have been reasonably anticipated by Turner.

The few interferences plaintiffs had managed to address -- astonishingly sparse, in light to the gravity of the Tri-State misconduct discovered -- a few references to junk cars and trash on the grounds -- are irrelevant to the crematory itself, and as a matter of law create no jury issue on foreseeability regarding the bizarre criminality of Tri-State. See Hobbs v. Principal Fin. Group, Inc., 230 Ga. App. 410 (1998) (lying about personal and professional qualifications on application, long-term financial difficulties and poor score on qualifications test do not constitute proof of propensity of independent contractor to commit any crime, job-related or otherwise); Fortune v. Principal Fin. Group, 219 Ga. App. 367 (1995)(same); see also, Davis v. Blockbuster, Inc., 258 Ga. App. 677 (2002)(recording of pornography on children's videotape owned and rented by defendant was a criminal act of a third party that was not reasonably foreseeable by

12

retailer); <u>Cope v. Enterprise Rent-a-Car</u>, 250 Ga. App. 648 (2001)(providing defective rental car may have been a "cause in fact" of renter's being attacked when car broke down, but it was not proximate cause); <u>Brown v. Mobley</u>, 227 Ga. App. 140, 142-42 (1997) <u>Morris v. Baxter</u>, 225 Ga. App. 186 (1997); <u>Henderson v. Kroger Co.</u>, 217 Ga. App. 252, 253 (1995); <u>Simmons v. Dept. of Human Resources</u>, 213 Ga. App. 98 (1994).

While these cases address contentions of foreseeability based upon evidence of prior knowledge of various behaviors or actions, none of these cases even approaches the tragedy that *happened* at Tri-State *without* any such prior behavior, much less any prior knowledge.[4] What happened at Tri-State was without prior knowledge of even the *possibility* of its occurrence, much less its probability. Georgia acknowledges the problem with "[finding] causation because of the extraordinary speculation inherent in the subject of deterrence of men bent upon criminal ventures.'" <u>Fallon v. Metropolitan Life Ins. Co.</u>, 238 Ga.App. 156, 158 (1999) (quoting <u>Godwin v. Olshan</u>, 161 Ga. App. 35 (1982)).   "[O]ne is bound to

---

[4] Plaintiffs' negligence claims might also be likened to a negligent entrustment cause of action. However, such a cause of action clearly would fail, as Turner neither had actual knowledge nor reason t o s uspect T ri-State w ould e ngage i n s uch a berrant a nd c riminal c onduct. *Worthen v. Whitehead*, 196 Ga.App. 678, 396 S.E.2d 595 (1990) (*quoting Gunn v. Booker*, 259 Ga. 343, 347, 381 S.E.2d 286 (1989)("Under the doctrine of negligent entrustment, a party is liable if he entrusts someone with an instrumentality, with actual knowledge that the person to whom he has entrusted the instrumentality is incompetent by reason of his age or inexperience, or his physical or mental condition, or his known habit of recklessness.").

anticipate and provide against what usually happens and what is likely to happen; but it *would impose too heavy a responsibility* to hold him bound in like manner to guard against what is unusual and unlikely to happen or what, as it is sometimes said, is only remotely and slightly probable." <u>Rustin Stamp Etc., Inc. v. Ray Bros. Etc.</u>, 175 Ga. App. 30, 32 (1985) (emphasis in original)(quotations omitted).[5]  The utter lack of foreseeability of the very extraordinary, improbable, and criminal acts and omissions of Tri-State prevent  Plaintiffs from maintaining a negligence action against  Turner, however styled.

### 2. Plaintiffs Cannot Recover Under Their Negligence Claims for The Uncertainty as to the Cremation of Decedents.

Certain of the Plaintiffs claim uncertainty or fear that they have not received the correct cremated remains.   These Plaintiffs did not have decedents whose bodies were found at Tri-State and no evidence that the remains of their decedents were adulterated.   Instead, these Plaintiffs either had the remains tested and found that they were human, or have refused to have their remains tested.   Nevertheless,

