UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

FILED IN CLERKS OFFICE
U.S.D.C. - Rome
OCT 16 2003
LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

IN RE:  TRI-STATE CREMATORY       )    MDL DOCKET NO. 1467
LITIGATION                        )
                                  )
This relates to all actions.      )

### LAYNE FUNERAL HOME, INC.'S
### MOTION FOR SUMMARY JUDGMENT

COMES NOW, Layne Funeral Home, Inc. (hereinafter "Layne"),
Defendant in the above-styled civil action, and hereby files its
Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.
Defendant moves this Court for summary judgment against the
Plaintiffs and Proposed Class Members because there are no
genuine issues as to any material facts and Defendant is entitled
to judgment as a matter of law.

Specifically, Layne is entitled to Summary Judgment because 1)
the breach of contract claims and negligence claims of several
proposed class members are barred by the applicable statutes of
limitations; 2) several proposed class members lack privity of
contract, thereby barring their breach of contract claims; 3)
proposed class members have failed to establish any evidence that
Layne failed to cremate their respective decedents, thereby
barring both their contract and negligence claims; 4) proposed
class members have failed to establish any evidence that they
have suffered any recognizable damage permitted under Georgia

1

612

law; 5) Layne should not be held vicariously liable for the actions of an independent contractor such as Tri-State Crematory; 6) Tri-State's acts were unforeseeable; 7) Layne did not have a nondelegable duty with respect to the remains; and 8) proposed class members have failed to establish any evidence that Layne intentionally or willfully mishandled any of proposed class members' decedents.

In connection with this Motion, this Defendant relies upon the following:

1. Layne Funeral Home, Inc.'s Brief in Support of Summary Judgment;

2. Layne Funeral Home, Inc.'s Statement of Material Facts as to Which There is No Genuine Issue for Trial;

3. Deposition testimony of Dale Layne;

4. Affidavit testimony of Dr. Kris Sperry;

5. Original deposition testimony of Dr. Kris Sperry;

6. Original deposition testimony of William E. McGill;

7. Original deposition testimony of John Massey;

8. Original of Layne Funeral Home, Inc.'s Objections and Responses to Plaintiffs' First Master Set of Interrogatories; and

9. Any and all pleadings and other evidence properly of record in this case.

WHEREFORE, Defendant Layne respectfully requests that this

2

Court enter an Order granting its Motion for Summary Judgment.

Respectfully submitted this 15th day of October, 2003,

COZEN O'CONNOR

JOHN L. CHOATE   BY ALL W/EXP. PERMGN
Georgia Bar No. 124965
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, GA  30308
Telephone:  (404) 572-2000
Facsimile:  (404) 572-2199

3

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **LAYNE FUNERAL HOME, INC.'S MOTION FOR SUMMARY JUDGMENT** upon all parties to this matter by depositing a true copy of same in the United States Mail, in a properly addressed envelope with adequate postage thereon to the counsel of record as follows:

**PLAINTIFFS' LIAISON COUNSEL**:

Robert H. Smalley, III, Esq.
**McCAMY, PHILLIPS,**
    **TUGGLE & FORDHAM, LLP**
P.O. Box 1105
Dalton, Georgia  30720-1105

**PLAINTIFFS' LEAD COUNSEL**:

Elizabeth J. Cabraser, Esq.
**LIEFF, CABRASER,**
**HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California  94111

**COUNSEL FOR SCI DEFENDANTS AND LEAD**
**AND LIAISON COUNSEL FOR FUNERAL HOME DEFENDANTS**:

J. Anderson Davis, Esq.
Robert M. Brinson, Esq.
**BRINSON, ASKEW, BERRY, SEIGLER,**
   **RICHARDSON & DAVIS, LLP**
The Omberg House
615 West First Street
P.O. Box 5513
Rome, Georgia  30162-5513

4

**LIAISON/LEAD COUNSEL FOR DEFENDANTS,**
**T. RAY BRENT MARSH & TRI-STATE CREMATORY:**
McCracken K. Poston, Jr., Esq.
**OFFICE OF MCCRACKEN POSTON, JR.**
P.O. Box 1130
Ringgold, Georgia 30736

Frank E. Jenkins, III, Esq.
**JENKINS & OLSON**
15 South Public Square
Cartersville, GA  30120-3350

    This 16 day of October, 2003.


                       JOHN L. CHOATE
                       Georgia Bar No. 124965
                       SunTrust Plaza, Suite 2200
                       303 Peachtree Street, N.E.
                       Atlanta, GA  30308
                       Telephone:  (404) 572-2000
                       Facsimile:  (404) 572-2199

**TABLE OF CONTENTS FOR LAYNE FUNERAL HOME, INC.'S
STATEMENT OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE FOR TRIAL:**

I.  Facts Concerning Layne's Use of Tri-State Crematory........................................p. 1

II. Facts Concerning the Discovery and Investigation at Tri-State Crematory.............................p. 4

FILED IN CLERK'S OFFICE
U.S.D.C. - Rome

OCT 1 6 2003

LUTHER D. THOMAS, Clerk
By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE CREMATORY   )   MDL DOCKET NO. 1467
LITIGATION                   )
                             )
This relates to all actions. )

### LAYNE FUNERAL HOME, INC.'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE FOR TRIAL

COMES NOW, Layne Funeral Home, Inc. and files its Statement Of Material Facts As To Which There Is No Genuine Issue For Trial pursuant to United States District Court for the Northern District of Georgia, Local Rule 56.1(B)(2) as follows:

### I.   FACTS CONCERNING LAYNE'S USE OF TRI-STATE CREMATORY

1.

Layne Funeral Homes, Inc. ("Layne") at all relevant times was owned and operated by Dale Layne, a licensed funeral director. (Deposition of Dale Layne ("Layne Deposition"), attached to Layne's Brief in Support of Summary Judgment ("Brief") as Exhibit "A"), pp. 6, 10.)

2.

During the time that it used Tri-State, Layne sent one (1) body to Tri-State for cremation in September of 2001. (*Id.*, p. 11.)

3.

*The only time that Layne used the cremation services of Tri-*

1

361341v1

612

State was for the cremation of Clifford Anderson on or about September of 2001. (*Id.* p. 12, **"Cremation Authorization," attached to Brief as Exhibit "B".**)

4.

Dale Layne did not work directly with with Ray Marsh in coordinating any cremations. (*Id.*, p. 10.)

5.

To arrange a cremation, Layne would usually contact a separate funeral home and inform them that Layne Funeral Home needed a cremation for a particular decedent. (*Id.*, p. 12.)

6.

Mr Layne's unsual contact for cremations was unable to accept the job of Mr. Anderson's creation from Mr. Layne at the time Mr. Anderson was to be cremated. (*Id.*, p. 11).

7.

Mr. Anderson's business acquaintance and friend from another funeral home was coordinating with Tri-State for Tri-State to pick up a decedent from his funeral home at the time Mr. Anderson was to be cremated. (*Id.*)

8.

Mr. Anderson's business acquaintance and friend from another funeral home suggested that the cremation services for Mr. Anderson also be completed by Tri-State Crematory. (*Id.*, pp. 17-18).

2

9.

Due to a scheduling conflict for Mr. Layne involving a separate, non-related funeral service, Mr. Layne's business acquaintance made all arrangements for the pick up of Mr. Anderson's body by Tri-State crematory and Mr. Layne left a key for Tri-State's access to Layne's embalming room.  (*Id.*).

10.

Tri-State thereafter picked up the decedent, Mr. Anderson, while Mr. Layne attended to the separate, non-related, funeral services.  (*Id.*, p. 18).

11.

Mr. Layne's deposition testimony indicates that at no time did Layne ever instruct Ray Marsh or Brent Marsh on how to perform the cremation.  (*Id.*, p. 18).

12.

Mr. Layne's deposition testimony indicates that at no time did Layne ever instruct Ray Marsh or Brent Marsh on what specific tools or materials to use for his cremation nor did Layne instruct him to utilize certain cremation techniques or procedures.  (*Id.*)

13.

Mr. Layne's deposition testimony indicates that at no time did Layne ever instruct either Ray Marsh or Brent Marsh to utilize a certain brand of cremation unit or suggest to him the

3

time, manner, or method by which the crematory would be serviced, if necessary.  (*Id.*)

14.

After the cremation of Mr. Anderson was completed, Tri-State Crematory returned the cremated remains back to Mr. Layne through Mr. Layne's business acquaintance.  (*Id.*, p. 19.)

15.

At no time has Layne or his employees ever set foot on the Tri-State Crematory premises.  (*Id.*, p. 9.)

16.

At no time did Mr. Layne or his employees Ray Marsh or Brent Marsh, nor see them at anytime.  (*Id.*, p. 18).

17.

At no time did Mr. Layne or his employees ever speak with Ray Marsh or Brent Marsh.  (*Id.*, p. 18-19).

## II.   FACTS CONCERNING THE DISCOVERY AND INVESTIGATION AT TRI-STATE CREMATORY

18.

On February 15, 2002, uncremated remains from the 1997-2002 time period were discovered at the Tri-State location.  (Second Affidavit of Kris Sperry, ¶¶ 4, 6-9.)

19.

Three Hundred and Thirty-Four sets of human remains were found at Tri-State and approximately 223 of those sets of remains have

4

been identified.  (Deposition of Kris Sperry ("Sperry Depo."),
pp. 85, 90,. 338.)

20.

According to Dr. Kris Sperry, Chief Medical Examiner of the
State of Georgia, "based upon the scientific evidence analyzed to
date," "these bodies arrived at Tri-State Crematory no earlier
than 1997."  (Second Affidavit of Kris Sperry, ¶ 2.)

21.

Dr. Sperry's opinion is based upon his analysis of the
methodology by which these bodies were placed in mass graves,
vaults and elsewhere on the property; forensic identification of
the bodies and DNA test results.  (Id., ¶¶ 4-9.)

22.

Of the 223 remains purportedly identified by the GBI, none
of those remains were sent to Tri-State by Layne.  (See "GBI
Master Index Decedents with Funeral Home Reference," attached to
Brief as Exhibit "C".)

23.

Although 111 bodies have not been identified, there is a
list published by the GBI describing each body.  (See
http://www.state.ga.us/gbi/crematory/crematory.html.)

24.

Public and official reaction ranged from "eerie" and

5

"shocking" to "incomprehensible"[1] and "unimaginable."  (Former

Coroner William E. McGill Deposition ("W. McGill Depo.", p. 51.)

According to Kris Sperry, Chief State Medical Examiner: "it is

still begged believability.  I mean, again, it was just something

that transcended anything I and I think pretty much everyone else

there had really ever seen … Just looking at all of this, it was

- it still - it was very difficult, excuse me, to find words to

describe it, just because it was, I'd say, beyond the life

experience of even fairly seasoned professionals like myself."

(Deposition of Kris Sperry ("Sperry Depo."), p. 277.)

25.

