FILED IN OPEN COURT
OCT 1 7 2003
Luther D. Thomas, Clerk

By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE
CREMATORY LITIGATION

MDL DOCKET NO. 1467

## PARTIAL SETTLEMENT AGREEMENT
## REGARDING CLAIMS AGAINST BUCKNER-RUSH DEFENDANTS

**I.     RECITALS**

Subject to Court approval as provided herein, the Parties to this

Agreement hereby stipulate and agree that, in consideration of the promises

and covenants set forth in this Agreement and upon the entry by the Court of

a Final Order and Judgment approving this Agreement and directing its

implementation, the claims in this Action against Defendants Buckner-Rush

Enterprises, Inc., Prime Succession, Inc., Prime Succession Holdings, Inc.,

and Prime Succession of Tennessee, Inc. (collectively hereinafter, "Buckner-

Rush Defendants") shall be settled and compromised upon the terms and

conditions contained in this Agreement.

WHEREAS, a class action complaint is pending in the United

States District Court for the Northern District of Georgia, Rome Division

against the Buckner-Rush Defendants, alleging that the Buckner-Rush

620

Defendants breached contracts with Settlement Subclass Members and mishandled the human remains delivered to the Buckner-Rush Defendants by Class Members by negligently engaging Tri-State Crematory and thereafter negligently failing to monitor and supervise Tri-State to cremate the remains;

WHEREAS, the Buckner-Rush Defendants have denied and objected to, and continue to deny and object to, any wrongdoing or liability to Class Members in this Action, and have raised numerous defenses;

WHEREAS, based upon extensive analysis of the facts and the law applicable to Class Members' claims, and taking into account the burdens and expenses of litigation, including the risks and uncertainties associated with a potentially protracted trial and appeal, and the fair, cost-effective and assured method of resolving by agreement Plaintiffs' claims and the claims of the Settlement Subclass, Class Counsel have concluded that this Agreement provides substantial benefits to the Settlement Subclass and is fair, reasonable, adequate and in the bests interests of the Settlement Subclass as a whole;

WHEREAS, the Buckner-Rush Defendants have similarly concluded that this Agreement is desirable in order to avoid the time, risks and expense of defending protracted litigation, and to resolve finally and

completely the claims of Plaintiffs and the Settlement Subclass;

WHEREAS, the Parties hereto have engaged in extensive, arms'-length settlement negotiations for a period of several months via in-person meetings, telephone conferences, and correspondence;

WHEREAS, the Parties hereto are in agreement that this Settlement provides a fair and just resolution of the Class Representatives' and Settlement Subclass Members' claims arising from the alleged mishandling of human remains at Tri-State Crematory between January 1, 1988 and February 15, 2002;

WHEREAS, on August 14, 2003, the Parties, through their respective Counsel, entered into a Memorandum of Understanding in Settlement of Subclass Members' claims against the Buckner-Rush Defendants in this Action;

WHEREAS, Plaintiffs and the Buckner-Rush Defendants intend by this Agreement to resolve, terminate and finally conclude any and all Settled Claims under the terms of this Agreement; and

WHEREAS, the Parties agree that all Settlement Subclass Members shall have the right to be excluded ("opt out") from the Settlement as provided in this Agreement;

NOW, THEREFORE, the Parties stipulate and agree that any

and all Settled Claims shall be finally settled, resolved, and dismissed with prejudice on the terms and conditions set forth in this Agreement, subject to Court approval of this Agreement as a fair, reasonable and adequate settlement pursuant to Federal Rule of Civil Procedure 23(e), and entry of a Final Order and Judgment accordingly.

## II.   **DEFINITIONS**

As used in this Agreement and any exhibits hereto, and in addition to any definitions elsewhere in this Agreement, the following terms shall have the meanings set forth below:

**Action** means the above-captioned matter, <u>In re: Tri-State Crematory Litigation</u>, MDL Docket No. 1467.

**Agreement** means this Settlement Agreement, including any exhibits attached hereto.

**Award** means the cash sum to be paid to individual Eligible Claimants pursuant to the Claims Process set forth in Section VI of this Agreement.

**Buckner-Rush Defendants** means Defendants Buckner-Rush Enterprises, Inc., Prime Succession, Inc., Prime Succession Holdings, Inc., and Prime Succession of Tennessee, Inc.

