FILED IN OPEN COURT
OCT 1 7 2003
Luther D. Thomas, Clerk

By: _____
Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| IN RE:  TRI-STATE CREMATORY LITIGATION | MDL DOCKET NO. 1467 |
| This Order relates to all actions. | |

## ORDER GRANTING PRELIMINARY APPROVAL OF PARTIAL SETTLEMENT WITH BUCKNER-RUSH FUNERAL HOME DEFENDANTS AND PUTNAM FUNERAL HOME, INC. AND APPROVING AND DIRECTING NOTICE THEREOF

Plaintiffs' Liaison counsel and counsel for Funeral Home Defendants Buckner-Rush Enterprises, Inc., Prime Succession, Inc., Prime Succession Holdings, Inc., and Prime Succession of Tennessee, Inc. (collectively hereinafter, "Buckner-Rush Defendants") advised this Court, at a hearing on August 21, 2003, that they have reached tentative resolution of all issues for a partial settlement in this matter, and described the essential terms thereof.  On October 16, the written form of the proposed agreement was submitted to the court for consideration.

Plaintiffs' Liaison counsel, and counsel for Putnam Funeral Home, Inc. advised this Court, at a hearing on September 18, 2003, that they have reached tentative resolution of all issues for a partial settlement in this matter, and

622

described the essential terms thereof. On October 16, 2003, the written form of the proposed agreement was submitted to the court for consideration.

Upon final approval, pursuant to class notice and a formal fairness hearing, this settlement would resolve the claims asserted in this action against the Buckner-Rush Defendants and Putnam Funeral Home, Inc. by those members of the plaintiff class previously certified by this Court on March 17, 2003.

Having previously determined and ruled that class certification was appropriate under Fed. R. Civ. P. 23(b)(3) in this action, having considered the essential terms of the proposed settlement under the recommended standards for preliminary settlement approval set forth in § 30.41 of the *Manual for Complex Litigation, Third* (Federal Judicial Center, 1995,) and having determined that those class members whose claims against the Buckner-Rush Defendants and Putnam Funeral Home, Inc. would be settled, released, and dismissed pursuant to the proposed settlement should have notice and an opportunity to be heard regarding its final approval.

Counsel has submitted the Notice Plan for the Settlement Subclasses. This Court has reviewed and considered the proposed forms of "Notice of Class Action and Proposed Partial Class Action Settlement," attached hereto as Exhibits A and B, and hereby finds that these satisfy the requirements of Fed. R. Civ. P. Rule 23(c)(2) for notice in Rule 23(b)(3) class actions.

This Court has reviewed and considered the program for dissemination of Class Notice, as set forth in the Class Notice Plan attached hereto as Exhibit C, and hereby approves it, finding that it constitutes the best notice practicable under the circumstances of this action.

Accordingly, IT IS HEREBY ORDERED that

1.      This Court's preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible final approval.  Accordingly, the proposed settlement with the Buckner-Rush Defendants and with Putnam Funeral Home, Inc. is hereby granted preliminary approval;

2.      For the sole purpose of conducting the settlement approval process contemplated under Fed. R. Civ. P. 23(e,) this Court designates a settlement subclass of the previously certified class ("Buckner Rush Subclass,") defined as:

> All those who are or were next of kin of any decedents delivered to Buckner-Rush Enterprises, Inc. d/b/a Buckner-Rush Funeral Homes for cremation and sent to Defendant Tri-State Crematory from January 1,1988 to February 15, 2002; and

> All persons or entities who were parties to any contract with Buckner-Rush Enterprises, Inc. d/b/a Buckner-Rush

279975.1
286179.1

Funeral Homes or Prime Succession, Inc. d/b/a Buckner-Rush Funeral Homes funeral arrangements for any decedent who was delivered for cremation to Defendant Tri-State Crematory from January 1, 1988 to February 15, 2002.

3.      Plaintiffs Linda Hamil, Michael Bell, Norman Jenson and Diane Ballew are appointed to serve as Buckner-Rush Settlement Subclass representatives.

4.      For the sole purpose of conducting the settlement approval process contemplated under Fed. R. Civ. P. 23(e,) this Court designates a settlement subclass of the previously certified class ("Putnam Subclass,") defined as:

All those who are or were next of kin of any decedents delivered to Putnam Funeral Home, Inc. for cremation and sent to Defendant Tri-State Crematory from January 1,1988 to February 15, 2002; and

All persons or entities who were parties to any contract with Putnam Funeral Home, Inc. for funeral arrangements for any decedent who was delivered for cremation to Defendant Tri-State Crematory from January 1, 1988 to February 15, 2002.

5.      The law firms of McCamy, Phillips, Tuggle & Fordham, LLP; Lieff, Cabraser, Heimann & Bernstein, LLP; Shumaker, Witt, Gaither & Whitaker; Law Offices of David Randolph Smith; Fleissner & Associates; Coppedge & Leman; Doffermyre, Shields, Canfield, Knowles & Devine; Mabry & McClelland, LLP; Barrett Law Office; and Sims, Graddick & Dodson P.C., having previously

279975.1
286179.1

been appointed to serve as Class Counsel in this action, are appointed to serve as Settlement Class Counsel.

6.      Kathy Kinsella, of Kinsella Communications, Washington, D.C., is hereby appointed to serve as Notice Administrator for the Buckner-Rush Settlement Subclass and the Putnam Settlement Subclass.

7.      The attached forms of "Notice of Class Action and Proposed Partial Class Action Settlement" shall be disseminated, as specified in the attached Class Notice Plan, commencing not later than October 20, 2003.  Settlement Class Members may exclude themselves from the Class ("opt out") by submitting their exclusion requests, in the manner specified in the Class Action Notice, not later than the postmarked date of November 24, 2003.

8.      This Court shall conduct a Formal Fairness Hearing on December 4, 2003, at the hour of 3:00 pm, at the United States District Court for the Northern District of Georgia, in Rome, Georgia, to hear from the settling parties and any Buckner-Rush Settlement Subclass or Putnam Settlement Subclass member who wishes to be heard, to determine whether the proposed settlement shall be granted final approval.

9.      This Order shall not affect:  the claims of any plaintiffs or class members against any non-settling defendants; the defenses of the non-settling defendants with respect to any plaintiffs and class members; the legal rights or

- 5 -

interests of non-settling parties; or any other dates, deadlines, or proceedings in this action.

IT IS SO ORDERED, this _17_ day of October, 2003.

<table>
<tr><td></td><td>

Honorable Harold L. Murphy,<br>
UNITED STATES DISTRICT JUDGE
</td></tr>
</table>

279975.1<br>286179.1

# EXHIBIT A

<<Seq>>
<<Name>>
<<Address>>
<<City State Zip Code>>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE CREMATORY LITIGATION                    MDL DOCKET NO. 1467
*This document relates ONLY to the*
*Buckner-Rush Settlement Class.*

---

### *Notice of Class Action and*
### *Proposed Partial Class Action Settlement*

To: Next-of-kin of decedents that were sent to Tri-State Crematory, Inc. for cremation by ***Buckner-Rush Funeral Home*** between January 1, 1988 and February 15, 2002 and those who paid for the funeral arrangements for those decedents.

THIS NOTICE DESCRIBES A PROPOSED PARTIAL CLASS ACTION SETTLEMENT THAT MAY AFFECT YOUR LEGAL RIGHTS.
PLEASE READ THIS NOTICE CAREFULLY.

