

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE CREMATORY )          MDL DOCKET NO. 1467
LITIGATION                                        )
                                                          )
This relates to all actions.                )

## RESPONSE OF DEFENDANTS PEEPLES FUNERAL HOME, INC., JONES FUNERAL HOME, INC., AND BURT FUNERAL HOMES, INC. TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

COME NOW, Peeples Funeral Home, Inc. (hereinafter "Peeples"), Jones

Funeral Home, Inc. (hereinafter "Jones"), and Burt Funeral Homes, Inc.

(hereinafter "Burt"), Defendants in the above-styled civil action, and hereby

incorporate by reference Funeral Home Defendants' Response To Plaintiffs'

Motion For Partial Summary Judgment filed contemporaneously herewith by

Liaison Counsel for the Funeral Home Defendants. Additionally, Peeples, Jones,

and Burt show this honorable Court as follows:

## I.    ADDITIONAL ARGUMENT AND CITATION OF AUTHORITY

### A.    Neither Tri-State Nor the Marshes Were Agents of Peeples Funeral Home, Jones Funeral Home, or Burt Funeral Home.

These Defendants have submitted the Affidavit of John Wesley Peeples

("Peeples Affidavit," a true and correct copy of which is attached hereto as Exhibit

381795-2                                                  1                                                  661

1); the Affidavit of Jesse R. Jones ("Jones Affidavit," a true and correct copy of which is attached hereto as Exhibit 2); and the Affidavit of R.J. Burt ("Burt Affidavit," a true and correct copy of which is attached hereto as Exhibit 3) regarding the particular dealings the funeral homes had with Tri-State and members of the Marsh family.[1]  These Affidavits are direct, affirmative evidence that Tri-State and the Marshes were operating as independent contractors.  Neither Peeples nor Jones nor Burt Funeral Homes controlled Tri-State Crematory's nor the Marshes' hours of work.  *See* Peeples Affidavit, ¶ 6; Jones Affidavit, ¶ 5; Burt Affidavit, ¶ 8.  Neither Peeples nor Jones nor Burt told Tri-State how to perform the cremation, nor instructed Ray Marsh to utilize a certain crematory manufacturer, or use specific tools or materials associated with the cremation process.  *See* Peeples Affidavit, ¶ 7; Jones Affidavit, ¶ 6; Burt Affidavit, ¶ 9.

With respect to Peeples, after a cremation was completed, Ray, Brent, or Rhames Marsh would return the cremated remains back to the funeral home.  *See* Peeples Affidavit, ¶ 9.  With respect to Jones Funeral Home, after a cremation was

---

[1] The original Affidavit of John Wesley Peeples was previously filed as Exhibit A to Peeples Funeral Home, Inc.'s Brief in Support of Summary Judgment.  The original Affidavit of Jesse R. Jones was previously filed as Exhibit A to Jones Funeral Home, Inc.'s Brief in Support of Summary Judgment.  The original Affidavit of R.J. Burt was previously filed as Exhibit A to Burt Funeral Homes,

completed, Ray Marsh would return the cremated remains himself back to the funeral home. *See* Jones Affidavit, ¶ 8. With respect to Burt Funeral Home, after a cremation was completed, Ray Marsh would return the cremated remains himself to the funeral home. *See* Burt Affidavit, ¶ 8. Under Georgia law, these facts prove that Tri-State Crematory and the Marshes were independent contractors, not agents of Peeples, Jones, and Burt Funeral Homes.

Further, Peeples, Jones, and Burt testified in their affidavits that neither Tri-State Crematory nor Ray Marsh nor Brent Marsh was ever an agent, employee or servant of Peeples, Jones, or Burt Funeral Home. *See* Peeples Affidavit, ¶ 12; Jones Affidavit, ¶ 11; Burt Affidavit, ¶ 14. It has long been the Georgia rule that "one who is a party to the alleged relationship (the principal or agent) may testify as a fact as to the existence or non-existence of the relationship and that such testimony would not be subject to the objection that the statement was a conclusion or the ultimate fact. The denial of the existence of any agency relationship may thus constitute an uncontradicted fact which will sustain a motion for summary judgment." *Stallings v. Sylvania Ford-Mercury, Inc.*, 242 Ga. App. 731, 733, 533 S.E.2d 731, 733 (2000). *See also Entertainment Developers, Inc. v. Relco, Inc.*,

---

Inc.'s Brief in Support of Summary Judgment.

