FILED IN CLERK'S OFFICE
U.S.D.C. Rome

NOV 14 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| IN RE: TRI-STATE CREMATORY LITIGATION | MDL DOCKET NO. 1467 |

**PLAINTIFFS' RESPONSE TO
GILMORE FUNERAL HOME LLC'S STATEMENT
OF MATERIAL FACTS AS TO WHICH
THERE IS NO GENUINE ISSUE FOR TRIAL**

Plaintiffs hereby respond to Defendant R. Gilmore Funeral Home, Inc.'s Statement of Material Facts as to which it alleges there is No Genuine Issue for Trial, pursuant to United States District Court for the Northern District of Georgia, Local Rule 56.1(B)(2) as follows:

1.

Gilmore Funeral Home, LLC was formed March 1, 2001 when Gilmore Funeral Home, LLC purchased Gilmore Funeral Home from Harold Gilmore. (Deposition of Wayne Bush, p. 8-10).

RESPONSE:   Not disputed.

2.

Wayne Bush is the manager of Gilmore Funeral Home, LLC and has been a licensed funeral director in the State of Tennessee since 1996 and a licensed embalmer in the State of Tennessee since 1995. (Wayne Bush Affidavit ¶ 2).

RESPONSE: Not disputed.

3.

Gilmore Funeral Home, LLC dealt with Tri-State Crematory on only one cremation. The body of Robert W. Kamm, deceased June 13, 2001, was sent to Tri-State Crematory because of a prior arrangement between the Kamm family and Harold Gilmore. (Bush Aff. ¶ 5).

> RESPONSE: It is not disputed that Gilmore has contended that it sent one decedent to Tri-State for cremation during the class period. However, the accuracy of such contention is unknown and unknowable as any such records, if existing, are within the control of Gilmore. Additionally, Defendant Gilmore Funeral Home selected a third party crematory which failed to maintain contemporaneous decedent records or identification procedures. See Brent Marsh deposition, p. 135.

4.

Based on a Tri-State Crematory authorization signed April 15, 1994, and representations from former Gilmore Funeral Home owner Harold Gilmore, Wayne Bush arranged for Tri-State to handle the cremation of Robert W. Kamm. (Bush Aff. ¶ 5).

Gilmore LLC Response to facts 11-13-03.DOC.

RESPONSE:     Not disputed.

5.

Brent Marsh transported Mr. Kamm's body to Tri-State Crematory. (Bush Aff. ¶ 6).

> RESPONSE: It is not disputed that Gilmore alleges that Brent Marsh retrieved Mr. Kamm's body. Mr. Bush is not in position to know what happened thereafter; Gilmore failed to instruct, properly direct or monitor Tri-State Crematory with regard to the performance of cremations. It is disputed that Gilmore met the standard of care required of a funeral director and funeral home in selecting, monitoring, and supervising a third-party crematory and it is disputed that a licensed funeral director could delegate his duties to an unlicensed crematory. See expert witness disclosures of Charles Crawford and Donald Douthit, and class certification hearing testimony of Charles Crawford (Transcript I, at 98-109, 122) and defense expert Kroboth (Transcript II, at 154), and the standard published by the Cremation Association of North America regarding the requirements of the standard of care for a funeral home in selecting a third party crematory. (Exhibit 1)

6.

Wayne Bush and Brent Marsh properly completed the authorizations, transit permits, and other paperwork necessary for transfer of Mr. Kamm's body to Mr. Marsh and transport of the body to Tri-State Crematory. (Bush Aff. ¶ 6).

> RESPONSE:     Disputed. For instance, the funeral homes failed to maintain any contemporaneous records that would show the date, time and person(s) involved in the transfer of remains between the funeral home and Tri-State, as used by other crematories. (Lehman deposition, 40; Schrader deposition, 55–56; Wilbanks deposition, 85–86; Hargis deposition, 50, 68, 72–73). Out of all of the files produced by all of the funeral homes for some 1600 decedents – totaling more than 30 bankers' boxes of documents – there

were only five such records.

7.

