# ORIGINAL



FILED IN CLERK'S OFFICE
U.S.D.C. Rome

DEC 0 8 2003

LUTHER D. ____, Clerk
By _____ Deputy Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

IN RE:   TRI-STATE                        :
         CREMATORY LITIGATION             :         MDL DOCKET NO. 1467
_____:

## REPLY BRIEF IN SUPPORT OF SUMMARY JUDGMENT
## FOR J. AVERY BRYAN FUNERAL HOME

COMES NOW, Defendant J. Avery Bryan Funeral Home (hereinafter referred

to as "Avery"), and files this its Reply Brief in Support of its Motion for Summary

Judgment, showing the Court as follows:

### I.   ARGUMENT AND CITATION OF AUTHORITY

### A.   Avery Should Be Granted Summary Judgment on Plaintiffs'
### Breach of Contract Claims.

Plaintiffs' claims are barred by the six-year statute of limitations for breach of

contract claims and should be dismissed.  Plaintiffs' class action complaint was filed

February 26, 2002.  Thus, any breach of contract claim with respect to a decedent

sent to Tri-State prior to February 26, 1996 is barred by the applicable six-year statute

of limitations.  The Court has already ruled in its Class Certification Order on

Plaintiff Bechtel's claim, specifically holding "Plaintiff Bechtel's breach of contract

claim is time barred." (Class Certification Order, p. 38.)  The Court also determined

754

that the statute of limitations would not be tolled for fraudulent concealment. (Class Certification Order, p. 38, n. ll.)

Further, summary judgment for Avery should be granted on several Plaintiffs' breach of contract claims because there is no privity of contract between these Plaintiffs and Avery. Under privity of contract, only the parties signing the funeral services contract with Avery may sue for breach of contract. *Sofet v. Roberts,* 185 Ga. App. 451, 452, 364 S.E.2d 595, 596 (1987). Moreover, only the person who entered into the funeral service contract and paid for the services has suffered any contractual damages. *See  Odem  v.  Pace Academy,* 235 Ga. App. 648, 654, 510 S.E.2d 326, 331 (1998). Emotional distress damages are not pecuniary damages and cannot qualify as contractual damages either. *See Bauer v. North Fulton Med. Ctr.,* 241 Ga. App. 568, 572, 527 S.E.2d 240 (1999). Accordingly, any breach of contract claim under Georgia law is limited to the party who entered into the contract and any pecuniary losses shown under the contract. Thus, Plaintiffs who were not a party to any contract with Avery cannot raise any breach of contract claim against the funeral home.

Here, Plaintiff Shirley's father retained Avery to handle the funeral

arrangements for her mother, Dorothy Jean Ledford.  Plaintiff's mother died on January 19, 2001.  With regard to the arrangements for her mother, Plaintiff Shirley's father coordinated with Avery and paid for her mother's funeral service and cremation. (Plaintiff Shirley's Depo., p. 25).  Plaintiff Shirley's father executed an authorization for cremation and made the arrangements for her mother's funeral services and cremation. (*Id.*).  Plaintiff Oldaker's ex-wife and her family retained Avery to handle the funeral arrangements for their son, James Keith Oldaker, who died on June 16, 2000.  Plaintiff Oldaker's ex-wife or other member of her family, may have executed the authorization for cremation  and made the arrangements for their son's funeral services and cremation; Plaintiff Oldaker did not make the arrangements nor did he contract with Avery for said services. (*Id.*).  Similarly, Plaintiff Zuki Hornyak-Ferrell's aunt retained Avery to handle the funeral arrangements for her father, Stephen William Hornyak.  Plaintiff's father died on September 30, 2001.  With regard to the arrangements for her father, Plaintiff Hornyak's aunt and her family coordinated with Avery and paid for Plaintiff Hornyak father's funeral service and cremation. (Plaintiff Hornyak's Depo., p. 14-15,18).  Plaintiff Hornyak's aunt executed the authorization for cremation and made

the arrangements for Plaintiff Hornyak father's funeral services and cremation; Plaintiff Hornyak did not make the arrangements nor did she contract with Avery for said services. (*Id.*).

