FILED IN CLERK'S OFFICE
U.S.D.C. - Rome

DEC 19 2003

LUTHER D. THOMAS, Clerk
By: _____ Deputy Clerk



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE                          MDL DOCKET NO. 1467
CREMATORY LITIGATION

This Order relates to:


ALL CASES


ORDER

This case is before the Court on Defendant W.L. Wilson & Sons Funeral Home's Motion for Summary Judgment [454], Defendant W.L. Wilson & Sons Funeral Home's Motion to Exceed Page Limit for Reply Brief in Support of Motion for Summary Judgment [500][1], and Defendant W.L. Wilson & Sons Funeral Home's Notice of Objection to, or in the Alternative, Motion to Strike Affidavit of Plaintiff Paula Yockel [503].


**I.   Notice of Objection to, or in the Alternative, Motion to Strike Affidavit of Plaintiff Paula Yockel**

Defendant W.L. Wilson & Sons Funeral Home ("Defendant Wilson & Sons") has objected to the Affidavit of Plaintiff Paula Yockel. According to Defendant Wilson & Sons, Plaintiff Paula Yockel's Affidavit contradicts her earlier deposition testimony.

---

[1] The Court grants this Motion.

1

AO 72A
(Rev.8/82)

843

At her deposition, Plaintiff Paula Yockel testified that she was not claiming any physical injury as a result of the discoveries at Tri-State Crematory.   (Dep. of Paula Yockel at 10-11.) Plaintiff Paula Yockel also testified that she sought no medical attention after learning of the discoveries at Tri-State Crematory. (Id. at 11, 75.)  In her Affidavit, Plaintiff Paula Yockel stated:

> 3.   In my deposition I was asked if I had suffered a physical injury.  At the time, I thought I was being asked if I had suffered something obvious like a broken leg.
>
> 4.   While I did not suffer a broken bone, the stress and trauma of the Tri-State tragedy has impacted me terribly.
>
> 5.   For instance, since the disaster at Tri-State, I have suffered from sleep problems.  I have vivid nightmares concerning Tri-State and then wake up in the middle of the night and have trouble returning to sleep.  In addition, I have suffered loss of appetite, and stomach problems.

(Aff. of Paula Yockel ¶¶ 3-5.)

Under Eleventh Circuit law, "a party cannot give 'clear answers to unambiguous questions' in a deposition and thereafter raise an issue of material fact in a contradictory affidavit that fails to explain the contradiction." Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987) (quoting Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)).  If this contradiction occurs, the court may disregard the contradictory affidavit as a sham affidavit.  Id.  The Eleventh Circuit has instructed district courts to apply the sham affidavit

2

rule sparingly "because of the harsh effect this rule may have on a party's case." Rollins, 833 F.2d at 1530. The Eleventh Circuit also has stated: "To allow every failure of memory or variation in a witness's testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the witness (in this case, the affiant) was stating the truth." Tippens v. Celotex Corp., 805 F.2d 949, 953-54 (11th Cir. 1986) (parenthetical in original).

The Court thus must find "some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit." Rollins, 833 F.2d at 1530. If no such inherent inconsistency exists, then the Court must apply the general rule of allowing an affidavit to create a genuine dispute, even though the affidavit conflicts with a party's earlier deposition testimony. Id. Under those circumstances, the jury may consider any conflict or discrepancy between the affidavit and the deposition testimony at trial.

Here, the Court cannot conclude that Plaintiff Paula Yockel's Affidavit and her deposition testimony are so inherently inconsistent, without explanation, as to allow the Court to strike Plaintiff's Affidavit. Plaintiff Paula Yockel has explained that she misunderstood what Defendants' counsel meant by the term "physical injury," and that she thought Defendants' counsel was

3

asking whether she had suffered a broken bone or similar injury. (Yockel Aff. ¶ 3.)  While the Court appreciates Defendant Wilson & Sons' concerns that the testimony contained in Plaintiff Paula Yockel's Affidavit is a last-ditch effort to create a genuine dispute concerning whether Plaintiff Paula Yockel incurred a physical impact, the Court simply cannot conclude that Eleventh Circuit authority would permit the Court to strike Plaintiff Paula Yockel's Affidavit.  The Court therefore overrules Defendant Wilson & Sons' Notice of Objection to, or in the Alternative, Motion to Strike Affidavit of Plaintiff Paula Yockel.

## II.   Motion for Summary Judgment

### A.   Background

Keeping in mind that when deciding a motion for summary judgment, the Court "must view the evidence and all factual inferences in the light most favorable to the party opposing the motion," the Court provides the following statement of facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993).  This statement does not represent actual findings of fact; rather, it is intended simply to place the Court's legal analysis within the context of a specific case or controversy. Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995) ("[W]hat we state as 'facts' in this [order] for purposes of reviewing the ruling[] on the summary judgment motion[] may not be the actual

4

facts.  They are, however, the facts for present purposes, and we set them out below.").

### 1.   Factual Background

#### a.   Defendant Wilson & Sons' Operations and Connection with Tri-State Crematory

In 1978, Defendant Wilson & Sons began operations in Ft. Oglethorpe, Georgia, under the name W.L. Wilson & Sons Funeral Home.  (Def. Wilson & Sons' Statement Material Facts ¶ 1.)  Leroy and Glenda Wilson own and operate W.L. Wilson & Sons Funeral Home. (Dep. of Leroy Wilson at 18-20.)

