

FILED IN CLERK'S OFFICE
U.S.D.C. - Rome

DEC 19 2003

LUTHER D. THOMAS, Clerk
By [signature] Deputy Clerk

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE                    MDL DOCKET NO. 1467
CREMATORY LITIGATION

This Order relates to:

ALL CASES

ORDER

This case is before the Court on the Motion for Summary Judgment filed by Defendants SCI Georgia Funeral Services, Inc., d/b/a Jennings Funeral Home, a/k/a Jennings Heritage Chapel Funeral Home, and Parnick Jennings Funeral Home, and f/d/b/a Kenemer Brothers Funeral Home, J. Avery Bryan of Chickamauga, and Wallis-Stewart Funeral Home [600].

I.    **Background**

Keeping in mind that when deciding a motion for summary judgment, the Court "must view the evidence and all factual inferences in the light most favorable to the party opposing the motion," the Court provides the following statement of facts. Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993). This statement does not represent actual findings of fact; rather, it is intended simply to place the Court's legal analysis within the context of a specific case or controversy.

1

875

Swint v. City of Wadley, 51 F.3d 988, 992 (11th Cir. 1995) ("[W]hat we state as 'facts' in this [order] for purposes of reviewing the ruling[] on the summary judgment motion[] may not be the actual facts.  They are, however, the facts for present purposes, and we set them out below.").

### A.    Factual Background

#### 1.    Defendants SCI Georgia Funeral Homes' Operations and Connections with Tri-State Crematory

Defendants SCI Georgia Funeral Services, Inc., d/b/a Jennings Funeral Home, a/k/a Jennings Heritage Chapel Funeral Home, and Parnick Jennings Funeral Home, and f/d/b/a Kemember Brothers Funeral Home, J. Avery Bryan of Chickamauga, and Wallis-Stewart Funeral Home ("Defendants SCI Georgia Funeral Homes") are a collection of funeral homes. On June 27, 1973, SCI Georgia Funeral Services, Inc. ("SCI") acquired Wallis-Stewart Funeral Home ("Wallis-Stewart").  On September 22, 1988, SCI acquired Kenemer Brothers Funeral Home ("Kenemer").  On August 30, 1991, SCI acquired Jennings Funeral Home ("Jennings") and J. Avery Bryan of Chickamauga ("J. Avery Bryan") through a merger with Sentinel Group.  (Aff. of J. Parnick Jennings, Sr. ¶ 18.)  On November 21, 1995, SCI acquired Parnick Jennings Funeral Home ("Parnick Jennings"). (Aff. of J. Parnick Jennings, Jr. ¶ 18.)  On November 16, 2001, SCI closed Kenemer.  On August 24, 2002, SCI sold J. Avery Bryan and Wallis-Stewart.

2

### a.   Jennings

In 1982, Jennings began using Tri-State Crematory. (Jennings Sr. Aff. ¶ 2.)  Jennings sent two bodies to Tri-State Crematory for cremation between 1988 and 1989.  (Id. ¶ 19.)  Jennings sent both of those bodies to Tri-State Crematory in 1988.  (Id.)   Those decedents were Norman D. New, who died on January 29, 1988, and Joseph H. Joseph, who died on August 31, 1988.  (SCI Georgia Defs.' Appx. Supp. Mot. Summ. J. Ex. S.)  Jennings stopped using Tri-State Crematory in 1990.  (Jennings Sr. Aff. ¶ 2.)

Jennings' employees all worked with Ray Marsh and Brent Marsh to coordinate cremations at Tri-State Crematory.  (Jennings Sr. Aff. ¶ 3.)   To arrange cremations, Jennings' employees usually called Ray Marsh and stated that Jennings  needed a cremation for a particular decedent.  (Id.)  Jennings' employees asked when they could bring the decedent to Tri-State Crematory for cremation. (Id.)  Jennings' employees then delivered the decedent to Tri-State Crematory.   (Id. ¶ 4.)   After the completion of the cremation, Jennings' employees picked up the remains at Tri-State Crematory. (Id. ¶ 6.)

Jennings' use of Tri-State Crematory depended on Tri-State Crematory's hours of operation and the hours kept by Mr. Ray Marsh. (Jennings Sr. Aff. ¶ 3.)   Jennings had no control over Tri-State Crematory's hours of operation.  (Id.)

Jennings did not instruct Mr. Ray Marsh concerning the method

3

of performing the cremations at Tri-State Crematory. (Jennings Sr. Aff. ¶ 4.)  Jennings did not direct Tri-State Crematory to use a certain crematory manufacturer, specific tools or materials, or specific techniques or procedures.  (Id.)  Jennings also did not instruct Tri-State Crematory to use a certain brand of cremation unit, and did not suggest the time, manner, or method for servicing the crematory.  (Id. ¶ 5.)

Prior to February 15, 2002, Mr. J. Parnick Jennings, Sr. understood that the Marsh family had a good reputation in their community and among funeral directors.  (Jennings Sr. Aff. ¶ 7.) Mr. J. Parnick Jennings, Sr. had no information that any member of the Marsh family had committed a crime or had a propensity to commit a crime.  (Id.)

Prior to February 15, 2002, Mr. J. Parnick Jennings, Sr. considered Tri-State Crematory's services to be prompt and efficient. (Jennings Sr. Aff. ¶ 8.)  Prior to February 15, 2002, Mr. J. Parnick Jennings, Sr. had no information or belief that anything was wrong at Tri-State Crematory, that Tri-State Crematory was operating illegally, or that Tri-State Crematory was not doing all of the tasks necessary to perform a proper cremation.  (Id. ¶ 10.)  Mr. J. Parnick Jennings, Sr. also had no information that uncremated bodies were on Tri-State Crematory's premises.  (Id. ¶ 11.)  Further, Mr. J. Parnick Jennings, Sr. had no information that Tri-State Crematory had given anyone adulterated or misidentified

4

cremated remains, or that Tri-State Crematory had interfered with human remains or mishandled a corpse. (Id. ¶¶ 12-13.) According to Mr. J. Parnick Jennings, Sr., prior to February 15, 2002, he had no information that caused him to suspect that Tri-State Crematory was not performing cremations properly, that uncremated bodies remained on Tri-State Crematory's premises, that Tri-State Crematory had given anyone misidentified or adulterated remains, or that Tri-State Crematory had interfered with human remains or mishandled a corpse. (Id. ¶ 14.)

Mr. J. Parnick Jennings, Sr. has not mishandled corpses or interfered with human remains. (Jennings Sr. Aff. ¶ 15.) Mr. J. Parnick Jennings, Sr. is not aware of any employee of Jennings mishandling corpses or interfering with human remains. (Id.)

### b.   Parnick Jennings

Parnick Jennings is a funeral home located in Cartersville, Georgia. (Jennings Jr. Aff. ¶ 2.) In 1984, Parnick Jennings began using Tri-State Crematory. (Jennings Jr. Aff. ¶ 2.) Parnick Jennings sent one body to Tri-State Crematory in 1988, one body in 1990, three bodies in 1991, eight bodies in 1992, and four bodies in 1993. Specifically, Parnick Jennings sent the following decedents to Tri-State Crematory: (1) Randy Heath, who died on April 15, 1988; (2) Arthur Fontaine, who died on September 8, 1990; (3) Hubert Owens, who died on July 2, 1991; (4) Elizabeth Crockford, who died on August 29, 1991; (5) J.D. Gravely, who died

5

on September 30, 1991; (6) Jeannette Grigsby, who died on June 9, 1992; (7) Ronald Gene Gabrilska, Sr., who died on June 13, 1992; (8) Dwane Fowler, who died on July 29, 1992; (9) Sherry Young, who died on July 30, 1992; (10) James Allen Stewart, who died on November 15, 1992; (11) Rebecca Gray, who died on November 18, 1992; (12) Allen M. Torling, who died on December 4, 1992; (13) David F. Kay, who died on December 30, 1992; (14) Marguerite Dejaer, who died on January 8, 1993; (15) Nancy Stone, who died on January 13, 1993; (16) John Laibach, who died on February 15, 1993; and (17) Walter Knox, who died on April 13, 1993.  (SCI Georgia Defs.' Appx. Supp. Mot. Summ. J. Ex. T.)

