FILED IN OPEN COURT
FEB - 5 2004
Luther D. Thomas, Clerk

By: _Sara M Johnste_
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE
CREMATORY LITIGATION

MDL DOCKET NO. 1467

## MOTION FOR FINAL SETTLEMENT APPROVAL

Come Now the Love Funeral Home, Inc. Settlement Subclass members

("class members") and herewith Move this honorable court pursuant to Fed. R.

Civ. P. 23(e,) for final approval of the settlements between the class members and

Love Funeral Home, Inc. ("LFH") all as set forth in the accompanying

Memorandum in Support of Motion for Final Settlement Approval.

Dated this _9th_ day of February, 2004.

_[signature]_

McCAMY, PHILLIPS, TUGGLE &
FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia 30722
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

*Plaintiffs'/Respondents' Liaison
Counsel*

LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs'/Respondents' Lead Counsel*

Kathryn E. Barnett
Elizabeth A. Alexander
3319 West End Avenue, Suite 600

291656.1

944

Nashville, Tennessee  37203
Telephone:  (615) 313-9000
Facsimile:  (615) 313-9965q

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi  39095
Telephone:  (662) 834-2376
Facsimile:  (662) 834-2628

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Leslie Bryan
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia  30309
Telephone:  (404) 881-8900
Facsimile:  (404) 881-3007

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee  37203
Telephone:  (615) 386-8391
Facsimile:  (615) 386-8392

SIMS, GRADDICK & DODSON, PC
Charles Graddick
Todd Strohmeyer
205 St. Emanuel Street
Mobile, Alabama  36602

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee  37402
Telephone:  (423) 265-2214
Facsimile:  (423) 266-1842

MABRY & McCLELLAND, LLP
Robert M. Darroch
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia  30345

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee  37402
Telephone:  (423) 756-3591
Facsimile:  (423) 266-5455

DAVID RANDOLPH SMITH &
ASSOCIATES
David Randolph Smith

COPPEDGE & LEMAN, PC
Joe Leman
508 South Thornton Avenue

291656.1

-2-

Hillsboro Village, 1910 Acklen Avenue      Dalton, Georgia  30720
Nashville, Tennessee  37212                Telephone:  (706) 226-0040
Telephone:  (615) 742-1775                 Facsimile:  (706) 226-0040
Facsimile:  (615) 742-1223

*Plaintiffs' Steering Committee*

## PROOF OF SERVICE BY MAIL

I hereby certify that a copy of the foregoing was served by postage prepaid United States mail on the _5th_ of _Feb_____ , 2004 addressed to those listed below:


_(signature)_
_____
Robert H. Smalley, III


J. Anderson Davis, Esq.
Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP
PO Box 5513
Rome, GA  30162

*Funeral Home Defendants
Lead/Liaison Counsel*

Frank E. Jenkins, III
Jenkins & Olson, PC
15 South Public Square
Cartersville, GA 30120

McCracken K. Poston, Jr., Esq.
Attorney at Law
62 Nance Lane
PO Box 1130
Ringgold, GA  30736

John M. Hawkins
Weinberg, Wheeler, Hudgins, Gunn
& Dial, LLC
Suite 3000
950 East Paces Ferry Road
Atlanta, GA. 30336

*Counsel for the Love Funeral Home,
Inc. Defendant*

FILED IN [ ... ] RT
FEB - 5 2004
Luther [ ... ] Clerk

By: [signature]
Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE
CREMATORY LITIGATION

MDL DOCKET NO. 1467

## MEMORANDUM IN SUPPORT OF SETTLEMENT SUBCLASS MEMBERS' MOTION FOR FINAL SETTLEMENT APPROVAL

## I.     INTRODUCTION

The Love Funeral Home, Inc. Settlement Subclass members ("class members") respectfully submit this memorandum pursuant to Fed. R. Civ. P. 23(e,) in support of their motion for final approval of the settlements between the class members and Love Funeral Home, Inc. (hereinafter "LFH"). As set forth below, this settlement is fair, reasonable, and adequate; was reached between experienced counsel at arms' length and without collusion; and is in the best interest of the class members.

### A.     Factual and Procedural Background

In February of 2002, the remains of at least 339 bodies that were to have been cremated were found on the property of Tri-State Crematory in Walker County, Georgia. Class members thereafter filed this action against Tri-State Crematory, the owners and operators of the crematory, T. Ray Marsh, Brent Marsh and Clara Marsh, and approximately fifty funeral homes that contracted with Tri-

944

State for cremations.  The class members allege that the Funeral Home Defendants

"failed to ensure that cremations performed by Tri-State pursuant to contracts with

the Funeral Home Defendants were carried out in accordance with human dignity,

and all applicable laws and regulations." (Master First Amended Class Action

Complaint, ¶ 3.)  The class members have produced evidence that the Funeral

Home Defendants' conduct failed to meet the standard of care for funeral service

providers.

On March 17, 2003, the Court certified a class consisting of:

> All those who are or were next of kin of any decedents
> delivered for cremation to Defendant Tri-State
> Crematory from the years 1988 to 2002; all persons or
> entities who were parties to any contract with any
> Defendant regarding funeral arrangements for a decedent
> who was delivered for cremation to Defendant Tri-State
> Crematory from 1988 to 2002 whose claim is not barred
> by the applicable statute of limitations; and a subclass
> defined as the next of kin of decedents whose uncremated
> or otherwise desecrated remains have been recovered
> from the property of Defendant Tri-State Crematory or
> the property surrounding Defendant Tri-State.

(Class Certification Order at 106.)  The Court has certified four claims for this

class action: (1) breach of contract; (2) negligence; (3) negligent interference with

remains and mishandling of a corpse; and (4) willful interference with remains and

intentional mishandling of a corpse.  Id. at 104.

On or about November 24, 2003, during the course of discovery, but

before the court issued its orders upon defendants' dispositive motions, a

settlement was reached on behalf of class members with LFH after extensive negotiations.

