UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| IN RE: TRI-STATE CREMATORY LITIGATION | MDL DOCKET NO. 1467 |
|---|---|

## MEMORANDUM IN OPPOSITION OF MOTION TO EXCLUDE TESTIMONY OF WALTER SPEARMAN

FACTUAL BACKGROUND

Defendants seek to exclude the testimony of a fact witness, Mr. Walter Spearman. Mr. Spearman began working in funeral homes after his discharge from the Korean War. (Spearman depo. p. 32). Mr. Spearman was in partnership with Johnny Hayward in the Dozier Funeral Home business in Rome, Georgia, and became sole owner after Mr. Hayward's death. (Spearman depo. pp. 38, 39). Mr. Spearman owned and operated the Dozier Funeral Home from 1982 until 1990 and then operated Spearman's Mortuary in Atlanta until 1998 (Spearman depo. pp. 7, 20, 29, 39). Mr. Spearman was not a licensed funeral director but had a licensed funeral director on the staff pursuant to Georgia state law. (Spearman depo. pp. 21-22). He lives in Atlanta, Georgia. (Spearman depo. p. 6).

While operating the Dozier Funeral Home in Rome, Mr. Spearman became acquainted with Ray Marsh who dug graves in rural cemeteries for

959

the Dozier Funeral Home and sold vaults. (Spearman depo. pp. 53-54). Mr. Spearman used Marsh's grave-digging services "a couple times a month." (Spearman depo. p.55). However, Mr. Spearman (and the Dozier Funeral Home) "never cremated a body" at their funeral home. (Spearman depo. p. 56)[1].

Mr. Spearman had a significant first-hand conversation with Ray Marsh that is subject of Defendants' motion. (Spearman depo. pp. 59-61, 104-105). Mr. Spearman testified that at the time his mother died in November 1985, Mr. Ray Marsh came by Mr. Spearman's funeral home in Rome, Georgia and told Mr. Spearman that when he exhumed and cremated bodies he would "throw away most of the stuff."

> **Q:** Oh, okay. What did he tell you?
>
> **A:** He told me that – he said, "Mr. Spearman, you know I exhume a lot of bodies."
>
> **Q:** Exhume?
>
> **A:** Correct. "And I do a lot of cremations."
>
> **Q:** Okay.
>
> **A:** May I back up?
>
> **Q:** Sure.

---

[1] Mr. Spearman explained there was "no call" for this service from his [African-American] customers. (Spearman depo. p. 56).

2

> **A:** When my mother passed in '85 and he was giving me his condolences about my mother and he said, "I know you're glad you're in the funeral business. You didn't have to pay all that money." I said yes. He said, "I told Clara when I pass, just cremate me; that's too much money." He said, **"You know, I do cremations and I exhume a lot of bodies,"** and he said, **"Mr. Spearman, I look in there. It don't be nothing there. I throw most of that stuff away."** Now, that's what he said.
>
> **Q: He said, "I throw most of that stuff away"?**
>
> **A: That's correct.**
>
> **Q:** And you understood him to mean that he threw what away?
>
> **A:** I took it – whatever he found in the casket that he exhumed. He just said, "I do a lot of cremations and I exhume a lot of bodies," and he said, "Mr. Spearman, I look at it and there don't be nothing in there. I throw most of that stuff away."
>
> **Q:** Did you question him what he meant by that?
>
> **A:** No, I didn't.

(Spearman depo. pp. 59-60) (emphasis added). See also (Spearman depo. pp. 104-105).[2]

Mr. Spearman explained later in his deposition than he was not confused by Mr. Marsh's statement because he (Mr. Spearman) knew from being in the funeral profession that "once the body has decayed" "you're not going to have anything but bones." (Spearman depo pp. 90-91). He further

---

[2] **A.** And he said, because you know, Mr. Spearman, I do a lot of exhumes—I exhume bodies and I do a lot of cremations and he said I just throw most of that stuff away. I

3

clarified that the phrase "I throw most of that stuff away" applied to "both" exhumations and cremations because Marsh "put them in the same text, in the same sentence." (Spearman depo. pp. 92,105). He further stated that Marsh told him this as part of a conversation when "funeral directors and undertaker people get together." (Spearman depo. p. 93). Mr. Spearman also testified that when he heard about the revelations of bodies being found at Tri-State and allegations that "cremations were not being performed" (Spearman depo. p. 96) he recalled his conversation with Mr. Marsh about ("throw[ing] most of that stuff away) and thought he "had some knowledge" about cremations not being performed. (Spearman depo. p. 96).

He further testified about his one visit to Tri-State (where he saw no proper tags, records or bone-reduction equipment). Mr. Spearman testified that he visited the premises at Tri-State on one occasion and never saw "equipment to reduce bone"; never saw "tagging equipment" or any "logs or any way they were keeping up with the bodies." (Spearman depo. p. 111).

ARGUMENT

I. Mr. Spearman's Testimony Is Relevant and Admissible Under Fed. R. Evid. 401 and 402

---

remember it so good the way he said and that's exactly what it was." (Spearman depo. pp. 104-105).