---

[5] Plaintiffs cannot escape the absence of the foreseeability merely by asserting, mantra-like, a "heightened duty." In *Griffin v. Fowler*, 260 Ga. App. 443 (2003), an attorney was accused of a breach of his fiduciary duty to his client for, among other things, failing to warn the client of his concerns about the appointment of a particular trustee to handle certain estate trusts.  The court held that, even in a case involving the heightened obligation of a lawyer to his client, i.e., a fiduciary relationship, foreseeability is still an essential for liability to attach.  The court noted that "there [was] no evidence in the record demonstrating [the lawyer's] awareness of any facts that would lead him to conclude that [the trustee] was untrustworthy." Id. at 448-49.  Indeed, unlike the facts in the case at bar, the court found that, even in the face of the *lawyer's suspicions about the trustee*, the lawyer could not be held liable for the trustee's "intervening act of making an unauthorized withdrawal from [the plaintiff's] trust." Id. at 449.

these Plaintiffs are part of this class action seeking to recover for their fear and uncertainty as to whether they received their decedents' remains and will be referred to herein as the "Uncertainty Plaintiffs."

Without actual evidence that the remains the Uncertainty Plaintiffs received are not the correct remains, such claims are far too speculative to support recovery. Claims of uncertainty or fear have been addressed by Georgia's appellate courts in cases involving exposure to a disease or material, such as the AIDS virus or asbestos. The possibility that one <u>could</u> have been exposed does not surmount the burden of demonstrating o ne <u>was</u> exposed. For example, the Georgia Supreme Court recently rejected a fear and uncertainty claim where the plaintiff alleged that she feared having contracted the AIDS virus from a blood transfusion but failed to present a ny e vidence t hat she had "actual e xposure" to t he disease. <u>Johnson v. American Nat'l Red Cross</u>, 276 Ga. 270, 578 S.E.2d 106 (2003); see <u>Russaw v. Martin,</u> 221 Ga. App. 683, 472 S.E. 106 (1996); see also <u>Blackston v. Shook & Fletcher Insulation Co.</u>, 764 F.2d 1480 (11th Cir. 1985) (no emotional distress recovery for fear of exposure in asbestos case); <u>Williams v. Flintkote Co.</u>, 256 Ga. App. 205, 568 S.E.2d 106 (2002) (citing <u>Blackston</u> with approval and stating that "an asbestos plaintiff must present evidence that the defendant's asbestos-containing product was used at the job site *and* that he or she was *in proximity to*

that product during its use")(emphasis in original); <u>Willis v. Employers Fire Insurance Co.</u>, 153 Ga. App. 445, 265 S.E.2d 356 (1980)(workers' compensation case).

As the foregoing authority makes clear, merely having a body sent to Tri-State for cremation is insufficient to give rise to a claim for fear and uncertainty that remains were improperly cremated. "A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant." <u>Mitchell v. Austin</u>, 261 Ga. App. 585, 587, 583 S.E.2d 249, 251 (2003). Without the required causal connection between the fear and uncertainty and actual damages, these claims represent the type of damages that the Georgia courts regard as "whimsical, fanciful and above all too speculative to form the basis of recovery...." <u>Johnson</u>, 276 Ga. at 274, 578 S.E.2d at 110 (quoting <u>Russaw</u>, 221 Ga. App. at 686).[6]

---

[6] The Uncertainty Plaintiffs have suggested that they should not have the burden of proof on this issue but that it should be shifted to Turner. There is no legal authority whatsoever for this burden shifting. No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed to the plaintiff. For these reasons, the mere occurrence of an unfortunate event is not sufficient to authorize an inference of negligence. A plaintiff must come forward with specific facts establishing a breach of duty, as well as the other elements of negligence, and may not rest upon generalized allegations. <u>Hodge v. Putzel Electric Contractors, Inc.</u>, 260 Ga. App. 590, 594-595, 580 S.E.2d 243, 247-248 (2003)(quoting <u>Davis v. Blockbuster</u>, 258 Ga. App. 677,478-679 (1), 575 S.E.2d 1(2002)

The Uncertainty Plaintiffs who seek to recover for decedents sent to Tri-State Crematory prior to 1997 have no grounds for referencing the 1997 to 2002 bodies found at Tri-State. As for the Uncertainty Plaintiffs whose decedents were sent to Tri-State from 1997 to 2002, these Plaintiffs cannot overcome the fact that their decedents' remains were found to be human when tested, or they no longer have the cremated remains to test. The Uncertainty Plaintiffs have the burden of proof for their negligence claim, and they cannot recover simply because they are unsure whether their decedents were cremated at Tri-State.