Dr. Sperry testified that when the bodies were placed in pits,

there was no evidence that there was ever any partial burial.  "That

is, it appears that, when a hole was dug, bodies were placed down

in the holes all at one time and then dirt was placed on top of

them, because we never found a single instance where there was any

layering of dirt in between the bodies that were placed there."

(*Id.*, pp. 97-98.)

26.

Based on his analysis of the bodies and the pits, Dr. Sperry

---

[1]*Rome News Tribune*, Sunday, February 17, 2002: "I have
never seen anything like this," Sperry said.  "None of my
professional colleagues in the work that I do around this
country have ever seen anything like this … "  *See also Rome
News Tribune*, Monday, February 18, 2002; Tuesday, February 19,
2002.

6

came to the conclusion that it would be unlikely that they would find any bodies prior to 1997. (*Id.*, pp. 99-100.)  Nevertheless, Dr. Sperry decided to implement a two year buffer zone and to analyze family DNA from 1995 forward. (*Id.*, p. 100.)  After the DNA analysis was completed, however, no body was identified with a date of death prior to 1997.[2] (*Id.*)  Only five bodies were identified with a date of death in 1997. (*Id.*, p. 104.)

27.

Embalmed bodies provide no health and safety hazard. (Sperry Depo., p. 278.)  As for unembalmed bodies, "unless one cuts oneself while contaminated with body fluids from someone, say who has AIDS or hepatitis B or hepatitis C," there is no biohazard. (*Id.*, pp. 278-279.)  "[P]eople think that there's, you know, a miasma that exudes off of dead bodies and that's going to, you know, come -- make someone come down with infectious diseases and that's ridiculous." (*Id.*, p. 279.)

This 15th day of October, 2003,

_____

[2]There was one individual who died in 1990 and was buried. Sometime in 1997, his body was exhumed, at the family's request, to be cremated.  This man remained in his casket uncremated at the Tri-State facility.  Sperry Depo., p. 104.

Respectfully submitted,

**COZEN O'CONNOR**

JOHN L. CHOATE
Georgia Bar No. 124965
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, GA  30308
Telephone:  (404) 572-2000
Facsimile:  (404) 572-2199

8

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **LAYNE FUNERAL HOME, INC.'S STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE ISSUE FOR TRIAL** upon all parties to this matter by depositing a true copy of same in the United States Mail, in a properly addressed envelope with adequate postage thereon to the counsel of record as follows:

**PLAINTIFFS' LIAISON COUNSEL:**
Robert H. Smalley, III, Esq.
**McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP**
P.O. Box 1105
Dalton, Georgia  30720-1105

**PLAINTIFFS' LEAD COUNSEL:**
Elizabeth J. Cabraser, Esq.
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California  94111

*COUNSEL FOR SCI DEFENDANTS AND LEAD AND LIAISON COUNSEL FOR FUNERAL HOME DEFENDANTS:*
J. Anderson Davis, Esq.
Robert M. Brinson, Esq.
**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**
*The Omberg House*
615 West First Street
P.O. Box 5513
Rome, Georgia  30162-5513

**LIAISON/LEAD COUNSEL FOR DEFENDANTS, T. RAY BRENT MARSH & TRI-STATE CREMATORY:**
McCracken K. Poston, Jr., Esq.
**OFFICE OF MCCRACKEN POSTON, JR.**
P.O. Box 1130
Ringgold, Georgia 30736

9

Frank E. Jenkins, III, Esq.
**JENKINS & OLSON**
15 South Public Square
Cartersville, GA  30120-3350

    This 16ᵀᴴ day of October, 2003.

                    **COZEN O'CONNOR**


                    John L. Choate | By ADL # 4481114
                    JOHN L. CHOATE   W/ Exp. Permin
                    Georgia Bar No. 124965
                    SunTrust Plaza, Suite 2200
                    303 Peachtree Street, N.E.
                    Atlanta, GA  30308
                    Telephone:  (404) 572-2000
                    Facsimile:  (404) 572-2199

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE CREMATORY    )    MDL DOCKET NO. 1467
LITIGATION                     )
                               )
This relates to all actions.   )

## LAYNE FUNERAL HOME, INC.'S
## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1

The undersigned hereby certifies that pursuant to

Local Rules 5.1 and 7.1D, the within and foregoing Motion

for Summary Judgment, Brief in Support of Summary Judgment,

Statement of Material Facts as to Which There is No Genuine

Issue for Trial; Motion to Exceed Page Limit; and Motion to

File Under Seal (and Proposed Order) were prepared using

Courier New, 12-point font.

This 15 day of October, 2003.

Respectfully submitted,

COZEN O'CONNOR

JOHN L. CHOATE
Georgia Bar No. 124965
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, GA  30308
Telephone:  (404) 572-2000
Facsimile:  (404) 572-2199

**TABLE OF CONTENTS FOR LAYNE FUNERAL HOME, INC.'S
BRIEF IN SUPPORT OF SUMMARY JUDGMENT:**

I.   Introduction....................................p. 1

II.  Statement of Facts..............................p. 2

III. Standard of Review..............................p. 4

    1. Generally....................................p. 4

    2. Issues of Foreseeability and Proximate
       Cause.......................................p. 6

IV.  Argument and Citation of Authority.............p. 7

    A. Layne Should Be Granted Summary Judgment on
       Plaintiffs' and Proposed Class Members' Breach
       of Contract Claims..........................p. 7

        1. Any Breach of Contract Claims of any
           proposed class members who contracted with
           Layne prior to February 26, 1996 are barred
           under Georgia's six year statute of
           limitations..............................p. 7

        2. Any breach of contract claims of proposed
           class members are barred due to lack of
           privity of contract......................p. 9

        3. Any breach of contract claims of Plaintiffs
           and proposed class members are barred
           because there is no evidence their respective
           decedents were not properly cremated.....p. 11

    B. Plaintiffs' and Proposed Class Members' Claims
       of Negligence, Negligent Interference with
       Remains and Mishandling of a Corpse, and Willful
       Interference with Remains and Intentional
       Mishandling of a Corpse, Are Barred by the
       Applicable Four (4) Year Statute of
       Limitations.................................p. 12

C. Layne is Entitled to Summary Judgment on Any Claims of Negligence and Negligent Mishandling of Remains, as Plaintiffs and Proposed Class Members Have Suffered No Recognizable Damage Permitted Under Georgia Law............................p. 17

   1. No Proposed Class Member Against Layne, None of Whose Decedents' Bodies Have Been Identified, Can Recover Under Their Negligence Claims for Their Uncertainty as to the Cremation of Their Decedents................................p. 18

   2. Proposed Class Members Against Layne Cannot Satisfy the Physical Impact Rule and, Therefore, Cannot Recover Emotional Distress Damages for Their Negligence Claims......p. 24

   3. Any simple negligence claims of Proposed Class Members are barred by a two-year statute of limitations..............................p. 27

D. Layne Should Not Be Held Vicariously Liable for the Actions of an Independent Contractor Such as Tri-State Crematory.........................p. 28

E. Plaintiffs' and Proposed Class Members' Negligence Claims Fail Because Tri-State's Acts Were Unforeseeable as a Matter of Law.......p. 31

F. Layne Did Not Have any Nondelegable Duty With Respect to the Remains.....................p. 36

G. Plaintiffs' and Proposed Class Members' Claim of Willful Interference with Remains and Intentional Mishandling of a Corpse Claim Should Be Dismissed, as There is Absolutely No Evidence Jones Intentionally and Willfully Mishandled Any of Plaintiffs' or Proposed Class Members' Decedents.................................p. 44

H. Layne Funeral Home Should Be Granted Summary Judgment on Plaintiffs' and Proposed Class Members' Fraudulent Conduct by Funeral Homes Claim....................................p. 47

I. Layne Funeral Home Should Be Granted Summary
    Judgment on Plaintiffs' and Proposed Class
    Members' Intentional Infliction of Emotional
    Distress Claim...............................p. 48

V.    Conclusion....................................p. 51

FILED IN CLERK'S OFFICE
U.S.D.C. - Rome

OCT 1 6 2003

LUTHER D. THOMAS, Clerk
By: /s/ _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE CREMATORY     )     MDL DOCKET NO. 1467
LITIGATION                      )
                                )
This relates to all actions.    )

## LAYNE FUNERAL HOME, INC.'S
## BRIEF IN SUPPORT OF SUMMARY JUDGMENT

COMES NOW, Defendant Layne Funeral Home, Inc. (hereinafter "Layne") and files this its Brief in Support of Summary Judgment of the claims of Plaintiffs and proposed class members.  Layne seeks summary judgment, showing the Court more fully as follows:

### I.   INTRODUCTION

In February of 2002, a number of bodies which had been sent to Tri-State Crematory ("Tri-State") to be cremated were discovered at various hidden locations on the Tri-State property. They had not been cremated by Tri-State, and were found to be in various states of decomposition.  It is undisputed that that is *what happened*.

Public and official reaction ranged from "eerie" and "shocking" to "incomprehensible"[1] and "unimaginable."  (Former Coroner William E. McGill Deposition ("W. McGill Depo., p. 51.)

_____

[1]  *Rome News Tribune*, Sunday, February 17, 2002: "I have never seen anything like this," Sperry said.  "None of my professional colleagues in the work that I do around this country have ever seen anything like this … "  *See also Rome News Tribune*, Monday,

1

6/2

Perhaps the most descriptive is the sworn testimony of Kris Sperry, Chief State Medical Examiner: "it is still begged believability.  I mean, again, it was just something that transcended anything I and I think pretty much everyone else there had really ever seen … Just looking at all of this, it was - it still - it was very difficult, excuse me, to find words to describe it, just because it was, I'd say, *beyond the life experience* of even fairly seasoned professionals like myself." (Deposition of Kris Sperry ("Sperry Depo."), p. 277)(emphasis added).  This shocking occurrence was extraordinary to say the least.  It is undisputed that this was not in accordance with the usual experience of mankind.  It is plain and palpable that it could not have been anticipated.

## II.    **STATEMENT OF FACTS**

Defendant Layne hereby incorporates verbatim Layne Funeral Homes, Inc.'s Statement Of Material Facts As To Which There Is No Genuine Issue For Trial ("Statement of Facts"), filed contemporaneously herewith.

### *Plaintiffs' and Proposed Class Members' Allegations*

Four proposed class representatives have filed suit against Tri-State, members of the Marsh family - specifically, T.  Ray Brent Marsh, Clara C.  Marsh, Rhames L. Marsh and Tommy Ray Marsh (collectively "Tri-State Defendants"), and 56 individual funeral

---

February 18, 2002; Tuesday, February 19, 2002.

homes (collectively "Funeral Home Defendants").  (Amended
Complaint ¶¶ 9-62.)  None of the proposed class representatives
specifically allege claims against Layne.