**Defense Counsel** means the law firm of Drew, Eckl &

Farnham, L.L.P.

**Business Day** means any day except a Saturday, Sunday or other day on which commercial banks in Georgia are authorized by law to close.

**Claim Form** means a form, substantially in accordance with Exhibit A, as referred to in Section VI of this Agreement, and submitted by a Settlement Class Member to the Claims Administrator, during the Claims Period.

**Claims Period** means the period commencing upon the Notice Date and ending on a date certain no sooner than 45 days thereafter, such date to be set by the Court.

**Claims Process** means the procedures for obtaining an Award set forth in Section VI of this Agreement.

**Class Counsel** means the law firms of McCamy, Phillips, Tuggle & Fordham, LLP; Lieff, Cabraser, Heimann & Bernstein, LLP; Shumaker, Witt, Gaither & Whitaker; Law Offices of David Randolph Smith; Fleissner & Associates; Coppedge & Leman; Doffermyre, Shields, Canfield, Knowles & Devine; Mabry & McClelland, LLP; Barrett Law Office; and Sims, Graddick & Dodson, P.C.

**Class Notice** means the Court-approved direct mail and

publication notice referred to in Section V of this Agreement, and substantially in the form of Exhibit B.

**Court** means the United States District Court for the Northern District of Georgia, Rome Division.

**Eligible Claimant** means a Settlement Class Member who submits a Claim Form within the Claims Period that is properly completed and executed, and who satisfies the requirements for receiving an Award under this Agreement.

**Fairness Hearing** means the hearing to be conducted by the Court in connection with a determination of the fairness, adequacy and reasonableness of this Agreement, and to consider Class Counsel's application for an award of attorneys' fees and costs.

**Final Order and Judgment** means the Final Order and Judgment dismissing the Buckner-Rush Defendants with Prejudice pursuant to Federal Rule of Civil Procedure 23(e) to be entered by the Court, approving this Agreement without material alterations as fair, adequate and reasonable; confirming the certification of the Settlement Subclass for purposes of entry of judgment; and making such other findings and determinations as the Court deems necessary and appropriate to effectuate the terms of this Agreement.

**Next of kin** means the next of kin under the provision of Georgia law regarding intestate succession.  For instance, next of kin means:

(a)   surviving spouse;
(b)   if there is no surviving spouse, the child or children;
(c)   if there is no surviving spouse and no surviving child, the parent;
(d)   if there is no surviving spouse, no surviving child and no surviving parent, then sibling.

The determination of next of kin is at the time the claim is made for an Award under this Agreement.

**Notice Account** means the interest-bearing account designated in writing by Class Counsel and identified in Section IV of this Agreement.

**Notice Administrator** means Kinsella Communications, the person jointly selected by the Parties, for whom the Parties shall seek the appointment of the Court to disseminate Class Notice to the Settlement Subclass accordance with Section V of this Agreement.

**Notice Date** means the date upon which Class Notice is mailed to the Settlement Class in accordance with Section V of this Agreement.

**Opt Out** Period means the period commencing on the Notice Date and ending 35 days thereafter.

**Parties** means Plaintiffs and the Buckner-Rush Defendants.

**Person** means an individual, marital community, estate, legal representative, trust, and their respective heirs, predecessors, successors,

286214 1

representatives and assigns.

**Plaintiffs** means Linda Hamil, Michael Bell, Norman Jenson and Diane Ballew.

**Preliminary Approval** means the Court's conditional certification of the Settlement Subclass, appointment of Class Counsel, preliminary approval of this Agreement, appointment of the Notice Administrator, and approval of the forms of the Class Notice, and the Claim Form, substantially the same as those attached hereto as Exhibits A and B.

**Released Persons** means the Buckner-Rush Defendants, and their insurer, CNA Insurance Company.

**Releasing Persons** means all Settlement Subclass Members who do not exercise their opt-out rights by timely submitting Requests for Exclusion.

**Request for Exclusion** means a written request by a Settlement Subclass Member to be excluded from the Settlement Subclass, setting forth the Settlement Subclass Member's name and address; the name and address of the Decedent to whom the Subclass Member is next-of-kin; and the relationship to the Decedent. To be valid, such a Request for Exclusion must be mailed to Class Counsel, postmarked on or before midnight on the last day of the Opt Out Period.