## Definition of the Class

1. The proposed partial settlement class is defined to include all persons throughout the United States and its territories who are or were the next-of-kin of any decedents that were delivered to Tri-State Crematory *by Buckner-Rush Funeral Home* for cremation from January 1, 1988 through February 15, 2002, and all persons who paid for the funeral arrangements for those decedents.

2. For purposes of this action, next-of-kin is defined according to the Georgia laws of intestate succession. For instance, for the purposes of this action, the next-of-kin of a decedent is the decedent's spouse, and if there is no living spouse, the decedent's child or children. If there is no living spouse or child(ren), the next-of-kin is the decedent's parent or parents. If there is no living spouse, child(ren) or parent, the next-of-kin is the decedent's brother(s) or sister(s).

## Brief Description of the Action

3. A class action is a type of lawsuit in which a few named plaintiffs sue on behalf of themselves and many others who have similar claims. The questions common to the class are decided in one trial. This procedure avoids the delay, confusion, and expense of multiple suits.

4. Beginning on February 15, 2002, the uncremated human remains of at least 334 decedents were discovered on the property surrounding the Tri-State Crematory in Noble, Georgia. Following the discovery of these uncremated bodies, some next-of-kin of decedents whose remains were delivered to Tri-State Crematory filed lawsuits in Tennessee, Alabama and Georgia. Among these suits were three lawsuits filed in federal courts in Alabama and Georgia, two of which were filed as class actions. These lawsuits have been coordinated as the Tri-State Crematory Litigation and have been assigned to one judge, the Honorable Harold L. Murphy, for joint proceedings.

5. Named plaintiffs in the Tri-State Crematory Litigation claim that the defendants are legally responsible in tort and in contract for the damages caused by their alleged failure to dispose of human remains properly and respectfully, as requested by the decedents and their families. On March 17, 2003, the Court issued an order approving the following claims for class action treatment: (1) negligence; (2) willful interference with remains and intentional mishandling of a corpse; (3) negligent interference with remains and mishandling of a corpse; and (4) breach of contract. The Court's order allowing these claims to proceed as a class action is not a ruling on their merits, and defendants deny legal responsibility for these claims. The Court has ruled that Georgia law will apply to these claims.

6. The defendants in this case include Tri-State Crematory, members of the Marsh family who are alleged to have owned and operated the crematory and approximately 50 funeral homes that sent remains to Tri-State Crematory for cremation.

7. The Court has certified a Class defined as follows:

   "All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri-State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State."

   You are automatically a member of the Class if you fit the description above. You will be a participant in the litigation and bound by all Court judgments unless you choose to exclude yourself as described below.

8. The Court has not ruled on the merits of the plaintiffs' claims or defendants' objections. The class ruling does mean that the orders and judgments in this lawsuit – whether favorable to the plaintiffs or unfavorable – will apply to all Class Members who do not leave the Class in the manner described below.

9. A number of factual and legal issues, including whether Buckner-Rush negligently allowed the mishandling to occur, and whether the Class Members are entitled under the law to recover money damages for breach of contract and emotional distress are in dispute. Many motions have been filed and hearings held in this case, and substantial investigation and discovery has been conducted. There has been no final ruling on the merits of any of the claims and *Buckner-Rush denies any wrongdoing whatsoever*.

10. Without admitting legal responsibility, Buckner-Rush has agreed to the terms of a proposed settlement regarding decedents who were sent to Tri-State Crematory by Buckner-Rush Funeral Home. On August 15, 2003, Judge Murphy granted preliminary approval of the terms of this proposed settlement as a possibly fair, reasonable and adequate resolution of the pending claims against Buckner-Rush.

## Terms of the Proposed Settlement

11. The proposed settlement would release claims against Buckner-Rush Funeral Home regarding any mishandling of remains at Tri-State Crematory. This proposed settlement, however, does not release claims against Tri-State Crematory or the members of the Marsh family, whom the plaintiffs allege owned and/or operated the crematory. Those claims will automatically be protected by the class action pending before Judge Murphy.

12. The proposed partial settlement provides for creation of a Settlement Fund for distribution among members of the Buckner-Rush Settlement Class defined above. Each member of the Settlement Class will be eligible to submit a claim to the Settlement Fund. The Settlement Fund will be distributed to qualified Class Members pursuant to an allocation plan as follows:

    (a) For each decedent sent to Tri-State Crematory by Buckner-Rush *from January 1, 1988 through December 31, 1996*, the next of kin shall be entitled to a lump sum of *at least* $3100. All unclaimed awards under this subparagraph will be divided equally among the Class Members who are the next of kin of the decedents described under this subparagraph.

(b) For each decedent sent to Tri-State Crematory by Buckner-Rush *from January 1, 1997 through February, 2002*, and whose remains were not positively identified among the remains recovered from the Tri-State Crematory property, the next-of-kin shall be entitled to a lump sum of at least $31,000. All unclaimed awards under this subparagraph will be divided equally among the Class Members who are the next-of-kin of the decedents described under this subparagraph.

(c) For each decedent sent to Tri-State Crematory by Buckner-Rush, *the remains of which decedent have been recovered from the Tri-State Crematory property and positively identified*, the next-of-kin shall be entitled to a lump sum of at least $62,000. All unclaimed awards under this subparagraph will be divided equally among the Class Members who are the next-of-kin of the decedents described under this subparagraph.

(d) If, for any decedent, *the person(s) who paid for the funeral services* is not the next-of-kin, that person(s) shall be entitled to recover the amount paid for the services out of the Awards described in paragraphs a - c above.

(e) The Awards described above are a lump sum per decedent. If there are more than one next-of-kin of equal relationship (multiple children, for instance), the Award to the next-of-kin shall be divided equally among each of the equal next-of-kin.

13. The proposed settlement does not impact the ongoing class proceeding against Tri-State Crematory, the Marsh defendants, and/or any non-settling Funeral Home Defendant. The Class Action trial on the remaining claims against Tri-State Crematory and the Marsh defendants will be "bifurcated," meaning that it will proceed in two parts. Trial is scheduled to begin on March 1, 2004 in Rome, Georgia. The trial date is subject to change. Part one of the trial on Class Members' claims against Tri-State Crematory, the Marsh defendants, and/or any non-settling Funeral Home Defendant will decide the liability of those defendants for negligence, willful or negligent interference with remains, intentional or negligent mishandling of a corpse, and breach of contract, under Georgia law. If the plaintiffs prevail in part one of the trial (the "liability phase"), the issues of causation and the amount of the Class Members' damages will be determined through individual proof in part two of the trial (the "damages phase"). To assert your damages claim in part two of the trial, you may be required to participate in formal or informal discovery, and may be required to provide information at a deposition, in response to interrogatories, or questionnaires, under the procedures and deadlines to be set by the Court.

### *Representation of the Class*

14. If you are a member of the Class described above, your rights and interests under the proposed settlement will be automatically represented by the named plaintiffs in the Settlement Class and the group of law firms for the plaintiffs appointed by the Court as class counsel who are listed on Exhibit A. You do not need to hire an attorney to pursue your claims as a class member. Class Counsel will represent you on your class claims without direct charge. Class Counsel must apply to the Court for award of fees and costs from the settlement fund. These are contingent on obtaining a benefit for class members. You may hire counsel, at your own expense, to enter an appearance in this case if you desire.

15. To date, class counsel have incurred over $300,000 in out-of-pocket expenses and have invested substantial time on a priority basis to protect and prosecute the Class Members' claims, without receiving compensation of any kind. In class actions, counsel who generate a monetary recovery for the benefit of the class are entitled to an award of attorneys' fees and costs, representing a reasonable percentage of the recovery in recognition of their efforts, expenses, risks and performance.