172 Ga. App. 176, 177, 322 S.E.2d 304, 305 (1984)( finding "[w]hen a party to an alleged agency relationship denies that such a relationship exists, that is a statement of fact" and "a bare assertion of the existence of an agency relationship, when made by an outsider to the alleged relationship, is not a statement of fact, but merely an unsupported conclusion of law.") (citations omitted).

Thus, this Court should find as a matter of law that Tri-State Crematory and the Marshes were **not** the agents of Peeples, Jones, and Burt Funeral Homes.

**B. Even if This Court Were to Find That Tri-State Was an Agent of Peeples, Jones, or Burt, These Funeral Home Defendants Should Not Be Held Liable For the Alleged Acts of Tri-State.**

As demonstrated above, Tri-State and the Marshes were clearly independent contractors of the funeral home Defendants. For the sake of argument, however, even if this Court were to find that an agency relationship between Tri-State and the funeral homes, the alleged acts of Tri-State and the Marshes would have been outside the scope of such employment. "The mere fact that a tortuous act of an employee amounts to a crime does not, per se, relieve his employer from liability. The test of liability is the same as in cases where a non-criminal act is involved; the act must have been one authorized by the employer prior to its commission, ratified after its commission, or committed within the scope of the employment." *Medley*

*v. Boomershine Pontiac-GMC Truck, Inc.,* 214 Ga. App. 795, 797, 449 S.E.2d 128, 131-32 (1994).

The recent Georgia Supreme Court case of *Piedmont Hosp., Inc. v. Palladino*, 276 Ga. 612; 580 S.E.2d 215; 2003 Ga. LEXIS 357; 2003 Fulton County D. Rep. 1405 (2003) is closely analogous (except that in our case, there exists no agency relationship between Tri-State and the funeral home Defendants). In *Palladino*, the plaintiff had checked into the hospital to have groin surgery. *Id.* at 613. While recovering from surgery, he awoke in the middle of the night to discover a male nurse massaging his penis and preparing to engage in an act of oral sodomy. *Id.* The male nurse's assigned duties that night had been to provide post-surgical treatment to Palladino and "to enter Palladino's hospital room alone, check the groin area for any bleeding or complications, clean the area, and, if necessary, move Palladino's testicles in order to perform these tasks." *Id.* The court found that "[e]very person shall be liable for torts committed by his . . . servant by his command . . . and *within the scope of his business*, whether the same are committed by negligence or voluntarily." *Id.* "Two elements must be present to render a master liable [under respondeat superior]: first, the servant must be in furtherance of the master's business; and, second, he must be acting within the scope of his

master's business." *Id.* If a tort is committed by an employee "not by reason of the employment, but because of matters disconnected therewith," the employer is not liable. *Id.* If a tortuous act is committed not in furtherance of the employer's business, "but rather for *purely personal reasons* disconnected from the authorized business of the master, the master [is] not ... liable." *Id.* at 614.

The Court of Appeals had found that the misconduct of the nurse could be attributable to the hospital under respondeat superior, but the Supreme Court reversed based on the following analysis: "the Court of Appeals reasoned that Patterson's alleged conduct was 'not so far removed from his accepted duties to preclude liability for his employer.' This conclusion is both illogical and at odds with cases such as *Lucas* and *Mountain, supra*. While Patterson's employment did authorize him to inspect and clean the incision in Palladino's groin, in no way did it permit him to sexually manipulate Palladino's genitals. The only nexus between these two actions is that they occurred in the same region of the body. Such a physiological connection is an insufficient basis to expose an employer to vicarious liability for its employee's tortuous conduct, especially when the misconduct is obviously and irrefutably outside the scope of his employment." *Id.* at 616.

Similarly, in our case, the mere nexus of handling the body does not create a basis to hold the funeral homes liable for the failure of Tri-State or the Marshes to cremate the bodies and instead store them on their property. Tri-State's alleged acts were even more shocking and extraordinary than the occurrence in the *Palladino* case. Chief State Medical Examiner Kris Sperry testified that "it is still begged believability. I mean, again, it was just something that transcended anything I and I think pretty much everyone else there had really ever seen ... Just looking at all of this, it was – it still – it was very difficult, excuse me, to find words to describe it, just because it was, I'd say, *beyond the life experience* of even fairly seasoned professionals like myself." *See* Deposition of Kris Sperry, p. 277 (emphasis added). Thus, such acts which were beyond the life experience were clearly for Mr. Marsh's own personal benefit and beyond the scope of any alleged employment relationship between the funeral homes and Tri-State.