Mr. Marsh was professional and courteous in all respects and handled Mr. Kamm's body with dignity and respect when the body was transferred into Mr. Marsh's vehicle. (Bush Aff. ¶ 6).

RESPONSE: This contention is not disputed.

8.

No potential plaintiffs or class members have come forward alleging claims against Defendant Gilmore Funeral Homes, LLC.

RESPONSE: Not disputed; neither potential plaintiffs nor class members are required to "come forward" until a later point. See Class Certification Order, March 17, 2003.

Dated this ____ day _____, 2003

McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia 30722
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

*Plaintiffs'/Respondents' Liaison Counsel*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs'/Respondents' Lead Counsel*

- 4 -

Gilmore LLC Response to facts 11-13-03.DOC.

Kathryn E. Barnett
Elizabeth A. Alexander
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi 39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee 37203
Telephone: (615) 386-8391
Facsimile: (615) 386-8392

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Leslie Bryan
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007

SIMS, GRADDICK & DODSON, PC
Charles Graddick
Todd Strohmeyer
205 St. Emanuel Street
Mobile, Alabama 36602

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee 37402
Telephone: (423) 265-2214
Facsimile: (423) 266-1842

MABRY & McCLELLAND, LLP
Robert M. Darroch
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia 30345

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee 37402
Telephone: (423) 756-3591
Facsimile: (423) 266-5455

| | |
|---|---|
| DAVID RANDOLPH SMITH & ASSOCIATES<br>David Randolph Smith<br>Hillsboro Village, 1910 Acklen Avenue<br>Nashville, Tennessee 37212<br>Telephone: (615) 742-1775<br>Facsimile: (615) 742-1223 | COPPEDGE & LEMAN, PC<br>Joe Leman<br>508 South Thornton Avenue<br>Dalton, Georgia 30720<br>Telephone: (706) 226-0040<br>Facsimile: (706) 226-0040 |

*Plaintiffs' Steering Committee*

## PROOF OF SERVICE BY MAIL

I hereby certify that a copy of the foregoing was served by postage prepaid United States mail on the \_\_\_\_ of November, 2003 addressed to those listed below:

J. Anderson Davis, Esq.
Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP
PO Box 5513
Rome, GA 30162

*Funeral Home Defendants*
*Lead/Liaison Counsel*

Frank E. Jenkins, III
Jenkins & Olson, PC
15 South Public Square
Cartersville, GA 30120

McCracken K. Poston, Jr., Esq.
Attorney at Law
62 Nance Lane
PO Box 1130
Ringgold, GA 30736

*Counsel for Defendants*
*T. Ray Brent Marsh &*
*Tri-State Crematory*

Gilmore LLC Response to facts 11-13-03.DOC.



# EXHIBIT / ATTACHMENT



(To be scanned in place of tab)



**EXHIBIT 1**

# CANA Guidelines
## For Funeral Directors Who Do Not Have A Crematory – What To Inspect

*The purpose of this document is to provide the funeral director, who is acting as the agent of the family, with a list of questions that the cremation facility should be able to answer or provide the necessary information so that the funeral director can make an informed decision as to the competency and the adequacy of the cremation facility.*

### ADMINISTRATION

A. Review the cremation facility cremation authorization form. Does the form comply with state law? Has the authorization form been reviewed by legal counsel?

B. Review the rules and regulations of the cremation facility. Are they available to the general public? Review the price list and services offered. Is the price list and services available to the general public?

C. Does the cremation facility have a policy and procedures manual? Is there a synopsis of the manual available to the general public?

D. How are the records of the cremation facility maintained and stored? How long are they stored?

E. Is the cremation facility subject to inspections by local, state, provincial or federal regulatory agencies? If so, are there any reports that can be reviewed?

F. Are any permits or licenses required to operate the cremation facility? Are they posted in the facility, if required?

G. Are maintenance logs or reports kept on the cremation equipment? Are maintenance inspections performed on a routine basis?

H. Is the cremation facility a current member of the Cremation Association of North America or some other cremation association?

I. Have the cremation technicians received any formal training from CANA or some other certifying agency in cremation operations?