Plaintiffs do not address, much less deny, that their breach of contract claims against Avery are time-barred. See Plaintiffs' Consolidated Response to the Funeral Home Defendants' Motions for Summary Judgment ("Plaintiffs' Response"), pp. 28-29.

Plaintiffs do not present any evidence to show that the remains sent by Avery to Tri-State were improperly cremated.

Plaintiffs Broadrick and Hall's father, Garner Calhoun Pursley, died on July 6, 1994. Plaintiffs made arrangements for their father, and retained and coordinated with Avery.   (See Plaintiffs Broadrick and Hall's Responses to Request for Production of Documents and Responses to Interrogatories).  Plaintiffs' father was not one of the bodies identified at the Tri-State crematory in 2002. (*Id.*).  Similarly, Plaintiff Bonine retained Avery to handle the funeral arrangements for her mother, Evelyn Irene Houseman. Plaintiff's mother died in 1999. Plaintiff's mother was not one of the bodies identified at the Tri-State crematory in 2002. (Plaintiff Bonine's

Depo., p. 39). In fact, the cremains of Plaintiff Bonine's mother have been tested and the results have indicated that cremains consist of human cremains.   (Plaintiff Bonine's Depo., p. 36-39).

Further, there is no evidence that Avery breached any contract term. See Odem v. Pace Academy, 235 Ga. App. 648, 654, 510 S.E.2d 326, 331 (1998).  Because Plaintiffs have not shown that Avery breached any contract term, there is no legal basis for Plaintiffs' breach of contract claims.

**B.**   **Avery Should Be Granted Summary Judgment on Plaintiffs' Negligence Claims.**

**1.**   **Plaintiffs' Negligence Claims Are Barred by the Applicable Four year Statute of Limitations.**

Plaintiffs' negligence claims against Avery relate to cremations dating back to and beginning in 1982 and are barred by the applicable four year statute of limitations.  See O.C.G.A. § 9-3-24.  Avery incorporates by reference the Funeral Home Defendants' summary judgment motion, brief and reply brief on statute of limitations grounds.

### 2. Plaintiffs Cannot Recover Under Their Negligence Claims for Their Uncertainty as to the Cremation of Their Decedents.

Avery challenges the Plaintiffs' right to base their negligence claims on their uncertainty or fear that they have not received the correct cremated remains. These Plaintiffs did not have decedents whose bodies were found at Tri-State and did not present any evidence that the remains of their decedents were adulterated. In other contexts, Georgia courts have not permitted such claims of fear and uncertainty to serve as a basis for a negligence claim. See Johnson v. American Nat'l Red Cross, 276 Ga. 270, 578 S.E.2d 106 (2003); Williams v. Flintkote Co., 256 Ga. App. 205, 568 S.E.2d 106 (2002); Russaw v. Martin, 221 Ga. App. 683, 472 S.E.2d 508 (1996); Willis v. Employers Fire Insurance Co., 153 Ga. App. 445, 265 S.E.2d 356 (1980).

Plaintiffs do not have a response to this Georgia precedent. Instead, Plaintiffs seek to shift the burden of proof to Avery. "The quantity and qualify of the class members proof, as well as the fact that it is the defendants' own failure to maintain appropriate records that has caused the lack of other specific evidence regarding each decedent, render the application of the cases relied upon by the defendant inappropriate." Plaintiffs' Response, p. 64. In Georgia, however, a "plaintiff must come forward with specific facts establishing a breach of duty, as well as the other

elements of negligence, and may not rest upon generalized allegations." Hodges v. Putzel Electric Contractors, 260 Ga. App. 590, 594-595, 580 S.E.2d 243, 247-248 (2003)(citations omitted). Plaintiffs have the burden of proof for their negligence claims, despite their continued attempts to shift this burden to Avery. Plaintiffs' fear that their decedents' remains were not cremated does not satisfy this negligence burden of proof.

In recognition of this problem, Plaintiffs list certain facts which they contend qualify as proof of negligence. Plaintiffs' Response, pp. 61-64. None of these alleged facts relate to Avery or the remains sent by Avery to Tri-State Crematory. Further, these alleged facts do not show that the bodies sent to Tri-State by Avery between 1982 to 2002 were improperly cremated. Instead, "class members know only that they can never know." Plaintiffs' Response, p. 61. Such "generalized allegations" do not satisfy the elements of a negligence claim, and such claims against Avery should be dismissed.