Leroy Wilson has been a licensed funeral director in Georgia since the late 1960s.  (Wilson Dep. at 15-16, 25.)  Since the early 1970s, Leroy Wilson has been a licensed funeral director in Tennessee.  (Id.)  Leroy Wilson's son, David Wilson, presently is a licensed funeral director employed at W.L. Wilson & Sons Funeral Home.  (Id.)

In 1982, Ray Marsh contacted Leroy Wilson.  (Wilson Dep. at 42.)  Mr. Ray Marsh informed Mr. Wilson that Mr. Ray Marsh was installing a crematory on his property.  (Id.)  Mr. Ray Marsh suggested that Mr. Wilson use Mr. Ray Marsh's crematory in Noble, Georgia.  (Id.)  Prior to 1982, Defendant Wilson & Sons used a crematory just north of Atlanta when customers requested cremation services.  (Id.)

From 1982 to 1996, Defendant Wilson & Sons used Tri-State Crematory facility.  (Wilson Dep. at 42-43.)  Defendant Wilson &

5

Sons used Tri-State Crematory because of its short distance from the W.L. Wilson & Sons Funeral Home. (Id.) Leroy Wilson also believed that Mr. Ray Marsh had an excellent reputation in the community and among the local funeral homes. (Id.)

From 1982 to 1996, Defendant Wilson & Sons sent 105 bodies to Tri-State Crematory for cremation. (Def. Wilson & Sons' Statement Material Facts ¶ 5.) Defendant Wilson & Sons sent its last body to Tri-State Crematory in June 1996. (Id.) During that period, Leroy Wilson, David Wilson, and other employees of Defendant Wilson & Sons visited Tri-State Crematory to deliver bodies for cremation or to pick up cremated remains. (Wilson Dep. at 78-79; Aff. of Leroy Wilson ¶¶ 3, 6.)

When Defendant Wilson & Sons needed to send a body to Tri-State Crematory for cremation, Defendant Wilson & Sons' employees called Mr. Ray Marsh, informed him that Defendant Wilson & Sons needed a cremation for a particular decedent, and inquired when Defendant Wilson & Sons could bring the body to Tri-State Crematory for cremation. (Wilson Aff. ¶ 3.) Defendant Wilson & Sons did not tell Tri-State Crematory how to perform the cremation. (Id. ¶ 4.) Defendant Wilson & Sons also did not instruct Mr. Ray Marsh to use a certain crematory manufacturer or to use specific tools or materials associated with the cremation process. (Id. ¶ 5.)

After contacting Mr. Ray Marsh, Leroy Wilson or another employee of Defendant Wilson & Sons transported the body to Tri-

6

Schuchman.  (Id. at 44-45.)

### c.   Plaintiff Carol Bechtel's Dealings with Defendant Wilson & Sons

On April 4, 1993, Plaintiff Carol Bechtel's father, Robert Swofford, died.  (Def. Wilson & Sons' Statement Material Facts ¶ 12.)  Plaintiff Carol Bechtel retained Defendant Wilson & Sons to handle Mr. Swofford's funeral arrangements.  (Id.)  Plaintiff Carol Bechtel and her sister, Florence Buttermore, coordinated with Defendant Wilson & Sons for Mr. Swofford's funeral service and cremation.  (Dep. of Carol Bechtel at 63-65.)  Both Plaintiff Carol Bechtel and Ms. Buttermore executed authorizations for cremation that reflected the name and location of Tri-State Crematory.  (Id. at 65-66.)   Plaintiff Carol Bechtel also signed the funeral services and cremation contract, and signed the check in payment of Mr. Swofford's arrangements.  (Id. at 66.)

After Mr. Swofford's death, Plaintiff Carol Bechtel assisted her mother, Mrs. Willie Swofford, in obtaining a "pre-need" funeral and cremation package.  (Bechtel Dep. at 77.)  On May 20, 1994, Plaintiff Carol Bechtel signed the funeral contract and cremation authorization for Ms. Swofford.  (Id.)  On April 30, 1995, Mrs. Swofford died.   (Def. Wilson & Sons' Statement Material Facts ¶ 12.)

### d.   Discoveries at Tri-State Crematory

On February 15, 2002, uncremated remains of numerous decedents were discovered at Tri-State Crematory's location.  (Second Aff. of

8

State Crematory facility and left the body at the facility for cremation.   (Wilson Aff. ¶ 4.)   After cremation, Mr. Ray Marsh returned the cremated remains to W.L. Wilson & Sons Funeral Home, or a representative of Defendant Wilson & Sons picked up the cremated remains at Tri-State Crematory. (Id. ¶ 6; Wilson Dep. at 72.)

During the spring and summer of 1996, Defendant Wilson & Sons installed a crematory at W.L. Wilson & Sons Funeral Home in Ft. Oglethorpe.   (Wilson Dep. at 28, 78.)   Defendant Wilson & Sons subsequently conducted cremations at its own facility, and sent no additional bodies to Tri-State Crematory for cremation.   (Id.)