Parnick Jennings' employees all worked with Ray Marsh and Brent Marsh to coordinate cremations at Tri-State Crematory. (Jennings Jr. Aff. ¶ 2.)  To arrange cremations, Parnick Jennings' employees usually called Ray Marsh and stated that Parnick Jennings needed a cremation for a particular decedent.  (Id.)  Parnick Jennings' employees asked when they could bring the decedent to Tri-State Crematory for cremation.  (Id.)  Parnick Jennings' employees then delivered the decedent to Tri-State Crematory. (Id. ¶ 4.)  After the completion of the cremation, Parnick Jennings' employees picked up the remains at Tri-State Crematory, or Mr. Ray Marsh returned the remains to Parnick Jennings.  (Id. ¶ 6.)

Parnick Jennings' use of Tri-State Crematory depended on Tri-State Crematory's hours of operation and the hours kept by Mr. Ray

6

Marsh.  (Jennings Jr. Aff. ¶ 3.)  Parnick Jennings had no control over Tri-State Crematory's hours of operation.  (Id.)

Parnick Jennings did not instruct Mr. Ray Marsh concerning the method of performing the cremations at Tri-State Crematory. (Jennings Jr. Aff. ¶ 4.)  Parnick Jennings did not direct Tri-State Crematory to use a certain crematory manufacturer, specific tools or materials, or specific techniques or procedures.  (Id.)  Parnick Jennings also did not instruct Tri-State Crematory to use a certain brand of cremation unit, and did not suggest the time, manner, or method for servicing the crematory.  (Id. ¶ 5.)

Prior to February 15, 2002, Mr. J. Parnick Jennings, Jr. understood that the Marsh family had a good reputation in their community and among funeral directors.  (Jennings Jr. Aff. ¶ 7.) Mr. J. Parnick Jennings, Jr. had no information that any member of the Marsh family had committed a crime or had a propensity to commit a crime.  (Id.)

Prior to February 15, 2002, Mr. J. Parnick Jennings, Jr. considered Tri-State Crematory's services to be prompt and efficient. (Jennings Jr. Aff. ¶ 8.)  Prior to February 15, 2002, Mr. J. Parnick Jennings, Jr. had no information or belief that anything was wrong at Tri-State Crematory, that Tri-State Crematory was operating illegally, or that Tri-State Crematory was not doing all of the tasks necessary to perform a proper cremation.  (Id. ¶ 10.)  Mr. J. Parnick Jennings, Jr. also had no information that

7

uncremated bodies were on Tri-State Crematory's premises.  (Id. ¶ 11.)  Further, Mr. J. Parnick Jennings, Jr. had no information that Tri-State Crematory had given anyone adulterated or misidentified cremated remains, or that Tri-State Crematory had interfered with human remains or mishandled a corpse.  (Id. ¶¶ 12-13.)  According to Mr. J. Parnick Jennings, Jr., prior to February 15, 2002, he had no information that caused him to suspect that Tri-State Crematory was not performing cremations properly, that uncremated bodies remained on Tri-State Crematory's premises, that Tri-State Crematory had given anyone misidentified or adulterated remains, or that Tri-State Crematory had interfered with human remains or mishandled a corpse.  (Id. ¶ 14.)

Mr. J. Parnick Jennings, Jr. has not mishandled corpses or interfered with human remains.  (Jennings Jr. Aff. ¶ 15.)  Mr. J. Parnick Jennings, Jr. is not aware of any employee of Parnick Jennings mishandling corpses or interfering with human remains. (Id.)

### c.   Kenemer

Kenemer is a funeral home located in Dalton, Georgia.  (Aff. of Stonewall Ponders ¶ 2.)  In 1982, Kenemer began using Tri-State Crematory.  (Id. ¶ 2.)  Kenemer sent the following decedents to Tri-State Crematory: (1) George G. Grigsby, who died on September 13, 1988; (2) Emily Amanda Lamb, who died on December 23, 1988; (3) Thelma Lasater, who died on April 1, 1989; (4) James E. Morgan,

8

Jr., who died on September 15, 1989; (5) Herdon Stacy Helms, who died on September 28, 1989; (6) Howard Gregory Parham, who died on February 6, 1990; (7) Lee Hicks, who died on February 21, 1990; (8) Lillian Mae Green, who died on July 7, 1990; (9) Anne Marcin, who died on July 13, 1990; (10) Winston Garrett Hullander, who died on September 11, 1990; (11) Oscar Carl Ekstedt, who died on September 30, 1990; (12) Walter Edward Hoffman, who died on October 10, 1990; (13) Arzelle Annie Gaddis Robb, who died on January 13, 1991; (14) Glenn Allen Privette, who died on March 16, 1991; (15) Richard A. Martin, Sr., who died on May 12, 1991; (16) Reathe A. Bennett, who died on May 12, 1991; (17) John Walter Hampton, who died on February 3, 1992; (18) Sally Dmohowski, who died on July 14, 1993; (19) Fredrick E. Hoak, who died on July 14, 1993; (20) Harry R. Moore, who died on September 20, 1993; (21) Dorothy M. Orofino, who died on November 16, 1993; (22) Peter C. Fancher, who died on December 15, 1993; (23) Thelma Guinade, who died on March 26, 1994; (24) Richard Wayne Tuck, who died on April 16, 1994; (25) Thomas Fred Smith, who died on July 19, 1994; (26) Lawrence Mark Sucher, who died on September 4, 1994; (27) Mary Louise Carr, who died on September 17, 1994; (28) Michael Reele Moore, who died on October 26, 1994; (29) Arthur B. Lewallen, Jr., who died on December 2, 1994; (30) Martha Sue Wade Pittman, who died on December 6, 1994; (31) Richard Leroy Truesdale, who died on December 22, 1994; and (32) Clayton Buttolph, who died on November 24, 1988. (SCI Georgia

9

Funeral Homes Appx. Supp. Mot. Summ. J. Ex. U.)

Kenemer's employees all worked with Ray Marsh to coordinate cremations at Tri-State Crematory. (Ponders Aff. ¶ 3.)  To arrange cremations, Kenemer's employees usually called Mr. Ray Marsh and stated that Kenemer needed a cremation for a particular decedent. (Id.)  Kenemer's employees asked when they could bring the decedent to Tri-State Crematory for cremation.  (Id.)  Kenemer's employees then delivered the decedent to Tri-State Crematory.  (Id. ¶ 5.) After the completion of the cremation, Kenemer's employees picked up the remains at Tri-State Crematory, or Mr. Ray Marsh or his representative returned the remains to Kenemer.  (Id. ¶ 7.)  Tri-State Crematory always represented that the remains belonged to the decedents that Kenemer had sent to Tri-State Crematory for cremation.  (Id. ¶ 8.)

Kenemer's use of Tri-State Crematory depended on Tri-State Crematory's hours of operation and the hours kept by Mr. Ray Marsh. (Ponders Aff. ¶ 3.)   Kenemer had no control over Tri-State Crematory's hours of operation.  (Id.)