On December 4, 2003, in accordance with Fed. R. Civ. P. 23(e)(2),[1] this Settlement Agreement was submitted to the Court for preliminary approval. By Order entered December 4, 2003, the Court granted preliminary approval of the settlement. The Court also certified a settlement subclass, the LFH subclass. This subclass consists of those who were the next-of-kin of any decedents delivered to Tri-State Crematory from January 1, 1988 to February 15, 2002, by LFH, and all persons who were parties to any contract with LFH regarding funeral arrangements for a decedent who was delivered for cremation to Tri-State Crematory from January 1, 1988 to February 15, 2002. Order at 3-4. The Court also appointed a Notice Administrator and approved the Notice Plan for notification of the settlement subclass members. Order at 2 .

B.   **The Proposed Settlement**

The LFH settlement preliminarily approved by the Court provides that eligible claimants will be entitled to the following payment from LFH:

> (1)   For each decedent delivered to LFH and sent to Tri-State Crematory for cremation from January 1, 1988 through March 31, 1997, the next of kin shall be entitled

---

[1] Proposed amendments to Fed. R. Civ. P. 23, including additions to Rule 23(e,) became effective on December 1, 2003. The text of new Fed. R. Civ. P. 23(e) incorporating these proposed additional provisions is attached hereto as Exhibit A, for convenience.

to a minimum sum of $2,350.00. This figure is based upon a sum of $3,731.34 minus Class Fees and Costs, as approved by the Court, as described in Section IX of [the Settlement Agreement]. If Settlement Subclass Members claim Awards for fewer than the sixty-seven (67) decedents whose claims fall under this subsection, the unclaimed Awards shall be divided equally among the Settlement Subclass Members who are the next of kin of the decedents described under this subsection.

(2) If for any decedent the contract signatory is a different person or persons than the next of kin, the contract signatory shall be entitled to recover the amount paid under the terms of the contract with LFH out of the award described in paragraphs 1 - 3 above. The remainder of the Award described above shall be paid to the next of kin.

(3) In the event there is more than one next of kin of equal relationship, the Award shall be divided equally among each next of kin in the same degree of kindred to the decedent.

LFH Settlement Agreement, 13-14[2].

In return for payment as set forth above, all claims against LFH will be dismissed from this action and the Related Class Actions.

Approval of a class action settlement under Rule 23(e) typically involves a three-step process. Two of the three steps are complete here. In the

---

[2] The parties note that one (1) particular decedent claim, known as "Jaconetti" is part of the settlement with LFH. LFH is paying a total of $300,000.00 in settlement of the sixty-seven (67) decedent claims from January 1, 1988 to March 31, 1997 and in settlement of the one (1) Jaconetti claim from 1994. The Jaconetti claim is allocated $50,000.00 out of the $300,000.00 in recognition of the confirmed adulteration of the cremated remains returned to Mrs. Jaconetti. The remaining $250,000.00 is to be allocated among the remaining sixty-seven (67) decedent claims, none of which has such affirmative proof of adulteration.

first step, the Court granted preliminary approval of the settlements.  The Court's

preliminary evaluation of the settlements determined that they were within the

"range of reasonableness," and that a class-wide notice plan, and a formal fairness

hearing, were worthwhile.  See 4 Newberg on Class Actions § 11.26 (4th ed.

2002;) Manual for Complex Litigation, Third ["MCL 3d"] § 30.41 (Federal

Judicial Center 1995.)

      The second step was dissemination of Class Notice.  In accordance

with the Court's Order preliminarily approving settlement, the parties have worked

with the Notice Administrator to implement the Court-approved Notice Plan, and

have employed the best practicable means to disseminate to all class members

notice of the essential terms of settlements, and of the date and time of the final

settlement approval hearing.

      The third and last step is the final approval hearing.  At the hearing,

class members have an opportunity to comment on the settlements, and class

counsel may make such presentation as the Court directs regarding the

Settlements' fairness, adequacy, and reasonableness.  See MCL 3d § 30.41.  In this

case, the Court-approved Notice of Class Action and Proposed Partial Class Action

Settlement for the LFH Settlement apprised settlement class members of the Final

Approval Hearing date, time, and place, and specified a class member comment

postmark deadline of January 16, 2004.  As of this writing, the undersigned are

aware of no comments from any settlement class members in opposition to any aspect of the proposed Settlements. Accordingly, Plaintiffs and LFH respectfully request that this Court consider, and grant, final approval to the proposed LFH Settlement under Fed. R. Civ. P. 23(e) at the February 5, 2004 Final Approval Hearing.

**II.   STANDARD OF REVIEW**

In approving a settlement, the court must determine that "the settlement is fair, adequate, and reasonable and that there has been no fraud or collusion between the parties in reaching the settlement." Meyer v. Citizens and Southern Nat'l Bank, 677 F.Supp. 1196, 1200 (M.D. Ga. 1988) (citing Bennett v. Behring Corp., 737 F.2d 982 (11th Cir. 1984.)) The determination of fairness is made on a case-by-case basis. Id. There is a strong judicial policy and a public interest favoring settlement. Id. at 1201. Class counsel respectfully submit that the proposed settlements merit final approval under the criteria widely utilized by the federal courts, recommended by the MCL 3d at §§ 30.41-30.42, and now embodied in the proposed amendments to Fed. R. Civ. P. 23(e).

**III.   ANALYSIS**

**A.   The Settlement is Fair, Adequate and Reasonable.**

Federal courts in this Circuit and elsewhere consider the following factors in determining whether a settlement is fair, adequate and reasonable:

(1) the likelihood of success at trial and the range of possible recoveries;

(2) the terms of the settlement;

(3) the complexity, expense and duration of litigation;

(4) the procedures afforded to notify the class members of the proposed settlement and to allow them to present their views;

(5) the judgment of experienced counsel;

(6) the substance and amount of opposition to the settlement;

(7) the stage of the proceeding at which the settlement was achieved.

Mayer, 677 F.Supp. at 1201 (citations omitted).  As set forth below, each of these factors favors the final approval of the proposed LFH settlement.