4

Ray Marsh told Walter Spearman in 1985 that after he did cremations and exhumations, "I throw most of that stuff away." The Defendants assert this statement by Ray Marsh is not relevant and vague. Plaintiffs would show, however, that Ray Marsh's statement is a positive and unambiguous statement that he threw "most of that stuff away" after exhumations and cremations. Throwing *"most of"* the "stuff" away after a cremation or exhumation a cremation will be established *by other expert evidence* (particularly by the testimony of funeral director and cremation operator Charles Crawford) to be below the recognized standard of professional practice and represents mistreatment of remains.[3] Thus, the testimony of Mr. Spearman is relevant and germane to material issues of fact. Relevant evidence is evidence having "any tendency" to make the existence of any fact of consequence more or less probable that it would be without the fact.

---

[3] Mr. Marsh's ungrammatical, double-negative and inarticulate statement that, "I look in there. It don't be nothing there. I throw most of that stuff away" is fairly capable of being interpreted as a statement that minimizes the amount of remains (there "don't be nothing there") meaning that there is not much left after a cremation or at exhumation and that he throws away most of it. Any other interpretation –such as an interpretation that there is in fact "nothing there"—cannot be reconciled with the statement "I throw most of that stuff [the stuff he looks at after exhumation or cremation] away."

Fed. R. Evid. 401. Ray Marsh *admitted* that he threw away *"most of"* what he saw after a cremation and exhumation. This lack of professionalism, respect and improper handling of remains is relevant testimony.

Federal Rule of Evidence 402 provides that all relevant evidence is admissible, unless otherwise excluded by statute or other rules. Fed.R.Evid. 402. A recent Eleventh Circuit court case summarized the standard:

> The standard for what constitutes relevant evidence is a low one: evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed.R.Evid. 401. Furthermore, "[d]eterminations as to the relevancy of evidence are well within the broad discretion of the district courts and will not be disturbed on appeal absent a showing that the trial court abused its discretion." *United States v. Russo,* 717 F.2d 545, 551 (11th Cir.1983) (per curiam).

*U.S. v. Tinoco,* 304 F.3d 1088, 1120 (11th Cir (Fla.) 2002).

Furthermore, it is clear that any statement made by Ray Marsh to Mr. Spearman would be admissible as an admission by a party-opponent under Fed. R. E. 801(d)(2)(A).

## CONCLUSION

The testimony of Walter Spearman is relevant and admissible under Rules 401 and 402. The evidence tends to prove or support material facts in issue concerning Ray Marsh's unprofessional and sub-standard method of

6

operation at Tri-State. The probative value of this evidence is not outweighed by the potential for unfair prejudice or confusion, pursuant to Rule 403. His recitation of statements made by Ray Marsh is admissible under Fed. R. E. 801(d)(2)(A). The testimony should not be excluded and Mr. Spearman should be allowed to testify to these facts at trial.

Respectfully submitted,

*/s/*

McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Robert H. Smalley, III
P.O. Box 1105
Dalton, Georgia
Telephone: (706) 278-4499
Facsimile: (706) 278-5002

*Plaintiffs' Liaison Counsel*

Dated this 9 day of February, 2004.

LIEFF, CABRASER, HEIMANN & BERNSTEIN, LLP
Elizabeth J. Cabraser
Embarcadero Center West
275 Battery Street, 30th Floor
San Francisco, CA 94111-3339
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Plaintiffs' Lead Counsel*

Kathryn E. Barnett
3319 West End Avenue, Suite 600
Nashville, Tennessee 37203
Telephone: (615) 313-9000
Facsimile: (615) 313-9965

7

BARRETT LAW OFFICE
Don Barrett
Charles Barrett
3319 West End Avenue, 6th Floor
Nashville, Tennessee 37203
Telephone: (615) 386-8391
Facsimile: (615) 386-8392

SIMS, GRADDICK & DODSON, PC
Charles Graddick
Todd Strohmeyer
205 St. Emanuel Street
Mobile, Alabama 36602

MABRY & MCCLELLAND, LLP
Robert M. Darroch
2200 Century Parkway, N.E., 10th Floor
Atlanta, Georgia 30345

DAVID RANDOLPH SMITH &
ASSOCIATES
David Randolph Smith
Hillsboro Village, 1910 Acklen Avenue
Nashville, Tennessee 37212

Plaintiffs' Steering Committee

DOFFERMYRE, SHIELDS,
CANFIELD, KNOWLES & DEVINE
Leslie Bryan
Suite 1600, 1355 Peachtree Street
Atlanta, Georgia 30309
Telephone: (404) 881-8900
Facsimile: (404) 881-3007

SHUMAKER, WITT, GAITHER &
WHITAKER
William G. Colvin
Suite 500, First Tennessee Building
701 Market Street
Chattanooga, Tennessee 37402

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee 37402

COPPEDGE & LEMAN, PC
Warren Coppedge
Joe Leman
508 South Thornton Avenue
Dalton, Georgia 30720

## PROOF OF SERVICE BY MAIL

I hereby certify that a copy of the foregoing was served by postage prepaid United States mail on the 9 of February, 2004 addressed to those listed below:

_____

J. Anderson Davis, Esq.
Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP
PO Box 5513
Rome, GA  30162

*Funeral Home Defendants' Lead Liaison Counsel*


McCracken K. Poston, Jr., Esq.
Attorney at Law
62 Nance Lane
PO Box 1130
Ringgold, GA  30736

Frank E. Jenkins, III
15 South Public Square
Cartersville, Georgia 30120-3350
Phone: (770) 387-1373
Fax: (770) 387-2396

*Counsel for Defendants T. Ray Brent Marsh & Tri-State Crematory*