3.   **Plaintiffs Cannot Satisfy the Physical Impact Rule and, Therefore, Cannot Recover Emotional Distress Damages for Negligence Claims.**

Turner moves for partial summary judgment on Plaintiffs' emotional distress claims. First, under Georgia law, "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." Ryckeley v. Callaway, 261 Ga. 828, 829, 412 S.E.2d 826, 826 (1992). See also Class Certification Order, p. 46; David C. Joel, Attorney at Law, P.C. v. Chastain, 254 Ga. App. 592, 596, 562 S.E.2d 746, 750 (2002)("As a general rule, mental distress damages are not recoverable in the absence of physical injury where the claim is premised on ordinary negligence.")

Thus, even under a claim for simple negligence or for negligent interference with remains, Plaintiffs must prove physical impact to obtain any recovery for emotional distress damages.   None of the Plaintiffs seeking recovery against Turner Funeral Home has alleged, much less proven, any such physical impact. Thus, even if successful on their negligence claims, these Plaintiffs could not recover any damages for emotional distress.

A recent case, Hang v. Wages & Sons Funeral Home, Inc., 2003 WL 21403762 (Ga. App. June 19, 2003) is directly on point.  In Hang, the Tep family sought to recover for their emotional distress when their decedent was prematurely cremated and not in accordance with the family's Buddhist rituals.  Wages & Sons Funeral Home ("Wages") sought partial summary judgment for, among other reasons, that Georgia's impact rule precluded the Tep family from recovering for their alleged emotional distress. The trial court granted this motion.

The Georgia Court of Appeals reiterated the three elements of the impact rule: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress." Id.  The Court ruled that the Tep family had failed to satisfy the physical impact requirements in this mishandling of remains case.

Moreover, the Georgia Court of Appeals refused to expand the impact rule based on the case of <u>Lee v. State Farm Mutual Ins. Co.</u>, 272 Ga. 583, 533 S.E.2d 82 (2000). Although the Georgia Supreme Court carved out a narrow exception to the impact rule in that case, the Court was careful to add that:

> the impact rule, even with its shortcomings, is not without benefit. And certainly, it would be imprudent to abandon over a hundred years of Georgia precedent. What is more, *we decline to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress.*

<u>Hang v. Wages & Sons Funeral Home, Inc.</u>, 2003 WL 21403762 (Ga. Ct. App. June 19, 2003)(quoting <u>Lee</u>, 272 Ga. at 588, 533 S.E.2d at 86)(emphasis added).

Second, Plaintiffs cannot claim that they have satisfied the pecuniary damages rule. "For a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person." <u>Nationwide Mutual Fire Ins. Co. v. Lam</u>, 248 Ga. App. 134, 137, 546 S.E.2d 283, 285 (2001).

For example, in <u>Harris v. Wall Tire Co.</u>, 197 Ga. App. 818, 399 S.E.2d 580 (1990), plaintiff sought recovery for emotional distress, stemming from the left front wheel coming off his car, allegedly because the tire company failed to reattach the wheel properly. The plaintiff and his family did not sustain any physical injury, even though plaintiff maintains that he suffered stomach problems

and limited sleep disturbances. The Georgia Court of Appeals ruled that plaintiff

could not recover emotional distress damages under the pecuniary loss rule:

> Here the pecuniary loss resulted from an "injury" to plaintiff's automobile, which sustained approximately $1,000 worth of damage. There was no injury to plaintiff's person except the emotional distress manifested by the initial fright, a sensitized stomach thereafter, temporary loss of sleep, aggravation, and necessity to devote vacation leave to attend to car repairs. Wall [Defendant] was entitled to the grant of partial summary judgment.

Id., 197 Ga. App. 818, 818, 399 S.E.2d 580, 581 (1990).

Plaintiffs have failed to show that they suffered a pecuniary loss as a result

of a tort involving injury to them. Instead, Plaintiffs' negligence claims are based

on injury to their decedents' remains. Accordingly, the Plaintiffs have not satisfied

the physical impact requirement for their negligence claims. Thus, emotional

distress damages for these claims are barred as a matter of law.

### 4. Turner Funeral Home Should be Granted Summary Judgment on Plaintiffs' Claims For Intentional Conduct.

Plaintiffs have alleged, and the Court has certified, an additional claim for

"willful interference with remains and intentional mishandling of a corpse."

Plaintiffs have not, and cannot, submit any evidence that Turner engaged in any

conduct which gives rise to such claim. As the Georgia Court of Appeals very

recently confirmed, "negligence, without more, is not evidence of 'a reckless

disregard of t he r ights o f others, e quivalent t o a n intentional t ort[.]'" R oddy v . Tanner Medical Center, Inc., 2003 WL 21525268, *2 (Ga.App.) (July 8, 2003).