In their complaint on behalf of putative class members, the
named Plaintiffs alleged that all decedents sent to Tri-State
during its twenty years of operation were improperly cremated in
a variety of ways, including failure to cremate, commingling of
remains and returning to families non-human materials such as
concrete dust represented as being human remains.  (Amended
Complaint, ¶¶ 2, 66.)  Based on these allegations, the named
Plaintiffs raised eleven claims on their behalf and on behalf of
the proposed class against the Defendants, including Layne: (1)
equitable (injunctive and/or declaratory) relief; (2) breach of
contract, (3) breach of covenant of good faith and fair dealing,
(4) breach of fiduciary duty/special duty, (5) fraudulent conduct
as to Tri-State Defendants, (6) negligence, (7) willful
interference with remains and intentional mishandling of a
corpse, (8) negligent interference with remains and mishandling
of a corpse, (9) intentional infliction of emotional distress,
(10) negligent infliction of emotional distress, and (11) unjust
enrichment.  (Amended Complaint, ¶¶ 97-161.)

In an Order filed March 17, 2003, the Court certified a
class action for the time period 1988 to 2002 on the following
four causes of action only: (1) breach of contract; (2)

3

negligence; (3) willful interference with remains and intentional mishandling of a corpse; and (4) negligent interference with remains and mishandling of a corpse.

Layne now seeks summary judgment as to the following causes of action filed by Plaintiffs on behalf of any proposed class family members: (1) Plaintiffs' breach of contract claims; (2) Plaintiffs' negligence claims; (3) Plaintiffs' negligent interference with remains and mishandling of a corpse claims; (4) Plaintiffs' willful interference with remains and intentional mishandling of a corpse claims; (5) any fraudulent conduct claims; and (6) any intentional infliction of emotional distress claims.

### III.   <u>STANDARD OF REVIEW</u>

#### 1. *Generally*

Federal Rule of Civil Procedure 56 requires the entry of summary judgment on a claim if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This rule does not require the moving party to negate the claims of the non-movant but requires only that the moving party identify those evidentiary materials listed in Rule 56(c) that establish the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may discharge its burden by merely "showing -- that is, pointing out to the

4

District Court -- there is an absence of evidence to support the non-moving party's case." *Celotex Corp v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party asserts its basis for summary judgment, the non-moving party must then go beyond the pleadings and present evidence designating "specific facts showing that there is a genuine issue for trial." *Id.* at 324. "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986) (emphasis in the original); *Brown v. City of Clewiston*, 848 F.2d 1534, 1537 (11th Cir. 1988).

An issue is not genuine if it is unsupported by evidence, or if it is created by evidence that is "merely colorable" or is "not significantly probative." *Anderson*, 477 U.S. at 250. A fact is not material unless it is identified by the controlling substantive law as an essential element of the non-moving party's case. *Id.* at 248. Therefore, to survive a motion for summary judgment, the non-moving party must present specific evidence of *every* element material to their case so as to create a genuine issue for trial. *Celotex*, 477 U.S. at 323; *Brown*, 484 F.2d. at 1537. Otherwise, summary judgment must be entered against them. *Id.*

## 2.   *Issues of Foreseeability and Proximate Cause*

Georgia law provides that, as a general proposition, "questions of negligence, proximate cause, including the related issues of foreseeability, ...are for the jury." *Stegall v. Central Ga. EMC*, 221 Ga. App. 187, 190 (1986).  However, "in plain and undisputed cases the Court may make a determination as a matter of law." *Jacobs v. Taylor*, 190, 470 S.E.2d 782, 785 Ga. App. 520, 525 379 S.E.2d 563, 567 (1989).  Under Georgia law:

> [W]hether proximate cause exists in a given case is a mixed question of law and fact.  It requires both factfinding in the "what happened" sense, and an evaluation of whether the facts measure up to the legal standard set by precedent.  Ordinarily, both determinations are most appropriately made by a jury upon appropriate instructions from the judge.  The decision may be made by the trial judge or appellate court only if reasonable persons could not differ as to both the relevant facts and the evaluative application of legal standards (such as the legal concept of "foreseeability") to the facts.  In other words, "[a]lthough what amounts to proximate cause is undeniably a jury question, it will be determined by the court as a matter of law in plain and undisputed cases."

*Atlanta Ob.& Gyn. v. Coleman*, 260 Ga. 569, 570 398 S.E.2d 16 (1990) (internal citations omitted).

## IV. ARGUMENT AND CITATION OF AUTHORITY

**A.    Layne Should Be Granted Summary Judgment on Plaintiffs' and Proposed Class Members' Breach of Contract Claims.**

    *1.    Any breach of contract claims of any proposed class members who may have contracted with Layne prior to February 26, 1996 are barred under Georgia's six year statute of limitations.*

Based on Mr. Layne's deposition testimony and a lack of contrary evidence, Layne maintains that the only instance that it utilized the services of Tri-State Funeral Home was in September of 2001. However, in an effort to address any potential claims of any proposed class members, Layne sets forth all relevant arguments to address potential claims of proposed class members below.

Any proposed class members who contracted with Layne prior to February 26, 1996 are barred by the six-year statute of limitations for a breach of contract claim. The Court clearly made such a ruling in its Order Granting Class Certification in March of this year:

> "All actions upon promissory notes, drafts, or other simple contracts in writing shall be brought within six years after the same become due and payable." O.C.G.A. § 9-3-24. "'Under Georgia law, the statute of limitations runs from the time the contract is broken and not at the time the actual damage results or is ascertained.'" *Owen v. Mobley Const. Co., Inc.*, 171 Ga. App. 462, 462, 320 S.E.2d 255, 256 (1984)(quoting *Space Leasing Assoc. v. Atlantic Bldg. Systems*, 144 Ga. App. 320, 241 S.E.2d 438 (1977)(internal citations omitted); *accord Moore v. Dept. of Human Resources*, 220 Ga. App. 471, 472, 469 S.E.2d 511, 512-13 (1996). "The

7

> discovery rule is not applicable to a cause of action
> based on breach of contract." *Id.* (citing *Owen*, 171
> Ga. App. at 462, 320 S.E.2d 255).

Class Certification Order, pp. 37-38.

Plaintiffs' class action complaint at issue was filed
February 26, 2002. Thus, any breach of contract claim with
respect to a decedent sent to Tri-State *prior to February 26,
1996* is barred by the applicable statute of limitations. The
Court has already determined that the statute of limitations
would not be tolled for fraudulent concealment. (Class
Certification Order, p. 38, n. 11.)

Further, neither Plaintiffs nor any proposed class members
can prove the statute of limitations should be tolled based on
fraudulent concealment because they "have not alleged 'actual
fraud' involving 'moral turpitude" on the part of Layne, as
required under Georgia law. *See* O.C.G.A. § 9-3-36. Under § 9-3-
36, a statute of limitations can only be tolled if the Plaintiff
can show "actual fraud" of the Defendant involving "moral
turpitude" which conceals the existence of a cause of action from
the Plaintiff, despite Plaintiff's diligence in discovering such
a claim. More importantly to this case, the Supreme Court of
Georgia has held that constructive fraud does *not* toll the
statute of limitations. *See Shipman v. Horizon Corp.*, 245 Ga.
808, 267 S.E.2d 244 (1980). Plaintiffs have never alleged, much
less presented *any* evidence of any fraud on behalf of Layne.

8

Without such evidence, the breach of contract claims of Plaintiffs and proposed class members are barred. *See Gropper v. STO Corp.*, 250 Ga. App. at 824, 552 S.E.2d at 123. Such fraud would require proof that Layne had actual knowledge of the alleged bad acts of Tri-State. This proof does not exist.

This Court has already determined that the contract claims of named Plaintiff Bechtel are untimely and should make a similar determination for the claims of any proposed class member who contracted with Layne prior to February 26, 1996. (*See* Class Certification Order, p. 38 n. 11.) For that reason, the breach of contract claims for any proposed class member who contracted with Layne prior to February 26, 1996 should be dismissed.

### 2. Any breach of contract claims of proposed class members are barred due to lack of privity of contract.

Any proposed class members who did not enter into a contract with Layne ignore the privity of contract requirement under Georgia law which bars their breach of contract claims against Layne. Under privity of contract, only the parties signing the funeral services contract with Layne may sue for breach of contract. *See Sofet v. Roberts*, 185 Ga. App. 451, 452, 364 S.E.2d 595, 596 (1987).

Moreover, only the person who entered into the funeral service contract and paid for the services has suffered any alleged contractual damages. *See Odem v. Pace Academy*, 235 Ga.

App. 648, 654, 510 S.E.2d 326, 331 (1998). Emotional distress damages are not pecuniary damages and cannot qualify as contractual damages, either. *See Bauer v. North Fulton Med. Ctr.*, 241 Ga. App. 568, 572, 527 S.E.2d 240 (1999). Accordingly, any breach of contract claim under Georgia law is limited to the party who entered into the contract and any pecuniary losses shown under the contract. Thus, any proposed class member who was not a party to any contract with Layne, cannot raise any breach of contract claim against the funeral home.

Further, any proposed class member who is not a third party beneficiary to any contract with Layne cannot raise any breach of contract claim against the funeral home.

> "In order for a third party to have standing to enforce a contract . . . it must appear clearly from the contract that it was intended for [the benefit of the third party]. The mere fact that [the third party] would benefit from performance of the agreement is not alone sufficient." [Cit.]; O.C.G.A. § 9-2-20(b). *Unless such intention is shown on the face of the contract*, defendant is under no duty [to the third party] and consequently plaintiff acquires no right as the [third-party] beneficiary."

*Satilla Community Serv. Board v. Satilla Health Servs., Inc.*, 275 Ga. 805, 810, 573 S.E.2d 31, 35 (2002) (quoting *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457(1), 530 S.E.2d 208 (2000)) (emphasis added).

Thus, third parties who were not parties to the funeral

services contracts with Layne, cannot recover for breach of contract.  Without standing to assert their claims for breach of contract - either as a party to any contract or as a third-party beneficiary - any such claims of proposed class members must be dismissed.

**3.**   ***Any breach of contract claims of Plaintiffs and proposed class members are barred because they have no evidence their respective decedents were not properly cremated.***

In order to prevail on a breach of contract claim under Georgia, there must be a "breach and the resultant damages to the party who has the right to complain about the contract being broken." *Odem   v. Pace Academy,* 235 Ga. App. 648, 654, 510 S.E.2d 326, 331 (1998)(quoting *Budget Rent-A-Car of Atlanta v. Webb,* 220 Ga. App. 278, 279, 469 S.E.2d 712, 713 (1996)). Notwithstanding the reality that the contract claims of any proposed class members contracting with Layne prior to February 26, 1996 are indeed barred under the applicable statute of limitations, no Plaintiffs or proposed class members have adduced any evidence that their respective decedents were not cremated as planned.

None of the remains of the only body sent by Layne were discovered on the Tri-State property.  There is no evidence that the only body sent to Tri-State from Layne was not properly cremated.  Indeed, the only body sent by Layne was dispersed by his wife, presumably, over the Gulf of Mexico.  No proposed

11

class member suing Layne can carry his or her burden of proof as
to the elements of a breach of contract claim, and his or her
claims should be dismissed entirely.