**Settled Claim** means any claim that a Releasing Person has, had or may have, and which arises out of the same subject matter as the Action against the Buckner-Rush Defendants.  Specifically, a Settled Claim shall not include any claims that a releasing person has, had or may have against any other defendant named in this Action.

**Settlement Account** means an interest-bearing account for the benefit of Class Counsel, to be kept at a federally-insured financial institution to be designated by Class Counsel, as referred to in Section IV of this Agreement.

**Settlement Subclass** means:

All those who are or were next of kin of any decedents delivered to Buckner-Rush Enterprises, Inc. d/b/a Buckner-Rush Funeral Homes for cremation and sent to Defendant Tri-State Crematory from January 1, 1988 to February 15, 2002; and

all persons or entities who were parties to any contract with Buckner-Rush Enterprises, Inc. d/b/a Buckner-Rush Funeral Homes or Prime Succession, Inc. d/b/a Buckner-Rush Funeral Homes regarding funeral arrangements for any decedent who was sent for cremation to Defendant Tri-State Crematory from January 1, 1988 to February 15, 2002.

**Settlement Subclass Member** means a member of the Settlement Subclass.

**Settlement Consideration** means the total combined costs of Class Notice, claims administration, Awards to Eligible Claimants, Class Counsel's attorneys' fees and costs, and all amounts incidental to or necessary for implementation of any of the foregoing.

**Settlement Date** means the date of entry of the Final Order and Judgment without material modification.

III.   **REQUIRED EVENTS AND COOPERATION**

A.   Promptly after execution of this Agreement, the Parties shall submit this Agreement to the Court for Preliminary Approval, moving the Court for one or more orders which by their terms shall:

1.   Conditionally certify a Settlement Subclass pursuant to Federal Rule of Civil Procedure 23(b)(3) for settlement purposes, appoint Plaintiffs as Settlement Subclass Representatives, appoint Class Counsel, and preliminarily approve this Agreement;

2.   Appoint Kinsella Communications as Notice Administrator, approve the form and contents of the Settlement Class Notice, the Claim Form, and direct their provision forthwith;

286214.1                                    10

    3.      Schedule appropriate opt-out, objection, and other settlement-related dates and deadlines for inclusion in the Class Notice and/or Claim Form;

    4.      Schedule the Fairness Hearing to review comments or objections regarding this Agreement; to consider its fairness, reasonableness and adequacy; to determine whether to enter a Final Order and Judgment pursuant to Federal Rule of Civil Procedure 23(e); and to consider Class Counsels' fee application; and

    5.      Enjoin Settlement Subclass Members from proceeding against the Buckner-Rush Defendants with respect to the Settled Claims other than as allowed or directed by the Court in this Action, pending the Court's entry of the Final Order and Judgment.

    B.    At the time of Preliminary Approval, the Parties shall request a date for the Fairness Hearing that is on or before December 4, 2003.

    C.    Plaintiffs and the Buckner-Rush Defendants and their respective Counsel shall cooperate, assist and undertake all reasonable actions in order to accomplish these required events on the schedule set by the Court.

D.     Within ten (10) days of entry of Final Order and Judgment, the Buckner-Rush Defendants shall be dismissed from this Action with prejudice.  Notwithstanding any other provision of this Agreement, however, if the Agreement is terminated for any reason, the Parties hereby stipulate and agree that such dismissal shall be null and void, and the claims against the Buckner-Rush Defendants may be reinstated status quo ante to the date of the execution of this Agreement, with the Parties thereto and all absent class members reinstated to their respective positions status quo ante to the date of the execution of this Agreement.  Further, all statutes of limitation and repose for all claims in the Action shall be deemed to have been tolled from the date of the execution of this Agreement until the date of reinstatement and reactivation or for such longer period as the law(s) may provide.

E.     Within ten (10) days of entry of Final Order and Judgment, the Buckner-Rush Defendants shall formally withdraw their appeal from the District Court's Order of March 17, 2003, currently pending but stayed before the United States Court of Appeals for the Eleventh Circuit.

F.     In the event this Agreement is disapproved, reversed, vacated, or terminated, the Agreement shall have no effect on the rights of the Parties or the Settlement Subclass Members to prosecute or defend this Action, or

any other action. Should this Agreement be disapproved, reversed, vacated, or terminated, the Parties and all Settlement Subclass Members shall be restored to their respective status quo ante to the date of execution of this Agreement.