16. In this case, class counsel are seeking reasonable attorneys' fees of up to 33 percent ($2,887,500) of the gross amount paid in settlement of the Class Members' claims by Buckner-Rush Defendants pursuant to the Agreement. *The Class Member Awards (described in paragraph 12 of the above section) are net minimum Awards from which the maximum possible attorneys' fees have already been deducted.*

17. Class counsel shall seek Court approval to withhold up to five percent ($437,500) of the gross amount paid in settlement of all Class Members' claims to reimburse class counsel for reasonable and necessary expenses incurred for the common benefit of the Class. If at the conclusion of this Action, class counsel has withheld more funds in costs from Awards than has been reasonably and necessarily incurred for the benefit of the Class, all additional funds shall be returned to the Class on a pro-rata basis, if it is practicable and cost-effective to do so. *The Class Member Awards (described in paragraph 12 of the above section) are net minimum Awards from which the maximum possible reimbursement of expenses have already been deducted.*

18. If you entered into written attorney representation/contingent fee agreements with an attorney prior to July 31, 2003 ("private fee agreements"), your lawyer will be paid from the Court Award of attorneys' fees to class counsel. All requests for attorneys' fees and expenses are subject to Court approval.

### *Your Rights*

19. If you are a member of the Settlement Class, you have the right to make a claim by filling out and signing the Class Member Claim Form and submitting it postmarked no later than December 31, 2003.

20. You also have the right to exclude yourself from the Settlement Class and/or the class proceeding. If you would like to exclude yourself from the Settlement Class and/or the class proceeding, you must personally submit and sign a written "request for exclusion" that includes your full name and current address, your decedent's name, and your relationship to the decedent. Your request for exclusion must be mailed to "Class Counsel, Tri-State Crematory Litigation, 3319 West End Avenue, Suite 600, Nashville, Tennessee 37203" and must be postmarked no later than November 24, 2003.

21. If you decide to leave the Settlement Class and/or the class proceeding,

    (a) you will not participate in any Class recovery of damages from the trial of Class claims in this lawsuit;

    (b) you will not be bound by any further order affecting the Class in this lawsuit;

    (c) you will have to retain your own lawyer at your expense if you wish to pursue individual litigation for money damages against any defendants;

    (d) you will have to present any claims you wish to pursue against the defendants by filing your own lawsuit.

If you decide to leave the Settlement Class, you will not share in the Settlement Fund, and if you wish to pursue any claims against the settling defendants you must do so individually at your own expense.

### Final Approval Hearing

22. The Court will conduct a final approval hearing to consider all comments on the settlement and to decide whether to approve the settlement. You have the right, but are not required, to comment on the proposed settlement and to appear at the final approval hearing, either in person or through your attorney. The final approval hearing will be held on December 4, 2003, at 3:00 p.m. at the federal courthouse in Rome, Georgia. Any comments to the settlement must be submitted in writing to the Court with copies to class counsel, by no later than November 24, 2003.

### For More Information

23. If you wish to communicate with class counsel as your lawyers in this litigation, you may do so by writing:

    Class Counsel
    Tri-State Crematory Litigation
    3319 West End Avenue, Suite 600
    Nashville, Tennessee 37203

You may also call the following toll-free number: 1-866-313-1973. For further information and updates regarding the ongoing class action against Tri-State Crematory and the Marsh defendants, you may call the following toll-free number: 1-877-877-4521 or visit the interactive, informational website for Class Members: www.crematoryclassaction.com.

Dated: October 17, 2003

    Hon. Harold L. Murphy
    United States District Court
    Northern District of Georgia, Rome Division

---

*Si usted desea obtener una copia de este documento legal en Espanol, favor de actuar immediatamente y escribir a*

**Class Counsel**
**Tri-State Crematory Litigation**
**3319 West End Avenue, Suite 600**
**Nashville, Tennessee  37203**

---

*Class Counsel*

**Plaintiffs' Lead Counsel**
    Elizabeth J. Cabraser
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    Embarcadero Center West
    275 Battery Street, 30th Floor
    San Francisco, CA 94111-3339
    Telephone: (415) 956-1000
    Facsimile: (415) 956-1008

**Plaintiffs' Liaison Counsel**
    Robert H. Smalley, III
    McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
    P.O. Box 1105
    Dalton, GA 30722-1105
    Telephone: (706) 278-4499
    Facsimile: (706) 278-5002

*EXHIBIT A*

    Kathryn E. Barnett
    LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
    3319 West End Avenue, Suite 600
    Nashville, TN 37203
    Telephone: (615) 313-9000
    Facsimile: (615) 313-9965

# EXHIBIT  B

<<Seq>>
<<Name>>
<<Address>>
<<City State Zip Code>>

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| IN RE:  TRI-STATE CREMATORY LITIGATION<br>*This document relates ONLY to the*<br>*Putnam Funeral Home Settlement Class.* | MDL DOCKET NO. 1467 |

## *Notice of Class Action and*
### *Proposed Partial Class Action Settlement*

To:  Next-of-kin of decedents that were sent to Tri-State Crematory, Inc. for cremation by *Putnam Funeral Home, Putnam-Reed Funeral Home and/or Putnam-Standefer-Reed Funeral Home* between January 1, 1988 and February 15, 2002 and those who paid for the funeral arrangements for those decedents.

THIS NOTICE DESCRIBES A PROPOSED PARTIAL CLASS ACTION SETTLEMENT THAT MAY AFFECT YOUR LEGAL RIGHTS.
PLEASE READ THIS NOTICE CAREFULLY.

## *Definition of the Class*

1. The proposed partial settlement class is defined to include all persons throughout the United States and its territories who are or were the next-of-kin of any decedents that were delivered to Tri-State Crematory by *Putnam Funeral Home, Putnam-Reed Funeral Home and/or Putnam-Standefer-Reed Funeral Home* (which will together be referred to as "Putnam" for the remainder of this Notice) for cremation from January 1, 1988 through February 15, 2002, and all persons who paid for the funeral arrangements for those decedents.

2. For purposes of this action, next-of-kin is defined according to the Georgia laws of intestate succession. For instance, for the purposes of this action, the next-of-kin of a decedent is the decedent's spouse, and if there is no living spouse, the decedent's child or children. If there is no living spouse or child(ren), the next-of-kin is the decedent's parent or parents. If there is no living spouse, child(ren) or parent, the next-of-kin is the decedent's brother(s) or sister(s).

## *Brief Description of the Action*

3. A class action is a type of lawsuit in which a few named plaintiffs sue on behalf of themselves and many others who have similar claims. The questions common to the class are decided in one trial. This procedure avoids the delay, confusion, and expense of multiple suits.

4. Beginning on February 15, 2002, the uncremated human remains of at least 334 decedents were discovered on the property surrounding the Tri-State Crematory in Noble, Georgia. Following the discovery of these uncremated bodies, some next-of-kin of decedents whose remains were delivered to Tri-State Crematory filed lawsuits in Tennessee, Alabama and Georgia. Among these suits were three lawsuits filed in federal courts in Alabama and Georgia, two of which were filed as class actions. These lawsuits have been coordinated as the Tri-State Crematory Litigation and have been assigned to one judge, the Honorable Harold L. Murphy, for joint proceedings.