## II.    CONCLUSION

For all of the foregoing reasons, Peeples Funeral Home, Inc., Jones Funeral Home, Inc., and Burt Funeral Homes, Inc. respectfully request that the Court deny Plaintiffs' motion for partial summary judgment.

Respectfully submitted this 13th day of November, 2003,

> **HALL, BOOTH, SMITH & SLOVER, P.C.**
>
> *John E. Hall, Jr.*
>
> JOHN E. HALL, JR.
> Georgia Bar No. 319090
>
> *Roger S. Sumrall*
>
> ROGER S. SUMRALL
> Georgia Bar Number 004490
> 1180 West Peachtree Street, N.W., Suite 900
> Atlanta, Georgia 30309
> Phone (404) 954-5000
> Fax (404) 954-5020
> Attorneys for Defendants Peeples Funeral
> Home, Inc., Jones Funeral Home, Inc., and
> Burt Funeral Homes, Inc.

381795-2

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have this day served a copy of the within and foregoing **Response of Defendants Peeples Funeral Home, Inc., Jones Funeral Home, Inc., and Burt Funeral Homes, Inc. to Plaintiffs' Motion for Partial Summary Judgment** upon all parties to this matter by depositing a true copy of same in the United States Mail, in a properly addressed envelope with adequate postage thereon to the counsel of record as follows:

**PLAINTIFFS' LIAISON COUNSEL**:

Robert H. Smalley, III, Esq.
**McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP**
P.O. Box 1105
Dalton, Georgia  30720-1105

**PLAINTIFFS' LEAD COUNSEL:**

Elizabeth J. Cabraser, Esq.
**LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP**
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, California  94111

**COUNSEL FOR SCI DEFENDANTS AND LEAD AND
LIAISON COUNSEL FOR FUNERAL HOME DEFENDANTS:**

J. Anderson Davis, Esq.
Robert M. Brinson, Esq.
**BRINSON, ASKEW, BERRY, SEIGLER,
  RICHARDSON & DAVIS, LLP**
The Omberg House
615 West First Street
P.O. Box 5513
Rome, Georgia  30162-5513

**LIAISON/LEAD COUNSEL FOR DEFENDANTS,
T. RAY BRENT MARSH & TRI-STATE CREMATORY:**

McCracken K. Poston, Jr., Esq.
**OFFICE OF MCCRACKEN POSTON, JR.**
P.O. Box 1130
Ringgold, Georgia 30736

Frank E. Jenkins, III, Esq.
**JENKINS & OLSON**
15 South Public Square
Cartersville, GA  30120-3350

This 13th day of November, 2003.

ROGER S. SUMRALL
Georgia Bar Number 004490
1180 West Peachtree Street, N.W., Suite 900
Atlanta, Georgia 30309
Phone (404) 954-5000
Fax (404) 954-5020.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE CREMATORY     )     MDL DOCKET NO. 1467
LITIGATION                      )
                                )
This relates to all actions.    )

## AFFIDAVIT OF JOHN WESLEY PEEPLES

STATE OF GEORGIA

COUNTY OF Murray.

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, John Wesley Peeples who, after being duly sworn, deposes and states as follows:

1.

My name is John Wesley Peeples, I am over the age of twenty-one years, laboring under no disability, have actual and personal knowledge of the facts set forth in this Affidavit and am otherwise competent to make and give this Affidavit.  I make this Affidavit for use in a Motion for Summary Judgment.

2.

I am a licensed funeral director in Georgia and currently own and operate Peeples Funeral Home in Chatsworth, Georgia.



EXHIBIT
1

EXHIBIT
A

1

3.

Peeples Funeral Home's correct corporate name is Peeples Funeral Home, Inc.

4.

I have been a licensed funeral director in Georgia since I started my business at Peeples Funeral Home in 1965.

5.

Peeples Funeral Home began using the services of Tri-State Crematory ("Tri-State") in 1988.  All of the employees at Peeples Funeral Home, including myself, worked with Ray Marsh or Brent Marsh in coordinating cremations between 1988 and March of 2001.

6.

In order to arrange a cremation, I would usually call Ray Marsh or Brent Marsh on the telephone and inform him that we needed a cremation for a particular decedent.  Ray Marsh or Brent Marsh would then pick up the decedent for cremation.  At no time has Peeples Funeral Home ever controlled Tri-State Crematory's hours of work.