J. Are the employees of the cremation facility well-mannered, informed, dressed appropriately and professional?

K. Is the cremation facility adequately insured? What are the limits of liability?

CONTINUED ON PAGE 30

## CANA GUIDELINES
CONTINUED FROM PAGE 8

### FACILITY

A. Is the cremation facility clean, neat, orderly and secure?

B. Is the holding or storage for casket/containerized human remains clean, neat, orderly and secure? Are there individual holding spaces for each casket/container? Is the holding or storage area refrigerated?

C. Is the cremation facility open to inspection by the general public?

D. Is there an area for the family to allow them to witness the placing of the casket/container into the cremation unit?

E. Is the cremation facility handicap accessible?

F. Does the cremation facility have an area for committal services?

G. Is the processing and packaging area clean, neat, orderly and secure?

### OPERATIONS

A. What methods does the cremation facility employ to preserve the identity of the human remains?

B. What is the cremation facility policy on time to perform cremation and prepare cremated remains for final disposition?

C. Is the cremation process monitored at all times by a cremation technician?

D. What is the cremation facility policy on disposal of surgical prosthesis?

E. Does the cremation facility contract for biohazard disposal?

F. Does the cremation facility perform cremations of anatomical or pathological human remains? If so, what is their policy?

G. If all of the recovered cremated remains will not fit in a single receptacle, what is the policy of the cremation facility in handling the excess?

## WHAT TO DO
CONTINUED FROM PAGE 18

try to remain calm. Calmness evokes confidence, while tension suggests that you may have something to conceal. Don't rush; enunciate.

**9. Stay "on the record."** Information provided "off the record" does a reporter little good. Discuss sensitive issues in terms that protect you but that provide the reporter with useful information. "No comment" is an inadvisable response to a difficult question, suggesting that you are trying to conceal guilt. Instead, offer an explanation: "We're still investigating that matter," or "That's a personal matter and we need to preserve confidentiality."

**10. Stay on track.** Answer questions directly and concisely. Radio and television reporters in particular want short "sound bites" – punchy, witty, wise, insightful observations of no more than 10 seconds. Don't try to be a stand-up comic, but if a snappy turn of phrase comes to mind, use it.

**11. Be helpful.** Offer to send background information to the reporter by fax or email. If the reporter agrees, send material that will enhance understanding of the topic. While the reporter may not necessarily use the information for this particular story, such assistance helps establish a trusting, cooperative relationship that could invite the reporter to return to you for expert commentary on future stories.

**12. Beware what you wear.** Dress appropriately, particularly if you're going to be photographed. Solid, dark colors are best for television. Suggest settings that are visually interesting and underscore the story subject. Dispense with jangly jewelry if you're being interviewed on television or radio.

If you are pleased with the story, let the reporter know in a note or phone call.

These tips cover nonconfrontational news contacts. Times of crisis, however, call for special preparedness and responses. A written news media policy can provide guidelines to all of your employees for interaction with news reporters. *(Reprinted with permission. SOURCE: Family Business Strategies -www.FBNews.net).*

## CANA PROCEDURES
CONTINUED FROM PAGE 29

between the top of the plastic bag and lid of the container, this space should be filled with suitable packing material, such as shredded white paper or styrofoam sheets. The lid can then be closed and secured.

E. Before any permanent label is affixed to the temporary receptacle, check the ID disc number and the ID card, all label and certificates for compatibility and accuracy.

F. If you are placing the temporary receptacle into a corrugated box, a permanent label should be affixed to the corrugated box. Seal the corrugated box using reinforcement tape.



**Classically Elegant Urns**
**& Exclusive**

- Specializing in onyx, marble, granite & aluminum alloy urns
- Apple shape urn made by aluminum alloy that is quakeproof, flameproof, watertight & oxidation resistant
- Sculpture Buddhism Bible for Buddhist
- 2 in 1 urn outside onyx, inside brass is newly designed with patent
- Orders are received 24 hours a day

Chienmin Trading Ltd.
www.ashurns.com
Tel: 1-604-809-9921
Fax: 1-604-528-9923