The Plaintiffs also seek to recover for negligence against Avery simply because 111 of the bodies found on the Tri-State property have not been identified. According to Dr. Kris Sperry, approximately 15 to 20 percent of the family members contacted declined to provide DNA to assist in the identification of these 111 bodies.

Deposition of Dr. Kris Sperry ("Sperry Depo."), p. 106. These individuals who are class members have refused to take even minimal efforts to resolve their uncertainty. If all the bodies were identified, which arguably would be possible if every class member participated in the DNA analysis, then there would be no uncertainty claims whatsoever, with the class consisting solely of 334 families. Plaintiffs should not be permitted to profit from their refusal to assist the GBI with DNA identification.

Plaintiffs also reference Dr. Sperry's deposition testimony for the position that "no family who had the remains of a loved one delivered to Tri-State can ever know that the cremation was performed or that the materials they received are, in fact, the remains of their loved one. (Sperry Deposition, at 263)." Plaintiffs' Response, p. 62. That is not Dr. Sperry's testimony. He notes that only families whose remain were found to be adulterated would suffer uncertainty, not all families who had remains sent to Tri-State:

> Q.    And I believe that in connection with possible adulteration of cremated remains, you said that the families of loved — whose loved ones had been sent to Tri-State for cremation could never be sure that they had, in fact, received the proper cremated remains; is that right?

A.     I think that's true.

Q.     And that remains your position today.

A.     Yes.

Q.     Is there any way they could be assured that they had received the

proper

cremated remains?

A.     I don't think so, you know, either now or any time in the future.

Not that I know of.

Sperry Depo., p. 263 (emphasis added).  Plaintiffs' citation to this testimony is disingenuous, at best.

Plaintiffs studiously avoid citing that fact that Dr. Sperry testified that the bodies on the Tri-State Crematory site date, at the earliest, from 1997. "This opinion is based upon my analysis of the methodology by which these bodies were placed in mass graves, vaults and elsewhere on the property; forensic identification of the bodies and DNA test results." Second Affidavit of Kris Sperry ¶¶ 2, 4-9.  Plaintiffs attack Dr. Sperry's analysis of how the bodies were placed on the property, but Plaintiffs do not address the issues of forensic identification of the bodies and DNA test results.  Plaintiffs' Response, p. 62.  Accordingly, Plaintiffs have not discredited

Dr. Sperry's expert forensic opinion that the bodies were not placed on the Tri-State site earlier than 1997. Moreover, Plaintiffs have no proof whatsoever that the bodies date from earlier than 1997. <u>See</u>, <u>e.g.</u>, Plaintiffs' Response to SCI Georgia Funeral Homes' Statement of Material Facts, Fact No. 11 regarding Dr. Sperry's testimony ("Thus while the statement is not disputed, the factual conclusion is disputed.").

Avery sent bodies to Tri-State for cremation from 1982 to 2002. Plaintiffs have not presented evidence that any remains were adulterated that were sent by Avery to Tri-State. The only proof of negligence is Plaintiffs' uncertainty. Accordingly, Plaintiffs' negligence claims against Avery should be dismissed.

In an unsuccessful attempt to attack the cremation procedures of Ray Marsh, who operated the crematory from 1988 to 1994, Plaintiffs reference the testimony of Walter Spearman, a convicted felon. Deposition of Walter Spearman ("Spearman Depo."), p. 44.[1] This testimony, no matter how Plaintiffs attempt to distort it, does not create any fact issue or provide evidence that Ray Marsh mishandled the remains sent by Avery. In his deposition, Walter Spearman explained the facts at issue:

> A.    When my mother passed in '85 and he was giving me his condolences about my mother and he said, "I know you're glad you're in the funeral business. You didn't have to pay all that

money." I said yes. He said, "I told Clara when I pass, just cremate me; that's too much money." He said, "You know, I do cremations and I exhume a lot of bodies," and he said "Mr. Spearman, I look in there. It don't be nothing there. I throw most of that stuff away." Now, that's what he said.