### b.   Plaintiff   Paula   Yockel's   Dealings   with Defendant Wilson & Sons

On December 29, 1992, Plaintiff Paula Yockel's father, Gilbert Schuchman, died.  (Def. Wilson & Sons' Statement Material Facts ¶ 19.)   Plaintiff Paula Yockel did not communicate directly with Defendant Wilson & Sons concerning the funeral arrangements and cremation for Mr. Schuchman.   (Dep. of Paula Yockel at 44.) Instead, Darlene Willhite, who claims to be Mr. Schuchman's common-law wife, contracted with Defendant Wilson & Sons for Mr. Schuchman's funeral arrangements.  (Id. at 47.)  At the direction of Plaintiff Paula Yockel and her grandfather, Ms. Willhite signed the funeral services contract and cremation authorization for Mr. Schuchman.  (Id. at 45, 47, 50-51, 82.)  Plaintiff Paula Yockel and her grandfather paid for the services to be provided for Mr.

7

Kris Sperry ¶¶ 4, 6-9; Dep. of Kris Sperry at 332-333.) Investigators located at least 334 sets of human remains at Tri-State Crematory. (Dec. 16, 2002, Hr'g Tr. at 126-27, 157-59; Sperry Dep. at 283.) Officials identified 211 of those sets of remains. (Dec. 16, 2002, Hr'g Tr. at 126-27, 157-59; Sperry Dep. at 283.) None of the identified sets of remains were sent to Tri-State Crematory by Defendant Wilson & Sons. (Wilson Dep. at 28, 78.)

On or about February 22, 2002, the cremated remains of Mr. and Mrs. Swofford were exhumed. (Def. Wilson & Sons' Statement Material Facts ¶ 17.) The authorities at the Georgia Emergency Management Agency ("GEMA") tested both sets of remains, and concluded that both sets were human. (Id.)

In March 2002, the remains of Mr. Schuchman were exhumed. (Def. Wilson & Sons' Statement Material Facts ¶ 22.) Cyril Wecht, a Pennsylvania coroner, tested Mr. Schuchman's remains and determined that the remains were human. (Id. ¶¶ 22-23.)

### 2.   Procedural Background

On February 19, 2002, Plaintiff Eleanor Kitter Dent filed suit against the Tri-State Defendants in the Northern District of Georgia, Rome Division. (Dent Compl.) On February 26, 2002, Plaintiffs Carol A. Bechtel, Paula Yockel, and Anthony Schuchman filed a lawsuit against the Tri-State Defendants and numerous Funeral Home Defendants in the Northern District of Georgia, Rome

Division.  (<u>Bechtel</u> Compl.)  On March 6, 2002, Plaintiffs Lorie Ann Walley, Carlton Dale Rice, Timothy Todd Rice, Damian Walley, and Virginia Rice Ellington filed suit in the Southern District of Alabama, Southern Division.  (<u>Walley</u> Compl.)

On March 19, 2002, Plaintiffs in the <u>Bechtel</u> proceedings filed a Motion for Transfer and Coordination or Consolidation pursuant to 28 U.S.C.A. § 1407.  On June 21, 2002, the Judicial Panel on Multidistrict Litigation issued a Transfer Order and transferred the <u>Dent</u>, <u>Bechtel</u>, and <u>Walley</u> actions to this Court for coordinated or consolidated pretrial proceedings.  (Transfer Order Dated June 21, 2002.)

On August 8, 2002, the Court held an Initial Conference for the consolidated proceedings.  On August 16, 2002, the Court memorialized certain oral Orders issued at the Initial Conference, including the appointment of lead and liaison counsel for Plaintiffs and Funeral Home Defendants and the identification of lead counsel for the Tri-State Defendants.  (Order of Aug. 16, 2002.)

On July 9, 2002, Plaintiffs filed their initial Motion to Certify Class Action.  On October 15, 2002, after Plaintiffs filed their Master First Amended Class Action Complaint, Plaintiffs filed their Amended Motion to Certify Class Action.  On December 16, 17, and 18, 2002, the Court held a hearing concerning Plaintiffs' Motion to Certify Class Action.

10

On March 17, 2003, the Court entered an Order granting in part and denying in part Plaintiffs' Motion to Certify Class Action. (Order of Mar. 17, 2003.)  In particular, the Court allowed the following claims to proceed on a class-wide basis: (1) Plaintiffs' claims for breach of contract; (2) Plaintiffs' negligence claims; (3) Plaintiffs' claims for willful interference with remains and intentional infliction of emotional distress; and (4) Plaintiffs' claims for negligent interference with remains and mishandling of a corpse.  (Id.)

On August 7, 2003, Wilson & Sons filed its Motion for Summary Judgment.  Wilson & Sons argues that no genuine dispute exists with respect to any of the claims asserted by Plaintiffs Bechtel and Yockel.[2]

**B.    Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In short, everything

---

[2]

Defendant Wilson & Sons has stated that its Motion for Summary Judgment "was never intended to encompass any other Plaintiff or potential Plaintiff other than Carol Bechtel and Paula Yockel."  (Def. Wilson & Sons' Reply Br. Supp. Mot. Summ. J. at 2.)  The Court therefore will not address the claims of any other Plaintiffs or potential Plaintiffs in this Order.