Kenemer did not instruct Mr. Ray Marsh concerning the method of performing the cremations at Tri-State Crematory. (Ponders Aff. ¶ 5.)  Kenemer did not direct Tri-State Crematory to use a certain crematory manufacturer, specific tools or materials, or specific techniques or procedures.  (Id.)  Kenemer also did not instruct Tri-State Crematory to use a certain brand of cremation unit, and

10

did not suggest the time, manner, or method for servicing the crematory.  (Id. ¶ 6.)

Prior to February 15, 2002, Mr. Ponders understood that the Marsh family had a good reputation in their community and among funeral directors.  (Ponders Aff. ¶ 9.)  Mr. Ponders had no information that any member of the Marsh family had committed a crime or had a propensity to commit a crime.  (Id.)

Prior to February 15, 2002, Mr. Ponders considered Tri-State Crematory's services to be prompt and efficient.  (Ponders Aff. ¶ 11.)  Prior to February 15, 2002, Mr. Ponders had no information or belief that anything was wrong at Tri-State Crematory, that Tri-State Crematory was operating illegally, or that Tri-State Crematory was not doing all of the tasks necessary to perform a proper cremation.  (Id. ¶ 13.)  Mr. Ponders also had no information that uncremated bodies were on Tri-State Crematory's premises.  (Id. ¶ 14.)  Further, Mr. Ponders had no information that Tri-State Crematory had given anyone adulterated or misidentified cremated remains, or that Tri-State Crematory had interfered with human remains or mishandled a corpse.  (Id. ¶¶ 14-15.)  According to Mr. Ponders, prior to February 15, 2002, he had no information that caused him to suspect that Tri-State Crematory was not performing cremations properly, that uncremated bodies remained on Tri-State Crematory's premises, that Tri-State Crematory had given anyone misidentified or adulterated remains, or that Tri-State Crematory

11

had interfered with human remains or mishandled a corpse.  (Id. ¶ 17.)

Mr. Ponders has not mishandled corpses or interfered with human remains.  (Ponders Aff. ¶ 18.)  Mr. Ponders is not aware of any employee of Kenemer mishandling corpses or interfering with human remains.  (Id.)

### d.   J. Avery Bryan

According to Defendants SCI Georgia Funeral Homes, J. Avery Bryan sent only one decedent to Tri-State Crematory.  On or about March 11, 1998, J. Avery Bryan sent a decedent to Tri-State Crematory.

### e.   Wallis-Stewart

According to Defendants SCI Georgia Funeral Homes, Wallis-Stewart sent only one decedent to Tri-State Crematory.  On or about March 25, 1988, Wallis-Stewart sent a decedent to Tri-State Crematory.

### 2.   Discoveries at Tri-State Crematory

On February 15, 2002, uncremated remains of numerous decedents were discovered at the Tri-State Crematory's location.  (Second Aff. of Kris Sperry ¶¶ 4, 6-9; Dep. of Kris Sperry at 332-333.)  Investigators located at least 334 sets of human remains at the Tri-State Crematory.  (Dec. 16, 2002, Hr'g Tr. at 126-27, 157-59; Sperry Dep. at 283.)  Officials identified 211 of those sets of remains.  (Dec. 16, 2002, Hr'g Tr. at 126-27, 157-59; Sperry Dep.

12

at 283.)   Officials discovered none of the decedents sent to Tri-
State Crematory by Defendants SCI Georgia Funeral Homes on the Tri-
State Crematory premises.

### B.   Procedural Background

On February 19, 2002, Plaintiff Eleanor Kitter Dent filed suit
against the Tri-State Defendants in the Northern District of
Georgia, Rome Division.   (Dent Compl.)   On February 26, 2002,
Plaintiffs Carol A. Bechtel, Paula Yockel, and Anthony Schuchman
filed a lawsuit against the Tri-State Defendants and numerous
Funeral Home Defendants in the Northern District of Georgia, Rome
Division.   (Bechtel Compl.)   On March 6, 2002, Plaintiffs Lorie Ann
Walley, Carlton Dale Rice, Timothy Todd Rice, Damian Walley, and
Virginia Rice Ellington filed suit in the Southern District of
Alabama, Southern Division.   (Walley Compl.)

On March 19, 2002, Plaintiffs in the Bechtel proceedings filed
a Motion for Transfer and Coordination or Consolidation pursuant to
28 U.S.C.A. § 1407.   On June 21, 2002, the Judicial Panel on
Multidistrict Litigation issued a Transfer Order and transferred
the Dent, Bechtel, and Walley actions to this Court for coordinated
or consolidated pretrial proceedings.   (Transfer Order Dated June
21, 2002.)

On August 8, 2002, the Court held an Initial Conference for
the consolidated proceedings.   On August 16, 2002, the Court
memorialized certain oral Orders issued at the Initial Conference,

13

including the appointment of lead and liaison counsel for Plaintiffs and Funeral Home Defendants and the identification of lead counsel for the Tri-State Defendants. (Order of Aug. 16, 2002.)

On July 9, 2002, Plaintiffs filed their initial Motion to Certify Class Action. On October 15, 2002, after Plaintiffs filed their Master First Amended Class Action Complaint, Plaintiffs filed their Amended Motion to Certify Class Action. On December 16, 17, and 18, 2002, the Court held a hearing concerning Plaintiffs' Motion to Certify Class Action.

On March 17, 2003, the Court entered an Order granting in part and denying in part Plaintiffs' Motion to Certify Class Action. (Order of Mar. 17, 2003.) In particular, the Court allowed the following claims to proceed on a class-wide basis: (1) Plaintiffs' claims for breach of contract; (2) Plaintiffs' negligence claims; (3) Plaintiffs' claims for willful interference with remains and intentional infliction of emotional distress; and (4) Plaintiffs' claims for negligent interference with remains and mishandling of a corpse. (Id.)

On October 15, 2003, Defendants SCI Georgia Funeral Homes filed their Motion for Summary Judgment. Defendants SCI Georgia Funeral Homes argue that no genuine dispute exists with respect to any of the claims asserted against them by Plaintiffs.

14

## II.  **Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) authorizes summary judgment when all "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In short, everything in the record must demonstrate the absence of a genuine issue of material fact. Herzog v. Castle Rock Entertainment, 193 F.3d 1241, 1246 (11th Cir. 1999).

The party seeking summary judgment bears the burden of demonstrating the absence of a genuine dispute as to any material fact. Herzog, 193 F.3d at 1246 (citing Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970)). The party requesting summary judgment "'always bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1281 (11th Cir. 1999) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted). "The movant[] can meet this burden by presenting evidence showing that there is no dispute of material fact, or by showing that the nonmoving party

has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof." Id. at 1281-82. "There is no requirement, however, 'that the moving party support its motion with affidavits or other similar materials negating the opponent's claim.'" Id. at 1282 (quoting Celotex, 477 U.S. at 323).

Once the moving party has supported its motion adequately, the non-movant has the burden of showing summary judgment is improper by coming forward with specific facts that demonstrate the existence of a genuine issue for trial. Graham, 193 F.3d at 1282; Matshusita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The non-moving party "need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings." Graham, 193 F.3d at 1282.

After the non-moving party properly has responded to a proper motion for summary judgment, the Court may grant the motion for summary judgment if the Court concludes that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. St. Charles Foods, Inc. v. America's Favorite Chicken Co., 198 F.3d 815, 819 (11th Cir. 1999). When making this determination, the Court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Hinson v. Edmond, 192 F.3d 1342, 1348 (11th Cir. 1999); St. Charles Foods, Inc., 198 F.3d at 819. The Court

16

also must "'resolve all reasonable doubts about the facts in favor of the non-movant.'" St. Charles Foods, Inc., 198 F.3d at 819 (quoting United of Omaha Life Ins. v. Sun Life Ins. Co., 894 F.2d 1555 (11th Cir. 1990)). Additionally, "'[i]f reasonable minds might differ on the inferences arising from undisputed facts, then the court should deny summary judgment.'"  Id. (quoting Warrior Tombigbee Transp. Co. v. M/V Nan Fung, 695 F.2d 1294, 1296-97 (11th Cir. 1983)) (alteration in original).  Moreover, "credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury."  Graham, 193 F.3d at 1282.  Finally, "[i]f the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246.