1.    **The likelihood of success and the range of possible recoveries favors approval of the settlement.**

In assessing the likelihood of success at trial, the court may not "try the merits of the case in the settlement hearing." Meyer, 677 F.Supp. at 1201.  Nor is the court "required to establish the plaintiff's likelihood of prevailing to a certainty." Id.  The court should keep in mind that "the trial process is always fraught with uncertainty." In re: Motorsports Merchandise Antitrust Litigation, 112 F.Supp. 2d 1329, 1334 (N.D.Ga. 2000.)  The complexity of a case "only adds to the uncertain outcome of the case should it proceed to the trial stage." Id.

While class counsel believe the class members' claims are

meritorious, they recognize that no outcome at trial is without risks. The risks are increased in this case in light of the complexity of the case, which is apparent from the extensive conflicting scientific and expert proof in this case. There are, for example, conflicting expert reports regarding the inferences to be drawn from the condition of the remains found on the Tri-State property; disputes regarding the standard of care for funeral homes and crematories; the evaluation and valuation of grief and trauma; and even issues regarding the amount of gas that would have been required to properly cremate the number of bodies that were sent to Tri-State. All of these issues, and more, raise questions of disputed facts that would be considered by the jury at trial.

The legal issues, as exemplified by the previous round of class certification pleadings and summary judgment motions, are also complex. Plaintiffs note that the complexity of the issues are well-illustrated by the prolixity of the papers. The briefs alone, in support of the non-settling Funeral Home Defendants' Motions for Summary Judgment, for example, were each approximately 65 pages, and the class members' Consolidated Response thereto was 100 pages in length.

In light of the complex and disputed issues of fact and law, the outcome of this case at trial can only be characterized as uncertain. Moreover, a plaintiffs' victory at trial would be followed not by satisfaction of the judgment,

but by the delay of appeal from the judgment.  These inherent risk factors must be considered in assessing the fairness of the settlement.  Because the settlement provides immediate and substantial relief, without the risk of trial or the delay of appeals, its final approval is warranted.

### 2.        The terms of the settlement weigh in favor of approval.

In reviewing the terms of a settlement for fairness, the court should keep in mind that "'compromise is the essence of a settlement . . . [and] inherent in compromise is a yielding of absolutes and an abandoning of highest hopes.'" Meyer, 677 F.Supp. at 1207 (quoting Cotton v. Hinton, 559 F.2d 1326, 1331 (5th Cir. 1977.))  The court should look to the possible range of damages that class members could recover at trial in conjunction with the likelihood of success.  In re: Motorsports Merchandise, 112 F.Supp.2d at 1334.

The terms of the LFH settlement were set forth in the Partial Settlement Agreement filed with the Court on December 4, 2003.  In its Order entered December 4, 2003, preliminarily approving the settlement, the Court found that "the proposed settlement does not disclose grounds to doubt its fairness or other obvious defects, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys."  Order at page 2.  The terms of the settlement have not changed since the Court's finding, and no other grounds have been propounded that would indicate any unfairness or

that approval of the settlement is inappropriate.  Further, this settlement figure was reached after extensive, arms' length negotiations and is the product of consensus of the Plaintiffs' Steering Committee members.  The fact that no subclass member who had not previously opted out of the litigation class has opted out of this settlement also demonstrates the reasonableness of the settlement.

3.    **The complexity, expense and duration of litigation weigh in favor of settlement.**

As discussed above, the settlement guarantees substantial recovery for the subclass members while avoiding the uncertainty and delay of a complex trial and appeals.  The settlements also avoid further substantial expense to the parties and an immediate result.  The "common benefit" expenses incurred by class counsel thus far exceed $700,000.00.  See Memorandum in Support of Class Counsels' Application for an Award of Attorneys' Fees and Expenses, filed contemporaneously herewith.  A large portion of these expenses are the result of discovery.  LFH alone has produced to the class members reams of documents and over 157 class member depositions have been taken for the common good of the class.  The settling defendants have incurred substantial fees and costs as well, which cease upon settlement.

The number of hours dedicated by class counsel to the case has enabled it to move forward at a rapid pace given its size and complexity, with a trial date set for approximately two years after the commencement of the litigation.

This rapid pace has benefited the class members, and in particular the settlement subclass, which will have final results before trial and, given the likelihood of appeal, will have final results long before the case's final conclusion.

This litigation has now been pending for approximately two years. It will have been pending for over two years by the currently scheduled trial date. The litigation has advanced expeditiously, but for the class members, each day can seem an eternity. While class counsel believe that the class members' claims are meritorious, they are also aware that this litigation, and any appeals that would follow a successful trial, are not likely to be concluded for a significant period of time. These delays must be considered in assessing the fairness of the settlement, which guarantees immediate and substantial relief without the attendant risks and delays of multiple rounds of continued litigation. For these reasons alone, the settlement warrants the Court's approval. In re Motorsports Merchandise, 112 F.Supp. 2d at 1334.

### 4. The Notice Plan has been implemented in accord with Rule 23(c)(2) and this Court's directions.

In its Order granting preliminary approval of the settlement, the Court found that the Notice Plan for the settlement subclasses "satisfy the requirements of Fed. R. Civ. P. Rule 23 (c)(2) for notice in Rule 23 (b) (3) class actions." "New" Rule 23 (c)(2)(B) provides that the class members shall be provided "the best notice practicable under the circumstances, including individual notice to all

members who can be identified through reasonable effort." The contents and style of notice were designed to meet the "New" Rule 23(c)(2)(B) "plain language" requirements. In compliance with "New" Rule 23(e)(3,) the notice afforded an opportunity for subclass members to request exclusion.

The Notice Plan, developed by Kinsella Communications, the Court-appointed Notice Administrator, one of the leading experts on class action notices, called for notice of the proposed settlement to be provided by direct mail to those class members whose names and addresses were derived from the records of the parties. See Notice Plan, 3; Affidavit of Kimberly K. Ness, ¶ 6-7. The Notice Plan also called for notice to be published through the use of paid media in daily newspapers in the geographic areas where LFH is located, and its surrounding counties. Notice Plan, 3. Electronic notice was also made through Internet advertising and an Internet website listed with major search engines. Id.

The Notice Plan has been successfully completed. On December 8, 2003, after investigating whether the addresses provided by counsel were correct and current, Rust Consulting mailed Class Notices to eighty-two (82) potential class members for LFH. See Exhibit C, Ness Affidavit at ¶ 8.