Plaintiffs have no e vidence t hat T urner e ngaged in a ny "willful" c onduct. Willful conduct is based on an actual intention to do harm or inflict injury; wanton conduct is that which is so reckless or so charged with indifference to the consequences as to be the equivalent in spirit to actual intent. Willful misconduct, or willful failure or refusal to perform a duty required by statute, is more than negligence or even gross negligence; it involves conduct of a criminal or quasi-criminal nature, the intentional doing of something, either with the knowledge that it is likely to result in serious injury, or with the wanton and reckless disregard of its probable consequences. Muller v. English, 221 Ga.App. 672, 676, 472 S.E.2d 448 (1996)(internal citations and quotations omitted). Negligence does not prove intent.  Even delegation of an allegedly nondelegable duty does not prove intent.

There i s no evidence of any sort s howing Turner intended t o do h arm or inflict injury upon Plaintiffs.  To the contrary, the evidence shows Turner did not engage in any such conduct.  No Turner employee ever authorized, ratified or otherwise approved the improper cremation or adulteration of human remains, the

interference with human remains or mishandling of any corpse by Tri-State. Schrader Aff. at ¶¶ 15-16.

In light of the complete absence of any evidence showing any willful or intentional conduct on the part of Turner or any of its employees, Plaintiffs' claim for willful interference with remains and intentional mishandling of a corpse fails as a matter of law.

### 5.   Turner May Not Be Held Vicariously Liable for the Actions of its Independent Contractor, Tri-State Crematory.

Recognizing that there is no evidence of intentional or reckless misconduct by Turner, Plaintiffs attempt an end-run by claiming Turner is *vicariously* liable for the actions of Tri-State.  They hope to do this by alleging that the crematory was the agent of the funeral home.  The undisputed facts prove just the opposite — Tri-State Crematory was an independent contractor, not an agent of Turner.

Generally, an employer-employee as employment/agent relationship, and the possibility of vicarious liability under the theory of respondeat superior, exists only when the employer has the right to control the time and manner of executing the work.  Butkus v. Putting Greens Int'l Corp., 222 Ga. App. 661, 663, 475 S.E.2d 693, 694-696 (1996).   An independent contractor, on the other hand, has the right to perform the work by his own means, method and manner; the employer has the right merely to require certain results. Hooters of Augusta, Inc. v. Nicholson, 245

Ga. App. 363, 367, 537 S.E.2d 468, 472 (2000)(citations omitted). The "right to control the time means the employer has assumed the right to control the person's actual hours of work. The right to control the manner and method means the employer has assumed the right to tell the person how to perform all details of the job, including the tools he should use and the procedures he should follow." Williamson v. Coastal Physician Services of the Southeast, Inc., 251 Ga. App. 667, 668, 554 S.E.2d 739, 741 (2001).

To correlate the specific agency factors: Turner did not control Tri-State Crematory's hours of work. Instead, a Turner Funeral Home employee would call Tri-State Crematory and advise that Turner needed a cremation for a particular decedent. Turner's utilization of Tri-State depended on the hours of the operation of the crematory; Turner had no control over the hours of operation of Tri-State. Schrader Aff. ¶ 3.

Turner did not tell Ray or Brent Marsh how to perform cremations at Tri-State. After Tri-State picked up the decedent for cremation, no one from Turner instructed Ray or Brent Marsh on what tools, materials, techniques or procedure to utilize. Schrader Aff. ¶ 4. Turner employees never instructed either of the Marshes to use a certain brand of cremation unit or to service the crematory by a certain time, manner, or method. Schrader Aff. ¶ 5.

23

After the cremation was completed, Ray or Brent Marsh would return the cremated remains back to the funeral home. Schrader Aff. ¶ 6. This procedure was followed for every decedent sent to Tri-State Crematory for cremation by Turner. Id. Ironically, the very detachment plaintiffs wish to assert as proof of Turner's negligence -- that Turner never inspected Tri-State, that Turner never delivered bodies to Tri-State, that Turner did not supervise Brent Marsh -- provides proof Tri-State was an independent contractor, not an agent or employee.

Further, Mr. Schrader testified via affidavit that neither Tri-State Crematory nor Ray Marsh nor Brent Marsh was ever an agent, employee or servant of Turner Funeral Home, Inc. Affidavit of Schrader ¶ 9.