**B.    Plaintiffs' and Proposed Class Members' Claims of
Negligence, Negligent Interference with Remains and
Mishandling of a Corpse, and Willful Interference with
Remains and Intentional Mishandling of a Corpse, Are Barred
by the Applicable Four (4) Year Statute of Limitations.**

Any claims of negligence and the negligent and willful
mishandling claims asserted on behalf of any proposed class
member against Layne are also time barred under Georgia's four
(4) year statute of limitations. It has been the law in Georgia
for over 100 years that the next of kin of a deceased have a
"quasi-property right" in the body of a deceased. *See Rivers v.
Greenwood Cemetery*, 194 Ga. 524, 22 S.E.2d 134 (1942); *McCoy v.
Ga. Baptist Hospital*, 167 Ga. App. 495, 306 S.E.2d 746 (1983);
*Bauer v. North Fulton Medical Center*, 241 Ga. App. 568, 527
S.E.2d 240 (1999); *Hill v. City of Fort Valley*, 251 Ga. App. 615
(2001). Pursuant to O.C.G.A. § 9-3-31 actions for property damage
must be brought within four years "after the right of action
accrues." Likewise, pursuant to O.C.G.A. § 9-3-32, "actions for
the recovery of personal property, or for damages for the
conversion or destruction of the same, shall be brought within
four years after the right of action accrues."

The *Bauer* court stated that the quasi-property right in a

corpse is not pecuniary in nature; it only encompasses the power
to ensure that a corpse is "orderly handled and laid to rest,
nothing more." *Id.* at 571, 527 S.E.2d at 244.  In *Bauer*, the
court determined that a widow's claims against a hospital for the
mishandling of her spouse's body and unauthorized removal of
organs were subject to a four year statute of limitation.  *Id.*
The Court applied a four-year statute of limitations for claims
of "property damage to a corpse."  *Id.* at 568.  The Court
specifically analyzed the Plaintiffs' mishandling claims in *Bauer*
in the context of a four-year statute of limitations, as opposed
to the two-year statute of limitations it applied to the
intentional infliction of emotional distress claim filed by the
widow.  *Id.*  The *Bauer* decision stands for the proposition that
claims of mishandling of the deceased which were brought by
Plaintiffs are subject to a four-year statute of limitations.

Similarly, in *Hill v. City of Fort Valley, supra*, the Court
reiterated the Georgia rule that the next of kin have a quasi-
property right in the body of a deceased.  The specific issue in
*Hill* was whether the family's claim for "wrongful burial" after a
funeral home buried the decedent in the wrong plot was barred by
the statute of limitations.  The widow of the deceased in *Hill*
asserted that the funeral home failed to properly mark the
boundaries of the grave site in 1981 when the decedent was
buried.  The court applied a four year statute of limitations and

13

determined the statute began to run when the decedent was improperly buried in 1981. The Court therefore held that "any claim for wrongful burial in 1981" was "barred by the statute of limitations" because the family "clearly brought their claim well beyond four years" when they filed suit in 1997. *Id.* at 618.

Even though the ultimate conclusion reached in *Hill* concerned the alleged trespass upon a cemetery plot, the Court clearly stated that the decedent's children "have a 'quasi property right' in her body" and entitled the Plaintiffs to have standing to bring a claim for trespass of the body pursuant to O.C.G.A. § 51-10-3 which provides that an unlawful abuse or damage to the personal property of another constitutes a trespass. Even though the Court ultimately determined that there was no evidence that the body was damaged when the grave was moved, the analysis by the Court in *Hill* is clear – claims of mishandling are subject to a four-year statute of limitations. The Court specifically held that the "personal, quasi-property right" in a decedent's corpse is only to "ensure proper handling and burial." *Id.* at 570.

The discovery rule is not applicable to these claims, which do not allege bodily harm to the Plaintiffs themselves. *See Fort Oglethorpe Associates II, LTD v. Hails Construction Co. of Ga.*, 196 Ga. App. 663, 665, 396 S.E.2d 585, 587 (1990)("[T]he Georgia Supreme Court has ruled that the tolling of a period of

14

limitation by the discovery rule is confined to cases involving
bodily harm.")  As indicated above, any and all tort claims of
proposed class members are predicated upon their respective
"quasi-property" rights in the corpse of their respective
decedents.  In *Corporation of Mercer University v. National
Gypsum Co.*, 258 Ga. 635, 368 S.E.2d 732 (1988), the Supreme Court
of Georgia, upon a certified question from the United States
Court of Appeals for the Eleventh Circuit, specifically held that
the discovery rule "is confined to cases of bodily injury which
develop only over the extended period of time and is not
applicable to cases involving merely property damage."  *Id.* at
366.  The claims of proposed class members do not involve bodily
injury which developed over an extended period of time, such as
in a medical malpractice case, or asbestos exposure.  The Court
in *National Gypsum* also held that the "continuing tort theory"
is not applicable to cases which involve property damage, and
only involve cases of personal injury.  *Id.*

Georgia courts have consistently held that the true test to
determine when a cause of action accrues is to "ascertain the
time when the plaintiff could first have maintained [his or] her
action to a successful result."  *Colormatch Exteriors, Inc. v.
Hickey*, 275 Ga. 249, 251, 569 S.E.2d 495, 497 (2002)(quoting
*Travis Pruitt & Assoc. v. Bowling*, 238 Ga. App. 225, 226(1), 518
S.E.2d 452 (1999)).  These claims accrued at the time of the

alleged negligence and mishandling of remains, namely when the decedent was allegedly not cremated properly after the decedent was brought to the Tri-State premises. *See Hill, supra.* Thus, these claims must arise from *February 26, 1998 to February 26, 2002.* There is no evidence supporting claims of the negligent and intentional mishandling of any proposed class member against Layne.

Further, Plaintiffs have failed to present any evidence to support tolling the statute of limitations. This determination was already made by this Court in its Class Certification Order:

> Under O.C.G.A. § 9-3-96, the statute of
> limitations applicable to a plaintiff's claim
> may be tolled if the plaintiff can show "(1)
> actual fraud on the part of the defendant
> involving moral turpitude, (2) which conceals
> the existence of the cause of action from the
> plaintiff, and (3) plaintiff's reasonable
> diligence in discovering his cause of action,
> despite his failure to do so within the time
> of the applicable statute of limitations."
> *Gropper v. STO Corp.*, 250 Ga. App. 820, 824,
> 552 S.E.2d 118, 123, (Ga. App. 2001)(*quoting
> McClung Surveying v. Worl*, 247 Ga. App. 322,
> 324, 541 S.E.2d 703 (2000)(citations
> omitted)).

(Class Certification Order, p. 38). Under Georgia law, constructive fraud *does not* toll the statute of limitations. *See Shipman, supra.* For example, Plaintiffs have not provided *any evidence* of "actual fraud" involving "moral turpitude" on the part of Layne. Without such evidence, Plaintiffs have no grounds for tolling the four-year statute of limitations. This is not

evidence which can merely be presumed; Plaintiffs must

demonstrate Layne acted fraudulently under O.C.G.A. § 9-3-96,

which they have failed to do in this case.    Therefore, any of

proposed class members' negligence, negligent mishandling, and

willful mishandling claims against Layne are time barred and

should be dismissed.

**C.    Layne Is Entitled to Summary Judgment on any Claims of Negligence and Negligent Mishandling of Remains, as Plaintiffs and Proposed Class Members Have Suffered No Recognizable Damage Permitted under Georgia Law.**

Plaintiffs claim that Layne owed a duty to Plaintiffs and

proposed class members

> "to act with the ordinary care of a reasonable person
> with respect to all aspects of the services promised
> including, but not limited to, all phases of the
> cremation process, including but not limited to the
> hiring, retention, training and supervision of all
> agents, employees and representatives of the
> defendants, in connection with such services and
> transaction, the association with other persons and
> entities to accomplish the performance of such
> services, the individual, proper and respectful
> performance of all steps of the cremation process, and
> the ascertainment that all such services were being
> fully and properly undertaken and performed."

(Amended Complaint, ¶ 133).   Plaintiffs claim that Layne

negligently and carelessly failed to discharge this broadly

defined duty.   (Amended Complaint, ¶ 134.)

In order to prevail on a negligence claim under Georgia law,

a party must prove the following: "(1) a legal duty to conform to

a standard of conduct raised by the law for the protection of

17

others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty." *Wilson v. Mallard Creek Holdings*, 238 Ga. App. 746, 747, 519 S.E.2d 925, 926 (1999).

As previously discussed, the negligence and negligent mishandling of corpse claims alleged by any proposed class member against Layne are barred by Georgia's four (4) year statute of limitations. Yet even if the claims were not time barred, and even if Layne had breached a legal duty to ensure proper cremation, proximately causing the damages Plaintiffs have alleged, any such resulting damages sustained by Plaintiffs or proposed class members are not recoverable under Georgia law.

> 1. *No proposed class member against Layne, none of whose decedents' bodies have been identified, can recover under their negligence claims for their uncertainty as to the cremation of their decedents.*

Any proposed class members against Layne base their negligence claims on their uncertainty or fear that they have not received the correct cremated remains. None of proposed class members against Layne have decedents whose bodies were found at Tri-State. Moreover, these proposed class members do not have any evidence that the remains of their decedents were adulterated.

18

Any proposed class members against Layne are seeking to recover for their fear and uncertainty as to whether they received their decedents' remains.

Without actual evidence that the remains received are *not* the correct remains, such claims of those Plaintiffs and proposed class members whose decedents have not been identified are far too speculative to form the basis of recovery under Georgia law. Claims of uncertainty or fear have been addressed by Georgia's appellate courts in cases involving exposure to a dreaded disease or material, such as the AIDS virus or asbestos.  For example, in a decision in February 2003, the Georgia Supreme Court rejected a fear and uncertainty claim where the plaintiff alleged that she feared having contracted the AIDS virus from a blood transfusion but failed to present any evidence that she had "actual exposure" to the disease.  *Johnson v. American Nat'l Red Cross*, 276 Ga. 270, 578 S.E.2d 106 (2003).  In *Johnson,* the decedent, Ms. Mantooth, received a blood transfusion from an American Red Cross donor.  After the transfusion it was discovered that the Red Cross donor had lived in Central Africa where an undetectable strain of HIV known as "Group O" was known to exist.  Ms. Mantooth never tested positive for the AIDS virus and died of lung cancer in May, 2001.  *Id.*, 276 Ga. at 271, 578 S.E.2d at 107-108.

Ms. Mantooth (and later her executor) sought emotional

distress damages arising from her "fear" that she may have contracted AIDS.  Since there was no evidence that Ms. Mantooth had actually been exposed to the HIV virus, the trial court granted summary judgment to the Red Cross, a decision affirmed by the Court of Appeals.  *Id.*

In affirming the lower court, the Georgia Supreme Court, citing *Russaw v. Martin,* 221 Ga. App. 683, 472 S.E.2d 508 (1996), held that:

> The *[Russaw]* Court of Appeals determined that to allow the plaintiff recovery for emotional injuries and mental anguish without any proof that she was actually exposed to HIV or hepatitis was "per se unreasonable." *Russaw, supra* at 686, 472 S.E.2d 508.  In so holding, the Court of Appeals rightly reasoned that "it is axiomatic that for recovery, there must be some reasonable connection between the act or omission of a defendant and the damages which a plaintiff has suffered.  Without factual evidence of a causal connection between the alleged breach of duty and the purported damages, the damages must be considered whimsical, fanciful and above all too speculative to form the basis of recovery" *Id.* at 686, 472 S.E.2d 508.