## IV.   PAYMENT OF SETTLEMENT CONSIDERATION

A.     Upon Preliminary Approval, or as soon thereafter as is practicable but in no event later than ten (10) Business Days after Preliminary Approval, the Buckner-Rush Defendants shall deposit $8,750,000.00 into the Settlement Account. This sum shall be distributed in Class Member Awards and Class Counsel Fees and Expenses in accordance with Sections VI and VII of this Agreement.

B.     In addition, the Buckner-Rush Defendants shall deposit the Notice costs into the Notice Account within ten (10) Business Days of Preliminary Approval in accordance with this paragraph and its subparts. In the alternative, the Buckner-Rush Defendants may make arrangements with Kinsella Communications to pay Kinsella Communications these costs in full directly. If additional funds are needed, the Buckner-Rush Defendants shall deposit such funds into the Notice Account or shall pay Kinsella Communications such amounts within seven (7) Business Days in accordance with this Paragraph and its subparts.

1.     The notice costs amount deposited or directly paid to Kinsella Communications will be based on a good faith estimate by Kinsella Communications of the amount required for the printing and distribution of the Class Notice.  Thereafter, upon reasonable request by Class Counsel, the Buckner-Rush Defendants shall within seven (7) Business Days deposit any further amounts into the Notice Account as needed for the distribution of Class Notice.

2.     In the event the Court orders notice in addition to the Class Notice contemplated under this Agreement, the Buckner-Rush Defendants shall deposit an amount in the Notice Account equal to the cost of such additional notice.

3.     The Notice Account will continue to operate until the distribution of Class Notice is completed.  Within three (3) Business Days after the Settlement Date, any unexpended funds, exclusive of outstanding obligations, if any, in the Notice Account shall be returned to the Buckner-Rush Defendants.

4.     If this Agreement is disapproved, reversed, vacated or terminated, all funds remaining in the Notice Account,

exclusive of outstanding obligations, if any, shall promptly be returned to the Buckner-Rush Defendants.

C.     In addition, the Buckner-Rush Defendants shall deposit the Claims Administration costs into the Claims Administration Account within thirty (30) Business Days of Preliminary Approval.  If and as such additional funds are needed, the Buckner-Rush Defendants shall deposit such funds into the Claims Administration Account within seven (7) Business Days in accordance with this Paragraph and its subparts.

1.     The amount deposited will be based on a good faith estimate by the Claims Administrator of the amount required for claims administration under this Agreement.  Thereafter, upon reasonable request by Class Counsel, the Buckner-Rush Defendants shall within seven (7) Business Days deposit any further amounts into the Notice Account as needed for the distribution of Class Notice.

2.     The Claims Administration Account will continue to operate until the distribution of Class Notice is completed. Within three (3) Business Days after the Settlement Date, any unexpended funds, exclusive of outstanding obligations, if any,

in the Claims Administration Account shall revert to the

Buckner-Rush Defendants.

3.      If this Agreement is disapproved, reversed, vacated or

terminated, all funds remaining in the Claims Administration

Account, exclusive of outstanding obligations, if any, shall

promptly be returned to the Buckner-Rush Defendants

## V.   NOTICE TO THE CLASS

Upon Preliminary Approval, and as the Court directs, the

Parties shall instruct the Notice Administrator (1) to cause the Class Notice

describing the Fairness Hearing and the Settlement embodied herein,

together with Claim Forms, to be mailed directly to all Settlement Subclass

Members and (2) to cause the publication of the Notice described in the

Class Notice Plan, which is attached to this Agreement as Exhibit C.

## VI.  CLAIMS PROCESS FOR AWARDS

A.      Eligible Claimants may obtain an Award under this Agreement

in accordance with this Section.  The following Claims Process for Awards

shall be implemented upon the occurrence of the Settlement Date.

B.      A Settlement Subclass Member shall be an Eligible Claimant

and entitled to an Award following the Claims Process if (i) the Settlement

Subclass Member (a) is the next of kin of a decedent who was sent by the

Buckner-Rush Defendants to Tri-State Crematory for cremation between January 1, 1988 and February 15, 2002, or (b) entered into a contract with the Buckner-Rush Defendants for the cremation of a decedent between January 1, 1988 and February 15, 2002; and (ii) the Settlement Subclass timely submits a completed and executed Claim Form in the form attached hereto as Exhibit A prior to the expiration of the Claims Period.