5. Named plaintiffs in the Tri-State Crematory Litigation claim that the defendants are legally responsible in tort and in contract for the damages caused by their alleged failure to dispose of human remains properly and respectfully, as requested by the decedents and their families. On March 17, 2003, the Court issued an order approving the following claims for class action treatment: (1) negligence; (2) willful interference with remains and intentional mishandling of a corpse; (3) negligent interference with remains and mishandling of a corpse; and (4) breach of contract. The Court's order allowing these claims to proceed as a class action is not a ruling on their merits, and defendants deny legal responsibility for these claims. The Court has ruled that Georgia law will apply to these claims.

6. The defendants in this case include Tri-State Crematory, members of the Marsh family who are alleged to have owned and operated the crematory and approximately 50 funeral homes that sent remains to Tri-State Crematory for cremation.

7. The Court has certified a Class defined as follows:

    "All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri-State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State."

    You are automatically a member of the Class if you fit the description above. You will be a participant in the litigation and bound by all Court judgments unless you choose to exclude yourself as described below.

8. The Court has not ruled on the merits of the plaintiffs' claims or defendants' objections. The class ruling does mean that the orders and judgments in this lawsuit – whether favorable to the plaintiffs or unfavorable – will apply to all Class Members who do not leave the Class in the manner described below.

9. A number of factual and legal issues, including whether Putnam negligently allowed the mishandling to occur, and whether the Class Members are entitled under the law to recover money damages for breach of contract and emotional distress are in dispute. Many motions have been filed and hearings held in this case, and substantial investigation and discovery has been conducted. There has been no final ruling on the merits of any of the claims and *Putnam denies any wrongdoing whatsoever*.

10. Without admitting legal responsibility, Putnam has agreed to the terms of a proposed settlement regarding decedents who were sent to Tri-State Crematory by Putnam. On September 18, 2003, Judge Murphy granted preliminary approval of the terms of this proposed settlement as a possibly fair, reasonable and adequate resolution of the pending claims against Putnam.

## *Terms of the Proposed Settlement*

11. The proposed settlement would release claims against Putnam regarding any mishandling of remains at Tri-State Crematory. This proposed settlement, however, does not release claims against Tri-State Crematory or the members of the Marsh family, whom the plaintiffs allege owned and/or operated the crematory. Those claims will automatically be protected by the class action pending before Judge Murphy.

12. The proposed partial settlement provides for creation of a Settlement Fund for distribution among members of the Putnam Funeral Home Settlement Class defined above. Each member of the Settlement Class will be eligible to submit a claim to the Settlement Fund. The Settlement Fund will be distributed to qualified Class Members pursuant to an allocation plan as follows:

    (a) For each decedent sent to Tri-State Crematory by Putnam *from January 1, 1988 through December 31, 1996*, the next-of-kin shall be entitled to a lump sum of *at least* $3100. All unclaimed awards under this subparagraph will be divided equally among the Class Members who are the next of kin of the decedents described under this subparagraph.

    (b) If, for any decedent, *the person(s) who paid for the funeral services* is not the next-of-kin, that person(s) shall be entitled to recover the amount paid for the services out of the Award described in paragraph a above.

    (c) The Awards described above are a lump sum per decedent. If there are more than one next-of-kin of equal relationship (multiple children, for instance), the Award to the next-of-kin shall be divided among each of the equal next of kin equally.

13. The proposed settlement does not impact the ongoing class proceedings against Tri-State Crematory, the Marsh defendants, and/or any non-settling Funeral Home Defendant. The Class Action trial on the remaining claims against Tri-State and the Marsh defendants will be "bifurcated," meaning that it will proceed in two parts. Trial is scheduled to begin on March 1, 2004 in Rome, Georgia. The trial date is subject to change. Part one of the trial on Class Members' claims against Tri-State Crematory, the Marsh defendants, and/or any non-settling Funeral Home Defendant will decide the liability of those defendants for negligence, willful or negligent interference with remains, intentional or negligent mishandling of a corpse, and breach of contract, under Georgia law. If the plaintiffs prevail in part one of the trial (the "liability phase"), the issues of causation and the amount of the Class Members' damages will be determined through individual proof in part two of the trial (the "damages phase"). To assert your damages claim in part two of the trial, you may be required to participate in formal or informal discovery, and may be required to provide information at a deposition, in response to interrogatories, or questionnaires, under the procedures and deadlines to be set by the Court.

### *Representation of the Class*

14. If you are a member of the Class described above, your rights and interests under the proposed settlement will be automatically represented by the named plaintiffs in the Settlement Class and the group of law firms for the plaintiffs appointed by the Court as class counsel who are listed on Exhibit A. You do not need to hire an attorney to pursue your claims as a class member. Class Counsel will represent you on your class claims without direct charge. Class Counsel must apply to the Court for award of fees and costs from the settlement fund. These are contingent on obtaining a benefit for class members. You may hire counsel, at your own expense, to enter an appearance in this case if you desire.

15. To date, class counsel have incurred over $300,000 in out-of-pocket expenses and have invested substantial time on a priority basis to protect and prosecute the Class Members' claims, without receiving compensation of any kind. In class actions, counsel who generate a monetary recovery for the benefit of the class are entitled to an award of attorneys' fees and costs, representing a reasonable percentage of the recovery in recognition of their efforts, expenses, risks and performance.

16. In this case, class counsel are seeking reasonable attorneys' fees of up to 33 percent ($21,450) of the gross amount paid in settlement of the Class Members' claims by Putnam. *The Class Member Awards (described in paragraph 12 of the above section) are net minimum Awards from which the maximum possible attorneys' fees have already been deducted.*

17. Class counsel shall seek Court approval to withhold up to five percent ($3,250) of the gross amount paid in settlement of all Class Members' claims to reimburse class counsel for reasonable and necessary expenses incurred for the common benefit of the Class. If at the conclusion of this Action, class counsel has withheld more funds in costs from Awards than has been reasonably and necessarily incurred for the benefit of the Class, all additional funds shall be returned to the Class on a pro-rata basis, if it is practicable and cost-effective to do so. *The Class Member Awards (described in paragraph 12 of the above section) are net minimum Awards from which the maximum possible reimbursement of expenses have already been deducted.*

18. If you entered into written attorney representation/contingent fee agreements with an attorney prior to March 17, 2003 ("private fee agreements"), your lawyer will be paid from the Court Award of attorneys' fees to class counsel. All requests for attorneys' fees and expenses are subject to Court approval.

### *Your Rights*

19. If you are a member of the Settlement Class, you have the right to make a claim by filling out and signing the Class Member Claim Form and submitting it postmarked no later than December 31, 2003.

20. You also have the right to exclude yourself from the Settlement Class and/or the class proceeding. If you would like to exclude yourself from the Settlement Class and/or the class proceeding, you must personally submit and sign a written "request for exclusion" that includes your full name and current address, your decedent's name, and your relationship to the decedent. Your request for exclusion must be mailed to "Class Counsel, Tri-State Crematory Litigation, 3319 West End Avenue, Suite 600, Nashville, Tennessee 37203" and must be postmarked no later than November 24, 2003.

21. If you decide to leave the Settlement Class and/or the class proceeding,

   (a) you will not participate in any Class recovery of damages from the trial of Class claims in this lawsuit;

   (b) *you will not be bound by any further order affecting the Class in this lawsuit;*

   (c) you will have to retain your own lawyer at your expense if you wish to pursue individual litigation for money damages against any defendants;

   (d) you will have to present any claims you wish to pursue against the defendants by filing your own lawsuit.

   If you decide to leave the Settlement Class, you will not share in the Settlement Fund, and if you wish to pursue any claims against the settling defendants you must do so individually at your own expense.