2

7.

Tri-State would pick up the decedent for cremation or an employee of Peeples Funeral Home would personally deliver the decedent to Tri-State. At no time has Peeples Funeral Home ever instructed Ray Marsh or Brent Marsh on how to perform the cremation. At no time has Peeples Funeral Home ever instructed Ray Marsh or Brent Marsh on what specific tools or materials to use for his cremation nor did Peeples Funeral Home instruct him to utilize certain cremation techniques or procedures.

8.

At no time has Peeples Funeral Home ever instructed Ray Marsh or Brent Marsh to utilize a certain brand of cremation unit or suggested to Ray Marsh or Brent Marsh the time, manner, or method by which the crematory would be serviced, if necessary.

9.

After a cremation was completed, Ray, Brent, or Rhames Marsh would return the cremated remains himself back to the funeral home.

10.

Prior to February 15, 2002, my understanding was that the Marsh family, and specifically Ray Marsh and Brent Marsh, had a good reputation in their community and among funeral directors. I had no information that any member of the Marsh family had committed any crimes or had any propensity to commit a crime.

3

11.

Prior to February 15, 2002, and at all times that Peeples Funeral Home contracted for the services of Tri-State, I considered the services to be prompt and efficient and in fulfillment of Tri-State's undertaking to effect a proper cremation.

12.

Neither Tri-State Crematory nor Ray Marsh nor Brent Marsh was ever an employee, agent, or servant of Peeples Funeral Home.

13.

At no time has Peeples Funeral Home in any manner represented or held out to anyone that Tri-State Crematory was an agent and/or employee of Peeples Funeral Home.

14.

Prior to February 15, 2002, I never had any information that anything was amiss at Tri-State, or that Tri-State was not performing its undertaking to effect proper cremations.

15.

Prior to February 15, 2002, I had no information that there were on the premises of Tri-State any uncremated bodies.

4

16.

Prior to February 15, 2002, I had no information that Tri-State had given to anyone any adulterated or misidentified cremated remains.

17.

Prior to February 15, 2002, I had no information that Tri-State, or anyone at Tri-State had, willfully or intentionally or otherwise, interfered with human remains or mishandled a corpse.

18.

Prior to February 15, 2002, I had no information that even caused me to suspect that Tri-State was not effecting proper cremations, or that there were on the premises of Tri-State any uncremated bodies, or that Tri-State had given to anyone any adulterated or misidentified cremated remains, or that Tri-State had interfered with human remains or mishandled a corpse.

19.

I have never willfully, intentionally, or otherwise interfered with human remains or mishandled a corpse, nor am I aware that any employee of Peeples Funeral Home ever has done so.

5

20.

I have never authorized, ratified or otherwise approved the improper cremation or adulteration of human remains, the interference with human remains or mishandling of any corpse by Tri-State, nor am I aware that any employee of Peeples Funeral Home has ever given such authorization, ratification or approval. FURTHER THE AFFIANT SAITH NOT.

This __7__ day of September, 2003.

Peeples Funeral Home, Inc.

By: _John Wesley Peeples_

JOHN WESLEY PEEPLES
Funeral Home Director

Sworn to and Subscribed
before me this __9ᵗʰ__
day of September, 2003.

_____
NOTARY PUBLIC
My Commission Expires:
August 15, 2006

6

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE CREMATORY   )   MDL DOCKET NO. 1467
LITIGATION                    )
                              )
This relates to all actions.  )

## AFFIDAVIT OF JESSE R. JONES

STATE OF GEORGIA

COUNTY OF _Murray_.

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, Jesse R. Jones who, after being duly sworn, deposes and states as follows:

1.

My name is Jesse R. Jones, I am over the age of twenty-one years, laboring under no disability, have actual and personal knowledge of the facts set forth in this Affidavit and am otherwise competent to make and give this Affidavit.  I make this Affidavit for use in a Motion for Summary Judgment.

2.

I am a licensed funeral director in Georgia and currently own and operate Jesse Jones Funeral Home, Inc., d/b/a Jones Funeral Home in Chatsworth, Georgia and Jesse Jones Corporation, d/b/a Jones Funeral Home in Tunnel Hill, Georgia.

3.

I have been a licensed funeral director in Georgia since

1





August of 1950.

4.