Q.     He said, "I throw most of that stuff away"?

A.     That's correct.

Q.     And you understood him to mean that he threw what away?

A.     I took it — whatever he found in the casket that he exhumed.

                    *      *      *

Q.     Your thought process in those days was that he wasn't performing the cremations he was supposed to be; is that right?

A.     I can't — that's a little too much. I didn't say he wasn't performing them.

Spearman   Depo., pp. 60, 69.   Therefore, even Spearman, upon whose testimony Plaintiffs are attempting to rely, cannot say for certain that Ray Marsh (or any other member of the Marsh family) mishandled or adulterated the remains. Plaintiffs' negligence claims have no legal basis.

### 3.   Avery Was Not Negligent in Hiring Tri-State to Perform Cremations from 1982 through 1997.

Plaintiffs contend that "[l]icensing was expressly required by statute for crematories starting in 1990." Plaintiffs' Response, p. 69. Plaintiffs conveniently overlook O.C.G.A. § 43-18-72(g), added in 1992, which stated as follows:

> (g)   Notwithstanding any other provision of this chapter
>
> to the contrary, no person operating a crematory on January
>
> 1, 1992, shall be required until July 1, 1994 to obtain a
>
> license from the board to operate such crematory.

O.C.G.A. § 43-18-72(g). Thus, under the plain language of this provision, a crematory, such as Tri-State, operating on January 1, 1992, would not be subject to any licensing provision until July 1, 1994. See State v. English, 276 Ga. 343, 348, 578 S.E.2d 413, 418 (2003)("This Court is to construe the statute to give sensible and intelligent effect to all of its provisions and to refrain from any interpretation which renders any part of the statute meaningless.").

After July 1, 1994, Tri-State did not obtain any license. The Georgia Board of Funeral Service, although aware of Tri-State's operations and unlicensed status after 1994, did not stop Tri-State from cremating bodies. Deposition of John Massey

("Massey Depo")., pp. 15, 88-89, 165.  John Massey, an inspector of the Georgia Board of Funeral Services, testified that Tri-State did not fit the definition of a crematory because it was not owned by a funeral director and was not open to the public.  Massey Depo., pp. 24, 66, 114.

Although the Georgia State Board of Funeral Service was aware Tri-State was operating without a license, the Board did not close Tri-State Crematory.  Either the Board concluded that Tri-State was de facto licensed or that Tri-State was not required to have a license.  In any event, the operations of Tri-State fell under the Board's jurisdiction, and the Board, by allowing Tri-State to operate, gave its tacit approval for Tri-State to perform cremations.  Avery, like the rest of the Funeral Home Defendants, were not given the authority to police crematories, and had to rely on the Board to determine the legal status of Tri-State.

Plaintiffs now try to avoid these undisputed facts by alleging that an unlicensed Tri-State cannot be treated as an independent contractor.  In support of this position, Plaintiffs reference Brown v. Who's Three, Inc., 217 Ga. App. 131, 457 S.E.2d 186 (1995). In that case, a facial esthetician, Linda Al-Ansari, had an "apprentice" license to practice facial esthetics through the Who's Who Hair Salon ("Salon").  When a customer of Al-Ansari's was injured during a session, the customer sued the Salon for

the negligent acts of Al-Ansari under the doctrines of agency, respondeat superior

and apparent agency.

On appeal, the Georgia Court of Appeals considered whether the Salon should

be held liable for the actions of Al-Ansari. Certain statutes governing the occupation

of esthetics were instructive.

> O.C.G.A. § 43-10-14 allows a person to learn the
> occupation of esthetics as a student or apprentice "under"
> a certified master cosmologist, certified esthetician, or
> certified instructor. The salon admits that Al-Ansari "had
> not obtained her full license from the State and was an
> 'apprentice' since 1987."
>
> *     *     *
>
> The similarity between traditional apprenticeship and
> on-the-job student learning, suggests that one working
> "under" a certified esthetician or master cosmetologist
> while learning the trade, as contemplated by OCGA §
> 43-10-14, whether labeled a student or an apprentice,
> should be considered a servant for the purposes of
> respondeat superior.

Id., 217 Ga. App. at 132, 457 S.E.2d at 189-190.