11

in the record must demonstrate the absence of a genuine issue of material fact. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog, 193 F.3d at 1246 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). The party requesting summary judgment "'always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281 (11th Cir. 1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). "The movant[] can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." Id. at 1281-82. "There is no requirement, however, 'that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" Id. at 1282 (quoting Celotex, 477 U.S. at 323).

Once the moving party has supported its motion adequately, the

12

non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. <u>Graham</u>, 193 F.3d at 1282; <u>Matshusita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." <u>Graham</u>, 193 F.3d at 1282.

After the non-moving party properly has responded to a proper motion for summary judgment, the Court may grant the motion for summary judgment if the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. <u>St. Charles Foods, Inc. v. America's Favorite Chicken Co.</u>, 198 F.3d 815, 819 (11th Cir. 1999). When making this determination, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. <u>Hinson v. Edmond</u>, 192 F.3d 1342, 1348 (11th Cir. 1999); <u>St. Charles Foods, Inc.</u>, 198 F.3d at 819. The Court also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" <u>St. Charles Foods, Inc.</u>, 198 F.3d at 819 (quoting <u>United of Omaha Life Ins. v. Sun Life Ins. Co.</u>, 894 F.2d 1555 (11th Cir. 1990)). Additionally, "'[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.'" <u>Id.</u> (quoting <u>Warrior Tombigbee Transp. Co. v. M/V Nan Fung</u>, 695 F.2d 1294, 1296-97 (11th

13

Cir. 1983)) (alteration in original).  Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury." Graham, 193 F.3d at 1282.  Finally, "[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial." Herzog, 193 F.3d at 1246.

When considering motions for summary judgment, the Court does not make decisions as to the merits of disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Ryder v. Int'l Corp. v. First Am. Nat'l Bank, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the Court only determines whether genuine issues of material fact exist to be tried.  Graham, 193 F.3d at 1282. Applicable substantive law identifies those facts that are material and those that are irrelevant.  Id. Disputed facts that do not resolve or affect the outcome of a suit properly will not preclude the entry of summary judgment. Anderson, 477 U.S. at 248.

In addition to materiality, the Court also must consider the genuineness of the alleged dispute. Graham, 193 F.3d at 1282.  A dispute is genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).  The non-movant "'must do more than show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).  "Where the record taken as a whole could not lead a rational trier of fact to

14

find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)). The standard for summary judgment thus mirrors the "standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Graham, 193 F.3d at 1283 (quoting Anderson, 477 U.S. at 251-52).

**C.   Discussion**

Defendant Wilson & Sons argues that no genuine dispute exists with respect to the claims asserted against it by Plaintiffs Carol Bechtel and Paula Yockel. According to Defendant Wilson & Sons, the Court should dismiss the claims asserted against it by Plaintiffs Carol Bechtel and Paula Yockel because: (1) Georgia's six-year statute of limitations bars the breach of contract claims asserted by Plaintiffs Carol Bechtel and Paula Yockel; (2) Georgia's four-year statute of limitations bars the claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse; (3) Plaintiffs Carol Bechtel and Paula Yockel have suffered no recognizable damage permitted under Georgia law with respect to their claims for negligence and negligent mishandling of remains; (4) Defendant Wilson & Sons has no liability for the actions of Tri-State Crematory, which was an

15

independent contractor; and (5) no evidence supports the claim of willful interference with remains and intentional mishandling of a corpse, because no evidence indicates that Defendant Wilson & Sons intentionally and willfully mishandled the decedents of Plaintiffs Carol Bechtel and Paula Yockel.   The Court addresses those arguments in turn.

> **1.    Whether the Six-Year Statute of Limitations Bars the Breach of Contract Claims Asserted by Plaintiffs Carol Bechtel and Paula Yockel**

O.C.G.A. § 9-3-24 provides: "All actions upon promissory notes, drafts, or other simple contracts in writing shall be brought within six years after the same become due and payable." O.C.G.A. § 9-3-24. "'Under Georgia law, the statute of limitations runs from the time the contract is broken and not at the time the actual damage results or is ascertained.'" Owen v. Mobley Constr. Co., 171 Ga. App. 462, 462, 320 S.E.2d 255, 256 (1984) (quoting Space Leasing Assocs. v. Atl. Bldg. Sys., 144 Ga. App. 320, 241 S.E.2d 438 (1977)) (internal citations omitted); accord Moore v. Dept. of Human Res., 220 Ga. App. 471, 472, 469 S.E.2d 511, 512-13 (1996). "The discovery rule is not applicable to a cause of action based on breach of contract." Moore, 220 Ga. App. at 472, 469 S.E.2d at 512-13 (citing Owen, 171 Ga. App. at 462, 320 S.E.2d at 255).

The funeral arrangements contract for Plaintiff Paula Yockel's father, Mr. Schuchman, was executed in December 1992 or January

16

1993.  Mr. Schuchman died on December 29, 1992.  Any alleged breach
of the contract for cremation services for Mr. Schuchman therefore
occurred in December 1992 or January 1993.  The statute of
limitations for a breach of contract claim based on that contract
expired either in December 1998 or January 1999.  Because
Plaintiffs did not file this lawsuit until February 2002, the six-
year statute of limitations bars Plaintiff Paula Yockel's breach of
contract claim.