When considering motions for summary judgment, the Court does not make decisions as to the merits of disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); Ryder v. Int'l Corp. v. First Am. Nat'l Bank, 943 F.2d 1521, 1523 (11th Cir. 1991). Rather, the Court only determines whether genuine issues of material fact exist to be tried.   Graham, 193 F.3d at 1282. Applicable substantive law identifies those facts that are material and those that are irrelevant.  Id.  Disputed facts that do not resolve or affect the outcome of a suit properly will not preclude the entry of summary judgment. Anderson, 477 U.S. at 248.

In addition to materiality, the Court also must consider the

17

genuineness of the alleged dispute. Graham, 193 F.3d at 1282.  A dispute is genuine if "'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. (quoting Anderson, 477 U.S. at 248).   The non-movant "'must do more than show that there is some metaphysical doubt as to the material facts.'" Id. (quoting Matsushita, 475 U.S. at 586).   "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no  'genuine issue for trial.'"   Matsushita, 475 U.S. at 587 (quoting First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).   The standard for summary judgment thus mirrors the "standard necessary to direct a verdict: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" Graham, 193 F.3d at 1283 (quoting Anderson, 477 U.S. at 251-52).

## III. Discussion

Defendants SCI Georgia Funeral Homes argue that no genuine dispute exists with respect to the claims asserted against them by Plaintiffs. According to Defendants SCI Georgia Funeral Homes, the Court should dismiss the claims asserted against them by Plaintiffs because: (1) Georgia's six-year statute of limitations bars the breach of contract claims asserted by Plaintiffs whose decedents were sent to Tri-State Crematory before February 26, 1996; (2)

18

Plaintiffs whose decedents' bodies were not discovered on the Tri-State Crematory premises or who have no proof that they received remains other than those of their decedent cannot assert breach of contract claims; (3) Georgia's four-year statute of limitations bars Plaintiffs' claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse for decedents who died prior to February 26, 1998; (4) Defendants SCI Georgia Funeral Homes have no liability for the actions of Tri-State Crematory and the Marsh Defendants, because those actions were not foreseeable; (5) Defendants SCI Georgia Funeral Homes were not negligent; (6) Plaintiffs have suffered no recognizable damage permitted under Georgia law with respect to their claims for negligence and negligent interference with remains and mishandling of a corpse; (7) Defendants SCI Georgia Funeral Homes have no vicarious liability for the actions of Tri-State Crematory, which was an independent contractor; and (8) no evidence supports the claims of willful interference with remains and intentional mishandling of a corpse, because no evidence indicates that Defendants SCI Georgia Funeral Homes intentionally and willfully mishandled the decedents of Plaintiffs.  The Court addresses those arguments in turn.

19

A.   **Whether the Six-Year Statute of Limitations Bars the Breach of Contract Claims Asserted by Plaintiffs Whose Decedents Arrived at Tri-State Crematory Prior to February 26, 1996**

O.C.G.A. § 9-3-24 provides: "All actions upon promissory notes, drafts, or other simple contracts in writing shall be brought within six years after the same become due and payable." O.C.G.A. § 9-3-24. "'Under Georgia law, the statute of limitations runs from the time the contract is broken and not at the time the actual damage results or is ascertained.'" Owen v. Mobley Constr. Co., 171 Ga. App. 462, 462, 320 S.E.2d 255, 256 (1984) (quoting Space Leasing Assocs. v. Atl. Bldg. Sys., 144 Ga. App. 320, 241 S.E.2d 438 (1977)) (internal citations omitted); accord Moore v. Dept. of Human Resources, 220 Ga. App. 471, 472, 469 S.E.2d 511, 512-13 (1996). "The discovery rule is not applicable to a cause of action based on breach of contract." Moore, 220 Ga. App. at 472, 469 S.E.2d at 512-13 (citing Owen, 171 Ga. App. at 462, 320 S.E.2d at 255).

The funeral arrangements contracts for the following decedents sent to Tri-State Crematory by Jennings were executed prior to February 26, 1996: (1) Norman D. New, who died on January 29, 1988; (2) and Joseph H. Joseph, who died on August 31, 1988.  Parnick Jennings executed contracts for the following decedents prior to February 26, 1996:  (1) Randy Heath, who died on April 15, 1988; (2) Arthur Fontaine, who died on September 8, 1990; (3) Hubert Owens, who died on July 2, 1991; (4) Elizabeth Crockford, who died

20

on August 29, 1991; (5) J.D. Gravely, who died on September 30, 1991; (6) Jeannette Grigsby, who died on June 9, 1992; (7) Ronald Gene Gabrilska, Sr., who died on June 13, 1992; (8) Dwane Fowler, who died on July 29, 1992; (9) Sherry Young, who died on July 30, 1992; (10) James Allen Stewart, who died on November 15, 1992; (11) Rebecca Gray, who died on November 18, 1992; (12) Allen M. Torling, who died on December 4, 1992; (13) David F. Kay, who died on December 30, 1992; (14) Marguerite Dejaer, who died on January 8, 1993; (15) Nancy Stone, who died on January 13, 1993; (16) John Laibach, who died on February 15, 1993; and (17) Walter Knox, who died on April 13, 1993.    Similarly, Kenemer executed contracts prior to February 26, 1996, for the following decedents: (1) George G. Grigsby, who died on September 13, 1988; (2) Emily Amanda Lamb, who died on December 23, 1988; (3) Thelma Lasater, who died on April 1, 1989; (4) James E. Morgan, Jr., who died on September 15, 1989; (5) Herdon Stacy Helms, who died on September 28, 1989; (6) Howard Gregory Parham, who died on February 6, 1990; (7) Lee Hicks, who died on February 21, 1990; (8) Lillian Mae Green, who died on July 7, 1990; (9) Anne Marcin, who died on July 13, 1990; (10) Winston Garrett Hullander, who died on September 11, 1990; (11) Oscar Carl Ekstedt, who died on September 30, 1990; (12) Walter Edward Hoffman, who died on October 10, 1990; (13) Arzelle Annie Gaddis Robb, who died on January 13, 1991; (14) Glenn Allen Privette, who died on March 16, 1991; (15) Richard A. Martin, Sr.,

AO 72A
(Rev.8/82)

who died on May 12, 1991; (16) Reathe A. Bennett, who died on May 12, 1991; (17) John Walter Hampton, who died on February 3, 1992; (18) Sally Dmohowski, who died on July 14, 1993; (19) Fredrick E. Hoak, who died on July 14, 1993; (20) Harry R. Moore, who died on September 20, 1993; (21) Dorothy M. Orofino, who died on November 16, 1993; (22) Peter C. Fancher, who died on December 15, 1993; (23) Thelma Guinade, who died on March 26, 1994; (24) Richard Wayne Tuck, who died on April 16, 1994; (25) Thomas Fred Smith, who died on July 19, 1994; (26) Lawrence Mark Sucher, who died on September 4, 1994; (27) Mary Louise Carr, who died on September 17, 1994; (28) Michael Reele Moore, who died on October 26, 1994; (29) Arthur B. Lewallen, Jr., who died on December 2, 1994; (30) Martha Sue Wade Pittman, who died on December 6, 1994; (31) Richard Leroy Truesdale, who died on December 22, 1994; and (32) Clayton Buttolph, who died on November 24, 1988. The funeral arrangements contracts for the decedents sent to Tri-State Crematory by Wallis-Stewart and J. Avery Bryan were executed in 1988.   Because Plaintiffs did not file this lawsuit until February 26, 2002, the six-year statute of limitations ordinarily would bar the breach of contract claims asserted by those decedents' Plaintiffs.