In addition to direct notice by mail, notice was also achieved through advertisement of the settlement in daily newspapers in the geographic areas where LFH is located. See Exhibit B, Affidavit of Kathy Kinsella, ¶ __. Notice was also

advertised in the counties contiguous to the county where LFH is located and in the Sunday editions of major daily newspapers in the area. Each advertisement published a toll-free telephone number, a website address and a mailing address where class members could obtain further information. National and regional press releases were also made, which generated stories and interviews on radio stations reaching more than 2.36 million listeners in Georgia, Tennessee and Alabama. Id.

These facts establish, in accordance with its previous preliminary approval of this settlement, that the notice given was "the best notice that could have been given to the class members and that it was sufficient to permit [entry of] a final judgment binding the Defendant[s] and all members of the plaintiff class." Meyer, 677 F.Supp. at 1209.

### 5.   The Judgment of Experienced Counsel Favors Settlement.

The court may rely on the judgment of experienced counsel in determining whether to approve a class settlement. Meyer, 677 F.Supp. at 1210. In fact, "'absent fraud, collusion or the like, [the court] should be hesitant to substitute its own judgment for that of counsel.'" Id. (quoting Cotton, 559 F.2d at 1330.)

Counsel for the settlement class members and LFH are competent and experienced in complex litigation, and Lead Counsel, in particular, is experienced

in class actions and cases involving the mishandling of remains. Counsel recommend that the Court approve the settlement, as indicated below by their signatures. Thus, this factor weighs in favor of settlement.

**6.      The lack of opposition to the settlements favors approval of the settlements.**

In determining whether a settlement is fair and reasonable, the court should consider the objections raised by class members when considering the reasonableness of the settlement. Meyer, 677 F. Supp. at 1210.

The Notice Plan provided that potential members of the settlement subclasses could exclude themselves from the settlement subclasses or could object to the settlements on or before January 16, 2004. As of this date, no potential members of the LFH settlement subclass, who had not already excluded him or herself from the litigation class, has excluded him or herself from the settlement class. There have been no objections filed by members of the LFH subclasses.

**7.      The stage of the proceedings at which settlement was achieved favors settlement.**

The settlement in this case was achieved after significant discovery had been completed, giving counsel for the settling parties an opportunity to be fully informed with respect to the issues of the case. Accordingly, the timing of the settlement is favorable.

**B.      The Settlements were Reached Without Collusion.**

In addition to determining that the settlement is fair and reasonable,

the Court must also be satisfied that it was reached as the product of arms' length

negations and without collusion. <u>Meyer</u>, 677 F.Supp. at 1200. There is no

evidence in the record of collusion between the parties. To the contrary, counsel

for the parties kept this Court advised regarding settlement, plaintiffs requested the

appointment of a settlement mediator, and the negotiations themselves, while civil,

were arduous, exacting, and adversarial. Defense counsel for LFH confirms that

the negotiations of this settlements were conducted at arms' length and with no

collusion. <u>See</u> Exhibit D, Hawkins Affidavit.

## IV.   **CONCLUSION**

For the reasons set forth above, the class members respectfully request that the Court approve the settlements with LFH and enter a final judgment reflecting that approval.


Dated this ___ day of February, 2004.

_[signature]_

McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia 30722
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

*Plaintiffs'/Respondents' Liaison Counsel*

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs'/Respondents' Lead Counsel*

Kathryn E. Barnett
Elizabeth A. Alexander
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965q

BARRETT LAW OFFICE
Don Barrett
P.O. Box 987
Lexington, Mississippi 39095
Telephone: (662) 834-2376
Facsimile: (662) 834-2628

DOFFERMYRE, SHIELDS, CANFIELD, KNOWLES & DEVINE
Leslie Bryan
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007

Charles Barrett
Marshall H. Smith, Jr.
3319 West End Avenue, 6th Floor
Nashville, Tennessee  37203
Telephone:  (615) 386-8391
Facsimile:  (615) 386-8392

SIMS, GRADDICK & DODSON, PC
Charles Graddick
Todd Strohmeyer
205 St. Emanuel Street
Mobile, Alabama  36602

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee  37402
Telephone:  (423) 265-2214
Facsimile:  (423) 266-1842

MABRY & McCLELLAND, LLP
Robert M. Darroch
Tenth Floor, 2200
Century Parkway, N.E.
Atlanta, Georgia  30345

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee  37402
Telephone:  (423) 756-3591
Facsimile:  (423) 266-5455

DAVID RANDOLPH SMITH &
ASSOCIATES
David Randolph Smith
Hillsboro Village, 1910 Acklen Avenue
Nashville, Tennessee  37212
Telephone:  (615) 742-1775
Facsimile:  (615) 742-1223

COPPEDGE & LEMAN, PC
Joe Leman
508 South Thornton Avenue
Dalton, Georgia  30720
Telephone:  (706) 226-0040
Facsimile:  (706) 226-0040

*Plaintiffs' Steering Committee*

## PROOF OF SERVICE BY MAIL

I hereby certify that a copy of the foregoing was served by postage prepaid United States mail on the ___ of February, 2004 addressed to those listed below:

Robert H. Smalley, III

J. Anderson Davis, Esq.
Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP
PO Box 5513
Rome, GA  30162

*Funeral Home Defendants*
*Lead/Liaison Counsel*

Frank E. Jenkins, III
Jenkins & Olson, PC
15 South Public Square
Cartersville, GA 30120

McCracken K. Poston, Jr., Esq.
Attorney at Law
62 Nance Lane
PO Box 1130
Ringgold, GA  30736

John M. Hawkins
Weinberg, Wheeler, Hudgins, Gunn
& Dial, LLC
950 East Paces Ferry Road
Suite 3000
Atlanta, GA 30326
*Counsel for Love Funeral Home,*
*Inc.*

291656.1                    -1-



# EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

001
SAMPLE A SAMPLE
123 MAIN STREET
ANYTOWN US 12345-6789

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| IN RE: TRI-STATE CREMATORY LITIGATION<br>**This document relates ONLY to the**<br>**Love Funeral Home Settlement Class.** | MDL DOCKET NO. 1467 |

<u>**Notice of Class Action and**</u>
<u>**Proposed Partial Class Action Settlement**</u>

To:   Next-of-kin of decedents that were sent to Tri-State Crematory, Inc. for cremation by **Love Funeral Home** between January 1, 1988 and
February 15, 2002 and those who contracted for the funeral arrangements for those decedents.