> It has long been the Georgia rule that one who is a party to the alleged relationship (the principal or agent) may testify as a fact as to the existence or non-existence of the relationship and that such testimony would not be subject to the objection that the statement was a conclusion or the ultimate fact. The denial of the existence of any agency relationship may thus constitute an uncontradicted fact which will sustain a motion for summary judgment.

Stallings v. Sylvania Ford-Mercury, Inc., 242 Ga. App. 731, 733, 533 S.E.2d 731, 733 (2000). See also Entertainment Developers, Inc. v. Relco, Inc., 172 Ga. App. 176, 177, 322 S.E.2d 304, 305 (1984)("When a party to an alleged agency relationship denies that such a relationship exists, that is a statement of fact.")(citations omitted).

24

"[W]here the existence of any agency is relied upon, the burden rests with the party asserting the relationship." Carter v. Kim, 157 Ga. App. 418, 418, 277 S.E.2d 776, 776 (1981). Plaintiffs may not respond with unsupported allegations of agency but instead must present specific facts showing an agency relationship. See Bell South Telecommunications, Inc. v. Widner, 229 Ga. App. 634, 636, 495 S.E.2d 52, 55 (1997). "Exhibiting the mere possibility of a control situation falls short of the specific facts required." Id. (citations omitted). In this case, Plaintiffs cannot satisfy their agency burden of proof. The undisputed facts prove that Tri-State Crematory, Ray Marsh and Brent Marsh were independent contractors, not agents of Turner. Thus, Turner requests that this Court find as a matter of law that Turner is not vicariously liable for the actions of these independent contractors.

### 6. Turner Funeral Home, Inc. Did Not Have any Nondelegable Duty With Respect to the Remains.

Plaintiffs also argue that Turner should be liable for Tri-State's actions because the duties imposed on the funeral home are supposedly nondelegable. Pursuant to O.C.G.A. § 51-2-5, an employer is liable for the negligence of an independent contractor in six specific situations.[7]

---

[7] Plaintiffs' claim for willful interference with remains and intentional mishandling of a corpse, however, does not qualify as a negligence claim. Thus, O.C.G.A. § 51-2-5 is inapplicable to this claim, and there is no basis for holding Turner liable for the alleged intentional actions of Tri-State and the Marshes. Further, the employees of Turner never willfully or intentionally interfered with human remains or mishandled a corpse. See Affidavit

First, Plaintiffs contend that the handling of human remains is inherently dangerous and, therefore, a nondelegable duty. See O.C.G.A. § 51-2-5(2). However, "Georgia courts have held that work is not 'dangerous to others, however carefully performed' if the danger results from doing the work in an unsafe manner when there is a safe way of doing the work." Horn v. C.L. Osborn Contracting Co., 591 F.2d 318, 320 (5th Cir. 1979)(citations omitted). Examples of intrinsically dangerous work "include blasting operations, fumigation of premises, spraying from airplanes, the escape of a dangerous animal, emitting sparks from a railway engine, [and] raising an embankment which is unguarded." Community Gas Co. v. Williams, 87 Ga. App. 68, 80, 73 S.E.2d 119, 129 (1952) (citations omitted).

The Eleventh Circuit has examined this issue in the context of electricity:

In Gillespie, the Georgia Court of Appeals stated

> [w]e are unwilling to hold that electricity is a substance so inherently dangerous that a power company may not contract for the building of power lines with an independent contractor and absolve itself from liability for an injury which occurs solely because of the negligence of such independent contractor in the doing of the work.

49 Ga. App. at 794, 176, S.E. at 789.

---

of  Schrader  ¶ 15.  Accordingly, Turner should be granted summary judgment on the Plaintiffs' intentional mishandling claim.

Thus, plaintiff's reliance upon O.C.G.A. § 51-2-5(2) providing for liability when the work is "dangerous to others however carefully performed," is misplaced.   Jenkins v. Georgia Power Co., 849 F.2d 507, 509 (11th Cir. 1988)(quoting Georgia Power Co. v. Gillespie, 49 Ga. App. 788, 794, 167 S.E.2d 786, 789 (1934)).