*Johnson,* 276 Ga. at 274-275, 578 S.E.2d at 109-110.

The requirement that a plaintiff show "actual exposure" to recover for emotional injuries (e.g., fear and uncertainty) in dreaded disease cases, has also been applied in exposure to asbestos cases, and in a workers' compensation case where an employee claimed exposure to a hazardous substance.  *See Blackston v. Shook & Fletcher Insulation Co.,* 764 F.2d 1480 (11th Cir. 1985) (applying Georgia law in asbestos case); *Williams v. Flintkote Co.,*

256 Ga. App. 205, 568 S.E.2d 106 (2002) (citing *Blackston* with approval and stating that "an asbestos plaintiff must present evidence that the defendant's asbestos-containing product was used at the job site *and* that he or she was *in proximity to* that product during its use")(emphasis in original); *Willis v. Employers Fire Insurance Co.*, 153 Ga. App. 445, 265 S.E.2d 356 (1980)(workers' compensation case).

The Plaintiffs and proposed class members have suggested that they should not have the burden of proof on this issue but that it should be shifted to Layne.  There is no legal authority whatsoever for this burden shifting.

> No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed to the plaintiff.  For these reasons, the mere occurrence of an unfortunate event is not sufficient to authorize an inference of negligence.  A plaintiff must come forward with specific facts establishing a breach of duty, as well as the other elements of negligence, and may not rest upon generalized allegations.

*Hodge v. Putzel Electric Contractors, Inc.*, 260 Ga. App. 590, 594-595, 580 S.E.2d 243, 247-248 (2003)(quoting *Davis v. Blockbuster*, 258 Ga. App. 677, 678-679(1), 575 S.E.2d 1 (2002)).

The proposed class members may not base their negligence claims simply on their fear that their decedents' remains were not cremated.  They must have proof.  "A mere possibility of such causation is not enough; and when the matter remains one of pure

speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to grant summary judgment for the defendant." *Mitchell v. Austin*, 261 Ga. App. 585, 587, 583 S.E.2d 249, 251 (2003).

The proposed class members also seek to recover for negligence simply because certain of the uncremated remains found on the Tri-State property have not been identified. The presence of unidentified remains does not support a negligence claim for the proposed class members, whose cremated remains were found to be human or not tested at all.

Dr. Kris Sperry, the Chief Medical Examiner of Georgia, was involved with the location and identification of bodies from the Tri-State Crematory site from day one. *See* Deposition of Kris Sperry ("Sperry Depo."), pp. 8, 12-18. The total number of bodies found on the site was 334, with 223 of the bodies identified. *Id.*, pp.85, 90. Of the identified bodies, Dr. Sperry has found no body prior to 1997. *Id.*, p. 100.

Dr. Sperry testified that when the bodies were placed in pits, there was no evidence that there was ever any partial burial. "That is, it appears that, when a hole was dug, bodies were placed down in the holes all at one time and then dirt was placed on top of them, because we never found a single instance where there was any layering of dirt in between the bodies that were placed there." *Id.*, pp. 97-98. Based on his analysis of the bodies and the pits,

Dr. Sperry came to the conclusion that it would be unlikely that they would find any bodies prior to 1997. *Id.*, pp. 99-100. Nevertheless, Dr. Sperry decided to implement a two year buffer zone and to analyze family DNA from 1995 forward. *Id.*, p. 100. After the DNA analysis was completed, however, no body was identified with a date of death prior to 1997.[2] *Id.* Only five bodies were identified with a date of death in 1997. *Id.*, p. 104.

Any proposed class members against Layne who seek to recover for decedents sent to Tri-State Crematory prior to 1997 (Layne only sent one body to Tri-State in 2001), have no grounds whatsoever for referencing the 1997 to 2002 bodies found at Tri-State. Any proposed class members against Layne have the burden of proof for their negligence claims, and they cannot recover simply because they are unsure whether their decedents were cremated at Tri-State.

As the above authority demonstrates, merely having one's family member sent to Tri-State Crematory for cremation is an insufficient basis to prevail on a claim for fear and uncertainty that those remains may have been improperly cremated. No proposed class members against Layne can have any proof that their respective decedents were not cremated or were improperly cremated. No body sent to Tri-State by Layne has been discovered.

---

[2]There was one individual who died in 1990 and was buried. Sometime in 1997, his body was exhumed, at the family's request, to be cremated. This man remained in his casket uncremated at the

23

Without the required causal connection between their alleged fear and uncertainty and their actual damages, any claims by a proposed class member against Layne would represent the type of damages that the Georgia courts regard as "whimsical, fanciful and above all too speculative to form the basis of recovery." *Johnson*, 276 Ga. at 274, 578 S.E.2d at 110. Accordingly, any proposed class members' speculative negligence claims and their alleged damages based on fear and uncertainty should be dismissed with respect to Layne Funeral Home.

2. ***Proposed Class Members Against Layne Cannot Satisfy the Physical Impact Rule and, Therefore, Cannot Recover Emotional Distress Damages for Their Negligence Claims.***

In addition, any proposed class members against Layne cannot recover for their emotional distress under a negligence claim. Under Georgia law, "[i]n a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury." *Ryckeley v. Callaway*, 261 Ga. 828, 829, 412 S.E.2d 826, 826 (1992). *See also* Class Certification Order, p. 46; *David C. Joel, Attorney at Law, P.C. v. Chastain*, 254 Ga. App. 592, 596, 562 S.E.2d 746, 750 (2002)("As a general rule, mental distress damages are not recoverable in the absence of physical injury where the claim is premised on ordinary negligence."). Further, in the absence of allegations of physical injury, a Plaintiff is

---

Tri-State facility.  Sperry Depo., p. 104.

not entitled to recover for nervousness or anxiety.  *See Brown v. Colonial Stores, Inc.*, 110 Ga. App. 154 (1964).

Thus, even under a claim for simple negligence or for negligent interference with remains, Plaintiffs must prove physical impact to obtain any recovery for emotional distress damages.  No proposed class member seeking recovery against Layne has proven any such physical impact.  *See Statement of Facts*. Thus, even if successful on their negligence claims, any proposed class members could not recover damages for any alleged emotional distress.

A recent case, *Hang v. Wages & Sons Funeral Home, Inc.*, 2003 WL 21403762 (Ga. Ct. App. June 19, 2003) is directly on point. In that case, the Tep family sought to recover for their emotional distress when their decedent was prematurely cremated and not in accordance with the family's Buddhist rituals.  The Wages & Sons Funeral Home sought partial summary judgment for, among other reasons, that Georgia's impact rule precluded the Tep family from recovering for their alleged emotional distress.  The trial court granted this motion.

On appeal, the Georgia Court of Appeals reiterated the three elements of the impact rule:  "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress."  *Id.*  The

Court ruled that the Tep family had failed to satisfy the physical impact requirements in this mishandling of remains case.

Moreover, the Georgia Court of Appeals refused to expand the impact rule based on the case of *Lee v. State Farm Mutual Ins. Co.*, 272 Ga. 583, 533, S.E.2d 82 (2000). Although the Georgia Supreme Court carved out a narrow exception to the impact rule in that case, the Court was careful to add that:

> the impact rule, even with its shortcomings, is not without benefit. And certainly, it would be imprudent to abandon over a hundred years of Georgia precedent. What is more, we decline to adopt any rule which might, in effect, create a separate tort allowing recovery of damages for the negligent infliction of emotional distress.

*Hang v. Wages & Sons Funeral Home, Inc.*, 2003 WL 21403762 (Ga. Ct. App. June 19, 2003)(quoting *Lee*, 272 Ga. at 588, 533 S.E.2d at 86).

Plaintiffs and proposed class members may claim that they have satisfied the pecuniary damages rule. "[F]or a pecuniary loss to support a claim for damages for emotional distress, the pecuniary loss must occur as a result of a tort involving an injury to the person *even though this injury may not be physical.* An injury to the reputation would be such an injury." *Nationwide Mutual Fire Ins. Co. v. Lam*, 248 Ga. App. 134, 137, 546 S.E.2d 283, 285 (2001)(citations omitted)(emphasis in original).

For example, in *Harris v. Wall Tire Co.*, 197 Ga. App. 818, 399 S.E.2d 580 (1990), the plaintiff sought recovery for emotional distress, stemming from the left front wheel coming off the

plaintiff's car, allegedly because the tire company failed to reattach the wheel properly.  The plaintiff and his family did not sustain any physical injury, even though plaintiff maintains that he suffered stomach problems and limited sleep disturbances.  The only monetary losses plaintiff sustained resulted from damage to his vehicle.

The Georgia Court of Appeals ruled that plaintiff could not recover his emotional distress damages under the pecuniary loss rule:

> Here the pecuniary loss resulted from an "injury" to plaintiff's automobile, which sustained approximately $1,000 worth of damage.  There was no injury to plaintiff's person except the emotional distress manifested by the initial fright, a sensitized stomach thereafter, temporary loss of sleep, aggravation, and necessity to devote vacation leave to attend to car repairs.  Wall [Defendant] was entitled to the grant of partial summary judgment.

*Id.*, 197 Ga. App. 818, 818, 399 S.E.2d 580, 581 (1990).

Proposed class members have failed to show that they suffered a pecuniary loss as a result of a tort involving injury to them.  Instead, Plaintiffs' negligence claims are based on injury to their decedents' remains.

Accordingly, the proposed class members have not satisfied the physical impact requirement for their negligence claims.  Thus, emotional distress damages for these claims should be dismissed.

**3.    Any simple negligence claims of proposed class members**

27

**are barred by a two-year statute of limitations.**

Further, pursuant to O.C.G.A. § 9-3-33 a claim for injury to the person must be brought within two years after "the right of action accrues." Thus, the simple negligence claims of any proposed class member against Layne, whose decedent(s) were sent to Tri-State well before February 26, 2000, should be dismissed on the grounds of expiration of the applicable statute of limitations. This would include the simple negligence claims of any proposed class members.

**D.    Layne Should Not Be Held Vicariously Liable for the Actions of an Independent Contractor Such as Tri-State Crematory.**

Plaintiffs and proposed class members attempt to hold Layne vicariously liable for the actions of Tri-State Crematory by alleging that the crematory was the agent of the funeral home. The undisputed facts prove just the opposite - Tri-State Crematory was an independent contractor, not an agent of Layne. Thus, this Court should find as a matter of law that Tri-State and the Marshes were not the agents of Layne, and Layne cannot be held vicariously liable for the actions of these third parties.