B.      The payment made by the Buckner-Rush Defendants pursuant to this agreement is to be distributed to Class Members as follows:

(1)      For each decedent delivered to Buckner-Rush and sent to Tri-State Crematory for cremation from January 1, 1988 through December 31, 1996, the next of kin shall be entitled to a minimum sum of $3100.  This figure is based upon a sum of $5000 minus Class Fees and Costs, as approved by the Court, as described in Section IX of this Agreement.  If Settlement Subclass Members claim Awards for fewer than the 130 decedents whose claims fall under this subsection, the unclaimed Awards shall be divided equally among the Settlement Subclass Members who are the next of kin of the decedents described under this subsection.

(2)    For each decedent delivered to Buckner-Rush and sent to Tri-State Crematory for cremation from January 1, 1997 through February 15, 2002, the next of kin shall be entitled to a minimum sum of $31,000.  This figure is based upon a sum of $50,000 minus Class Fees and Costs, as approved by the Court, as described in Section IX of this Agreement.  If Settlement Subclass Members claim Awards for fewer than the 88 decedents whose claims fall under this subsection, the unclaimed Awards shall be divided equally among the Settlement Subclass Members who are the next of kin of the decedents described under this subsection.

(3)    For each decedent delivered to Buckner-Rush and sent to Tri-State Crematory for cremation, the remains of which decedent have been recovered from the Tri-State Crematory property and positively identified, the next of kin shall be entitled to a minimum sum of $62,000.  This figure is based upon a sum of $100,000 minus Class Fees and Costs, as approved by the Court, as described in Section IX of this Agreement.  If Settlement Subclass Members claim Awards for fewer than the 37 decedents whose claims would fall under this

subsection, the unclaimed Awards shall be divided equally among the Settlement Subclass Members who are the next of kin of the decedents described under this subsection.

(4)     If for any decedent the contract signatory is a different person or persons than the next of kin, the contract signatory shall be entitled to recover the amount paid under the terms of the contract with Buckner-Rush out of the award described in paragraphs 1 - 3 above.  The remainder of the Award described above shall be paid to the next of kin.

(5)     In the event there is more than one next of kin of equal relationship, the Award shall be divided equally among each next of kin in the same degree of kindred to the decedent.

C.     Settlement Subclass Members who do not timely submit a Claim Form shall not be considered Eligible Claimants.  However, notwithstanding any other provision of this Agreement, Settlement Subclass Members shall be permitted to remedy deficiencies in their Claim Forms or related documentation during the Claims Period or within thirty days thereafter, provided that such Settlement Subclass Members initially submitted a Claim Form during the Claims Period.

D.     Claim Forms shall be processed and administered by the Claims Administrator pursuant to the following terms.

1.     The Claims Administrator shall administer the relief provided by this Agreement by resolving claims in a rational, responsible, cost-effective and timely manner.

2.     Prior to notifying any Settlement Subclass Member that his/her/its Claim is to be denied or is deficient, the Claims Administrator shall notify Class Counsel accordingly, and allow Class Counsel a reasonable opportunity to review the subject Claim, and to work with the Settlement Subclass Member to cure any defect or deficiency, and/or to raise any objections.

3.     The Claims Administrator shall maintain detailed records of its claims processing activities under this Agreement, including all Claim Forms, denials, and all disbursements to Eligible Claimants, until one (1) year after all Claims are finally resolved and/or Awards paid.  Such records shall be made available upon request for inspection by Class Counsel.

4.    Disputed issues between the Parties relating to this

Agreement and the Claims Process shall be presented to and

resolved by the Court in its continuing jurisdiction.

## VII.   OPT-OUT RIGHTS

A.    A Settlement Subclass Member may opt out of the Settlement

Class at any time during the Opt Out Period in accordance with this

Agreement.

B.    In order to exercise the opt out right, the Settlement Subclass

Member must cause to be delivered a written Request for Exclusion to Class

Counsel during the Opt Out Period.

C.    Except for those Settlement Subclass Members who have opted

out in accordance with this Agreement, every Settlement Subclass Member

will conclusively be deemed a Settlement Subclass Member for all purposes

under this Agreement; and will be bound by the Final Order and Judgment

and the Releases contained in Section VIII of this Agreement as of the

Settlement Date.