### *Final Approval Hearing*

22. The Court will conduct a final approval hearing to consider all comments on the settlement and to decide whether to approve the settlement. You have the right, but are not required, to comment on the proposed settlement and to appear at the final approval hearing, either in person or through your attorney. The final approval hearing will be held on December 4, 2003, at 3:00 p.m. at the federal courthouse in Rome, Georgia. Any comments to the settlement must be submitted in writing to the Court with copies to class counsel, by no later than November 24, 2003.

### *For More Information*

23. If you wish to communicate with class counsel as your lawyers in this litigation, you may do so by writing:

   Class Counsel
   Tri-State Crematory Litigation
   3319 West End Avenue, Suite 600
   Nashville, Tennessee 37203

You may also call the following toll-free number: 1-866-313-1973. For further information and updates regarding the ongoing class action against Tri-State Crematory and the Marsh defendants, you may call the following toll-free number: 1-877-877-4521 or visit the interactive, informational website for Class Members: www.crematoryclassaction.com.

Dated: October 17, 2003

Hon. Harold L. Murphy
United States District Court
Northern District of Georgia, Rome Division

---

*Si usted desea obtener una copia de este documento legal en Espanol, favor de actuar immediatamente y escribir a*

**Class Counsel**
**Tri-State Crematory Litigation**
**3319 West End Avenue, Suite 600**
**Nashville, Tennessee 37203**

---

### EXHIBIT A

*Class Counsel*

**Plaintiffs' Lead Counsel**
Elizabeth J. Cabraser
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

Kathryn E. Barnett
LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
3319 West End Avenue, Suite 600
Nashville, TN 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

**Plaintiffs' Liaison Counsel**
Robert H. Smalley, III
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
P.O. Box 1105
Dalton, GA 30722-1105
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

# If You Are the Next of Kin of Any Person Whose Funeral Arrangements for Cremation Were Made Through

- ## Buckner-Rush Funeral Home
- ## Putnam Funeral Home, Inc.
- ## Putnam-Reed Funeral Home
- ## Putnam-Standefer-Reed Funeral Home

## You May Be Entitled to a Recovery in the Tri-State Crematory Class Action.

There is a partial settlement of certain claims involving four funeral homes in the class action *In re: Tri-State Crematory Litigation*, MDL No. 1467, (N.D. GA, Rome Div.). Please read this Court-ordered notice to understand your legal rights.

### What is This About?

Beginning on February 15, 2002, the uncremated remains of at least 334 decedents were discovered at Tri-State Crematory in Noble, Georgia.

A class action lawsuit against Tri-State Crematory, members of the Marsh family who are alleged to have owned and operated it, and the funeral homes that sent bodies to Tri-State Crematory between 1988 and 2002 asserts that the defendants are all legally responsible for damages caused by their alleged failure to dispose of human remains properly and respectfully.

Judge Harold L. Murphy certified the class action lawsuit, *In re: Tri-State Crematory Litigation*, MDL No. 1467, (N.D. GA, Rome Div.) for trial on the plaintiffs' claims of negligence, willful interference with remains and intentional mishandling of a corpse; negligent interference with remains and mishandling of a corpse; and breach of contract under Georgia law. Defendants deny any liability on these claims.

Phase one of the trial on the remaining claims against Tri-State Crematory, the Marsh defendants and any non-settling funeral home defendants will begin on March 1, 2004.

### Who is Involved?

You are automatically a Settlement Class Member if you fit either of two Settlement Class descriptions below:

- *Buckner-Rush Funeral Home Settlement Class*
  All those who are or were next of kin of any person whose remains were sent to Tri-State Crematory by Buckner-Rush Funeral Home between January 1, 1988 to February 15, 2002, or all persons who were parties to any contract for funeral arrangements for any decedent sent to Tri-State Crematory between January 1, 1988 and February 15, 2002.
- *Putnam Funeral Home Settlement Class,*
  All those who are or were next of kin of any person whose remains were sent to Tri-State Crematory by Putnam Funeral Home, Putnam-Reed Funeral Home or Putnam-Standefer-Reed Funeral Home between January 1, 1988 to February 15, 2002, or all persons who were parties to any contract for funeral arrangements for any decedent sent to Tri-State Crematory between January 1, 1988 and February 15, 2002.

For purposes of this action, next-of-kin is defined according to the Georgia laws of intestate succession.

### Terms of the Proposed Settlement

The proposed partial settlement provides for the creation of a Settlement fund for distribution among members of the Buckner-Rush Settlement Class and the Putnam Funeral Home Settlement Class. Each member of the Settlement Class will be eligible to submit a claim to the Settlement Fund. The Settlement will be distributed to qualified Class Members according to a Court-approved allocation plan. Complete information on the terms and amount of the Settlements is available by calling 866-313-1973.

### What are My Rights?

The rights and interests of the Class Members are automatically protected by the named plaintiffs in the lawsuit and by Class Counsel. Class Counsel have agreed to represent the Class on a contingent fee basis, with any fees and costs to be awarded by the Court.

- If you are a member of the Settlement Class, you have the right to make a claim by filling out and signing the Class Member claim form and submitting it postmarked no later than December 31, 2003. By remaining a Class Member, any claims you may have against the defendants covered in the partial settlement will be released. The settlement does not release your claims against the Tri-State Crematory or the Marsh defendants.
- If you wish to exclude yourself from the Settlement Class and/or the class proceeding, you must personally do so in writing. All written, signed exclusions must be postmarked by 5:00 p.m. ET on November 24, 2003 and sent to Class Counsel, 3319 West End Avenue, Suite 600, Nashville, TN 37203, as described in the Notice of Class Action and Proposed Partial Class Action Settlement. If you decide to leave the Settlement Class you will not share in the class settlement and must pursue your individual claims against the settling defendants at your own expense.

The court will conduct a final approval hearing to decide whether to approve the Settlement on December 4, 2003, at 3:00 p.m. ET, at the federal courthouse in Rome, Georgia. You have the right, but are not required to comment on the proposed Settlement and to appear at the final approval hearing, either in person or through your attorney. Any comments to the Settlement must be submitted in writing to the Court with copies to Class Counsel, no later than November 24, 2003.

### This is a Summary. For further information, the Notice of Class Action and Proposed Partial Class Action Settlement and a Claim Form, please

## call Toll-Free: 1-866-313-1973

### or write: Class Counsel 3319 West End Avenue, Suite 600, Nashville, TN 37203

### For information regarding the ongoing class action proceedings and claims against Tri-State Crematory and the Marsh defendants, call Toll-Free: 1-877-877-4521 or visit: www.crematoryclassaction.com

*In Re: Tri-State Crematory Litigation – MDL. Docket No. 1467*

## ESTIMATED MEDIA BUDGET

### Paid Media

**Advertising**
    Daily Newspapers                        $14,020.00

### Production
    Ad Design and Layout/ Camera-Ready Materials      $   75.00

### Miscellaneous Expenses
    Courier, Duplicating, Overnight Delivery, Postage,
    Travel, Telephone and Telefax               $200.00

**Estimated Total:**                          **$14,295.00**

© 2003 Proprietary and Confidential.
Kinsella Communications, Ltd.
Page 1 of 1

*In Re: Tri-State Crematory Litigation – MDL. Docket No. 1467*

## ESTIMATED MEDIA BUDGET

### Paid Media

**Advertising**
Daily Newspapers                                   $14,020.00


### Production
Ad Design and Layout/ Camera-Ready Materials       $   75.00

### Miscellaneous Expenses
Courier, Duplicating, Overnight Delivery, Postage,
Travel, Telephone and Telefax                      $200.00


**Estimated Total:**                               **$14,295.00**

© 2003 Proprietary and Confidential.
Kinsella Communications, Ltd.
Page 1 of 1



**KINSELLA**

COMMUNICATIONS, LTD.