Jones Funeral Home began using the services of Tri-State Crematory ("Tri-State") in 1988.  All of the employees at Jones Funeral Home, including myself, worked with Ray Marsh in coordinating cremations between 1988 and 1995.

5.

In order to arrange a cremation, I would usually call Ray Marsh on the telephone and inform him that we needed a cremation for a particular decedent.  I would ask when I or my son, also a Jones Funeral Home employee, could bring the decedent to Tri-State for cremation.  At no time has Jones Funeral Home ever controlled Tri-State Crematory's hours of work.

6.

Jones Funeral Home personally delivered all decedents to Tri-State for cremation, with one exception.  On one occasion, Tri-State picked up the bodies of three members of one family for cremation. At no time has Jones Funeral Home ever instructed Ray Marsh or Brent Marsh on how to perform the cremation.  At no time has Jones Funeral Home ever instructed Ray Marsh or Brent Marsh on what specific tools or materials to use for his cremation nor did Jones Funeral Home instruct him to utilize certain cremation techniques or procedures.

2

7.

At no time has Jones Funeral Home ever instructed Ray Marsh or Brent Marsh to utilize a certain brand of cremation unit or suggested to him the time, manner, or method by which the crematory would be serviced, if necessary.

8.

After a cremation was completed, Ray Marsh would return the cremated remains himself back to the funeral home.

9.

Prior to February 15, 2002, my understanding was that the Marsh family, and specifically Ray Marsh, had a good reputation in their community and among funeral directors.  I had no information that any member of the Marsh family had committed any crimes or had any propensity to commit a crime.

10.

Prior to February 15, 2002, and at all times that Jones Funeral Home contracted for the services of Tri-State, I considered the services to be prompt and efficient and in fulfillment of Tri-State's undertaking to effect a proper cremation.

11.

Neither Tri-State Crematory nor Ray Marsh nor Brent Marsh was ever an employee, agent, or servant of Jones Funeral Home.

3

12.

At no time has Jones Funeral Home in any manner represented or held out to anyone that Tri-State Crematory was an agent and/or employee of Jones Funeral Home.

13.

Prior to February 15, 2002, I never had any information that anything was amiss at Tri-State, or that Tri-State was not performing its undertaking to effect proper cremations.

14.

Prior to February 15, 2002, I had no information that there were on the premises of Tri-State any uncremated bodies.

15.

Prior to February 15, 2002, I had no information that Tri-State had given to anyone any adulterated or misidentified cremated remains.

16.

Prior to February 15, 2002, I had no information that Tri-State, or anyone at Tri-State had, willfully or intentionally or otherwise, interfered with human remains or mishandled a corpse.

17.

Prior to February 15, 2002, I had no information that even caused me to suspect that Tri-State was not effecting proper cremations, or that there were on the premises of Tri-State any uncremated bodies, or that Tri-State had given to anyone any

4

adulterated or misidentified cremated remains, or that Tri-State
had interfered with human remains or mishandled a corpse.

18.

I have never willfully, intentionally, or otherwise
interfered with human remains or mishandled a corpse, nor am I
aware that any employee of Jones Funeral Home ever has done so.

19.

I have never authorized, ratified or otherwise approved the
improper cremation or adulteration of human remains, the
interference with human remains or mishandling of any corpse by
Tri-State, nor am I aware that any employee of Jones Funeral Home
has ever given such authorization, ratification or approval.

FURTHER THE AFFIANT SAITH NOT

This _____9_____ day of September, 2003.

Jones Funeral Home, Inc. and
Jesse Jones Corporation

By: _____

Jesse R. Jones
Funeral Home Director

Sworn to and Subscribed
before me this _9_
day of September, 2003.

_____
NOTARY PUBLIC
My Commission Expires:
  Notary Public, Murray County, Georgia
  My Commission Expires March 14, 2007

5

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE CREMATORY     )     MDL DOCKET NO. 1467
LITIGATION                       )
                                 )
This relates to all actions.    )

**AFFIDAVIT OF R.J. BURT, JR.**

STATE OF GEORGIA

COUNTY OF  DeKalb   .

Personally appeared before me, the undersigned officer, duly authorized to administer oaths, R.J. Burt, Jr. who, after being duly sworn, deposes and states as follows:

1.

My name is R.J. Burt, Jr., I am over the age of twenty-one years, laboring under no disability, have actual and personal knowledge of the facts set forth in this Affidavit and am otherwise competent to make and give this Affidavit.  I make this Affidavit for use in a Motion for Summary Judgment.