The Georgia Court of Appeals then analyzed whether Al-Ansari qualified as

an agent or independent contractor:

> The usual test applied to determine if one is a "servant for
> purposes of respondeat superior is "'whether the employer
> under the contract, whether oral or written, has the right to

direct the time, the manner, the methods, and the means of the execution of the work . . . . The test is not whether the employer did in fact control and direct the employee in the work, but is whether the employer had that right under the employment contract.' . . . [Cits.]" Hall v. Buck, 206 Ga. App. 754, 758-759(6), 426 S.E.2d 586 (1992). One who accepts responsibility for teaching an apprentice or student the trade of cosmetology or esthetics under OCGA § 43-10-14 may be liable for the student's negligence in performing the duties incident to the instructor/apprentice relationship. The fact that Al-Ansari received a percentage of the fees she generated for the salon does not diminish the duty.

*      *      *

"The original common law rule that an employer is not liable for the torts of an independent contractor is codified in Georgia in OCGA § 51-2-4 which provides: 'An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer.' [Cit.] . . . 'With (respect) to the "independent business" requirement set forth in the code section, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego.' . . .[Cit.]" Loudermilk Enterprise v. Hurtig, 214 Ga. App. 746, 747, 449 S.E.2d 141 (1994). Under OCGA § 43-10-14, Al-Ansari could not have any such independent business existence as a matter of law; she was not a licensed esthetician and could only work while learning under a master cosmetologist or certified esthetician. The statute precludes, by public policy, the status of independent contractor for an apprentice.

Id., 217 Ga. App. at 133-134, 457 S.E.2d at 190-191.

In contrast to the regulations applicable to the Brown case, there are no regulations requiring a crematory to serve an apprenticeship. As for the agent versus independent contractor issue, the Brown decision confirms the analysis the Funeral Home Defendants have presented on the issue. Only after the Court determines whether Tri-State is an agent of the Funeral Home Defendants or an independent contractor, does the Court examine the nondelegable duty requirements under O.C.G.A. § 51-2-5. In this case, the facts are undisputed that Tri-State was an independent contractor, not an agent, of Avery. Either an Avery employee would call Ray Marsh on the phone, inform them Avery needed a cremation for a particular decedent, and ask when they could bring the decedent to Tri-State for cremation. (Lehman Depo., p. 38-40). Avery did not tell Tri-State how to perform the cremation, nor instruct Ray Marsh to utilize a certain crematory manufacturer, or use specific tools or materials associated with the cremation process. (Id.) Through sworn testimony, J. Avery Bryan has established that Tri-State Crematory was only an independent contractor, and not its agent. It has long been the Georgia rule that one who is a party to the alleged relationship (the principal or agent) may testify as a fact as to the existence or non-existence of the relationship and that such testimony would

not be subject to the objection that the statement was a conclusion or the ultimate

fact. The denial of the existence of any agency relationship may thus constitute an

uncontradicted fact which will sustain a motion for summary judgment. *Stallings v.*

*Sylvania Ford-Mercury, Inc.,* 242 Ga. App. 731, 733, 533 S.E.2d 731, 733 (2000).

Without any agency relationship, Avery could not be held vicariously liable for the

acts of Tri-State under O.C.G.A.§ 51-2-2, and Plaintiffs' negligence claims should

be dismissed.

### 4.   The Hiring of Tri-State Does Not Constitute a Nuisance.

Plaintiffs now argue that the cremations done by Tri-State constitute a

nuisance. There is no legal or factual support for this position. The applicable

statute, O.C.G.A. § 43-18-4, provides as follows:

> The practice of embalming or funeral directing, as defined
> in this article, is declared to be a business or profession
> affecting the public interest and involving the health and
> safety of the public. Such practice by a person who is not
> licensed to practice in this state is declared to be a public
> nuisance; and any citizen of this state, the board, or the
> appropriate prosecuting attorney, where such practice is
> carried on by such unlicensed person may, on behalf of the
> public, bring an action in the superior court of the county
> where such nuisance exists or is carried on to restrain and
> abate the same. On satisfactory proof to the judge of the
> superior court that such illegal practice or business of
> funeral directing or embalming is being carried on, the

> judge shall issue a temporary injunction against the party
> or parties operating such practice or business until they
> have qualified and been licensed under the terms of this
> article.