Plaintiff Carol Bechtel's father, Mr. Swofford, died on April
4, 1993, and Plaintiff Carol Bechtel executed the contract for
funeral arrangements for Mr. Swofford in April 1993.  Any alleged
breach of that contract occurred in April 1993, and the statute of
limitations expired in April 1999.  Because Plaintiffs did not file
this lawsuit until February 2002, the six-year statute of
limitations bars Plaintiff Carol Bechtel's breach of contract claim
relating to Mr. Swofford.

Plaintiff Carol Bechtel executed the pre-need contract for
funeral arrangements for her mother, Mrs. Swofford, in May 1994.
Mrs. Swofford died on April 30, 1995.  Any alleged breach of the
contract for cremation services thus occurred in April or May of
1995, and the statute of limitations expired in April or May of
2001.  Because Plaintiffs did not file this lawsuit until February
2002, the six-year statute of limitations bars Plaintiff Carol
Bechtel's breach of contract claim relating to Mrs. Swofford.

17

The Court finds that fraudulent concealment is not available to toll the statute of limitations with respect to the claims for breach of contract asserted by Plaintiffs Paula Yockel and Carol Bechtel.   Under O.C.G.A. § 9-3-96, the statute of limitations applicable to a plaintiff's claim may be tolled if the plaintiff can show "'(1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of the cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action, despite his failure to do so within the time of the applicable statute of limitations.'" Gripper v. STO Corp., 250 Ga. App. 820, 824, 552 S.E.2d 118, 123 (2001) (quoting McClung Surveying, Inc. v. Worl, 247 Ga. App. 322, 324, 541 S.E.2d 703 (2000)) (citations omitted).   Plaintiffs Paula Yockel and Carol Bechtel have failed to adduce any  evidence showing an actual fraud on the part of Defendants involving moral turpitude that concealed the existence of the breach of contract causes of action from Plaintiffs Paula Yockel and Carol Bechtel.

For those reasons, the Court concludes that the six-year statute of limitations bars the breach of contract claims asserted by Plaintiffs Paula Yockel and Carol Bechtel.   The Court therefore grants the Motion for Summary Judgment filed by Defendant Wilson & Sons with respect to those claims.   The Court observes that its ruling addresses only the breach of contract claims filed by Plaintiffs Paula Yockel and Carol Bechtel, and that the Court has

18

not determined whether the six-year statute of limitations bars the breach of contract claims asserted by other Plaintiffs or potential Plaintiffs.[3]

2. **Whether the Four-Year Statute of Limitations Bars the Claims for Negligence, Negligent Interference with Remains and Mishandling of a Corpse, and Willful Interference with Remains and Intentional Mishandling of a Corpse Asserted by Plaintiffs Paula Yockel and Carol Bechtel**

Defendant Wilson & Sons next argues that a four-year statute of limitations applies to the claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse asserted by Plaintiffs Paula Yockel and Carol Bechtel. According to Defendant Wilson & Sons, the next of kin of a deceased have a quasi-property right in the body of a deceased, and a four-year statute of limitations applies to claims relating to that right. Defendant Wilson & Sons contends that claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling

---

[3]

Defendant Wilson & Sons also argues that Plaintiff Paula Yockel's breach of contract claim fails because Plaintiff Paula Yockel lacks privity of contract and was not an intended third-party beneficiary to any contract with Defendant Wilson & Sons, and that Plaintiffs Paula Yockel and Carol Bechtel cannot prove that Defendant Wilson & Sons breached its contractual obligations. Because the Court has concluded that the statute of limitations bars the breach of contract claims asserted by Plaintiffs Paula Yockel and Carol Bechtel, the Court does not address Defendant Wilson & Sons' other arguments.

19

of a corpse accrue when a cremation is not performed properly.

The Court disagrees with the position taken by Defendant Wilson & Sons. Plaintiffs' claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse are tort claims. Under Georgia law, a tort cause of action does not accrue until the plaintiff sustains damage. <u>Mears v. Gulfstream Aerospace Corp.</u>, 225 Ga. App. 636, 638, 484 S.E.2d 659, 663 (1997). In this case, Plaintiffs Yockel and Bechtel did not sustain damage until February 2002, when officials discovered uncremated bodies on the Tri-State Crematory property. The Court therefore cannot grant summary judgment to Defendant Wilson & Sons based on its argument that the statute of limitations bars the claims for negligence, negligent interference with remains and mishandling of a corpse, and intentional interference with remains and mishandling of a corpse asserted by Plaintiffs Yockel and Bechtel.

### 3. Whether Plaintiffs Have Incurred Cognizable Damages for their Claims of Negligence and Negligent Interference With Remains and Mishandling of a Corpse

Defendant Wilson & Sons next contends that the claims for negligence and negligent interference with remains and mishandling of a corpse asserted by Plaintiffs Bechtel and Yockel fail because Plaintiffs Bechtel and Yockel have not suffered cognizable damages in connection with those claims. Defendant Wilson & Sons argues

20

that: (1) Plaintiffs Bechtel and Yockel seek to recover for damages associated with negligent infliction of emotional distress, yet Plaintiffs Bechtel and Yockel have not suffered a physical impact; and (2) Plaintiffs Bechtel and Yockel cannot recover for damages resulting from their uncertainty and fear concerning the disposition of their decedents' bodies.