The Court finds that fraudulent concealment is not available to toll the statute of limitations with respect to the claims for breach of contract asserted by the Plaintiffs whose claims relate to contracts executed prior to February 26, 1996.   Under O.C.G.A.

22

§ 9-3-96, the statute of limitations applicable to a plaintiff's claim may be tolled if the plaintiff can show "'(1) actual fraud on the part of the defendant involving moral turpitude, (2) which conceals the existence of the cause of action from the plaintiff, and (3) plaintiff's reasonable diligence in discovering his cause of action, despite his failure to do so within the time of the applicable statute of limitations.'" Gripper v. STO Corp., 250 Ga. App. 820, 824, 552 S.E.2d 118, 123 (2001) (quoting McClung Surveying, Inc. v. Worl, 247 Ga. App. 322, 324, 541 S.E.2d 703 (2000)) (citations omitted). Plaintiffs have failed to adduce any evidence showing an actual fraud on the part of Defendants involving moral turpitude that concealed the existence of the breach of contract causes of action from Plaintiffs.

For those reasons, the Court concludes that the six-year statute of limitations bars the breach of contract claims asserted by Plaintiffs relating to the following decedents sent by Jennings to Tri-State Crematory: (1) Norman D. New, who died on January 29, 1988; (2) and Joseph H. Joseph, who died on August 31, 1988. The statute of limitations bars the breach of contract claims relating to the following decedents sent by Parnick Jennings to Tri-State Crematory: (1) Randy Heath, who died on April 15, 1988; (2) Arthur Fontaine, who died on September 8, 1990; (3) Hubert Owens, who died on July 2, 1991; (4) Elizabeth Crockford, who died on August 29, 1991; (5) J.D. Gravely, who died on September 30, 1991; (6)

23

Jeannette Grigsby, who died on June 9, 1992; (7) Ronald Gene Gabrilska, Sr., who died on June 13, 1992; (8) Dwane Fowler, who died on July 29, 1992; (9) Sherry Young, who died on July 30, 1992; (10) James Allen Stewart, who died on November 15, 1992; (11) Rebecca Gray, who died on November 18, 1992; (12) Allen M. Torling, who died on December 4, 1992; (13) David F. Kay, who died on December 30, 1992; (14) Marguerite Dejaer, who died on January 8, 1993; (15) Nancy Stone, who died on January 13, 1993; (16) John Laibach, who died on February 15, 1993; and (17) Walter Knox, who died on April 13, 1993. Similarly, the statute of limitations bars the breach of contract claims relating to the following decedents whom Kenemer sent to Tri-State Crematory: (1) George G. Grigsby, who died on September 13, 1988; (2) Emily Amanda Lamb, who died on December 23, 1988; (3) Thelma Lasater, who died on April 1, 1989; (4) James E. Morgan, Jr., who died on September 15, 1989; (5) Herdon Stacy Helms, who died on September 28, 1989; (6) Howard Gregory Parham, who died on February 6, 1990; (7) Lee Hicks, who died on February 21, 1990; (8) Lillian Mae Green, who died on July 7, 1990; (9) Anne Marcin, who died on July 13, 1990; (10) Winston Garrett Hullander, who died on September 11, 1990; (11) Oscar Carl Ekstedt, who died on September 30, 1990; (12) Walter Edward Hoffman, who died on October 10, 1990; (13) Arzelle Annie Gaddis Robb, who died on January 13, 1991; (14) Glenn Allen Privette, who died on March 16, 1991; (15) Richard A. Martin, Sr., who died on

24

May 12, 1991; (16) Reathe A. Bennett, who died on May 12, 1991; (17) John Walter Hampton, who died on February 3, 1992; (18) Sally Dmohowski, who died on July 14, 1993; (19) Fredrick E. Hoak, who died on July 14, 1993; (20) Harry R. Moore, who died on September 20, 1993; (21) Dorothy M. Orofino, who died on November 16, 1993; (22) Peter C. Fancher, who died on December 15, 1993; (23) Thelma Guinade, who died on March 26, 1994; (24) Richard Wayne Tuck, who died on April 16, 1994; (25) Thomas Fred Smith, who died on July 19, 1994; (26) Lawrence Mark Sucher, who died on September 4, 1994; (27) Mary Louise Carr, who died on September 17, 1994; (28) Michael Reele Moore, who died on October 26, 1994; (29) Arthur B. Lewallen, Jr., who died on December 2, 1994; (30) Martha Sue Wade Pittman, who died on December 6, 1994; (31) Richard Leroy Truesdale, who died on December 22, 1994; and (32) Clayton Buttolph, who died on November 24, 1988. The funeral arrangements contracts for the decedents sent to Tri-State Crematory by Wallis-Stewart and J. Avery Bryan were executed in 1988, and the statute of limitations consequently bars the breach of contract claims asserted by Plaintiffs pertaining to those decedents. The Court therefore grants the Motion for Summary Judgment filed by Defendants SCI Georgia Funeral Homes with respect to the claims corresponding to those decedents.

AO 72A
(Rev.8/82)

**B.    Whether Plaintiffs Who Are Uncertain About Whether their Decedents Were Properly Cremated May Assert Breach of Contract Claims**

Next, Defendants SCI Georgia Funeral Homes argue that Plaintiffs who are uncertain about whether Tri-State Crematory properly cremated their decedents and returned the decedents' remains cannot assert breach of contract claims.  The evidence in the record, however, viewed in the light most favorable to Plaintiffs, indicates that a genuine dispute exists concerning whether cremations were performed properly and whether cremated remains were properly identified and returned.  The Court therefore cannot grant Defendants SCI Georgia Funeral Homes' Motion for Summary Judgment based on this argument.

**C.    Whether the Four-Year Statute of Limitations Bars the Claims for Negligence, Negligent Interference with Remains and Mishandling of a Corpse, and Willful Interference with Remains and Intentional Mishandling of a Corpse Asserted by Plaintiffs**

Defendants SCI Georgia Funeral Homes contend that a four-year statute of limitations applies to the claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse asserted by Plaintiffs corresponding to all of the decedents sent by Defendants SCI Georgia Funeral Homes to Tri-State Crematory.  According to Defendants SCI Georgia Funeral Homes, the next of kin of a deceased have a quasi-property right in the body of a deceased, and a four-year statute of limitations applies to

26

claims relating to that right.   Defendants SCI Georgia Funeral Homes contend that claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse accrue when a cremation is not performed properly.

The Court disagrees with the position taken by Defendants SCI Georgia Funeral Homes.   Plaintiffs' claims for negligence, negligent interference with remains and mishandling of a corpse, and willful interference with remains and intentional mishandling of a corpse are tort claims.   Under Georgia law, a tort cause of action does not accrue until the plaintiff sustains damage.   Mears v. Gulfstream Aerospace Corp., 225 Ga. App. 636, 638, 484 S.E.2d 659, 663 (1997).   In this case, Plaintiffs did not sustain damage until February 2002, when officials discovered uncremated bodies on the Tri-State Crematory property.   The Court therefore cannot grant summary judgment to Defendants SCI Georgia Funeral Homes based on their argument that the statute of limitations bars the claims for negligence, negligent interference with remains and mishandling of a corpse, and intentional interference with remains and mishandling of a corpse asserted by Plaintiffs.