THIS NOTICE DESCRIBES A PROPOSED PARTIAL CLASS ACTION SETTLEMENT THAT MAY AFFECT YOUR LEGAL RIGHTS.
PLEASE READ THIS NOTICE CAREFULLY.

## Definition of the Class

1. The proposed partial settlement class is defined to include all persons who are or were the next-of-kin of any decedents that were delivered to Tri-State Crematory by **Love Funeral Home** for cremation from January 1, 1988 through February 15, 2002, and all persons who contracted for the funeral arrangements for those decedents.

2. For purposes of this action, next-of-kin is defined according to the Georgia laws of intestate succession. For instance, for the purposes of this action, the next-of-kin of a decedent is the decedent's spouse, and if there is no living spouse, the decedent's child or children. If there is no living spouse or child(ren), the next-of-kin is the decedent's parent or parents. If there is no living spouse, child(ren) or parent, the next-of-kin is the decedent's brother(s) or sister(s).

## Brief Description of the Action

3. A class action is a type of lawsuit in which a few named plaintiffs sue on behalf of themselves and many others who have similar claims. The questions common to the class are decided in one trial. This procedure avoids the delay, confusion, and expense of multiple suits.

4. Beginning on February 15, 2002, the uncremated human remains of at least 334 decedents were discovered on the property surrounding the Tri-State Crematory in Noble, Georgia. Following the discovery of these uncremated bodies, some next-of-kin of decedents whose remains were delivered to Tri-State Crematory filed lawsuits in Tennessee, Alabama and Georgia. Among these suits were three lawsuits filed in federal courts in Alabama and Georgia, two of which were filed as class actions. These lawsuits have been coordinated as the Tri-State Crematory Litigation and have been assigned to one judge, the Honorable Harold L. Murphy, for joint proceedings.

5. Named plaintiffs in the Tri-State Crematory Litigation claim that the defendants are legally responsible in tort and in contract for the damages caused by their alleged failure to dispose of human remains properly and respectfully, as requested by the decedents and their families. On March 17, 2003, the Court issued an order approving the following claims for class action treatment: (1) negligence; (2) willful interference with remains and intentional mishandling of a corpse; (3) negligent interference with remains and mishandling of a corpse; and (4) breach of contract. The Court's order allowing these claims to proceed as a class action is not a ruling on their merits, and defendants deny legal responsibility for these claims. The Court has ruled that Georgia law will apply to these claims.

6. The defendants in this case include Tri-State Crematory, members of the Marsh family who are alleged to have owned and operated the crematory and approximately 50 funeral homes that sent remains to Tri-State Crematory for cremation.

7. The Court has certified a Class defined as follows:

   "All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri-State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been recovered from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State."

   You are automatically a member of the Class if you fit the description above. You will be a participant in the litigation and bound by all Court judgments unless you choose to exclude yourself as described below.

8. The Court has not ruled on the merits of the plaintiffs' claims or defendants' objections. The class ruling does mean that the orders and judgments in this lawsuit – whether favorable to the plaintiffs or unfavorable – will apply to all Class Members who do not leave the Class in the manner described below.

9. A number of factual and legal issues, including whether Love negligently allowed the mishandling to occur, and whether the Class Members are entitled under the law to recover money damages for breach of contract and emotional distress are in dispute. Many motions have been filed and hearings held in this case, and substantial investigation and discovery has been conducted. There has been no final ruling on the merits of any of the claims and **Love denies any wrongdoing whatsoever**.

10. Without admitting legal responsibility, Love Funeral Home has agreed to the terms of a proposed settlement regarding decedents who were sent to Tri-State Crematory by Love Funeral Home, resolving all claims against it so as to avoid the expense, risks, and exposure of defending protracted litigation. On December 4, 2003, Judge Murphy granted preliminary approval of the terms of this proposed settlement as a possibly fair, reasonable and adequate resolution of the pending claims against Love.

## Terms of the Proposed Settlement

11. The proposed settlement would release claims against Love regarding any mishandling of remains at Tri-State Crematory. This proposed settlement, however, does not release claims against Tri-State Crematory or the members of the Marsh family, whom the plaintiffs allege owned and/or operated the crematory. Those claims will automatically be protected by the class action pending before Judge Murphy.

12. The proposed partial settlement provides for creation of a Settlement Fund for distribution among members of the Love Funeral Home Settlement Class defined above. Each member of the Settlement Class will be eligible to submit a claim to the Settlement Fund. The Settlement Fund will be distributed to qualified Class Members pursuant to an allocation plan as follows:

    (a) For each decedent sent to Tri-State Crematory by Love Funeral Home **from January 1, 1988 through March 31, 1997**, the next-of-kin shall be entitled to a lump sum of **at least** $2,350. *All unclaimed awards under this subparagraph will be divided equally among the Class Members who are the next of kin of the decedents described under this subparagraph.*

    (b) If, for any decedent, **the person(s) who contracted for the funeral services** is not the next-of-kin, that person(s) shall be entitled to recover the amount paid for the services out of the Award described in paragraph a above.

    (c) The Awards described above are a lump sum per decedent. If there are more than one next-of-kin of equal relationship (multiple children, for instance), the Award to the next-of-kin shall be divided among each of the equal next of kin equally.