In this case, handling or cremation of a decedent is not dangerous to others if carefully performed.   As Dr. Kris Sperry, Georgia's Chief Medical Examiner, testified, bodies provide no health and safety hazard; even for unembalmed bodies, "unless one cuts oneself while contaminated with body fluids from someone, say who has AIDS or hepatitis B or hepatitis C," there is no biohazard.   Deposition of Dr. Kris Sperry ("Sperry Depo."), p. 278-279.   "[P]eople think that there's, you know, a miasma that exudes off of dead bodies and that's going to, you know, come — make someone come down with infectious diseases and that's ridiculous." Id., p. 279.   See Walton v. United States, 484 F. Supp. 568, 575 (S.D. Ga. 1980)("Although the handling of the dead merits special care in view of the sanctity of the remains to living family members, I cannot conclude that the transfer of a body is in 'its nature dangerous to others however carefully performed.'")(citations omitted). Because cremation is **not** in its nature dangerous

to others even if carefully performed, Plaintiffs cannot rely on O.C.G.A. § 51-2-5(2) to create a nondelegable duty.

Second, Plaintiffs contend Turner could not delegate cremations to Tri-State Crematory because the duty was imposed by express contract on the funeral home. See O.C.G.A. § 51-2-5(3). The paperwork with respect to a decedent included a Cremation Authorization form. However, this form does not require Turner to perform the cremation, but permits Turner to arrange to have the cremation performed. This form does not contain any statement that Turner would perform the cremation itself or agreed to be responsible for the crematory's conduct or actions, and indeed expressly limits Turner's liability to the cost of the cremation.

The Georgia Court of Appeals found that O.C.G.A. § 51-2-5(3) requires "an express obligation by the employer to be responsible for the independent contractor's conduct." Toys 'R' Us, Inc. v. Atlanta Economic Dev. Corp., 195 Ga. App. 195, 196, 393 S.E.2d 44, 47 (1990). "[T]he cases which have construed the statutory exception in [§ 51-2-5(3)] have emphasized the word 'express' and the necessity that such contractual obligation be placed upon the particular employer as opposed to any independent contractor." Fields v. B&B Pipeline Co., 147 Ga. App. 875, 876-877, 250 S.E.2d 582, 583 (1978)(citations omitted).

Third, Plaintiffs allege that the duty to handle the human remains is nondelegable because it is a duty imposed by statute. See O.G.C.A. § 51-2-5(4) Plaintiffs do not identify the statute that they are relying on. Such a statutory duty, however, must be clearly stated.[8]

An examination of the applicable statutes governing funeral homes and crematories shows that no such personal and nondelegable duty exists. <u>See</u> O.C.G.A. § 43-18-1 through 43-18-75. Instead, the Georgia Board of Funeral Service "may adopt and enforce such rules as may be reasonable and necessary to provide for the sanitary disposal of dead human bodies and prevent the spread of disease and to protect the health, safety and welfare of the people of this state." O.C.G.A. § 43-18-72(b). Further, the Board is authorized to "fix and prescribe standards of sanitation to be observed in the embalming of dead human bodies or cremation of dead human bodies." O.C.G.A. § 43-18-23(4).[9] In contrast, these statutory provisions do not place any affirmative, nondelegable duty on funeral homes with respect to cremation by a separate entity.

---

[8] For example, a nondelegable duty of the owner or occupier of land to an invitee is created in O.C.G.A. - 51-3-1 which provides as follows: Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe. See <u>FPI Atlanta, L.P. v. Seaton</u>, 240 Ga. App. 880, 886,524 S.E.2d 524, 530 (1999) ("O.C.G.A. 51-3-1 imposes a personal nondelegable duty upon the landlord to keep the premises and approaches safe when it remains possession and control.")
[9] This same Board of Funeral Service, although aware of Tri-State's operations and unlicensed status after 1994, did not stop Tri-State from cremating bodies. Massey Dep., pp. 15, 88-89, 165.

Plaintiffs hint that a nondelegable duty exists because of the necessity of protecting the health and safety of the public.  O.C.G.A. § 43-18-2 places this burden on the state, not individual funeral homes.  See O.C.G.A. § 43-18-2 ("It is declared that this article shall be deemed an exercise of the health powers of the state for the prevention of the spread of infectious, communicable, and contagious diseases and for the protection of the sanitation, health and welfare of the people of this state . . .").  Compare Williams v. Dept. of Corrections, 224 Ga. App. 571, 481 S.E.2d 272 (1997)(State of Georgia has a statutory, nondelegable duty to protect the health and safety of prisoners in its custody.)