In Georgia, the vicarious liability principle has been codified at O.C.G.A. § 51-2-2, which provides that every person shall be liable for torts committed by his wife, his child, or his servant by his command or in the prosecution and within the scope of his business, whether the same are committed by

28

negligence or voluntarily.  *See also Chorey, Taylor & Feil, P.C.*
*v. Clark,* 273 Ga. 143, 144, 539 S.E.2d 139, 140 (2000) ("Under
the principle of respondeat superior, 'employers are generally
jointly and severally liable along with the tort feasor employee
for the torts of employees committed within the scope of
employment.'")

     In Georgia, vicarious liability does not apply if Tri-State
is an independent contractor, not an agent for Layne Funeral
Home:

> Generally, an employer-employee relationship, and the
> possibility of vicarious liability under the theory of
> respondeat superior, exists when the employer has the
> right to control the time and manner of executing the
> work.  An independent contractor, on the other hand,
> has the right to perform the work by his own means,
> method and manner; the employer has the right merely to
> require certain results.

*Hooters of Augusta, Inc.  v.  Nicholson,* 245 Ga.  App.  363, 367,
537 S.E.2d 468, 472 (2000).  In other words, "[v]icarious
liability is premised upon a principal's right to control the
time and manner of executing the work performed by the agent."
*Butkus v. Putting Greens Int'l Corp.,* 222 Ga. App. 661, 663, 475
S.E.2d 693, 694-696 (1996).  The "right to control the time means
the employer has assumed the right to control the person's actual
hours of work.  The right to control the manner and method means
the employer has assumed the right to tell the person how to
perform all details of the job, including the tools he should use

and the procedures he should follow." *Williamson v. Coastal Physician Services of the Southeast, Inc.,* 251 Ga. App. 667, 668, 554 S.E.2d 739, 741 (2001).

As shown by the attached Deposition of Dale Layne, Mr. Layne did not see or speak with anyone at Tri-State Crematory nor set foot on Tri-State Crematory's premises. (Layne Deposition, pp. 18, 19, 9, respectively)  As a result, it is ludicrous for the proposed plaintiffs to allege that Layne controlled Tri-State Crematory's hours of work, told Tri-State how to perform the cremation, or instruct Ray Marsh to utilize a certain crematory manufacturer, or use specific tools or materials associated with the cremation process.  Thus, Layne's testimony indicates that Tri-State acted as an independent contractor when it performed the cremation of Mr. Anderson.

Through the attached deposition testimony, Layne has established that Tri-State Crematory was only an independent contractor, and not its agent:

> It has long been the Georgia rule that one who is a party to the alleged relationship (the principal or agent) may testify as a fact as to the existence or non-existence of the relationship and that such testimony would not be subject to the objection that the statement was a conclusion or the ultimate fact. The denial of the existence of any agency relationship may thus constitute an uncontradicted fact which will sustain a motion for summary judgment.

*Stallings v. Sylvania Ford-Mercury, Inc.,* 242 Ga. App. 731, 733, 533 S.E.2d 731, 733 (2000).  *See also Entertainment Developers,*

*Inc. v. Relco, Inc.*, 172 Ga. App. 176, 177, 322 S.E.2d 304, 305 (1984)("When a party to an alleged agency relationship denies that such a relationship exists, that is a statement of fact.")(citations omitted).

Proposed class members have the burden of proof as to their agency allegations.  "[W]here the existence of any agency is relied upon, the burden rests with the party asserting the relationship." *Carter v. Kim*, 157 Ga. App. 418, 418, 277 S.E.2d 776, 776 (1981).  Because Layne Funeral Home has presented facts showing that Tri-State and the Marshes were not its agents, proposed class members may not respond with unsupported allegations of agency but instead must present specific facts showing an agency relationship. *See Bell South Telecommunications, Inc. v. Widner*, 229 Ga. App. 634, 636, 495 S.E.2d 52, 55 (1997).  "Exhibiting the mere possibility of a control situation falls short of the specific facts required." *Id.* (citations omitted.)  In this case, proposed class members cannot satisfy their agency burden of proof.

Accordingly, the undisputed facts prove that Tri-State Crematory was an independent contractor, not an agent of Layne. Without any agency relationship, Layne could not be held vicariously liable for the acts of Tri-State under O.C.G.A. § 51-2-2, and Plaintiffs' negligence claims should be dismissed.

**E.   Plaintiffs' and Proposed Class Members Negligence Claims**

31

**Fail Because Tri-State's Acts Were Unforeseeable as a Matter of Law.**

Regardless of whether Tri-State was Layne's agent or independent contractor, the actions of Tri-State were wholly personal to Tri-State, *see Hobbs v. Principal Financial Group, Inc.*, 230 Ga. App. 410, 497 S.E.2d 243 (1998), and Plaintiffs and proposed class members' negligence claims fail because Tri-State's acts were unforeseeable as a matter of law.

Plaintiffs' and proposed class members' claims of negligence and negligent interference with remains and mishandling of a corpse involve general principles of negligence, which "consists of exposing someone to whom a duty of care is owed to a foreseeable, unreasonable probability of harm." *Amos v. City of Butler*, 242 Ga. App. 505, 506, 529 S.E.2d 420, 422 (2000). As succinctly stated in *Amos*,

> Foresight requires the ability to anticipate a risk of harm from the conduct in some form.  Thus, the legal duty to exercise ordinary care arises form the foreseeable, unreasonable risk of harm from such conduct.  Negligence is predicated on what should be anticipated, rather than on *what happened,* because one is not bound to anticipate or foresee and provide against what is unlikely, remote slightly probable, or slightly possible.

242 Ga. App. at 506, 422 (internal citations omitted) (emphasis added).

In this case, Plaintiffs' refrain is seductive:  it focuses on the unimaginable horror of *what happened* at Tri-State.  But a

determination of "what happened" is only part of the required
analysis. "What happened" may be enough to establish a claim
against the Tri-State Defendants, but its "unimaginable"
attribute defeats any claim against Layne Funeral Homes. Indeed,
it is beyond peradventure that the criminal acts and omissions of
the Tri-State Defendants were not likely or probable. Even the
possibility of such occurrence was remote or, as the spontaneous
reactions testify to, "unimaginable."

Under Georgia case law:

"In order to hold the [Funeral Home Defendants] liable,
it must be shown "either that the act complained of was
the sole occasion of the injury, or that it put in
operation other causal forces, such as were the direct,
natural, and probable consequences of the original act,
or that the intervening agency could have reasonably
been anticipated or foreseen by the [Funeral Home
Defendants] as the original wrongdoer[s]." *Stapleton
v. Amerson*, 96 Ga. App. 471, 472 (2d), 100 S.E.2d 628
(1957). "Negligence is not actionable unless it is the
proximate cause of the injury complained of. 'The
question of proximate cause depends upon the facts of
each particular case, and, in ascertaining in a
particular case what was the proximate cause of the
injury, the conclusion reached depends upon whether the
injury alleged was such a natural and probable
consequence, under the circumstances of the case, as
that it might and ought to have been foreseen by the
wrongdoer as likely to ensue from his act.' '(A)
wrongdoer is not responsible for a consequence which is
merely possible, according to occasional experience,
but only for a consequence which is probable, according
to ordinary and usual experience. The nature and
probable consequences are those which human foresight
can foresee, because they happen so frequently that
they may be expected to happen again. The possible
consequences are those which happen so infrequently
that they are not expected to happen again. *A man's
responsibility for his negligence must end somewhere.*'

(Emphasis supplied)   *Rustin Stamp & c.v. Ray Bros.*, 175
Ga. App. 30, 31-32 (1), 332 S.E.2d 341 (1985).

*Jacobs v. Taylor*, 190 Ga.App. 520, 525-6 (1989) (emphasis
original).

As a group, the Funeral Homes' act of hiring Tri-State in
the first place certainly cannot be said to have "put in
operation" *what happened*, i.e., Tri-State's criminal failure to
cremate bodies entrusted to it.  At the absolute *most*, the
Funeral Homes might, by entrusting the bodies to Tri-State, have
furnished only the condition or occasion of the injury.  It is
black-letter law that such acts do not constitute proximate
cause.  *Whitaker v. Jones, etc. Co.*, 69 Ga. App. 711(1), 26
S.E.2d 545 (1943).

Layne Funeral Home's act of hiring Tri-State was far removed
from the subsequent criminal treatment of the bodies by Tri-
State, and that treatment, as evidenced by the undisputed shock
to everyone upon its discovery, was anything but natural and
probable and reasonable.  Plaintiffs and proposed class members
have presented no evidence whatsoever that the criminal activity
of the Tri-State Defendants could have been reasonably
anticipated by Layne.

> It is well settled that there can be no proximate cause
> where there has intervened between the act of the
> defendant and the injury to the plaintiff, an
> independent, intervening, act of someone other than the
> defendant, which was not foreseeable by defendant, was
> not triggered by defendant's act, and which was

> sufficient of itself to cause the injury.  Similarly,
> an intervening criminal act of a third party, without
> which the injury would not have occurred, will be
> treated as the proximate cause of the injury thus
> breaking the causal connection between the defendants'
> negligence and the injury unless the criminal act was a
> reasonably foreseeable consequence of the defendants'
> conduct.

*Walker v. Hammock*, 246 Ga. App. 640, 641-42, 541 S.E.2d 439, 440

(2000) (footnotes and citations omitted).

Finally, a very recent case, *Griffin v. Fowler*, 260 Ga. App.

443, 579 S.E.2d 848 (2003), punctuates the clear state of

foreseeability jurisprudence in Georgia.  *See id.*  In *Griffin*, an

attorney was accused of a breach of his fiduciary duty to his

client for, among other things, failing to warn the client of his

concerns about the appointment of a particular trustee to handle

certain estate trusts.  *See id.*  The court held that, even in a

case involving the heightened obligation of a lawyer to his

client, *i.e.*, a fiduciary relationship, foreseeability is still

an essential for liability to attach.  *See id.*  The court noted

that "there [was] no evidence in the record demonstrating [the

lawyer's] awareness of any facts that would lead him to conclude

that [the trustee] was untrustworthy."  *Id.* at 448-49.  Indeed,

unlike the facts in the case at bar, the court found that, even

in the face of the *lawyer's suspicions about the trustee*, the

lawyer could not be held liable for the trustee's "intervening

act of making an unauthorized withdrawal from [the Plaintiff's]

35

trust." *Id.* at 449.

As these cases make clear, the utter lack of foreseeability of the very extraordinary, improbable, and criminal acts and omissions of Tri-State prevent Plaintiffs from maintaining a negligence action against Layne.

**F.    Layne Did Not Have any Nondelegable Duty With Respect to the Remains.**

Plaintiffs and proposed class members also argue that Layne should be liable for Tri-State's actions because the duties imposed on the funeral home are nondelegable. "As a general rule an employer is not liable for the torts of an independent contractor.  O.C.G.A. § 51-2-4." *Widner v. Brookins, Inc.*, 236 Ga. App. 563, 564, 512 S.E.2d 405, 406 (1999).  Pursuant to O.C.G.A. § 51-2-5, an employer is liable for the *negligence* of an independent contractor in the listed six specific situations.