D.    Any Settlement Subclass Member who elects to opt out of the

Settlement Subclass shall not (i) be bound by any orders or judgments

entered in this Action; (ii) be entitled to relief under or be affected by this

Agreement; (iii) gain any rights by virtue of this Agreement; or (iv) be entitled to object to any aspect of this Agreement.

E.      A Settlement Subclass Member who timely submits a written Request for Exclusion to Class Counsel may subsequently withdraw the Request for Exclusion by submitting to Class Counsel written notification of such withdrawal; such written notification of withdrawal of the Request for Exclusion must be postmarked or bear other indicia of submission no later than one (1) day prior to the date of the Fairness Hearing.

F.      Class Counsel shall provide Defendant's Counsel with copies of all completed Requests for Exclusion on a weekly basis during the Opt Out Period via facsimile.

## VIII. **RELEASES AND JURISDICTION OF COURT**

A.      As of the Settlement Date, Plaintiffs and all Settlement Class Members, except those who timely submitted Requests for Exclusion, will be deemed by this Agreement to have, and by operation of the Final Order and Judgment shall have released the Buckner-Rush Defendants, and CNA Insurance Co., as their insurers, from any and all of the Settled Claims.

B.      This settlement in no way impacts, relates to or diminishes the Subclass Members' claims against the Marsh Defendants and/or Tri-State Crematory, Inc. or any other defendant in the litigation. The release under

this Agreement is a limited liability release pursuant to OCGA 33-24-41.1 and it is intended by the parties that the force and effect of such release shall operate as a full and final release only of the Buckner-Rush Defendants and CNA Insurance Company, as insurer for the Buckner-Rush Defendants. The limited release under this Agreement shall not bar any claims that the Settlement Subclass has against any other defendant, including Clara Marsh, Clara Marsh as administrator of the Estate of Tommy Ray Marsh, Ray Brent Marsh, Rhames L. Marsh, and Tri-State Crematory, Inc. The limited liability release pursuant to this Agreement shall not operate as a release of any other person or entity not specifically named herein.

C.    As of the Settlement Date, the Releasing Persons and anyone claiming through or on behalf of any of them will be forever barred and enjoined from prosecuting any action against the Buckner-Rush Defendants that assert the Settled Claims.

D.    The Parties agree that the Court shall retain exclusive and continuing jurisdiction over the Action, Parties, Settlement Subclass Members, the Notice Administrator, and the Claims Process to interpret and enforce the terms, conditions and obligations under this Agreement.

## IX.    CLASS COUNSEL'S ATTORNEYS' FEES AND COSTS

A.      Class Counsel shall seek Court approval of an award of attorneys' fees of up to 33 percent ($2,887,500.00) of the gross amount paid in settlement of the Class Members' claims by the Buckner-Rush Defendants pursuant to the Agreement.

B.      Class counsel shall seek Court approval to withhold up to five percent ($437,500.00) of the gross amount paid in settlement of all Class Members' claims to reimburse Class Counsel for reasonable and necessary expenses incurred for the common benefit of the Class.  If at the conclusion of this Action, Class Counsel has withheld more funds in costs from Awards than has been reasonably and necessarily incurred for the benefit of the Class, all additional funds shall be returned to the Class on a pro-rata basis, if it is practicable and cost-effective to do so.

C.      Counsel who entered into written attorney representation/contingent fee agreements with individual members of the Settlement Class prior to July 31, 2003 ("private fee agreements") shall be entitled to payment from the Court Award of attorneys' fees to Class Counsel, upon application to Lead and Liaison Class Counsel, of the amounts specified in private fee agreements unless they would constitute unreasonable fees under the prevailing practice and the circumstances of this Action, with any disagreement regarding payment to be decided by the

Court.  Fees to be paid under private fee agreements shall be calculated upon the amount of the Settlement Class Member Award, less five percent of the Award.

D.     The Buckner-Rush Defendants shall not object to Class Counsel's application to the Court for attorneys' fees and costs as provided in this Section and its subparts.

E.     Lead and Liaison Class Counsel shall be entitled to withdraw funds from the Settlement Account up to the amount awarded by the Court for attorneys' fees and to distribute same among Class counsel and other counsel pursuant to Section IX of this Agreement upon entry of the Court's Award of Fees and Costs and Final Order and Judgment.