A SOURCECORP COMPANY

### In Re: Tri-State Crematory Litigation
### United States District Court Northern District of Georgia, Rome Division
#### MDL Docket No. 1467

## NOTICE PLAN FOR PROPOSED CLASS ACTION SETTLEMENT

This proposal is submitted in connection with *In Re: Tri-State Crematory Litigation* . It outlines procedures to provide fair and adequate notice of a partial settlement of the class action to individuals defined below.

## CLASS DEFINITION

The Class includes the following:

> All those who are or were next of kin of any decedents delivered by Buckner-Rush Enterprises, Inc. d/b/a Buckner-Rush Funeral Home, Putnam Funeral Home, Inc., d/b/a Putnam-Reed Funeral Home, and Putnam-Standefer-Reed Funeral Home ("Defendants"), to Defendant Tri-State Crematory, from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendants regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State.

1920 L Street, NW | Suite 700 | Washington, DC 20036
Phone: 202.686.4111 | Fax: 202.293.6961 | Email: info@kinsella.com | http://www.kinsella.com

*In Re: Tri-State Crematory Litigation – MDL. Docket No. 1467*

## SITUATION ANALYSIS

Plaintiffs allege that the Defendants failed to ensure that cremations were being performed according to all applicable laws and regulations. The Defendants, in connection with Tri-State Crematory, are alleged to have failed to follow the basic industry practices by improperly cremating bodies, commingling the remains of the bodies in its custody, and fraudulently returning to families non-human materials such as concrete dust that were represented as being human remains. The Defendants deny all allegations.

In February 2002, improperly buried remains of 339 corpses were found on the property of the Tri-State Crematory. It is not known how many additional bodies, if any, were not properly cremated since 1988.

© October, 2003 Proprietary and Confidential.
Kinsella Communications, Ltd.

## NOTICE IMPERATIVES

To provide notice to Settlement Class Members, the following three-part program is recommended:

- Direct notice by first-class mail to all individuals whose names and addresses are readily available.

- Broad notice through the use of paid media in daily newspapers in the geographic areas where the Defendant funeral homes are located, and surrounding their counties.

- Electronic notice through Internet advertising and an Internet website listed with major search engines.

## DIRECT NOTICE

Direct mail notice is the primary means of notice and will consist of mailing the Notice of Proposed Partial Class Action Settlement to potential Settlement Class Members to inform them of their rights and how they may participate in the Class Action Settlement. The direct notice will be sent to:

- The Settlement Class Members whose names and addresses are derived from the records of the Defendants. Any return mail will be corrected through the national address database and re-mailed, if possible.

- Settlement Class Members whose names and addresses are provided by Plaintiffs' Counsel.

It is believed that the vast majority of Settlement Class Members can be identified from Defendant and Plaintiff records.  Duplicates will be removed from these lists before mailing.

## PAID MEDIA METHODOLOGY

The purpose of the paid media notice is to support and enhance the direct mail notice. To design the paid media segment of the Notice Plan, Kinsella used geographic considerations as well as the following assumptions to shape the parameters of the program:

- Next of kin and other family relatives of the descendents may live in counties that are contiguous to those in which the funeral homes are located, not just in the funeral home counties.

Therefore, this notice program is designed to reach next of kin and other family relatives in the geographic areas surrounding the three Defendant funeral homes.

*In Re: Tri-State Crematory Litigation – MDL. Docket No. 1467*

## GEOGRAPHIC PARAMETERS

In order to determine the geographic scope of the notice program, Kinsella compiled a list of counties in which Defendant funeral homes were located. Based on those counties, surrounding counties in which Settlement Class Members may live were also identified. Counties in which funeral homes are actually located are highlighted in light color (yellow). All surrounding counties are highlighted in the darker color (blue).



*In Re: Tri-State Crematory Litigation – MDL. Docket No. 1467*

The primary counties where the Defendants are located were analyzed to choose where media should be purchased.

| FUNERAL HOME COUNTIES |
| --- |
| Bledsoe |
| Bradley |
| Sequatche |

Counties contiguous to the counties with funeral homes were also identified as follows:

| SURROUNDING FUNERAL HOME COUNTIES |
| --- |
| Cumberland |
| Grundy |
| Hamilton |
| Marion |
| McMinn |
| Meigs |
| Polk |
| Rhea |
| Van Buren |
| Warren |

# TARGET AUDIENCES

## DEMOGRAPHICS

All media is purchased based on demographics such as age, gender, education, income and the like. However, due to the nature of this case and the breadth of age and gender that decedent family members exhibit, a broad demographic target is appropriate. Adults 18 years of age and older ("Adults 18+") will be the demographic target.

# PAID MEDIA RECOMMENDATIONS

The paid media program is designed to support the direct mail notice with advertising in major daily newspapers in the counties where funeral homes are located and contiguous counties. Newspapers were selected as the main vehicle because of the size and geographic location of the Settlement Class and because according to Simmons Market Research Bureau[2], 79% of Adults 18+ rely on newspapers to keep them informed.

---

[2] **Simmons Market Research Bureau** is a nationally accredited media and marketing research firm providing syndicated data on audience size, composition, and other factors pertaining to major media including broadcast publications, newspapers, and outdoor advertising. It provides a single source measurement of major media, products, services, and in-depth consumer demographic and lifestyle/ psychographics characteristics.

### PRINT

## Notice Design

The Summary Notice (See Exhibit 1.) for this plan is designed as an advertisement to capture and hold the attention of the reader with:

- A bold headline to alert potential Settlement Class Members that the Notice contains information that may affect them.  The headline is directed to the next of kin of decedents who were delivered by Defendants, for cremation at Tri-State Crematory.

- Easy to read text providing key information regarding the subject of the litigation, the class definition and the legal rights available to Settlement Class Members as well as a complete list of Defendants listed by geographic location.

- Subheads to direct the reader to specific information.

- A toll-free number and P.O. Box to obtain a complete notice.

Unlike product or consumer ads, the Summary Notice is designed to alert the reader that the message contains important legal information.

*Every Summary Notice in the chosen newspapers will be sized to make it highly visible to Settlement Class Members. The placement requested for the newspaper notice in daily newspapers will be the front section, which is the most read section of newspapers.*

## Print Placement

### DAILY NEWSPAPERS

The Summary Notice will be placed as a quarter-page ad in the Sunday edition of the following major daily newspapers. These newspapers have circulation in all funeral home counties and contiguous counties.

| STATE | NEWSPAPER | CIRCULATION |
|-------|-----------|-------------|
| TN | *Chattanooga Free Press* | 98,879 |
| TN | *Cleveland Banner* | 16,537 |
| TN | *Tennessean* | 278,296 |

*In Re: Tri-State Crematory Litigation – MDL. Docket No. 1467*

## Readers Per Copy

Readers per copy ("RPC") are the number of individuals who read a given copy of a publication. This can also be referred to as pass-along or secondary readership. The number of daily and Sunday newspaper readers is measured nationally and regionally by MRI[3]. This readership is compared to the circulation of newspapers in the respective geographies to develop estimates of RPC's. Estimates of readership to local daily newspapers can then be projected using the appropriate regional RPCs.

| PUBLICATION | TARGET | READERS PER COPY OF ADULTS 18+ |
|---|---|---|
| Sunday Newspapers | East South Central Census Sub-Region 18+ | 2.25 |

# MEDIA DELIVERY

The population of Adults 18+ in the three funeral home counties, and their 10 surrounding counties, will deliver notice to approximately 224,172 readers.

| | ADULT 18+ POPULATION | SUNDAY NEWSPAPER ADULT 18+ READERSHIP |
|---|---|---|
| Funeral Home Counties | 108,583 | 50,114 |
| Surrounding Counties | 433,179 | 174,058 |

---

[3] **MediaMark Research Inc.** ("MRI") is a nationally accredited media and marketing research firm that provides syndicated data on audience size, composition, and other relevant factors pertaining to major media including broadcast, magazines, newspapers, and outdoor advertising. MRI provides a single source measurement of major media, products, services, and in-depth consumer demographic and lifestyle/psychographic characteristics.