2.

I am a licensed funeral director in Alabama and currently own and operate Burt Funeral Home in Fort Payne, Alabama.

3.

Burt Funeral Home's correct corporate name is Burt Funeral Homes, Inc.



1

4.

I have been a licensed funeral director in Alabama since 1965, and I started my business at Burt Funeral Home in 1969.

5.

Burt Funeral Home began using the services of Tri-State Crematory ("Tri-State") in 1996. All of the employees at Burt Funeral Home, including myself, worked with Ray Marsh in coordinating cremations between 1996 and January of 1997.

6.

During the time that it used Tri-State, Burt Funeral Home sent four (4) bodies to Tri-State for cremation, with the last body sent on or about January 1, 1997.

7.

The only time that Burt Funeral Home used the cremation services of Tri-State between January of 1997 and February 15, 2002 was for the cremation of Lawanda Place on or about January 1, 1997.

8.

In order to arrange a cremation, I would usually call Ray Marsh on the telephone and inform him that we needed a cremation for a particular decedent. I would ask when I or another Burt Funeral Home employee could bring the decedent to Tri-State, or when Tri-State could pick up the decedent for cremation. At no time has Burt Funeral Home ever controlled Tri-State Crematory's

2

hours of work.

9.

Tri-State would pick up the decedent for cremation or an employee of Burt Funeral Home would personally deliver the decedent to Tri-State.  At no time has Burt Funeral Home ever instructed Ray Marsh or Brent Marsh on how to perform the cremation.  At no time has Burt Funeral Home ever instructed Ray Marsh or Brent Marsh on what specific tools or materials to use for his cremation nor did Burt Funeral Home instruct him to utilize certain cremation techniques or procedures.

10.

At no time has Burt Funeral Home ever instructed Ray Marsh or Brent Marsh to utilize a certain brand of cremation unit or suggested to him the time, manner, or method by which the crematory would be serviced, if necessary.

11.

After a cremation was completed, Ray Marsh would return the cremated remains himself back to the funeral home.

12.

Prior to February 15, 2002, my understanding was that the Marsh family, and specifically Ray Marsh, had a good reputation in their community and among funeral directors.  I had no information that any member of the Marsh family had committed any crimes or had any propensity to commit a crime.

3

13.

Prior to February 15, 2002, and at all times that Burt Funeral Home contracted for the services of Tri-State, I considered the services to be prompt and efficient and in fulfillment of Tri-State's undertaking to effect a proper cremation.

14.

Neither Tri-State Crematory nor Ray Marsh nor Brent Marsh was ever an employee, agent, or servant of Burt Funeral Home.

15.

At no time has Burt Funeral Home in any manner represented or held out to anyone that Tri-State Crematory was an agent and/or employee of Burt Funeral Home.

16.

Prior to February 15, 2002, I never had any information that anything was amiss at Tri-State, or that Tri-State was not performing its undertaking to effect proper cremations.

17.

Prior to February 15, 2002, I had no information that there were on the premises of Tri-State any uncremated bodies.

4

18.

Prior to February 15, 2002, I had no information that Tri-State had given to anyone any adulterated or misidentified cremated remains.

19.

Prior to February 15, 2002, I had no information that Tri-State, or anyone at Tri-State had, willfully or intentionally or otherwise, interfered with human remains or mishandled a corpse.

20.

Prior to February 15, 2002, I had no information that even caused me to suspect that Tri-State was not effecting proper cremations, or that there were on the premises of Tri-State any uncremated bodies, or that Tri-State had given to anyone any adulterated or misidentified cremated remains, or that Tri-State had interfered with human remains or mishandled a corpse.

21.

I have never willfully, intentionally, or otherwise interfered with human remains or mishandled a corpse, nor am I aware that any employee of Burt Funeral Home ever has done so.

22.

I have never authorized, ratified or otherwise approved the improper cremation or adulteration of human remains, the interference with human remains or mishandling of any corpse by Tri-State, nor am I aware that any employee of Burt Funeral Home

5

has ever given such authorization, ratification or approval.

FURTHER THE AFFIANT SAITH NOT

This __11__ day of September, 2003.

Burt Funeral Homes, Inc.

By: _____

R.J. Burt, Jr.
Funeral Home Director

Sworn to and Subscribed
before me this __11__
day of September, 2003.

_____
NOTARY PUBLIC
My Commission Expires: 12-3-2005

6