Plaintiffs have not shown that Tri-State was practicing funeral directing.  See

O.C.G.A. § 43-18-1(19)("Practice of funeral directing' means making or directing,

at need or preneed, arrangements for the preparation and transportation of dead

human bodies for final disposition and the supervision and direction of all funeral

services.")(emphasis added).  Thus, O.C.G.A. § 43-18-4 would not be applicable to

the activities of Tri-State.  Also, the Georgia Board, although aware of Tri-State's

existence and performance of cremations, never initiated any action against Tri-State

as a nuisance.  Neither did any Georgia citizen or an appropriate prosecuting attorney.

The reason is obvious — Tri-State's business did not qualify as a nuisance.

Plaintiffs' nuisance argument is a desperate attempt to confuse the issues.

### 5.   Avery Did Not Have Any Nondelegable Duty With Respect to the Remains.

Plaintiffs argue that the cremations are a nondelegable duty because the

cremations were imposed by express contract on the funeral homes or cremations are

inherently dangerous.  See O.C.G.A. § 51-2-5(2) and (3).  As for Plaintiffs' express

contract argument, Plaintiffs cannot overcome the problem that the paperwork with

respect to a decedent included a Cremation Authorization form identifying Tri-State as the party performing the cremation.  This form does not contain any statement that Avery agreed to be responsible for Tri-State's conduct or actions.  For example, Plaintiff Craze executed an authorization for cremation which clearly reflected the name and location of Tri-State and made arrangements for funeral services and cremation. (Plaintiff Craze's Depo., p. 24.)

According to the Georgia Court of Appeals, O.C.G.A. § 51-2-5(3) requires "an express obligation by the employer to be responsible for the independent contractor's conduct." Toys 'R' Us, Inc. v. Atlanta Economic Dev. Corp., 195 Ga. App. 195, 196, 393 S.E.2d 44, 47 (1990).  Under the applicable cremation authorization forms, there is no express obligation by Avery to be responsible for Tri-State's conduct.

Hudgins v. Bacon, 171 Ga. App. 856, 321 S.E.2d 359 (1984), a decision six years prior to the Toys 'R' Us case, does not have any impact on the express contract requirement.  The contract at issue did not reference the role of any independent contractor.  "The plaintiffs James and Wanda Hudgins of Albany entered into a contract with Bacon and Loomis to build and finish a 'spec' house.  The record in the case shows that this written contract (which the plaintiffs unsuccessfully sought to place in evidence) expressly required defendants to complete the house 'in a good

workmanlike manner.'"   Hudgins, 171 Ga. App. at 857, 321 S.E.2d at 362.   The builder-seller, not the independent contractor, was liable for any negligence because the builder assumed the contract obligation to build a fit and proper dwelling.  Id., 171 Ga. App. at 862, 321 S.E.2d at 366.

In this case, Avery notified Plaintiffs that Tri-State Crematory would be performing the cremations.  These funeral homes did not assume or hold themselves out as assuming responsibility for Tri-State Crematory.  Accordingly, there is no "violation of a duty imposed by express contract" upon Avery and no creation of a nondelegable duty.

In addition, Plaintiffs argue that cremation is inherently dangerous and, therefore, qualifies as a nondelegable duty.  Cremation, however, would only be inherently dangerous if there is no safe way to perform cremations.  See O.C.G.A. § 51-2-5(2)(The "work to be done is in its nature dangerous to others however carefully performed."); Horn v. C.L. Osborn Contracting Co., 591 F.2d 318, 320 (5th Cir. 1979) ("Georgia courts have held that work is not 'dangerous to others, however carefully performed' if the danger results from doing the work in an unsafe manner when there is a safe way of doing the work.") (citations omitted).

Plaintiffs do not deny that there is a safe way to perform cremations. Instead, Plaintiffs rely on the testimony of Charles Crawford that "human remains present serious biohazards to those working in a crematory and to the general public in the form of bacterial and viral infections that can escape with leaking bodily fluids." Plaintiffs' Response, pp. 77-78. Crawford, however, did not testify that while performing cremations, he has been exposed to any biohazards or suffers from bacterial and viral infections. Because there is a safe manner to perform cremations, cremations do not qualify as inherently dangerous.