### a.    Negligent Infliction of Emotional Distress

Under Georgia law, a plaintiff may recover emotional distress damages if the emotional distress claim arises from intentional misconduct of the defendant or from the defendant's reckless indifference to consequences that was equivalent to intent. David C. Joel, Attorney at Law, P.C. v. Chastain, 254 Ga. App. 592, 596–97, 562 S.E.2d 746, 750 (2002).   A plaintiff may recover emotional distress damages in a claim involving negligent conduct if the plaintiff shows: "(1) physical impact to the plaintiff; (2) the impact causes physical injury to the plaintiff; and (3) the physical injury causes the plaintiff's mental suffering or emotional distress." Holbrook v. Stansell, 254 Ga. App. 553, 554, 562 S.E.2d 731, 733 (2002).   Alternatively, the plaintiff seeking emotional distress damages in connection with negligent conduct may show that she suffered property damage that resulted in a pecuniary loss to her.  Shores v. Modern Transp. Servs., Inc., 262 Ga. App. 293, 295, 585 S.E.2d 664, 665 (2003).

The Court finds that Plaintiffs Yockel and Bechtel may not

21

recover emotional distress damages based on Defendant Wilson & Son's negligent conduct. Plaintiffs Yockel and Bechtel have failed to present evidence showing that they suffered a physical impact causing physical injury to them that resulted in mental suffering or emotional distress. Plaintiffs Yockel and Bechtel also have not demonstrated that they suffered property damage resulting in pecuniary loss. Under those circumstances, Plaintiffs Yockel and Bechtel simply cannot recover emotional distress damages based on alleged negligent conduct by Defendant Wilson & Sons. <u>Hang v. Wages & Sons Funeral Home, Inc.</u>, 262 Ga. App. 177, 179-182, 585 S.E.2d 118, 120-22 (2003) (granting summary judgment on claim for emotional distress damages arising from alleged negligent cremation of decedent; plaintiffs had not sustained physical injury or pecuniary loss, and had not proven that defendant funeral home's conduct was malicious, willful, or wanton).

### b.   Fear and Uncertainty

Defendant Wilson & Sons also argues that Plaintiffs Yockel and Bechtel cannot recover damages based on their fear and uncertainty concerning the ultimate disposition of their decedents' remains. Plaintiffs Yockel and Bechtel have presented evidence indicating that: (1) a number of bodies discovered at the Tri-State Crematory property remain unidentified; (2) a number of remains received by other families were the incorrect remains or do not appear to be the correct remains; and (3) the remains received by Plaintiffs

22

Yockel and Bechtel are human, but testing could not determine the identity of the remains.

To recover damages, "there must be some reasonable connection between the act or omission of a defendant and the damages which a plaintiff has suffered." Russaw v. Martin, 221 Ga. App. 683, 686, 472 S.E.2d 508, 511 (1996). "Without factual evidence of a causal connection between the alleged breach of duty and the purported damages, the damages must be considered whimsical, fanciful and above all too speculative to form the basis of recovery." 221 Ga. App. at 686, 472 S.E.2d at 511.

In Russaw, a plaintiff who suffered a "needle stick" sought to recover for damages relating to her fear that she may have contracted HIV or hepatitis from the "needle stick." 221 Ga. App. at 684, 472 S.E.2d at 510. The plaintiff, however, failed to produce evidence indicating that: (1) the needle was contaminated with HIV or hepatitis; (2) the plaintiff or her husband had tested positive for HIV or hepatitis; or (3) the elderly patient on whom the needle previously had been used had tested positive for HIV or hepatitis. 221 Ga. App. at 686, 472 S.E.2d at 511-12. The Georgia Court of Appeals noted, "To allow recovery for emotional injuries and mental anguish, without any proof whatsoever that [the plaintiff] was actually exposed to HIV or hepatitis is per se unreasonable." 221 Ga. App. at 686, 472 S.E.2d at 512. The court therefore refused to allow the plaintiffs to recover for their fear

23

and mental anguish.  221 Ga. App. at 686, 472 S.E.2d at 512.

Similarly, in <u>Johnson v. American National Red Cross</u>, 276 Ga. 270, 578 S.E.2d 106 (2003), the Georgia Supreme Court refused to allow a plaintiff to recover for damages for fear and anguish resulting from the plaintiff's concern that she might have contracted a rare strain of HIV from a blood transfusion.  276 Ga. at 275, 578 S.E.2d at 110.  The court observed that the plaintiff had not produced evidence indicating: (1) that the blood donor was infected with any form of HIV or that the donor had experienced any experiences of HIV; or (2) that the plaintiff had tested positive *for HIV or that the plaintiff had experienced any symptoms* consistent with HIV exposure or infection.  276 Ga. at 275, 578 S.E.2d at 110.  Under those circumstances, the Georgia Supreme Court concluded that the plaintiff's fears were not reasonable, and that the plaintiff consequently could not recover damages related to those fears.

In this case, Plaintiffs Yockel and Bechtel have presented evidence indicating that the remains of their loved ones have been tested and that the remains are presumably human remains, but that the remains cannot be identified.  Plaintiffs Yockel and Bechtel also have adduced evidence showing that many of the bodies discovered on the Tri-State Crematory property could not be identified, and that several of the remains received by other families were improperly identified or contained foreign matter.