### D. Whether Defendants SCI Georgia Funeral Homes Avoid Liability Because Tri-State Crematory's Actions Were Unforeseeable

Defendants SCI Georgia Funeral Homes next argue that they cannot be held liable for the allegedly negligent conduct of Tri-

27

State Crematory and the Marsh Defendants, because that conduct was not foreseeable.  A plaintiff asserting a negligence claim under Georgia law must show: "'(1) a legal duty to conform to a standard of conduct raised by law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) loss or damage . . . from the breach.'" Davis v. Blockbuster, Inc., 258 Ga. App. 677, 678, 575 S.E.2d 1, 2 (2002) (quoting Shortnacy v. N. Atlanta Internal Med., P.C., 252 Ga. App. 321, 325, 556 S.E.2d 209 (2001)) (omission in original). Under Georgia law:

> Negligence consists of exposing someone to whom a duty of care is owed to a foreseeable, unreasonable, probability of harm.  Foresight requires the ability to anticipate a risk of harm from the conduct in some form.  Thus, the legal duty to exercise ordinary care arises from the foreseeable, unreasonable risk of harm from such conduct. Negligence is predicated on what should be anticipated, rather than on what happened, because one is not bound to anticipate or to foresee and provide against what is unlikely, remote, slightly probable, or slightly possible.

Amos v. City of Butler, 242 Ga. App. 505, 506, 529 S.E.2d 420, 422 (2000) (citations omitted).  "Generally, an intervening criminal act of a third party, without which the injury would not have occurred, will also be treated as the proximate cause of the injury thus breaking the causal connection between the defendants' negligence and the injury unless the criminal act was a reasonably foreseeable consequence of the defendants' conduct."  Wright v.

28

Ashe, 220 Ga. App. 91, 94, 469 S.E.2d 268 (1996).  Negligence and proximate cause ordinarily are questions for the jury to resolve. Jacobs v. Taylor, 190 Ga. App. 520, 525, 379 S.E.2d 563, 567 (1989).

Defendants SCI Georgia Funeral Homes contend that the conduct of the Marsh Defendants and Tri-State Crematory was an intervening cause of the damage suffered by Plaintiffs, and that such conduct was not foreseeable.  The Court finds that this issue presents a question for the jury.  The Court therefore denies Defendants SCI Georgia Funeral Homes' Motion for Summary Judgment based on this argument.

### E.   **Whether Defendants SCI Georgia Funeral Homes Were Negligent**

Defendants SCI Georgia Funeral Homes contend that they were not negligent in selecting Tri-State Crematory to perform cremations.  The Court finds that a jury question exists concerning whether Defendants SCI Georgia Funeral Homes were negligent, and that summary judgment is not available to Defendants SCI Georgia Funeral Homes based on this argument.

### F.   **Whether Plaintiffs Have Incurred Cognizable Damages for their Claims of Negligence and Negligent Interference With Remains and Mishandling of a Corpse**

Defendants SCI Georgia Funeral Homes next argue that the claims for negligence and negligent interference with remains and mishandling of a corpse asserted by Plaintiffs fail because Plaintiffs have not suffered cognizable damages in connection with

AO 72A
(Rev.8/82)

those claims.  Defendants SCI Georgia Funeral Homes contend that: (1) Plaintiffs seek to recover for damages associated with negligent infliction of emotional distress, yet Plaintiffs have not suffered a physical impact; and (2) Plaintiffs cannot recover for damages resulting from their uncertainty and fear concerning the disposition of their decedents' bodies.

### 1.   Negligent Infliction of Emotional Distress

Under Georgia law, a plaintiff may recover emotional distress damages if the emotional distress claim arises from intentional misconduct of the defendant or from the defendant's reckless indifference to consequences that was equivalent to intent. David C. Joel, Attorney at Law, P.C. v. Chastain, 254 Ga. App. 592, 596-97, 562 S.E.2d 746, 750 (2002).  A plaintiff may recover emotional distress damages in a claim involving negligent conduct if the plaintiff shows: "(1) physical impact to the plaintiff; (2) the impact causes physical injury to the plaintiff; and (3) the physical injury causes the plaintiff's mental suffering or emotional distress." Holbrook v. Stansell, 254 Ga. App. 553, 554, 562 S.E.2d 731, 733 (2002).  Alternatively, the plaintiff seeking emotional distress damages in connection with negligent conduct may show that she suffered property damage that resulted in a pecuniary loss to her. Shores v. Modern Transp. Servs., Inc., 262 Ga. App. 293, 295, 585 S.E.2d 664, 665 (2003).

The Court finds that Plaintiffs may not recover emotional

30

distress damages based on the allegedly negligent conduct of Defendants SCI Georgia Funeral Homes.  Plaintiffs have failed to present evidence showing that they suffered a physical impact causing physical injury to them that resulted in mental suffering or emotional distress.  Plaintiffs also have not demonstrated that they suffered property damage resulting in pecuniary loss.  Under those circumstances, Plaintiffs simply cannot recover emotional distress damages based on alleged negligent conduct by Defendants SCI Georgia Funeral Homes.  Hang v. Wages & Sons Funeral Home, Inc., 262 Ga. App. 177, 179-182, 585 S.E.2d 118, 120-22 (2003) (granting summary judgment on claim for emotional distress damages arising from alleged negligent cremation of decedent; plaintiffs had not sustained physical injury or pecuniary loss, and had not proven that defendant funeral home's conduct was malicious, willful, or wanton).

### 2.   Fear and Uncertainty

Defendants SCI Georgia Funeral Homes also argue that Plaintiffs cannot recover damages based on their fear and uncertainty concerning the ultimate disposition of their decedents' remains.  Plaintiffs have presented evidence indicating that: (1) a number of bodies discovered at the Tri-State Crematory property remain unidentified; and (2) a number of remains received by other families were the incorrect remains or do not appear to be the correct remains.

31

To recover damages, "there must be some reasonable connection between the act or omission of a defendant and the damages which a plaintiff has suffered." Russaw v. Martin, 221 Ga. App. 683, 686, 472 S.E.2d 508, 511 (1996). "Without factual evidence of a causal connection between the alleged breach of duty and the purported damages, the damages must be considered whimsical, fanciful and above all too speculative to form the basis of recovery." 221 Ga. App. at 686, 472 S.E.2d at 511.

In Russaw, a plaintiff who suffered a "needle stick" sought to recover for damages relating to her fear that she may have contracted HIV or hepatitis from the "needle stick." 221 Ga. App. at 684, 472 S.E.2d at 510. The plaintiff, however, failed to produce evidence indicating that: (1) the needle was contaminated with HIV or hepatitis; (2) the plaintiff or her husband had tested positive for HIV or hepatitis; or (3) the elderly patient on whom the needle previously had been used had tested positive for HIV or hepatitis. 221 Ga. App. at 686, 472 S.E.2d at 511-12. The Georgia Court of Appeals noted, "To allow recovery for emotional injuries and mental anguish, without any proof whatsoever that [the plaintiff] was actually exposed to HIV or hepatitis is per se unreasonable." 221 Ga. App. at 686, 472 S.E.2d at 512. The court therefore refused to allow the plaintiffs to recover for their fear and mental anguish. 221 Ga. App. at 686, 472 S.E.2d at 512.

Similarly, in Johnson v. American National Red Cross, 276 Ga.

32

270, 578 S.E.2d 106 (2003), the Georgia Supreme Court refused to allow a plaintiff to recover for damages for fear and anguish resulting from the plaintiff's concern that she might have contracted a rare strain of HIV from a blood transfusion. 276 Ga. at 275, 578 S.E.2d at 110. The court observed that the plaintiff had not produced evidence indicating: (1) that the blood donor was infected with any form of HIV or that the donor had experienced any experiences of HIV; or (2) that the plaintiff had tested positive for HIV or that the plaintiff had experienced any symptoms consistent with HIV exposure or infection. 276 Ga. at 275, 578 S.E.2d at 110. Under those circumstances, the Georgia Supreme Court concluded that the plaintiff's fears were not reasonable, and that the plaintiff consequently could not recover damages related to those fears.