13. The proposed settlement does not impact the ongoing class proceedings against Tri-State Crematory, the Marsh defendants, and/or any non-settling Funeral Home Defendant. The Class Action trial on the remaining claims against Tri-State and the Marsh defendants will be "bifurcated," meaning that it will proceed in two parts. Trial is scheduled to begin on March 1, 2004 in Rome, Georgia. The trial date is subject to change. Part one of the trial on Class Members' claims against Tri-State Crematory, the Marsh defendants, and/or any non-settling Funeral Home Defendant will decide the liability of those defendants for negligence, willful or negligent interference with remains, intentional or negligent mishandling of a corpse, and breach of contract, under Georgia law. If the plaintiffs prevail in part one of the trial (the "liability phase"), the issues of causation and the amount of the Class Members' damages will be determined through individual proof in part two of the trial (the "damages phase"). To assert your damages claim in part two of the trial, you may be required to participate in formal or informal discovery, and may be required to provide information at a deposition, in response to interrogatories, or questionnaires, under the procedures and deadlines to be set by the Court.

### Representation of the Class

14. If you are a member of the Class described above, your rights and interests under the proposed settlement will be automatically represented by the named plaintiffs in the Settlement Class and the group of law firms for the plaintiffs appointed by the Court as class counsel who are listed on Exhibit A. You do not need to hire an attorney to pursue your claims as a class member. Class Counsel will represent you on your class claims without direct charge. Class Counsel must apply to the Court for award of fees and costs from the settlement fund. These are contingent on obtaining a benefit for class members. You may hire counsel, at your own expense, to enter an appearance in this case if you desire.

15. To date, class counsel have incurred over $700,000 in out-of-pocket expenses and have invested substantial time on a priority basis to protect and prosecute the Class Members' claims, without receiving compensation of any kind. In class actions, counsel who generate a monetary recovery for the benefit of the class are entitled to an award of attorneys' fees and costs, representing a reasonable percentage of the recovery in recognition of their efforts, expenses, risks and performance.

16. In this case, class counsel are seeking reasonable attorneys' fees of up to 33 percent ($99,000) of the gross amount paid in settlement of the Class Members' claims by Love. **The Class Member Awards (described in paragraph 12 of the above section) are net minimum Awards from which the maximum possible attorneys' fees have already been deducted.**

17. Class counsel shall seek Court approval to withhold up to four percent ($12,000) of the gross amount paid in settlement of all Class Members' claims to reimburse class counsel for reasonable and necessary expenses incurred for the common benefit of the Class. If at the conclusion of this Action, class counsel has withheld more funds in costs from Awards than has been reasonably and necessarily incurred for the benefit of the Class, all additional funds shall be returned to the Class on a pro-rata basis, if it is practicable and cost-effective to do so. **The Class Member Awards (described in paragraph 12 of the above section) are net minimum Awards from which the maximum possible reimbursement of expenses have already been deducted.**

18. If you entered into written attorney representation/contingent fee agreements with an attorney prior to March 17, 2003 ("private fee agreements,") your lawyer will, subject to Court approval, be paid from the Court Award of attorneys' fees to class counsel at the contract rate between you and your lawyer, not exceeding 33 percent of your Gross Award, less 2 percent for Class Counsels' reasonable and necessary efforts expended for the benefit of the class.

### Your Rights

19. If you are a member of the Settlement Class, you have the right to make a claim by filling out and signing the Class Member Claim Form and submitting it postmarked no later than February 10, 2004.

20. You also have the right to exclude yourself from the Settlement Class and/or the class proceeding. If you would like to exclude yourself from the Settlement Class and/or the class proceeding, you must personally submit and sign a written "request for exclusion" that includes your full name and current address, your decedent's name, and your relationship to the decedent. Your request for exclusion must be mailed to "Class Counsel, Tri-State Crematory Litigation, 3319 West End Avenue, Suite 600, Nashville, Tennessee 37203" and must be postmarked no later than January 16, 2004.

21. If you decide to leave the class proceeding,

    (a) you will not participate in any Class recovery of damages from the trial of Class claims in this lawsuit;

    (b) you will not be bound by any further order affecting the Class in this lawsuit;

    (c) you will have to retain your own lawyer at your expense if you wish to pursue individual litigation for money damages against any defendant;

    (d) you will have to present any claims you wish to pursue against any defendant by filing your own lawsuit.

If you decide to leave the Settlement Class, you will not share in the Settlement Fund and may not pursue any claims against Love Funeral Home in the the certified class action, but must initiate and pursue your own individual claims, at your own expense.

### Final Approval Hearing

22. The Court will conduct a final approval hearing to consider all comments on the settlement and to decide whether to approve the settlement. You have the right, but are not required, to comment on the proposed settlement and to appear at the final approval hearing, either in person or through your attorney. The final approval hearing will be held on February 5, 2004, at 3:00 p.m. at the federal courthouse in Rome, Georgia. Any comments to the settlement must be submitted in writing to the Court with copies to class counsel, by no later than January 16, 2004.

### For More Information

23. If you wish to communicate with class counsel as your lawyers in this litigation, you may do so by writing:

Class Counsel
Tri-State Crematory Litigation
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203

You may also call the following toll-free number: 1-866-313-1973.  For further information and updates regarding the ongoing class action against Tri-State Crematory and the Marsh defendants, you may call the following toll-free number:  1-877-877-4521 or visit the interactive, informational website for Class Members: www.crematoryclassaction.com.

Dated: December 4, 2003

/s/ _____
Hon. Harold L. Murphy
United States District Court
Northern District of Georgia, Rome Division

---

**Si usted desea obtener una copia de este documento legal en Espanol, favor de actuar immediatamente y escribir a**

**Class Counsel**
**Tri-State Crematory Litigation**
**3319 West End Avenue, Suite 600**
**Nashville, Tennessee  37203**

---

### EXHIBIT A

**Class Counsel**

*Plaintiffs' Lead Counsel*
  Elizabeth J. Cabraser
  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
  Embarcadero Center West
  275 Battery Street, 30th Floor
  San Francisco, CA 94111-3339
  Telephone:  (415) 956-1000
  Facsimile:   (415) 956-1008

  Kathryn E. Barnett
  LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
  3319 West End Avenue, Suite 600
  Nashville, TN  37203
  Telephone:  (615) 313-9000
  Facsimile:   (615) 313-9965

*Plaintiffs' Liaison Counsel*
  Robert H. Smalley, III
  McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
  P.O. Box 1105
  Dalton, GA 30722-1105
  Telephone: (706) 278-4499
  Facsimile:   (706) 278-5002