Moreover, Plaintiffs reference the health hazard issue to support a claim of negligence per se against the funeral homes, but Plaintiffs are not seeking damages for any health hazard.   "'In determining whether the violation of a statute or ordinance is negligence per se as to a particular person, it is necessary to examine the purposes of the legislation and decide (1) whether the injured person falls within the class of persons it was intended to protect and (2) whether the harm complained of was the harm it was intended to guard against.'"  Horney v. Panter, 204 Ga. App. 474, 476, 420 S.E.2d 8, 10 (1992)(quoting Potts v. Fidelity Fruit & Produce Co., 165 Ga. App. 546, 547, 301 S.E.2d 903, 904 (1983)).  Plaintiffs, family members of decedents, do not fall within the class of persons this health

30

hazard statute was intended to protect.  They were not subject to any health risk from the bodies.  They did not spend time at the Tri-State property, where the uncremated bodies were located.  They are not complaining of harm from any health hazard.  Finally, the alleged improper handling of the decedents is by the Tri-State Defendants, not Turner.   Schrader Aff. ¶ 15.   For these reasons, Plaintiffs' negligence *per se* argument is without merit.

Accordingly, Plaintiffs have failed to show any applicable statutory, nondelegable duty for funeral homes with respect to the cremations by Tri-State. For these reasons, Turner Funeral Home should be granted summary judgment on all of Plaintiffs' negligence claims.

### 7.     Omnibus Incorporation

Turnere hereby incorporates all applicable legal arguments of similarly situated, defendant funeral homes as if set forth fully herein.

## IV.  CONCLUSION

For reasons set forth in this brief, summary judgment be granted in Turner's favor as to Plaintiffs' claims of negligence, negligent interference with remains and mishandling of a corpse, willful interference with remains and intentional mishandling of a corpse be dismissed.

Respectfully submitted this 15th day of October, 2003.

**Nelson, Levine, de Luca & Horst, LLC.**

*Martin H. Karo (by Qu))*

Martin H. Karo, Esquire
Georgia State Bar No. 407975
Four Sentry Parkway, Suite 300
Blue Bell, PA 19422
(610) 862-6500
Attorney for Turner Funeral Home, Inc.

**Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP.**

J. Anderson Davis, Esquire
Georgia Bar No. 211077
The Omberg House
615 West First Street
P.O. Box 5513
Rome, GA 30162-5513
(706) 291-8853

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE            :
        CREMATORY LITIGATION  :        MDL DOCKET NO. 1467
_____:

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

This is to certify that the foregoing document was prepared using Times New

Roman 14 point font in accordance with LR 5.1(B).

This 15th day of October 2003.

BY: _____
J. ANDERSON DAVIS
Georgia Bar No. 211077

Post Office Box 5513
Rome, GA  30162-5513
(Phone - 706/291-8853)
(Fax - 706/234-3574)

106905.1

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties with a copy of the foregoing **Turner Funeral Home, Inc's Brief in Support of its Motion for Summary Judgment** by causing a copy of same to be placed in first class U.S. mail with adequate postage affixed thereto and addressed as follows:

Robert H. Smalley, III, Esquire
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Post Office Box 1105
Dalton, GA  30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esquire          Frank E. Jenkins, III, Esquire
OFFICE McCRACKEN POSTON            JENKINS & OLSON
Post Office Box 1130                         15 Public Square, South
Ringgold, GA   30736                        Cartersville, GA   30120-3350
Liaison/Lead Counsel for
Tri-State Crematory, Inc. and the Marsh Family

This 15th day of October 2003.

> Brinson, Askew, Berry, Seigler,
> Richardson & Davis, LLP.
>
> J. Anderson Davis, Esquire
> Georgia Bar No. 211077
> The Omberg House
> 615 West First Street
> P.O. Box 5513
> Rome, GA 30162-5513
> (706) 291-8853

33



ORIGINAL FILED IN CLERK'S OFFICE
U.S.D.C. Rome

OCT 1 5 2003

LUTHER D. THOMAS, Clerk
By: [signature]
Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE             :
CREMATORY LITIGATION         :          MDL DOCKET NO. 1467
                             :

### TURNER FUNERAL HOME, INC.'S STATEMENT
### OF MATERIAL FACTS AS TO WHICH THERE
### IS NO GENUINE ISSUE FOR TRIAL

COMES NOW, Defendant Turner Funeral Home, Inc., and files its

Statement of Material Facts as to which there is No Genuine Issue for Trial

pursuant to United States District Court for the Northern District of Georgia, Local

Rule 56.1(B)(2) as follows:

1. Turner Funeral Home, Inc. (hereinafter "Turner") began servicing the
   Chattanooga area in 1936. The funeral home was, and still is, owned and
   operated by the Turner family. (October 24, 2002 Deposition of Robert
   Schrader ("Schrader Dep.", p. 14)

2. In 1985, Turner commenced contracting with Tri-State Crematory Inc. for
   cremation services. Schrader Dep at 23.

*561*

3. From 1988 to February 2002, Turner sent 216 bodies to Tri-State for cremation. During this period, representatives of Tri-State crematory came to Turner to pick up the bodies for cremation and in each instance promptly returned what were purported to be the cremated remains of the decedents for return to the family.