Plaintiffs' and proposed class members' claim for willful interference with remains and intentional mishandling of a corpse, however, does not qualify as a negligence claim.  Thus, O.C.G.A. § 51-2-5 is inapplicable to this claim, and there is no basis for holding Layne liable for the alleged intentional actions of Tri-State and the Marshes. Accordingly, Layne should

be granted summary judgment on the Plaintiffs' and proposed class members' intentional mishandling claim.

To understand Plaintiffs' and proposed class members' nondelegable duty allegations with respect to the remaining negligence claims, the statute at issue, O.C.G.A. § 51-2-5, must first be examined.  An employer is liable for the negligence of a contractor:

> (1) When the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance;
>
> (2) If, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed;
>
> (3) If the wrongful act is the violation of a duty imposed by express contract upon the employer;
>
> (4) If the wrongful act is the violation of a duty imposed by statute;
>
> (5) If the employer retains the right to direct or control the time and the relation of master and servant so that an injury results which is traceable to his interference; or
>
> (6) If the employer ratifies the unauthorized wrong of the independent contractor.

O.C.G.A. § 51-2-5.

Plaintiffs and proposed class members appear to rely on subsections (2), (3) and (4) in support of their position that Layne should be liable for the alleged negligence of Tri-State Crematory.  First, Plaintiffs and proposed class members contend that the handling of human remains is inherently dangerous and,

37

therefore, a nondelegable duty.  Plaintiffs, however, overlook

Georgia courts' construction of this section.  "Georgia courts

have held that work is not 'dangerous to others, however

carefully performed' if the danger results from doing the work in

an unsafe manner when there is a safe way of doing the work."

*Horn v. C.L. Osborn Contracting Co.*, 591 F.2d 318, 320 (5th Cir.

1979)(citations omitted).  Examples of intrinsically dangerous

work "include blasting operations, fumigation of premises,

*spraying from airplanes,  the escape of a dangerous animal,*

emitting sparks from a railway engine, [and] raising an

embankment which is unguarded."  *Community Gas Co. v. Williams*,

87 Ga. App. 68, 80, 73 S.E.2d 119, 129 (1952) (citations

omitted).

The Eleventh Circuit has examined this issue in the context

of electricity.  In *Gillespie*, the Georgia Court of Appeals

stated:

> [w]e are unwilling to hold that electricity is a
> substance so inherently dangerous that a power company
> may not contract for the building of power lines with
> an independent contractor and absolve itself from
> liability for an injury which occurs solely because of
> the negligence of such independent contractor in the
> doing of the work.

49 Ga. App. at 794, 176 S.E. at 789.  Thus, Plaintiffs' reliance

upon O.C.G.A. § 51-2-5(2) providing for liability when the work

is "dangerous to others however carefully performed," is

misplaced.  *Jenkins v. Georgia Power Co.*, 849 F.2d 507, 509 (11th

38

Cir. 1988)(quoting *Georgia Power Co. v. Gillespie*, 49 Ga. App. 788, 794, 167 S.E.2d 786, 789 (1934)).

In this case, handling or cremation of a decedent is not dangerous to others if carefully performed.  As Dr. Kris Sperry, Georgia's Chief Medical Examiner, testified, embalmed bodies provide no health and safety hazard.  Sperry Depo., p. 278.  As for unembalmed bodies, "unless one cuts oneself while contaminated with body fluids from someone, say who has AIDS or hepatitis B or hepatitis C," there is no biohazard.  *Id.*, pp. 278-279.  "[P]eople think that there's, you know, a miasma that exudes off of dead bodies and that's going to, you know, come -- make someone come down with infectious diseases and that's ridiculous."  *Id.*, p. 279.   *See Walton v. United States*, 484 F. Supp. 568, 575 (S.D. Ga. 1980)("Although the handling of the dead merits special care in view of the sanctity of the remains to living family members, I cannot conclude that the transfer of a body is in 'its nature dangerous to others however carefully performed.'")(citations omitted).

Because cremation is **not** in its nature dangerous to others however carefully performed, Plaintiffs cannot rely on O.C.G.A. § 51-2-5(2) to create a nondelegable duty.

Second, Plaintiffs contend Layne could not delegate cremations to Tri-State Crematory because the duty was imposed by

39

express contract on the funeral home.   *See* O.C.G.A. § 51-2-5(3).
The paperwork with respect to a decedent included a Cremation
Authorization form identifying Tri-State as the party performing
the cremation.   This form does not contain any statement that
Layne Funeral Home agreed to be responsible for Tri-State's
conduct or actions.

In *Toys 'R' Us, Inc. v. Atlanta Economic Dev. Corp.*, 195 Ga.
App. 195, 196, 393 S.E.2d 44, 47 (1990), the Georgia Court of
Appeals found that O.C.G.A. § 51-2-5(3) requires "an express
obligation by the employer to be responsible for the independent
contractor's conduct."   "Also, the cases which have construed the
statutory exception in the Georgia Code above cited have
emphasized the word 'express' and the necessity that such
contractual obligation be placed upon the particular employer as
opposed to any independent contractor."   *Fields v. B&B Pipeline
Co.*, 147 Ga. App. 875, 876-877, 250 S.E.2d 582, 5831978)
(citations omitted).

In this case, Layne notified proposed class members that
Tri-State Crematory would be performing the cremation.   (See
Statement of Facts; Exhibit "B".)   Layne did not assume or hold
itself out as assuming responsibility for Tri-State Crematory.
(*See* Statement of Facts.)   Accordingly, there is no "violation of
a duty imposed by express contract" upon Layne and no creation of
a nondelegable duty.

Third, Plaintiffs allege that the duty to handle the human remains is nondelegable because it is a duty imposed by statute. Plaintiffs do not identify the statute that they are relying on. Such a statutory duty, however, must be clearly stated.  For example, a nondelegable duty of the owner or occupier of land to an invitee is created in O.C.G.A. § 51-3-1 which provides as follows:

> Where an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe.

See FPI Atlanta, L.P. v. Seaton, 240 Ga. App. 880, 886, 524 S.E.2d 524, 530 (1999) ("O.C.G.A. § 51-3-1 imposes a personal nondelegable duty upon the landlord to keep the premises and approaches safe when it retains possession and control.").

An examination of the applicable statutes governing funeral homes and crematories shows that no such personal and nondelegable duty exists.  See O.C.G.A.  § 43-18-1 through 43-18-75.  Instead, the Georgia Board of Funeral Service "may adopt and enforce such rules as may be reasonable and necessary to provide for the sanitary disposal of dead human bodies and prevent the spread of disease and to protect the health, safety and welfare of the people of this state."  O.C.G.A. § 43-18-72(b).  Further, the Board is authorized to "fix and prescribe

41

standards of sanitation to be observed in the embalming of dead
human bodies or cremation of dead human bodies." O.C.G.A. § 43-
18-23(4). This same Board of Funeral Service, although aware of
Tri-State's operations and unlicensed status after 1994, did not
stop Tri-State from cremating bodies. Deposition of John Massey
("Massey Depo."), pp. 15, 88-89, 165. In contrast, these
statutory provisions do not place any affirmative, nondelegable
duty on funeral homes with respect to cremation by a separate
entity.

Plaintiffs hint that a nondelegable duty exists because of
the necessity of protecting the health and safety of the public.
O.C.G.A. § 43-18-2 places this burden on the state, not
individual funeral homes. See O.C.G.A. § 43-18-2 ("It is
declared that this article shall be deemed an exercise of the
health powers of the state for the prevention of the spread of
infectious, communicable, and contagious diseases and for the
protection of the sanitation, health and welfare of the people of
this state . . ."). Compare Williams v. Dept. of Corrections,
224 Ga. App. 571, 481 S.E.2d 272 (1997)(State of Georgia has a
statutory, nondelegable duty to protect the health and safety of
prisoners in its custody.)

Moreover, Plaintiffs reference the health hazard issue to
support a claim of negligence per se against the funeral homes,
even though Plaintiffs and proposed class members are not seeking

42

damages for any health hazard but for failure to cremate their
decedents. "In determining whether the violation of a statute or
ordinance is negligence *per se* as to a particular person, it is
necessary to examine the purposes of the legislation and decide
(1) whether the injured person falls within the class of persons
it was intended to protect and (2) whether the harm complained of
was the harm it was intended to guard against.'" *Horney v.
Panter*, 204 Ga. App. 474, 476, 420 S.E.2d 8, 10 (1992)(quoting
*Potts v. Fidelity Fruit & Produce Co.*, 165 Ga. App. 546, 547, 301
S.E.2d 903, 904 (1983)).  First, Plaintiffs have not referenced
any statute or ordinance Layne has violated.  Second, Plaintiffs
and proposed class members, family members of decedents, do not
fall within the class of persons this health hazard statute was
intended to protect.  These Plaintiffs and proposed class members
do not participate in the care, burial or cremation of dead
bodies and are, therefore, not subject to any possible health
risk from the bodies.  Moreover, these Plaintiffs and proposed
class members did not spend time at the Tri-State property, where
the uncremated bodies were located.  Third, Plaintiffs and
proposed class members are not complaining in this lawsuit of
harm from any health hazard.  Finally, the alleged improper
handling of the decedents is by the Tri-State Defendants, not
Layne.  For these reasons, Plaintiffs' negligence per se argument
is without merit.

As for *Smith v. Poteet*, 127 Ga. App. 735, 195 S.E.2d 213, this 1972 case was decided prior to the widespread use of cremation and the Georgia statutory rules and regulations referencing cremations and crematories.  Thus, this case is inapposite to the use of a crematory which was not subject to any licensing requirement under Georgia's statutes and regulations.

Accordingly, Plaintiffs and proposed class members have failed to show any applicable statutory, nondelegable duty for funeral homes with respect to the cremations by Tri-State.  For these reasons, Layne should be granted summary judgment on all of Plaintiffs' and proposed class members' negligence claims.

**G.   Plaintiffs' and Proposed Class Members' Claim of Willful Interference with Remains and Intentional Mishandling of a Corpse Claim Should Be Dismissed, as There Is Absolutely No Evidence Layne Intentionally and Willfully Mishandled Any Decedents, Including Plaintiffs' and Proposed Class Members' Decedents.**

Plaintiffs and proposed class members simply have no evidence Layne willfully or intentionally mishandled the remains of their respective decedents, assuming their claims survive despite the four-year statute of limitations.  In Georgia, a willful interference with remains claim is based in the "quasi-property right" in the body of the deceased by the next of kin. *See Hill v. City or Fort Valley*, 251 Ga. App. 615 (2001); *McCoy v. Georgia Baptist Hospital*, 167 Ga. App. 495, 306 S.E.2d 746 (1983); *Rivers v. Greenwood Cemetery*, 194 Ga. 524, 22 S.E.2d 134

44

(1942).  This quasi-property right is not pecuniary in nature; it only encompasses the power to ensure that a corpse is "orderly handled and laid to rest, nothing more."  *Bauer v. North Fulton Medical Center*, 241 Ga. App. 568, 571, 527 S.E.2d 240, 244 (1999).