F.     In the event the Final Order and Judgment is reversed on appeal, in whole or in part, then, the full amount of the attorneys' fees and costs paid by the Buckner-Rush Defendants to Class Counsel shall be refunded to the Buckner-Rush Defendants within twenty (20) Business Days after the order reversing the Final Order and Judgment, in whole or in part, becomes final.  In the event the Final Order and Judgment is not reversed on appeal, in, whole or in part, but the attorneys' fees and costs awarded by the Court are vacated or modified on appeal, the attorneys' fees and costs in the amount vacated or modified shall be returned to the Buckner-Rush

Defendants within twenty (20) Business Days after the order vacating or modifying the award of attorneys' fees and costs becomes final.

G.     Notwithstanding the foregoing, Settlement Subclass Members and their counsel may enter into individual releases to enable payment of applicable Awards, attorneys' fees and costs, regardless of Court approval of, or appeals from, this Subclass Settlement.

## IX.   **SETTLEMENT APPROVAL ORDER**

This Agreement is subject to and conditioned upon the issuance by the Court, following the Fairness Hearing, of a Final Order and Judgment granting final approval of the Agreement and providing the below-specified relief, which relief shall be subject to the terms and conditions of this Agreement and the Parties' performance of their continuing rights and obligations hereunder.  Such Final Order and Judgment shall:

1.     Certify a Settlement Subclass under Fed. R. Civ. P. 23(b)(3) and 23(e) for settlement purposes;

2.     Dismiss the Settlement Subclass Members' claims against the Buckner-Rush Defendants with prejudice while preserving the rights of Settlement Subclass Members who exercised their opt-out rights pursuant to Section VII of this Agreement;

3.      Determine under Fed. R. Civ. P. 23(e) that this Agreement is fair, reasonable, adequate and in the best interests of the Settlement Subclass;

4.      Enjoin the Releasing Persons from asserting against the Released Persons any and all Settled Claims which the Plaintiffs, Settlement Subclass Members, and/or the Releasing Persons had or has; and

5.      Reserve the Court's continuing exclusive jurisdiction over the Parties to this Agreement, including the Buckner-Rush Defendants and all Settlement Subclass Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties and the Settlement Subclass.

## XI.    **SETTLEMENT PURPOSES ONLY**

A.      This Agreement, whether or not consummated, and any proceedings taken pursuant to this Agreement, are for settlement purposes only. Neither the fact of, nor any provision contained in, this Agreement or its exhibits, nor any action taken hereunder shall be construed as, offered in evidence as, received in evidence as, and/or deemed to be evidence of a presumption, concession or an admission of any kind by any of the Parties of the truth of any fact alleged or the validity of any claim or defense that has been, could have been, or in the future might be asserted.

286214.1                              27

B.      Any certification of a preliminary or final Settlement Subclass pursuant to the terms of this Agreement shall not constitute, and shall not be construed as, an admission on the part of the Buckner-Rush Defendants that this Action, or any other action, is appropriate for litigation class treatment under Federal Rule of Civil Procedure 23, or any similar federal or state class action statute or rule.

C.      The performance of this Agreement is expressly contingent upon entry of the Final Order and Judgment.  If the Court fails to issue such Final Order and Judgment, the Agreement will be terminated, having no force or effect whatsoever, null and void, ab initio, and will not be admissible as evidence for any purpose in any pending or future litigation involving any of the Parties.

D.      The performance of this Agreement is also expressly contingent upon reasonable participation of Settlement Subclass Members.  If so many class members Opt Out that the Buckner-Rush Defendants' purposes in entering this Agreement are frustrated, the Buckner-Rush Defendants, in the exercise of good faith and reasonable discretion may withdraw from this Agreement.

E.      Neither this Agreement, nor any of its provisions, nor evidence of negotiations or proceedings related to this Agreement, nor, nor any

proceedings under this Agreement, shall be offered or received in evidence in this or any other action or proceeding as an admission or concession of liability or wrongdoing of any nature on the part of any of the Buckner-Rush Defendants, Releasees, or anyone acting on their behalf, and the Buckner-Rush Defendants specifically deny any such liability or wrongdoing. Nothing herein shall prevent any party from seeking to offer this Stipulation into evidence after the Approval Date for enforcement purposes.