## TOLL-FREE TELEPHONE SUPPORT

A toll-free number is provided in the Summary Notice for Settlement Class Members to call for the Notice of Proposed Partial Class Action Settlement.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA, ROME DIVISION

In Re: Tri-State Crematory Litigation )        MDL Docket No. 1467
                                      )
                                      )
                                      )

---

## DECLARATION OF KATHERINE KINSELLA

---

Katherine Kinsella, being first duly sworn, states as follows:

1. I am President of Kinsella Communications, Ltd., an advertising and notification consulting firm in Washington, D.C. that specializes in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members primarily in consumer and mass tort litigation. My business address is 1920 L Street, NW, Suite 700, Washington, D.C. 20036. My telephone number is (202) 686-4111.

2. I submit this declaration in connection with In Re: Tri-State Crematory Litigation pending in the United States District Court for the Northern District of Georgia, Rome Division at the request of the Plaintiffs.

3. This declaration is based upon my personal knowledge and upon information provided by Plaintiffs' Counsel, my associates, and staff. The information is of a type reasonably relied upon in the fields of advertising, media, and communications.

4. I have developed and directed some of the largest and most complex national notification programs in the country, including media-based notification programs in cases involving consumer fraud, asbestos, breast implants, tobacco, infant formula, polybutylene plumbing, home siding products, antitrust, securities, and Holocaust claims. I have designed, implemented, or consulted on over 125 class actions, parens patriae actions, and bankruptcies including, among others:

    *Antitrust*
    State of Connecticut v. Mylan Laboratories, Inc., M.D.L. 1290, Misc. No. 99-276 (TFH/JMF) (lorazepam and chlorazepate)

    In re Nasdaq Market-Makers Antitrust Litigation, No. M21-68 (RWS), 94 Civ. 3996 (RWS), M. D. L. No. 1203 (securities)

1

In re Compact Disc Minimum Advertised Price Antitrust Litigation, M.D.L. No. 1361 (prerecorded music products)

Raz v. Archer Daniels Midland Co., Inc., No. 95-CV-009729 (Wis. Cir. Ct. Milwaukee County) (citric acid)

Carlson v. Abbott Laboratories, No. 94-CV-002608 (Wis. Cir. Ct. Milwaukee County) (infant formula)

In re Motorsports Merchandise Antitrust Litigation, No. 1:97-CV-2314-TWT (N.D.Ga) (merchandise)

Big Valley Milling, Inc. v. Archer Daniels Midland Co., No. 65-C2-96-000215 (Minn. Dist. Ct., Renville County) (lysine)

In re Toys "R" Us Antitrust Litigation, M.D.L. No. 1211, Master File No. CV-97-5750 (E.D.N.Y.) (toys and other products)

Copper Antitrust Litigation, M.D.L. Docket No. 1303 (W.D. Wis.) (physical copper)

State of Florida v. Nine West Group, Inc., Civil Action No. 00 CIV 1707 (BDP) (S.D.N.Y) (shoes)

## Consumer

Bonilla v. Trebol Motors Corporation, No. 92-1795 (D.P.R.) (automobiles)

Burch v. American Home Products Corp., No. 97-C-204 (1-11) (W.Va. Cir. Ct., Brooke County) (Fen Phen)

Woosley v. State of California, No. CA 000499 (Cal. Super. Ct. Los Angeles County) (automobiles)

## Discrimination

In re Holocaust Victim Assets Litigation, No. CV 96-4849 (ERK)(MDG) (Consolidated with CV-5161 and CV 97-461) (Holocaust)

McNeil v. American General Life and Accident Insurance Co., No. 8-99-1157 (M.D. Tenn.) (insurance)

Nealy v. Woodmen of the World Life Insurance Co., No. 3:93 CV-536 BN (S.D. Miss.) (insurance)

*Mass Tort*

> Ahearn v. Fibreboard Corporation, C.A. No. 6:93cv526 (E.D. Tex),
> and Continental Casualty Co. v. Rudd, C.A. No. 6:94cv458
> (E.D.Tex) (asbestos injury)

> Georgine v. Amchem, Inc. et al., C.A. No. 93-CV-0215 (E.D.Pa.)
> (asbestos injury)

> Engle v. RJ Reynolds Tobacco Co., No. 94-08273 CA 20 (Fla. Cir.
> Ct., Dade County) (tobacco injury)

> Backstrom v. The Methodist Hospital, No. H.-94-1877 (S.D. Tex.)
> (TMJ injury)

*Pension Benefits*

> Forbush, Rhodes v. J. C. Penney Company, Inc. Pension, Nos. 3:90-
> 2719-X and 3:92-0109-X (N.D. Tex.)

> Collins v. Pension Benefit Guarantee Corp., No. 88-3406 and Page v.
> Pension Benefit Guarantee Corp., No. 89-2997 (D.C. 1996)

*Product Liability*

> Cox v. Shell Oil Co., No. 18,844 (Ch. Ct., Obion Co., Tn.)
> (polybutylene pipe)

> Naef v. Masonite Corp., No.CV-94-4033) (Ala. Cir. Ct. Mobile
> County) (hardboard siding product)

> In re: Louisiana Pacific Corp. Inner Seal OSB Trade Practices
> Litigation, MDL No. 1114, C 95-3178 VRW (N.D. Dist. Cal.)
> (oriented strand board)

> Cosby v. Masonite Corp., No. CV-97-3408 (Ala. Cir. Ct. Mobile
> County) (siding product) and Quin v. Masonite Corp., No. CV-97-
> 3313 (Ala. Cir. Ct. Mobile County) (roofing product)

> Ruff v. Parex, Inc., No. 96-CvS 0059 (N.C. Super. Ct. Hanover
> County) (EIFS)

> Garza v. Sporting Goods Properties, Inc., No. SA 93-CA-1082 (W.D.
> Tex.) (gun ammunition)

Richison v. Weyerhaeuser Company Limited, No. 05532 (Cal. Super. Ct., San Joaquin County) (roofing product)

Shah v. Re-Con Building Products, Inc., No. C99-02919 (Cal. Super. Ct., Contra Costa County) (roofing product)

Hart v. Central Sprinkler Corp., No. BC17627 (Cal. Super. Ct., Los Angeles County) (sprinklers) and County of Santa Clara v. Central Sprinkler Corp., No. CV 17710119 (Cal. Super. Ct., Santa Clara County) (sprinklers)

*Bankruptcies with Mass Tort or Consumer Claimants*

In re: Johns-Manville Corp., 68 B.R. 618, 626 (Bankr. S.D.N.Y.), in 1986 (asbestos)

In re Dow Corning, No. 95-20512 (Bankr. E.D. Mich.) (breast implant)