### C. Avery Should be Granted Summary Judgment on Plaintiffs' Willful Interference with Remains and Intentional Mishandling of a Corpse Claims.

Plaintiffs contend that Avery's actions qualify as willful and wanton because the funeral home employed Tri-State, even though Tri-State was not licensed. Plaintiffs' Response, pp. 79-80. As discussed earlier, the licensing issue for crematories did not arise until after July 1, 1994. See O.C.G.A. § 43-18-72(g)(1992 version). After this July date, Tri-State did not have a license, but the Georgia Funeral Service Board permitted Tri-State to operate, even without a license.

A business relationship with an unlicensed Tri-State does not, on its face, rise to the level of willful and wanton behavior. "In order to prove wilful or wanton

conduct, a plaintiff must demonstrate that a defendants' acts were 'such as to evidence a wilful intention to inflict the injury, or else [were] so reckless or so charged with indifference to the consequences . . . to justify . . . finding a wantonness equivalent in spirit to actual intent.'" McNeal Loftis, Inc. v. Helmey, 218 Ga. App. 628, 629, 462 S.E.2d 789, 790 (1995). Avery's relationship with an unlicensed Tri-State, which the Georgia Board permitted to operate and cremate bodies, does not show a willful intention to inflict injuries or a reckless indifference to consequences. Accordingly, this willful interference claim against Avery should be dismissed.

Moreover, the applicable four year statute of limitations bars all of the 1982 through 1998 claims against Avery.   See O.C.G.A. § 9-3-24; Funeral Home Defendants' Brief and Reply Brief in Support of Summary Judgment on Statute of Limitations Grounds, incorporated by reference.

### D. Avery Should be Granted Summary Judgment on Plaintiffs' Negligent Interference with Remains and Mishandling of a Corpse Claims.

The issues for negligent interference with remains are the same as for Plaintiffs' negligence claims.   Therefore, Avery incorporates herein all of its arguments outlined in the negligence section.

## II.  **CONCLUSION**

For all of the foregoing reasons and the reasons set forth in its original brief,

Avery respectfully requests that the Court grant summary judgment to it on Plaintiffs'

claims.

Respectfully Submitted, this 8th day of December, 2003.

ZIRKLE & HOFFMAN, LLP

By : _____

Suite 2900                                  CHARLES B. ZIRKLE, JR.
5 Concourse Parkway                         Georgia Bar No.: 785975
Atlanta, Georgia 30328                      (signed with express permission by
Phone - 770/551-8700                        J. Anderson Davis)
Fax - 770/551-3856

Attorney for Defendant
J. Avery Bryan Funeral Home


BRINSON, ASKEW, BERRY, SEIGLER,
   RICHARDSON & DAVIS, LLP

By: _____
    Robert M. Brinson
    Georgia Bar No. 082900

Post Office Box 5513
Rome, GA 30162-5513                By: _____
Phone - 706/291-8853                   J. Anderson Davis
Fax - 706/234-3574                     Georgia Bar No. 211077

Lead and Liaison Counsel for
Defendant Funeral Homes

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing

J. AVERY BRYAN FUNERAL HOME'S REPLY BRIEF IN SUPPORT OF

SUMMARY JUDGMENT upon all parties by depositing same in the United States

mail in a properly-addressed envelope with adequate postage thereon to:

Robert H. Smalley, III, Esq.
McCAMY, PHILLIPS, TUGGLE &
FORDHAM, LLP
Post Office Box 1105
Dalton, GA 30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esq.             Frank E. Jenkins, III, Esq.
OFFICE McCRACKEN POSTON         JENKINS & OLSON
Post Office Box 1130                       15 Public Square, South
Ringgold, GA 30736                        Cartersville, GA 30120-3350

Liaison/Lead Counsel for Tri-State Crematory, Inc. and the Marsh Family

This 8th day of December, 2003.

J. Anderson Davis
Georgia Bar No. 211077

## CERTIFICATE OF COMPLIANCE WITH LR 5.1(B)

This is to certify that the foregoing document was prepared using Times New

Roman 14 point font in accordance with LR 5.1(B).

138151.1