24

Under these circumstances, Plaintiffs Yockel and Bechtel have shown that a reasonable possibility exists that they may not have received the remains of their respective decedents. The Court therefore finds that the fear and uncertainty experienced by Plaintiffs Yockel and Bechtel are not unreasonable.

### c.   Summary

In sum, the Court finds that Plaintiffs Yockel and Bechtel may not recover damages for emotional distress caused by the alleged negligence of Defendant Wilson & Sons. The Court, however, finds that a genuine dispute exists whether the fear and uncertainty experienced by Plaintiffs Yockel and Bechtel were reasonable. In any event, the Court observes that even if Plaintiffs Yockel and Bechtel cannot recover damages for fear and uncertainty or other emotional distress damages related to their claims for negligence and negligent interference with remains and mishandling of a corpse, Plaintiffs Yockel and Bechtel still may recover nominal damages for those claims. The Court therefore cannot grant summary judgment to Defendant Wilson & Sons based on its contention that Plaintiffs Yockel and Bechtel cannot prove damages for their negligence and negligent infliction of interference with remains and mishandling of a corpse claims.

### 4.   Whether Defendant Wilson & Sons May Be Held Liable for the Actions of Tri-State Crematory

Defendant Wilson & Sons next argues that it may not be held liable for any of the actions of Tri-State Crematory. According to

AO 72A
(Rev.8/82)

Defendant Wilson & Sons, Tri-State Crematory was not an agent of Defendant Wilson & Sons, but rather was an independent contractor.

O.C.G.A. § 10-6-1 provides: "The relationship of principal and agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another on his behalf." O.C.G.A. § 10-6-1. "'Agency is the relationship which results by the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" Johnston v. Warendh, 252 Ga. App. 674, 679, 556 S.E.2d 867, 872 (2001) (quoting Smith v. Merck, 206 Ga. 361, 368, 57 S.E.2d 326 (1950)). "An agency relationship 'may refer, and perhaps most often does, to that relation created by express or implied contract or by law, where one person delegates the transaction of some lawful business with more or less discretionary power to another, who undertakes to manage the affair and render to him an account thereof.'" 252 Ga. App. at 679, 556 S.E.2d at 872 (quoting Smith, 206 Ga. at 368, 57 S.E.2d 326). A plaintiff may prove the existence of an agency relationship "through circumstances, apparent relations, and the conduct of the parties." 252 Ga. App. 674, 679, 556 S.E.2d 867, 872. Whether an agency relationship exists is a factual question. S. Exposition Mgmt. Co. v. Genmar Indus., Inc., 250 Ga. App. 702, 704, 551 S.E.2d 830, 832 (2001).

To determine whether Tri-State Crematory was the agent or

26

independent contractor of Defendant Wilson & Sons, the Court must examine whether Defendant Wilson & Sons assumed the right to control the time, manner, and method in which Tri-State Crematory performed its work.  Williamson v. Coastal Physicians Servs. of Southeast, Inc., 251 Ga. App. 667, 668, 554 S.E.2d 739, 741 (2001). Here, the evidence in the record indicates that Defendant Wilson & Sons: (1) did not control the time for performing cremory services; (2) did not direct Tri-State Crematory to perform crematory services in a certain manner or to use certain equipment to perform crematory services; and (3) did not control the method in which Tri-State Crematory performed crematory services.  Under those circumstances, Tri-State Crematory was an independent contractor, and was not an agent of Defendant Wilson & Sons.

A defendant generally has no responsibility for torts committed by an independent contractor.  O.C.G.A. § 51-2-4; Nulite Indus. Co. v. Horne, 252 Ga. App. 378, 379, 556 S.E.2d 255, 257 (2001). Under Georgia law, however, a defendant may be liable for the negligence of a contractor under circumstances, including: "(1) [w]hen the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance; (2) [i]f, according to the [defendant]'s previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed; (3) [i]f the wrongful act is the violation of a duty imposed by express contract upon the [defendant]; (4) [i]f the

27

wrongful act is the violation of a duty imposed by statute; (5) [i]f the [defendant] retains the right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference; or (6) [i]f the [defendant] ratifies the unauthorized wrong of the independent contractor." O.C.G.A. § 51-2-5.

Here, the contracts for funeral services signed by Defendant Wilson & Sons, by their nature, imposed a duty on Defendant Wilson & Sons to ensure proper performance of the cremation services. Defendant Wilson & Sons could not escape liability for inadequate performance of that duty by assigning the task of performing cremation services to an independent contractor. <u>Nulite Indus. Co.</u>, 252 Ga. App. at 379, 556 S.E.2d at 257; <u>Sacker v. Perry Realty Servs., Inc.</u>, 217 Ga. App. 300, 302, 457 S.E.2d 208, 211 (1995); <u>Crispens Enters., Inc. v. Halstead</u>, 209 Ga. App. 133, 134-35, 433 S.E.2d 353, 355 (1993).

The evidence in the record, viewed in the light most favorable to Plaintiffs Yockel and Bechtel, indicates that Tri-State Crematory failed to perform cremation services properly. Given this evidence, a genuine issue exists concerning whether Defendant Wilson & Sons is responsible for the alleged negligence of Tri-State Crematory. <u>Nulite Indus. Co.</u>, 252 Ga. App. at 379, 556 S.E.2d at 257. Defendant Wilson & Sons therefore is not entitled

to summary judgment based on its argument that it has no liability for the actions of Tri-State Crematory.