In this case, Plaintiffs have presented evidence indicating that the remains of their loved ones have been tested and that the remains are presumably human remains, but that the remains cannot be identified. Plaintiffs also have adduced evidence showing that many of the bodies discovered on the Tri-State Crematory property cannot be identified, and that several of the remains received by other families were improperly identified or contained foreign matter. Under these circumstances, Plaintiffs have shown that a reasonable possibility exists that they may not have received the remains of their respective decedents. The Court therefore finds

33

that the fear and uncertainty experienced by Plaintiffs are not unreasonable.

### 3.   Summary

In sum, the Court finds that Plaintiffs may not recover damages for emotional distress caused by the alleged negligence of Defendants SCI Georgia Funeral Homes.  The Court, however, finds that a genuine dispute exists whether the fear and uncertainty experienced by Plaintiffs were reasonable.  In any event, the Court observes that even if Plaintiffs cannot recover damages for fear and uncertainty or other emotional distress damages related to their claims for negligence and negligent interference with remains and mishandling of a corpse, Plaintiffs still may recover nominal damages for those claims.  The Court therefore cannot grant summary judgment to Defendants SCI Georgia Funeral Homes based on their contention that Plaintiffs cannot prove damages for their negligence and negligent infliction of interference with remains and mishandling of a corpse claims.

### G.   Whether Defendants SCI Georgia Funeral Homes May Be Held Liable for the Actions of Tri-State Crematory

Defendants SCI Georgia Funeral Homes also contend that they may not be held liable for any of the actions of Tri-State Crematory.  According to Defendants SCI Georgia Funeral Homes, Tri-State Crematory was not an agent of Defendants SCI Georgia Funeral Homes, but rather was an independent contractor.

O.C.G.A. § 10-6-1 provides: "The relationship of principal and

34

agent arises whenever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another on his behalf." O.C.G.A. § 10-6-1. "'Agency is the relationship which results by the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.'" Johnston v. Warendh, 252 Ga. App. 674, 679, 556 S.E.2d 867, 872 (2001) (quoting Smith v. Merck, 206 Ga. 361, 368, 57 S.E.2d 326 (1950)). "An agency relationship 'may refer, and perhaps most often does, to that relation created by express or implied contract or by law, where one person delegates the transaction of some lawful business with more or less discretionary power to another, who undertakes to manage the affair and render to him an account thereof.'" 252 Ga. App. at 679, 556 S.E.2d at 872 (quoting Smith, 206 Ga. at 368, 57 S.E.2d 326). A plaintiff may prove the existence of an agency relationship "through circumstances, apparent relations, and the conduct of the parties." 252 Ga. App. 674, 679, 556 S.E.2d 867, 872. Whether an agency relationship exists is a factual question. S. Exposition Mgmt. Co. v. Genmar Indus., Inc., 250 Ga. App. 702, 704, 551 S.E.2d 830, 832 (2001).

To determine whether Tri-State Crematory was the agent or independent contractor of Defendants SCI Georgia Funeral Homes, the Court must examine whether Defendants SCI Georgia Funeral Homes assumed the right to control the time, manner, and method in which

35

Tri-State Crematory performed its work.   <u>Williamson v. Coastal</u> <u>Physicians Servs. of Southeast, Inc.</u>, 251 Ga. App. 667, 668, 554 S.E.2d 739, 741 (2001). Here, the evidence in the record indicates that Defendants SCI Georgia Funeral Homes: (1) did not control the time for performing crematory services; (2) did not direct Tri-State Crematory to perform crematory services in a certain manner or to use certain equipment to perform crematory services; and (3) did not control the method in which Tri-State Crematory performed crematory services. Under those circumstances, Tri-State Crematory was an independent contractor, and was not an agent of Defendants SCI Georgia Funeral Homes.

A defendant generally has no responsibility for torts committed by an independent contractor.   O.C.G.A. § 51-2-4; <u>Nulite</u> <u>Indus. Co. v. Horne</u>, 252 Ga. App. 378, 379, 556 S.E.2d 255, 257 (2001); O.C.G.A. § 51-2-4. Under Georgia law, however, a defendant may be liable for the negligence of a contractor under circumstances, including: "(1) [w]hen the work is wrongful in itself or, if done in the ordinary manner, would result in a nuisance; (2) [i]f, according to the [defendant]'s previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed; (3) [i]f the wrongful act is the violation of a duty imposed by express contract upon the [defendant]; (4) [i]f the wrongful act is the violation of a duty imposed by statute; (5) [i]f the [defendant] retains the

right to direct or control the time and manner of executing the work or interferes and assumes control so as to create the relation of master and servant or so that an injury results which is traceable to his interference; or (6) [i]f the [defendant] ratifies the unauthorized wrong of the independent contractor." O.C.G.A. § 51-2-5.

Here, the contracts for funeral services executed by Defendants SCI Georgia Funeral Homes, by their nature, imposed a duty on Defendants SCI Georgia Funeral Homes to ensure that funeral arrangements, including cremation services, were performed properly. Defendants SCI Georgia Funeral Homes could not escape liability for inadequate performance of that duty by assigning the task of performing cremation services to an independent contractor. Nulite Indus. Co., 252 Ga. App. at 379, 556 S.E.2d at 257; Sacker v. Perry Realty Servs., Inc., 217 Ga. App. 300, 302, 457 S.E.2d 208, 211 (1995); Crispens Enters., Inc. v. Halstead, 209 Ga. App. 133, 134-35, 433 S.E.2d 353, 355 (1993).

The evidence in the record, viewed in the light most favorable to Plaintiffs, indicates that Tri-State Crematory failed to perform cremation services properly. Given this evidence, a genuine issue exists concerning whether Defendants SCI Georgia Funeral Homes are responsible for the alleged negligence of Tri-State Crematory. Nulite Indus. Co., 252 Ga. App. at 379, 556 S.E.2d at 257. Defendants SCI Georgia Funeral Homes therefore are not entitled to

37

summary judgment based on their argument that they have no liability for the actions of Tri-State Crematory.

Alternatively, a defendant also may be held liable for the acts of an independent contractor who is performing the defendant's non-delegable statutory duty. <u>Kroger Co. v. Strickland</u>, 248 Ga. App. 613, 614-15, 548 S.E.2d 375, 377-78 (2001). The Georgia legislature has enacted a comprehensive statutory scheme that imposes duties on funeral homes and funeral directors. O.C.G.A. §§ 43-18-1 through 43-18-79. One of those duties includes an obligation to ensure that bodies are labeled and tagged properly. O.C.G.A. § 43-18-8. Defendants SCI Georgia Funeral Homes could not avoid their statutory duties simply by contracting with Tri-State Crematory to perform the cremation services or by having Plaintiffs sign authorizations permitting Tri-State Crematory to perform cremation services.

The evidence in this case, viewed in the light most favorable to Plaintiffs, indicates that bodies and remains were not labeled and tagged properly at the Tri-State Crematory. Under those circumstances, a genuine dispute exists concerning whether Defendants SCI Georgia Funeral Homes may have liability for the wrongful acts of Tri-State Crematory.