# LOVE FUNERAL HOME SETTLEMENT

## CLASS MEMBER CLAIM FORM
## TRI-STATE CREMATORY LITIGATION

**Name:**                                              **Address:**

_____        _____
First                              MI                    Street Address

_____        _____
Last                                                   City              State        Zip Code

**Telephone:**

( __ __ __ ) __ __ __ - __ __ __ __            ( __ __ __ ) __ __ __ - __ __ __ __
Daytime                                                Evening

**Name of the deceased:**                              **Date of death:**

_____        __ __ / __ __ / __ __ __ __
First                              MI

_____
Last

**Your relationship to the deceased (check one): [Order of Kinship]**

☐ Spouse
☐ Child
☐ Parent
☐ Sibling
☐ Other  (please describe): _____

**Check one:**

☐ I <u>am</u> the closest living relative of the deceased
☐ I <u>am not</u> the closest living relative of the deceased
  → List any known closer relatives (see Order of Kinship above):

_____        _____
Name                                                   Name

_____        _____
Street Address                                         Street Address

_____        _____
City              State        Zip Code                City              State        Zip Code
( ____ ) ___ - ___ ___ ___                             ( ____ ) ___ - ___ ___ ___
Daytime Telephone Number                               Daytime Telephone Number
( ____ ) ___ - ___ ___ ___                             ( ____ ) ___ - ___ ___ ___
Evening Telephone Number                               Evening Telephone Number

**Was Love Funeral Home used for funeral and/or cremation arrangements for the decedent?**        ☐ Yes  ☐ No

**Who contracted for the funeral arrangements?**

_____        _____
Name                                                   Street Address
( __ __ __ ) __ __ __ - __ __ __ __            _____
Telephone                                              City              State        Zip Code

**I certify under penalty of perjury that the information contained in this Claim Form is true and correct to the best of my personal knowledge, information and belief.**

**Signature:** _____        **Date:** __ __ / __ __ / __ __ __ __

Mail to:  Tri-State Crematory, Love Funeral Home Settlement Class Counsel
          3319 West End Avenue, Suite 600
          Nashville, Tennessee 37203                    **POSTMARK DEADLINE: FEBRUARY 10, 2004**



# EXHIBIT ATTACHMENT

## $\beta$

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA, ROME DIVISION

In Re: Tri-State Crematory Litigation )       MDL Docket No. 1467
                               )
                               )
                               )

## DECLARATION OF KATHERINE KINSELLA

Katherine Kinsella, being first duly sworn, states as follows:

1. I am President of Kinsella Communications, Ltd., an advertising and notification consulting firm in Washington, D.C. that specializes in the design and implementation of class action and bankruptcy notification programs to reach unidentified putative class members primarily in consumer and mass tort litigation. My business address is 1920 L Street, NW, Suite 700, Washington, D.C. 20036.  My telephone number is (202) 686-4111.

2. I submit this declaration in connection with In Re: Tri-State Crematory Litigation, MDL Docket No. 1467, pending in the United States District Court for the Northern District of Georgia, Rome Division at the request of the Plaintiffs.

3. This declaration is based upon my personal knowledge and upon information provided by Class Counsel, my associates, and staff.  The information is of a type reasonably relied upon in the fields of advertising, media, and communications.  I have submitted my qualifications in my October 23, 2003 declaration.

4. Kinsella Communications, Ltd. was retained to design and implement the Proposed Partial Class Action Settlement Notice Program with Love Funeral Home in this litigation.  I submit this declaration to describe the elements of the Notice Program.

5. The objective of the Notice Program was to provide adequate notice of the partial Settlement of this case to Settlement Class Members who are defined as follows:

> All those who are or were next of kin of any person whose remains were sent to Tri-State Crematory by Love Funeral Home between January 1, 1988, to February 15, 2002, or all persons who were parties to any contract for funeral arrangements with Love Funeral Home for any decedent sent to Tri-State Crematory between January 1, 1988, and February 15, 2002.

1

6. The notification program was designed to include:

- Direct notice by first-class mail to all individuals and entities whose names and addresses were readily available.

- Broad notice through the use of paid media in daily newspapers in Whitfield County, where Love Funeral Home is located, and its surrounding counties.

7. Direct mail notice was the primary means of notice and consists of mailing the Notice of Proposed Partial Class Action Settlement to Settlement Class Members to inform them of their rights and how they may participate in the Settlement. In brief, the direct notice was sent to:

- The Class Members whose names and addresses were derived from the records of Love Funeral Home. Any return mail was corrected through the national address database and re-mailed, if possible.

- Class Members whose names and addresses are provided by Class Counsel.

- All callers to the toll-free information line who request the Notice of Proposed Partial Class Action Settlement. The toll-free number for this information line appeared prominently in the published forms of notice.

8. In designing the paid media segment of the Notice Plan, Kinsella used geographic considerations. Kinsella considered the fact that next of kin and other family relatives of the descendents may live in counties that are contiguous to Whitfield County, where Love Funeral Home is located. Therefore, this notice program was designed to reach next of kin and other family relatives not only in Whitfield County, but also in its contiguous counties.

9. The county where Love Funeral Home is located:

| FUNERAL HOME COUNTY |
| --- |
| Whitfield, GA |

10. Counties contiguous to Whitfield County, GA, were identified as follows:

| SURROUNDING FUNERAL HOME COUNTIES |
| --- |
| Catoosa, GA |
| Gordon, GA |
| Murray, GA |
| Walker, GA |
| Bradley, TN |
| Hamilton, TN |

2

11. The Summary Notice was placed as a quarter-page ad in the Sunday, December 28, 2003, edition of the following major daily newspapers.  These newspapers have circulation in Whitfield County and its contiguous counties.

| STATE | NEWSPAPER | CIRCULATION | PAGE |
|-------|-----------|-------------|------|
| TN | *Chattanooga Free Press* | 98,879 | B9 |
| TN | *Cleveland Banner* | 16,537 | 6 |
| GA | *Dalton Daily Citizen* | 12,772 | 7B |

12. All print advertising and media carried a toll-free telephone number, a website address, and a mailing address for Settlement Class Members to request or access the Notice of Proposed Partial Class Action Settlement.