4. Turner did not control Tri-State Crematory's hours of work. Instead, a Turner Funeral Home employee would call Tri-State Crematory and advise that Turner needed a cremation for a particular decedent. Turner's utilization of Tri-State depended on the hours of the operation of the crematory; Turner had no control over the hours of operation of Tri-State. Schrader Aff. ¶ 3.

5. Turner did not tell Ray or Brent Marsh how to perform cremations at Tri-State. After Tri-State picked up the decedent for cremation, no one from Turner instructed Ray or Brent Marsh on what tools, materials, techniques or procedure to utilize. Schrader Aff. ¶ 4. Turner employees never instructed either of the Marshes to use a certain brand of cremation unit or to service the crematory by a certain time, manner, or method. Schrader Aff. ¶ 5.

6. After the cremation was completed, Tri-State Crematory would return the cremated remains back to the funeral home. Schrader Aff. ¶ 6. 10.

7. On February 15, 2002, uncremated remains from the 1997-2002 era were discovered at the Tri-State location. (Second Aff. of Kris Sperry, ¶¶ 4, 6-9.)

8. Three Hundred and Thirty-Four sets of human remains were found at Tri-State and 211 of those sets of remains have been identified.

9. According to Dr. Kris Sperry, Chief Medical Examiner of the State of Georgia, "based upon the scientific evidence analyzed to date . . . these bodies arrived at Tri-State Crematory no earlier than 1997." (Second Affidavit of Kris Sperry ¶ 2.)

10. Dr. Sperry's opinion is based upon his analysis of the methodology by which these bodies were placed in mass graves, vaults and elsewhere on the property, forensic identification of the bodies and DNA test results." (Second Affidavit of Kris Sperry ¶ at 4-9.)

Respectfully submitted this 15th day of October, 2003.

Nelson, Levine, de Luca & Horst, LLC.

_Martin H. Karo (By ___)_

Martin H. Karo, Esquire
Georgia State Bar No. 407975
Four Sentry Parkway, Suite 300
Blue Bell, PA 19422
(610) 862-6500
Attorney for Turner Funeral Home, Inc.

Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP.

_J. Anderson Davis_

J. Anderson Davis, Esquire
Georgia Bar No. 211077
The Omberg House
615 West First Street
P.O. Box 5513
Rome, GA 30162-5513
(706) 291-8853

4

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ROME DIVISION

IN RE:  TRI-STATE                   :
       CREMATORY LITIGATION   :        MDL DOCKET NO. 1467
                                     :

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

This is to certify that the foregoing document was prepared using Times New Roman 14 point font in accordance with LR 5.1(B).

This 15th day of October 2003.

BY: _____
          J. ANDERSON DAVIS
          Georgia Bar No. 211077

Post Office Box 5513
Rome, GA  30162-5513
(Phone - 706/291-8853)
(Fax - 706/234-3574)

106905.1

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties with a copy of

the foregoing Turner Funeral Home, Inc's Statement of Material Facts as to which

there is No Genuine Issue for Trial by causing a copy of same to be placed in first

class U.S. mail with adequate postage affixed thereto and addressed as follows:

Robert H. Smalley, III, Esquire
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Post Office Box 1105
Dalton, GA  30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esquire           Frank E. Jenkins, III, Esquire
OFFICE McCRACKEN POSTON                JENKINS & OLSON
Post Office Box 1130                     15 Public Square, South
Ringgold, GA   30736                     Cartersville, GA   30120-3350
Liaison/Lead Counsel for
Tri-State Crematory, Inc. and the Marsh Family

This 15th day of October 2003.

Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP.

_____
J. Anderson Davis, Esquire
Georgia Bar No. 211077
The Omberg House
615 West First Street
P.O. Box 5513
Rome, GA 30162-5513
(706) 291-8853

5