For an intentional mishandling of a corpse claim, a "demonstration of mere negligence is not sufficient to show willful or wanton behavior.  In order to prove willful or wanton conduct, a plaintiff must demonstrate the actions of a defendant were 'such as to evidence a willful intention to inflict the injury, or else [were] so reckless or so charged with indifference to the consequences . . . to justify . . . finding a wantonness equivalent in spirit to actual intent.'"  *McNeal Loftis, Inc. v. Helmey*, 218 Ga. App. 628, 629, 462 S.E.2d 789, 790 (1995).

In *McNeal Loftis*, the Court of Appeals reversed the denial of summary judgment against a cemetery owner because the surviving spouse failed to show the cemetery owner's conduct rose to the level of willful or intentional interference with the burial of her husband.  Citing *Habersham Mem. Park v. Moore*, the Court held that the plaintiff wife failed to show the conduct of the cemetery was "so wanton that it could serve as the functional equivalent of intentional conduct."  *Id.*  The Court held the actions of the cemetery in attempting to mitigate the problems

45

which arose at the cemetery site before the service revealed that the cemetery had concern for the consequences of its actions and was "not behaving wantonly." *Id.* at 630, 462 S.E.2d at 790.

In this case, as in *McNeal Loftis*, neither Plaintiffs nor proposed class members have any evidence that Layne willfully interfered or hindered the proper cremation of their respective decedents. Nor is there any evidence Layne was behaving wantonly or in complete disregard for consequences.

Plaintiffs and proposed class members also cannot rely on O.C.G.A. § 51-2-5 as grounds for holding Layne liable for the alleged intentional actions of Tri-State as its independent contractor. According to O.C.G.A. § 51-2-5, an "employer is liable for the *negligence* of a contractor" in six specific instances, none of which apply in this case. (Emphasis added). Plaintiffs' and proposed class members' claim for willful interference with remains and intentional mishandling of a corpse clearly requires evidence beyond negligence. Thus, O.C.G.A. § 51-2-5 is inapplicable to this claim. Plaintiffs and proposed class members have failed to satisfy their burden of proof against Layne in establishing their claim of intentional mishandling, assuming such a claim is not time-barred by a four-year statute of limitations. Plaintiffs and proposed class members have not presented any evidence that this funeral home willfully or intentionally mishandled any corpse whatsoever, and

46

their claims should be dismissed.   (Id., ¶ 21.)

**H.   Layne Funeral Home Should Be Granted Summary Judgment on Plaintiffs' and Proposed Class Members' Fraudulent Conduct by Funeral Homes Claim.**

In the Class Certification Order, the Court did not certify Plaintiffs' alleged fraudulent conduct by funeral homes claim in the class action; however, any such claim by a Plaintiff or proposed class member against Layne should be barred.

Under Georgia law, "[t]he tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams*, 258 Ga. 806, 806, 375 S.E.2d 223, 224 (1989).

As previously discussed, in this case, no Plaintiff or proposed class member has any evidence that Layne willfully interfered or hindered the proper cremation of their respective decedents.   Indeed, Layne never had any actual or constructive knowledge that anything was amiss at Tri-State or with any of the Marsh family members prior to February 2002.

Moreover, also as previously discussed, without actual evidence that the remains received are *not* the correct remains, such claims of those Plaintiffs and proposed class members whose decedents have not been identified are far too speculative to form the basis of recovery under Georgia law.

Accordingly, Plaintiffs and proposed class members clearly

47

cannot establish the requirements of a claim for fraudulent
conduct with respect to Layne.

I.   **Layne Funeral Home Should Be Granted Summary Judgment on
     Plaintiffs' Intentional Infliction of Emotional Distress
     Claim.**

In the Class Certification Order, the Court did not certify
Plaintiffs' intentional infliction of emotional distress claim in
the class action; however, any such claim by any Plaintiff or
proposed class members against Layne should be barred.

Intentional infliction of emotional harm is a very difficult
tort to prove.  Such a claim in Georgia "requires evidence of
four essential elements: (1) the conduct must be intentional and
reckless; (2) the conduct must be extreme and outrageous; (3) the
existence of a causal connection between the wrongful conduct and
the emotional distress; and (4) the emotional distress must be
severe." *Board of Public Safety v. Jordan*, 252 Ga.  App.  577,
586, 556 S.E.2d 837, 844 (2001).

The stumbling block for most intentional infliction of
emotional harm claims is the requirement that the conduct be
extreme and outrageous.  "The conduct must be 'so outrageous in
character, and so extreme in degree, as to go beyond all possible
bounds of decency, and to be regarded as atrocious, and utterly
intolerable in a civilized community.'" *Hill v. City of Fort
Valley*, 251 Ga. App. 615, 616-617, 554 S.E.2d 783, 785 (2001)
(quoting *Northside Hosp. v. Ruotanen*, 246 Ga. App. 433, 435, 541

48

S.E.2d 66 (2000)).  "'[I]t is not enough that [the defendant's]
conduct in a given situation is intentional or that it is willful
and wanton.  In order to warrant recovery ... the conduct also
must be of such serious import as to *naturally* give rise to such
intense feelings of humiliation, embarrassment, fright or extreme
outrage as to cause severe emotional distress.  Otherwise, the
conduct will not rise to the requisite level of outrageousness
and egregiousness." *St. Mary's Hospital of Athens, Inc. v.
Radiology Professional Corp.*, 205 Ga. App. 121, 123, 421 S.E.2d
731, 734 (1992) (citations omitted) (emphasis in original).  "The
issue of whether the conduct at issue rises to the requisite
level of outrageousness is a question of law for the trial
court." *Jordan*, 252 Ga.  App.  at 586, 556 S.E.2d at 844.

Moreover, if a plaintiff cannot demonstrate any physical
injury as a result of the intentional infliction of emotional
harm, he must show that the conduct was "malicious, willful or
wanton." *Hill v. City of Fort Valley*, 251 Ga. App. 615, 617, 554
S.E.2d 783, 785 (2001).  For example, in *Hill*, the court held
that even if the funeral home was "insensitive or negligent in
failing to obtain the express permission of the plaintiffs prior
to moving their mother's grave," the funeral home's conduct did
not demonstrate sufficient willfulness or wantonness to support a
claim for intentional infliction of emotional harm.  *Id.  See
also Hall v. Carney*, 236 Ga. App. 172, 174, 511 S.E.2d 271, 274

49

(1999) (claim based upon intentional infliction of emotional harm must fail because conduct was not malicious, willful or wanton). In addition, "the plaintiffs must show that the conduct of the defendants was directed towards them." *Hill*, 251 Ga. App. at 617, 554 S.E.2d at 786.

Plaintiffs and proposed class members asserting claims against Layne have not presented any evidence of physical injury as a result of this tort.  Further, Layne denies that its conduct was "malicious, wilful or wanton."  *See also Ryckeley v. Callaway*, 261 Ga.  828, 829, 412 S.E.2d 826, 827 (1992) ("[E]ven malicious, willful or wanton conduct will not warrant a recovery for the infliction of emotional distress if the conduct was not directed *toward the plaintiff*.") (emphasis added).

As for any decedents found on the Tri-State property, Plaintiffs contend that Layne Funeral Home should be vicariously liable for the actions of Tri-State Crematory.  As discussed in the negligence section, Tri-State was an independent contractor, not an agent of Layne Funeral Home.  Thus, Layne cannot be held vicariously liable for any alleged intentional infliction of emotional harm by Tri-State.

According to  O.C.G.A. § 51-2-5, an "employer is liable for the **negligence** of a contractor" in six specific instances. (Emphasis added.)  Plaintiffs' claim for intentional infliction of emotional harm does not qualify as a negligence claim.  Thus,

as previously discussed, O.C.G.A. § 51-2-5 is inapplicable to this claim, and there is no basis for holding Layne liable for the alleged intentional actions of Tri-State and the Marshes.

### V.   CONCLUSION

For all of the foregoing reasons, Defendant Layne Funeral Home respectfully requests that the Court grant it Summary Judgment on all of the claims of any Plaintiff or potential class member.  Counsel for the plaintiffs do not represent any member of the Anderson family, the only decedent that Layne Funeral Home sent to Tri-State.  Unless the plaintiffs counsel can demonstrate to this Court that they represent the Anderson family or that Layne sent other decedents to Tri-State, Layne is entitled to Summary Judgment as a matter of law.

Respectfully submitted this ____ day of October, 2003,


COZEN O'CONNOR


JOHN L. CHOATE BY ALLAN LEVIN #448124
JOHN L. CHOATE                    W/ EXP.
Georgia Bar No. 124965              PERMISSION
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, GA  30308
Telephone:  (404) 572-2000
Facsimile:  (404) 572-2199

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **Layne Funeral Home, Inc.'s Brief in Support of Summary Judgment** upon all parties to this matter by depositing a true copy of same in the United States Mail, in a properly addressed envelope with adequate postage thereon to the counsel of record as follows:

**PLAINTIFFS' LIAISON COUNSEL:**
Robert H. Smalley, III, Esq.
**McCAMY, PHILLIPS,**
**TUGGLE & FORDHAM, LLP**
P.O. Box 1105
Dalton, Georgia  30720-1105

**PLAINTIFFS' LEAD COUNSEL:**
Elizabeth J. Cabraser, Esq.
**LIEFF, CABRASER,**
**HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California  94111

**COUNSEL FOR SCI DEFENDANTS AND LEAD**
**AND LIAISON COUNSEL FOR FUNERAL HOME DEFENDANTS:**
J. Anderson Davis, Esq.
Robert M. Brinson, Esq.
**BRINSON, ASKEW, BERRY, SEIGLER,**
**   RICHARDSON & DAVIS, LLP**
The Omberg House
615 West First Street
P.O. Box 5513
Rome, Georgia  30162-5513

**LIAISON/LEAD COUNSEL FOR DEFENDANTS,**
**T. RAY BRENT MARSH & TRI-STATE CREMATORY:**
McCracken K. Poston, Jr., Esq.
**OFFICE OF MCCRACKEN POSTON, JR.**
P.O. Box 1130
Ringgold, Georgia 30736

Frank E. Jenkins, III, Esq.
**JENKINS & OLSON**
15 South Public Square
Cartersville, GA  30120-3350

     This 16TH day of October, 2003.


JOHN L. CHOATE
Georgia Bar No. 124965
SunTrust Plaza, Suite 2200
303 Peachtree Street, N.E.
Atlanta, GA  30308
Telephone:  (404) 572-2000
Facsimile:  (404) 572-2199



# ATTACHMENTS TO

# DOCKET # 612

# COULD NOT BE SCANNED BECAUSE OF THE FOLLOWING:

❏ Legal Size Documents
❏ Large Exhibits
☒ Double Sided Documents
❏ Other _____

_____

(To be scanned in the place of the above attachments.)