## XII.   MISCELLANEOUS PROVISIONS

A.     This Agreement, including all exhibits hereto, shall constitute the entire Agreement among the Parties with regard to the subject of this Agreement and shall supersede any previous agreements, representations, communications and understandings among the Parties with respect to the subject matter of this Agreement.  This Agreement may not be changed, modified, or amended except in writing signed by all Parties, subject to Court approval, provided, however, the Class Notice, and Claim Form, attached as exhibits to this Agreement, may be modified by subsequent agreement of the Parties prior to their dissemination.

B.     This Agreement shall be construed under and governed by the laws of the State of Georgia, applied without regard to any other potentially applicable laws.

C.     This Agreement may be executed by the Parties in one or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.  Signatures by facsimile shall be as effective as original signatures.

D.     This Agreement shall be binding upon and inure to the benefit of the Settlement Subclass, the Parties, and their respective heirs, predecessors, successors and assigns.

E.     The headings of the sections of this Agreement are included for convenience only and shall not be deemed to constitute part of this Agreement or to affect its construction.

## XIII. TERMINATION OF THIS AGREEMENT

A.     This Agreement shall be automatically terminated if the Final Order and Judgment is not entered, or if the Final Order and Judgment is reversed on appeal and the reversal becomes final.  In the event of termination, and notwithstanding any other provision of this Agreement, (i) all Parties and Settlement Subclass Members shall be restored to their respective positions immediately prior to the date on which this Agreement is signed by all Parties, (ii) dismissal of the Buckner-Rush Defendants from Action shall be deemed null and void, and those cases shall be reinstated status quo ante; (iii) all statutes of limitation and/or repose for all claims

asserted in such cases shall be deemed to have been tolled from the date of signature of this Agreement by all Parties until the date of reinstatement and reactivation, or for such longer period as the law may provide without reference to this Agreement.

B.     In the event of termination, this Agreement shall have no further force or effect.

C.     Until the term of this Agreement has expired in that each Party has satisfied all of its obligations under the Agreement, the Buckner-Rush Defendants agree to use their best efforts to preserve all records and evidence which are or could be relevant to, or could lead to the discovery of relevant evidence.

## XIV.  REPRESENTATIONS AND WARRANTIES

A.     The Buckner-Rush Defendants represent and warrant (i) that they have all requisite corporate power and authority to execute, deliver and perform this Agreement and to consummate the transactions contemplated hereby; (ii) that the execution, delivery, and performance of this Agreement and the consummation by it of the actions contemplated herein have been duly authorized by all necessary corporate action on the part of the Buckner-Rush Defendants; and (iii) that this Agreement has been duly and validly

executed and delivered by the Buckner-Rush Defendants and constitutes its legal, valid, and binding obligation.

      B.    This agreement is premised upon the representation of the Buckner-Rush Defendants that a total of one hundred thirty (125) decedents delivered to it were sent to Tri-State Crematory for cremation from January 1, 1997 through 2002, a total of one hundred thirty (130) decedents delivered to it were sent to Tri-State Crematory for cremation from January 1, 1988 through December 31, 1996 and that the remains of a total of thirty-seven (37) of the decedents sent to Tri-State Crematory have been positively identified among the remains removed from the Tri-State Crematory property. Should Eligible Claimants submit Claims regarding a greater number of decedents in any of the above categories, the Buckner-Rush Defendants will compensate each additional approved claimant at the rate others similarly situated are compensated pursuant to the terms of this Agreement.

      C.    Each Plaintiff and Class Counsel represents and warrants (i) that he or she agrees not to pursue further litigation concerning Settled Claims; and (ii) that he or she agrees to assist in causing all conditions precedent to the Settlement Date to occur; and (iii) that they are Class

Counsel of record and are fully authorized to enter into this Agreement subject to Court approval.

IN WITNESS WHEREOF, each of the Parties hereto has caused this Agreement to be executed on its behalf by its counsel of record, effective as of the day set forth below.

This __17th__ day of October, 2003.

Robert H. Smalley, III
McCAMY, PHILLIPS,
TUGGLE & FORDHAM, LLP
P.O. Box 1105
Dalton, Georgia

*Plaintiffs' Liaison Counsel*

LIEFF, CABRASER, HEIMANN
& BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339

Kathryn E. Barnett
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203

*Plaintiffs' Lead Counsel*

Lisa Severtis Higgins
DREW, ECKL
& FARNHAM, LLP
880 West Peachtree Street
Atlanta, GA 30357-0600

*Counsel for the Buckner-Rush
Defendants*