In re U.S. Brass Corp., No.94-40823S (Bankr. E.D. Tex.) (polybutylene)

In re The Celotex Corp., Consolidated Case Nos: 90-10016-8B1 and 90-10017-8B1 (Bankr. M.D. Fla.); (asbestos)

In re Raytech Corp., No. 5-89-00293 (Bankr. D. Conn.) (asbestos)

5. I have testified as an expert at trial and in a deposition in Engle v. R. J. Reynolds Tobacco, No. 94-08273 (Fla. Cir. Ct., Dade County).  I have been deposed as an expert in In re: NASDAQ Market-Makers Antitrust Litigation, M21-68 RWS), 94-CIV. 3994 (RWS), M.D.L. No. 123 (S.D.N.Y.), In re Dow Corning, No. 95-20512 (Bankr. E.D. Mich.), Georgine v. Amchem, Inc. et al., C.A. No. 93-CV-0215 (E.D.Pa.), In re: W. R. Grace & Co., Chapter 11, No.01-01139 (JJF) (Bankr.D. Del.) and Gross v. Chrysler Corp., No. 061170 (Md. Cir. Ct., Montgomery County). I have testified in court in In re: Swan Transportation Company, Chapter 11, Case No. 01-11690, Cox V. Shell Oil Co., No. 18,844 (Ch. Ct., Obion Co., Tn.) and Ahearn v. Fibreboard Corporation, C.A. No. 6:93cv526 (E.D. Tex) and Continental Casualty Co. v. Rudd, C.A. No. 6:94cv458 (E.D.Tex).

6. I am the author of *The Plain Language Tool Kit for Class Action Notice* published in the October 25, 2002 issue of *Class Action Litigation Report* and the author of *Quantifying Notice Results in Class Actions – the Daubert/Kumho Mandate* published in the July 27, 2001 issue of *Class Action Litigation Report* and the August 7, 2001 issue of *The United States Law Week*, both publications of the Bureau of National Affairs, Inc., and *The Ten Commandments of Class Action Notice* published in the

September 24, 1997 issue of the *Toxics Law Reporter*, also a publication of the Bureau of National Affairs, Inc.

7.  Several courts have commented favorably regarding my analysis of the effectiveness of notice plans and upon the plans of notice prepared by Kinsella Communications. For example, in Ahearn v. Fibreboard Corp., No. 6:93 cv .526 (E.D. Tx) and Continental Casualty Co. v. Rudd, No. 6:94cv458 (E.D. Tx), Chief Judge Robert M. Parker stated: "I have reviewed the plan of dissemination and I have compared them to my knowledge at least of similar cases, the notices that Judge Weinstein has worked with [in the Agent Orange litigation] and Judge Pointe: [in the Silicon Gel Breast Implant Litigation], and it appears to be clearly superior." Similarly, in In re Celotex Corp., Nos. 90-10061-8B1 and 90-10017-8B1 (Bankr. M.D.Fla.), the Hon. Thomas E. Baynes, Jr. stated: "[T]he record should also reflect the Court's appreciation to Ms. Kinsella for all the work she's done, not only in pure noticing, but ensuring that what noticing we did was done correctly and professionally."

8.  In Cox v. Shell Oil Co., Civil Action No. 18,844 (Ch. Ct., Obion County, Tenn.), a class action concerning polybutylene plumbing, Judge Michael Maloan, of the Tennessee Chancery Court, entered an Order approving the nationwide settlement and the notice plan, stating: "The Court finds the notice program is excellent. As specified in the findings below, the evidence supports the conclusion that the notice program is one of the most comprehensive class notice campaigns ever undertaken."

9.  Kinsella Communications, Ltd. was retained to design and implement the Proposed Class Action Settlement Notice Program in this litigation. I submit this declaration to describe the elements of the Notice Program.

## Proposed Notice Program

10. The objective of the Notice Program is to provide adequate notice of the partial Settlement of this case to Settlement Class Members who are defined as follows:

> All those who are or were next of kin of any descendants delivered by Buckner Rush Funeral Home, Putnam Funeral Home, Putnam-Reed Funeral Home, and Putnam-Standefer-Reed Funeral Home ("Defendants"), to Defendant Tri-State Crematory, to the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendants regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State.

11. A three-part notification program was designed and includes:

- Direct notice by first-class mail to all individuals and entities whose names and addresses are readily available.

- Broad notice through the use of paid media in daily newspapers in the geographic areas where the Defendant funeral homes are located, and their surrounding counties.

- Electronic notice through Internet advertising and an Internet website listed with major search engines.

12. Direct mail notice is the primary means of notice and will consist of mailing the Notice of Proposed Partial Class Action Settlement to Settlement Class Members to inform them of their rights and how they may participate in the Settlement. The direct notice will be sent to:

- The Class Members whose names and addresses are derived from the records of the Defendants. Any return mail will be corrected through the national address database and re-mailed, if possible.

- Class Members whose names and addresses are provided by Plaintiffs' Counsel.

- All callers to the toll-free information line who request the Notice of Proposed Partial Class Action Settlement. The toll-free number for this information line will appear prominently in the published forms of notice.

13. To design the paid media segment of the Notice Plan, Kinsella used geographic considerations. Kinsella considered the fact that next of kin and other family relatives of the descendents may live in counties that are contiguous to those in which the funeral homes are located, not just in the funeral home counties. Therefore, this notice program is designed to reach next of kin and other family relatives not only in the counties where the four Defendant funeral homes are located but also in the counties contiguous.

14. The primary counties where the Defendant funeral homes are located are:

| DEFENDANT FUNERAL HOME | COUNTY |
|---|---|
| Buckner Rush Funeral Home | ~~Bledsoe~~ Bradley |
| Putnam Funeral Home | ~~Bradley~~ Bledsoe |
| Putnam-Reed Funeral Home | Marion |
| Putnam-Standefer-Reed Funeral Home | Sequatche |

15. Counties contiguous to the counties where Defendant funeral homes are located:

| DEFENDANT FUNERAL HOME | CONTIGUOUS COUNTIES |
|---|---|
| Buckner Rush Funeral Home (~~Bledsoe~~ Bradley) | Sequatche, Van Buren, Cumberland, Rhea, Hamilton |
| Putnam Funeral Home (~~Bradley~~ Bledsoe) | Hamilton, Meigs, McMinn, Polk |
| Putnam-Reed Funeral Home (Marion) | Franklin, Grundy, Sequatche, Hamilton |
| Putnam-Standefer-Reed Funeral Home (Sequatche) | Marion, Grundy, Warren, Van Buren, Bledsoe, Hamilton |

16. The Summary Notice will be placed as a quarter-page ad in the Sunday edition of the following major daily newspapers. These newspapers have circulation in all Defendant funeral home counties and contiguous counties.

| STATE | NEWSPAPER | CIRCULATION |
|---|---|---|
| TN | Chattanooga Free Press | 98,879 |
| TN | Cleveland Banner | 16,537 |
| TN | Tennessean | 278,296 |

17. All print advertising and media will carry a toll-free telephone number, a website address, and a mailing address for Settlement Class Members to request or access the Notice of Proposed Partial Class Action Settlement.

18. It is my opinion that the direct mail notice and supporting published notice is reasonable, adequate and the best possible under the circumstances and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I solemnly affirm under the penalty of perjury of the laws of the District of Columbia and the United States of America, and upon personal knowledge that the contents of the foregoing paper are true.

_Katherine Kinsella_
Katherine Kinsella

_October 10, 2003_
Date

8