Alternatively, a defendant also may be held liable for the acts of an independent contractor who is performing the defendant's non-delegable statutory duty.  Kroger Co. v. Strickland, 248 Ga. App. 613, 614-15, 548 S.E.2d 375, 377-78 (2001).  The Georgia legislature has enacted a comprehensive statutory scheme that imposes duties on funeral homes and funeral directors. O.C.G.A. §§ 43-18-1 through 43-18-79.  One of those duties includes an obligation to ensure that bodies are labeled and tagged properly. O.C.G.A. § 43-18-8.  Defendant Wilson & Sons could not avoid its statutory duties simply by contracting with Tri-State Crematory to perform the cremation services.

The evidence in this case, viewed in the light most favorable to Plaintiffs Yockel and Bechtel, indicates that bodies and remains were not labeled and tagged properly at the Tri-State Crematory. Under those circumstances, a genuine dispute exists concerning whether Defendant Wilson & Sons may have liability for the wrongful acts of Tri-State Crematory.

The Court, however, rejects Plaintiffs' argument that cremation is an unreasonably dangerous activity.  A defendant may have liability for the actions of an independent contractor when the independent contractor is performing work that, because of its nature, is dangerous to others no matter how it is performed.

29

O.C.G.A. § 51-2-5(2).   The question whether an activity is an ultrahazardous or abnormally dangerous activity is a question of law.  O'Neal v. Int'l Paper Co., 715 F.2d 199, 201 (5th Cir. 1983); Edwards v. Post Transp. Co., 279 Cal. Rptr. 231, 232 (Cal. Ct. App. 1991).   An activity is ultrahazardous or abnormally dangerous if the activity "cannot be performed safely even in the absence of all negligence and with the exercise of all reasonable care."  Clark v. Container Corp. of Am., Inc., 936 F.2d 1220, 1225 (11th Cir. 1991) (applying Alabama law); O'Neal, 715 F.2d at 202 ("Central to the concept of ultrahazardous activity, . . . is that there be a risk of harm that cannot be eliminated through the exercise of due care.").   The evidence in the record, however, demonstrates that cremation is not dangerous to others if proper precautions are taken.  The Court therefore will not impose liability on Defendants based on Plaintiffs' argument that cremation is an abnormally dangerous activity.

**5.   Whether a Genuine Dispute Exists With Respect to the Claim for Willful Interference With Remains and Mishandling of a Corpse Asserted by Plaintiffs Yockel and Bechtel**

Defendant Wilson & Sons also argues that no genuine dispute exists with respect to the claim for wilful interference with remains and mishandling of a corpse asserted by Plaintiffs Yockel and Bechtel.   According to Defendant Wilson & Sons, no evidence indicates that Defendant Wilson & Sons intentionally mishandled the corpses of Plaintiffs Yockel and Bechtel's decedents.

30

Plaintiffs Yockel and Bechtel have failed to adduce evidence indicating that Defendant Wilson & Sons itself intentionally mishandled the corpses of their respective decedents. The evidence in the record, however, viewed in the light most favorable to Plaintiffs Yockel and Bechtel, indicates that Tri-State Crematory intentionally mishandled corpses or acted with reckless disregard with respect to those corpses. As discussed <u>supra</u> Part III.C.4., a genuine dispute exists concerning whether Defendant Wilson & Sons may be responsible for the actions of Tri-State Crematory.[4] Defendant Wilson & Sons therefore cannot obtain summary judgment with respect to the claims for wilful interference with the right of burial and intentional mishandling of a corpse asserted by Plaintiffs Yockel and Bechtel.

## IV.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** Defendant *W.L. Wilson & Sons Funeral Home's* Motion for Summary

---

[4]

Defendant Wilson & Sons argues that O.C.G.A. § 51-2-5 does not impose liability on it for Tri-State Crematory's *alleged* intentional interference with remains and mishandling of corpses because that statute applies only to negligence of an independent contractor. For two reasons, the Court rejects this argument. First, the Court concludes that O.C.G.A. § 51-2-5 only sets forth a minimum standard for imposing liability for actions of an independent contractor. Second, the Court's decision imposing liability on Defendant Wilson & Sons also is based on the duties that Defendant Wilson & Sons owed under its agreements with Plaintiffs and its relationship with Plaintiffs to dispose of Plaintiffs' decedents properly.

31

Judgment [454].  The Court **GRANTS** the Motion for Summary Judgment with respect to the breach of contract claims asserted by Plaintiffs Bechtel and Yockel.  The Court **GRANTS** Defendant W.L. Wilson & Sons Funeral Home's Motion to Exceed Page Limit for Reply Brief in Support of Motion for Summary Judgment [500].  The Court **OVERRULES** Defendant W.L. Wilson & Sons Funeral Home's Notice of Objection to Affidavit of Plaintiff Paula Yockel [503-1], and **DENIES** Defendant W.L. Wilson & Sons Funeral Home's Motion to Strike Affidavit of Plaintiff Paula Yockel [503-2].

IT IS SO ORDERED, this the 19th day of December, 2003.

_____
UNITED STATES DISTRICT JUDGE

32