The Court, however, rejects Plaintiffs' argument that cremation is an unreasonably dangerous activity. A defendant may have liability for the actions of an independent contractor when

38

the independent contractor is performing work that, because of its nature, is dangerous to others no matter how it is performed. O.C.G.A. § 51-2-5(2).   The question whether an activity is an ultrahazardous or abnormally dangerous activity is a question of law.  O'Neal v. Int'l Paper Co., 715 F.2d 199, 201 (5th Cir. 1983); Edwards v. Post Transp. Co., 279 Cal. Rptr. 231, 232 (Cal. Ct. App. 1991).   An activity is ultrahazardous or abnormally dangerous if the activity "cannot be performed safely even in the absence of all negligence and with the exercise of all reasonable care."  Clark v. Container Corp. of Am., Inc., 936 F.2d 1220, 1225 (11th Cir. 1991) (applying Alabama law); O'Neal, 715 F.2d at 202 ("Central to the concept of ultrahazardous activity, . . . is that there be a risk of harm that cannot be eliminated through the exercise of due care.").   The evidence in the record, however, demonstrates that cremation is not dangerous to others if proper precautions are taken.  The Court therefore will not impose liability on Defendants based on Plaintiffs' argument that cremation is an abnormally dangerous activity.

**H.    Whether a Genuine Dispute Exists With Respect to the Claim for Willful Interference With Remains and Mishandling of a Corpse Asserted by Plaintiffs**

Defendants SCI Georgia Funeral Homes also argue that no genuine dispute exists with respect to the claims for willful interference with remains and mishandling of a corpse asserted by Plaintiffs.  According to Defendants SCI Georgia Funeral Homes, no

39

evidence indicates that Defendants SCI Georgia Funeral Homes' own employees intentionally mishandled the corpses of the decedents of Plaintiffs.

Plaintiffs argue that Defendants SCI Georgia Funeral Homes may be held vicariously liable for Tri-State Crematory's alleged intentional interference with human remains and mishandling of corpses because Defendants SCI Georgia Funeral Homes had notice of those activities. Defendants SCI Georgia Funeral Homes have adduced evidence indicating that they had no reason to suspect that the Marsh Defendants and Tri-State Crematory were engaged in actions such as mishandling a corpse or intentionally interfering with the right of burial. Plaintiffs, however, have presented sufficient evidence to create a genuine dispute concerning whether Defendants SCI Georgia Funeral Homes should have responsibility for the actions of Tri-State Crematory in intentionally mishandling corpses and interfering with the right of burial. See supra Part III.G.[1] The Court therefore denies Defendants SCI Georgia Funeral

---

[1]

Defendants SCI Georgia Funeral Homes argue that O.C.G.A. § 51-2-5 does not impose liability on them for Tri-State Crematory's intentional interference with remains and mishandling of a corpse because that statute applies only to negligence of an independent contractor, and Tri-State Crematory's conduct was intentional. For two reasons, the Court rejects this argument. First, the Court concludes that O.C.G.A. § 51-2-5 only sets forth a minimum standard for imposing liability for actions of an independent contractor. Second, the Court's decision imposing liability on Defendants SCI Georgia Funeral Homes also is based on the duties that Defendants SCI Georgia Funeral Homes owed under their

Homes' Motion for Summary Judgment with respect to the claims for intentional interference with remains and intentional mishandling of a corpse asserted by Plaintiffs.

## IV.  Conclusion

ACCORDINGLY, the Court **GRANTS IN PART AND DENIES IN PART** the Motion for Summary Judgment filed by Defendants SCI Georgia Funeral Services, Inc., d/b/a Jennings Funeral Home a/k/a Jennings Heritage Chapel Funeral Home, and Parnick Jennings Funeral Home, and f/d/b/a Kenemer Brothers Funeral Home, J. Avery Bryan Funeral of Chickamauga, and Wallis-Stewart [600]. The Court **GRANTS** the Motion for Summary Judgment with respect to the following claims: (1) the breach of contract claims asserted by Plaintiffs relating to the following decedents sent by Jennings to Tri-State Crematory: (a) Norman D. New, who died on January 29, 1988; and (b) Joseph H. Joseph, who died on August 31, 1988; (2) the breach of contract claims relating to the following decedents sent by Parnick Jennings to Tri-State Crematory: (a) Randy Heath, who died on April 15, 1988; (b) Arthur Fontaine, who died on September 8, 1990; (c) Hubert Owens, who died on July 2, 1991; (d) Elizabeth Crockford, who died on August 29, 1991; (e) J.D. Gravely, who died on September 30, 1991; (f) Jeannette Grigsby, who died on June 9,

---

agreements with Plaintiffs and their relationships with Plaintiffs to dispose of Plaintiffs' decedents properly.

41

1992; (g) Ronald Gene Gabrilska, Sr., who died on June 13, 1992;
(h) Dwane Fowler, who died on July 29, 1992; (i) Sherry Young, who
died on July 30, 1992; (j) James Allen Stewart, who died on
November 15, 1992; (k) Rebecca Gray, who died on November 18, 1992;
(l) Allen M. Torling, who died on December 4, 1992; (m) David F.
Kay, who died on December 30, 1992; (n) Marguerite Dejaer, who died
on January 8, 1993; (o) Nancy Stone, who died on January 13, 1993;
(p) John Laibach, who died on February 15, 1993; and (q) Walter
Knox, who died on April 13, 1993; (3) the breach of contract claims
relating to the following decedents whom Kenemer sent to Tri-State
Crematory: (a) George G. Grigsby, who died on September 13, 1988;
(b) Emily Amanda Lamb, who died on December 23, 1988; (c) Thelma
Lasater, who died on April 1, 1989; (d) James E. Morgan, Jr., who
died on September 15, 1989; (e) Herdon Stacy Helms, who died on
September 28, 1989; (f) Howard Gregory Parham, who died on February
6, 1990; (g) Lee Hicks, who died on February 21, 1990; (h) Lillian
Mae Green, who died on July 7, 1990; (i) Anne Marcin, who died on
July 13, 1990; (j) Winston Garrett Hullander, who died on September
11, 1990; (k) Oscar Carl Ekstedt, who died on September 30, 1990;
(l) Walter Edward Hoffman, who died on October 10, 1990; (m)
Arzelle Annie Gaddis Robb, who died on January 13, 1991; (n) Glenn
Allen Privette, who died on March 16, 1991; (o) Richard A. Martin,
Sr., who died on May 12, 1991; (p) Reathe A. Bennett, who died on
May 12, 1991; (q) John Walter Hampton, who died on February 3,

42

AO 72A
(Rev.8/82)

1992; (r) Sally Dmohowski, who died on July 14, 1993; (s) Fredrick E. Hoak, who died on July 14, 1993; (t) Harry R. Moore, who died on September 20, 1993; (u) Dorothy M. Orofino, who died on November 16, 1993; (v) Peter C. Fancher, who died on December 15, 1993; (w) Thelma Guinade, who died on March 26, 1994; (x) Richard Wayne Tuck, who died on April 16, 1994; (y) Thomas Fred Smith, who died on July 19, 1994; (z) Lawrence Mark Sucher, who died on September 4, 1994; (aa) Mary Louise Carr, who died on September 17, 1994; (bb) Michael Reele Moore, who died on October 26, 1994; (cc) Arthur B. Lewallen, Jr., who died on December 2, 1994; (dd) Martha Sue Wade Pittman, who died on December 6, 1994; (ee) Richard Leroy Truesdale, who died on December 22, 1994; and (ff) Clayton Buttolph, who died on November 24, 1988; (4) the breach of contract claims relating to the decedent sent to Tri-State Crematory by Wallis-Stewart in 1988; and (5) the breach of contract claims relating to the decedent sent to Tri-State Crematory by J. Avery Bryan in 1988.

IT IS SO ORDERED, this the 19th day of December, 2003.

UNITED STATES DISTRICT JUDGE

43