13. It is my opinion that the direct mail notice and supporting published notice is reasonable, adequate and the best possible under the circumstances and is fully compliant with Rule 23 of the Federal Rules of Civil Procedure.

I solemnly affirm under the penalty of perjury of the laws of the District of Columbia and the United States of America, and upon personal knowledge that the contents of the foregoing paper are true.

_____          _____
Katherine Kinsella                               Date

3



# EXHIBIT / ATTACHMENT

## C

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| IN RE: TRI-STATE CREMATORY LITIGATION | MDL DOCKET NO. 1467 |
| This Affidavit relates ONLY to the Love Funeral Home Settlement. | |

AFFIDAVIT OF KIMBERLY K. NESS WITH RESPECT TO NOTIFICATION

STATE OF MINNESOTA   }
                     } ss.:
COUNTY OF RICE       }

Kimberly K. Ness, being duly sworn, deposes and says:

1.     I am a Senior Project Administrator for Rust Consulting, Inc. ("Rust Consulting"). My business address is 201 South Lyndale Avenue, Faribault, Minnesota 55021. My telephone number is (507) 333-4567. I am over twenty-one years of age and authorized to make this declaration on behalf of Rust Consulting, Inc. and myself.

2.     Rust Consulting specializes in class action notification and claims administration, including telephone support and direct mail services. Rust Consulting has provided claims administration services for class action settlements containing up to 7 million class members in cases involving insurance, securities, product liability, fraud, property, employment and civil rights.

3.     Rust Consulting was engaged by counsel to provide notification services in the Love Funeral Home Settlement. Duties included: a) printing and mailing of the Notice of Class Action and Proposed Partial Class Action Settlement ("Class Notices"),

and b) receipt of undeliverable Class Notices.

4.   Rust Consulting obtained a mailing address (P.O. Box 1700, Faribault, Minnesota 55021-1700) to receive undeliverable Class Notices.

5.   Rust Consulting received text for the Class Notices from counsel.  The Class Notices, each including a Class Member Claim Form with a postage-prepaid return envelope, were formatted and prepared for mailing by Rust Consulting and approved by counsel.  A sample copy of the Class Notice package for the Love Funeral Home Settlement is attached hereto as Exhibit A.

6.   On October 9, 2003, Lieff, Cabraser, Heimann & Bernstein, LLP ("Plaintiffs' Lead Counsel") provided Rust Consulting with a list of persons identified as potential class members in the Love Settlement.  This list (the "Love Class Intake List") included the next-of-kin and the contract signatories for deceased persons identified by Plaintiffs' Lead Counsel and Love Funeral Home.  The initial Love Class Intake List contained data for 82 potential class members.

7.   Prior to mailing, Rust Consulting retained the services of Fair, Isaac and Company, Inc. ("Fair Isaac") to cross-reference the addresses on the Class Intake Lists with addresses found in the National Change of Address Cards filed with the United States Postal Service.  Fair Isaac also standardized the addresses to ensure that they conformed to National Postal Service Rules by using a computer program designed for this purpose.

8.   On December 8, 2003, Class Notices were mailed to 82 potential class members via First Class mail.  A copy of the Certificate of Mailing is attached hereto as Exhibit B.

9.      As of February 2, 2004, Rust Consulting has received 29 undeliverable

Class Notices.  None of the undeliverable Class Notices contained U.S. Postal Service

labels with forwarding addresses.

I declare, under penalty of perjury, under the laws of the State of Minnesota, that the

foregoing is true and correct to the best of my knowledge.  Executed this 3rd day of

February 2004, in Faribault, Minnesota.

Kimberly K. Ness

Sworn and subscribed to before
me this 3rd day of February, 2004.

Notary Public

SHARON E. VELANDER
NOTARY PUBLIC-MINNESOTA
MY COMMISSION EXPIRES 1-31-20

3

Exhibit B

United States Postal Service
## Certificate of Bulk Mailing

| | | | Meter affixed |
|---|---|---|---|

MAILER: Prepare this statement in ink. Affix meter stamp or uncanceled postage stamps covering fee in the block to the right. Present for certification.

### Fee for Certificate

| | Use Current Rate Chart |
|---|---|
| Up to 1,000 pieces (*1 certificate for total number*) | |
| For each additional 1,000 pieces, or fraction | |
| Duplicate Copy | |

FARIBAULT MN
DEC 08'0 3
PB METER 7137152  U.S. POSTAGE  ≡ 4.50 ≡

| Number of Identical Pieces | Class of Mail | Postage on Each | Number of Pieces to the Pound | Total Number of Pounds | Total Postage Paid | Fee Paid |
|---|---|---|---|---|---|---|
| 82 | 1st | .37 | | | 30.34 | $4.50 |

| Mailed For | Mailed By |
|---|---|
| Rust Consulting, Inc 201 S Lyndale Ave | Julie, Nancy, Jodi, Gregg |

Project: Love 79700
82 = Notices (Tristate)
(even)

### Postmaster's Certificate

It is hereby certified that the above-described mailing has been received and number of pieces and postage verified.

FARIBAULT MN 55021
DEC 8 2003 USPS

_____
(Postmaster or Designee)

'S Form **3606,** May 1992





EXHIBIT / ATTACHMENT

(To be scanned in place of tab)

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE
CREMATORY LITIGATION

MDL DOCKET NO. 1467

## AFFIDAVIT OF JOHN M. HAWKINS

John M. Hawkins, being first duly sworn, states as follows:

1.      I am a member in the law firm of Weinberg, Wheeler, Hudgins, Gunn & Dial, LLC, in Atlanta, Georgia.  I represent Love Funeral Home, Inc. (hereinafter "LFH") in this action.

2.      I have reviewed the Settlement Agreement between LFH and the settlement class members.  In my opinion, the settlement is fair and reasonable as to all parties.

3.      The Settlement Agreement was reached by arms' length negotiations and with no collusion among, by, or between any party to it.

John M. Hawkins

Sworn to and subscribed before me
This 5th day of February 2004

Notary Public

291946.1                                    -1-