FILED IN CLERK'S OFFICE

FEB ⸱ ⸱ 2004

⸱ ⸱ ⸱, Clerk

Deputy Clerk

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE: TRI-STATE
CREMATORY LITIGATION

MDL DOCKET NO. 1467

## PLAINTIFFS' TRIAL BRIEF FOR THE LIABILITY PHASE

Class Members, by and through Class Counsel, respectfully file their

Trial Brief for the liability phase of the trial pursuant to the order of the Court.

## I.    BACKGROUND

On February 15, 2002, uncremated human remains were discovered

on the grounds of Tri-State Crematory in Noble, Georgia.  Tri-State Crematory

was operated by Ray Marsh and his son, Tommy Ray Brent ("Brent") Marsh.  In

all, approximately 339 human corpses and partial corpses were discovered on the

Tri-State grounds.  Of those, only 222 have been identified, leaving the names,

dates of death and the specific identity of the families (within the known universe

of class members) of more than a hundred recovered bodies unknown and

unknowable.  The G.B.I. also recovered many buckets of cremated human remains.

The identity, dates of deaths, and specific identity of the families of these

decedents is also unknown and unknowable.  Bodies were buried *en masse* in pits,

and scattered in buildings and weedy areas on the Tri-State property.  Others were

*1034*

cremated and dumped together, mixed with non-human materials and animal bones and delivered to the wrong families.  All members of the next-of-kin class certified by this Court, see In re Tri-State Crematory Litigation, 215 F.R.D. 660 (N.D. Ga. 2003), have evidence that their decedents' remains were sent to Tri-State for cremation by a funeral home defendant, but, aside from those 222 whose bodies were identified, most have no evidence of what befell their decedents' remains after that, and none has reasonable certainty that the cremated remains delivered to them by the funeral homes are in fact their decedents'.

A complete failure of reasonable records-keeping practices by the funeral homes and Tri-State has compounded the inability of scientists and law enforcement officers to identify the cremated and uncremated remains abandoned at Tri-State.

The class members trusted the funeral home defendants to provide peace and certainty in laying to rest the remains of their loved ones.  Instead, the class members face the horrible truth that the funeral homes they trusted shipped their loved ones' remains to Tri-State — an unlicensed, untrained and unsupervised collection of sheds in rural Georgia, which demonstrated unspeakable disrespect for the dead.  These trusted funeral homes consigned remains to Tri-State without even minimal investigation into Tri-State's competency or practices, and without any supervision or monitoring of Tri-State's

activities. Now, the only certainty for most of the class is that they can never know

what befell the remains of their loved ones, or where those remains lie. The class

members expected, paid for, were promised, and deserved more.

## II.    **PROCEDURAL HISTORY**

On March 17, 2003, the Court certified this class action against Tri-

State Crematory, Inc., members of the Marsh family, and the funeral homes that

used Tri-State to perform cremations. The Court defined the class as follows:

> All those who are or were next of kin of any decedents
> delivered for cremation to Defendant Tri-State
> Crematory from the years 1988 to 2002; all persons or
> entities who were parties to any contract with any
> Defendant regarding funeral arrangements for a decedent
> who was delivered for cremation to Defendant Tri-State
> Crematory from 1988 to 2002 whose claim is not barred
> by the applicable statute of limitations; and a subclass
> defined as the next-of-kin of decedents whose
> uncremated or otherwise desecrated remains have been
> recovered from the property of Defendant Tri-State
> Crematory or the property surrounding Defendant Tri-
> State Crematory.

215 F.R.D. 660, 701. The Court also certified a subclass of those who have had

the remains of their loved one identified among the uncremated bodies recovered

from Tri-State. Id.

The class is asserting claims against Brent Marsh, individually and

f/d/b/a Tri-State Crematory, and the Estate of Ray Marsh, individually and f/d/b/a

Tri-State Crematory, and the following non-settling funeral home defendants:

Covenant Funeral Services, Dean Lay d/b/a Cumberland Funeral Home, Erwin

Pettit Funeral Home, Family Mortuary, Robert Foster d/b/a Foster & Sons Funeral

Home, Hardwick & Sons Funeral Home, House of Overstreet Mortuary, R.D.

Moore Funeral Home, Ryan Funeral Home, Sequatchie Valley Funeral Home,

Taylor Funeral Home, Turner Funeral Home, Wann Funeral Home, SCI of

Tennessee (d/b/a Chattanooga Funeral Home — East Chapel, North Chapel,

Valley View Chapel and West Chapel), SCI of Georgia (d/b/a J. D. Hill Funeral

Home, Jennings Heritage Chapel, Kenemer Brothers Funeral Home, Fike Funeral

Home, and Parnick Jennings Funeral Home), and W.L. Wilson & Sons Funeral

Home.  The other funeral home defendants have entered partial settlement

agreements, which have achieved or are in the process of obtaining Court approval

under Fed. R. Civ. P. 23(e).

The class members' claims against these defendants, as certified for

class treatment, to be determined under Georgia law are: (1) breach of contract; (2)

negligence; (3) negligent mishandling of remains; and (4) willful interference with

remains.  215 F.R.D. at 701.

**III.   <u>STANDING</u>**

By definition, the class members have standing.  Each is the next-of-

kin and/or the contract signatory regarding the disposition services for a decedent

whose body was sent to Tri-State for cremation by a funeral home defendant

during the class period.  215 F.R.D. at 701.  Pursuant to the Court's direction,

defense and class counsel are jointly submitting the death certificates, contracts,

and cremation authorization forms for the decedents sent by the funeral home

defendants to Tri-State during the class period.  These documents and testimony of

the class members will establish standing.  The Court has jurisdiction to adjudicate

any actual judgments regarding next-of-kin statutes.

The class representatives have standing.  Carol A. Bechtel contracted

with and trusted W.L. Wilson & Sons to provide funeral related services for her

father in 1993, and for her and mother in 1995.  Paula Yockel trusted, and her

family contracted with W.L. Wilson & Sons to perform the funeral related services

for her father in 1992.  W.L. Wilson & Sons sent these remains to Tri-State for

cremation.

Thomas Conyers contracted with and trusted Franklin-Strickland

Funeral Home, which has now entered into a partial settlement agreement, to

perform his father's funeral arrangements in 2001.  In February 2002, his father's

uncremated body was identified among the bodies recovered from Tri-State.

Kathi Kelly contracted with and trusted Defendant Wann Funeral

Home to provide the disposition services for her parents when they passed away in

1997 and 1998.  Wann sent the remains to Tri-Sate.  The remains of Mrs. Kelly's

mother were identified among the uncremated remains recovered from Tri-State.

Linda Hamil contracted with and relied upon Buckner-Rush Funeral Home, which has entered into a partial settlement, to provide funeral services for her father when he died in 1998. Buckner-Rush sent his remains to Tri-State for cremation. Her father's body was among those recovered from Tri-State.

Thomas Edkins, contracted with and trusted Defendant Julian Peeples to provide the disposition services for his son in 2000. Julian Peeples, which has entered into a partial settlement, sent the remains to Tri-State.

Richard Reid contracted with and trusted Defendant Turner Funeral Home to provide the respectful disposition services for his son in 2000. Turner sent his son's remains to Tri-State.

James Shirley contracted with and relied upon Franklin Strickland Funeral Home for the disposition services for his mother's remains. Franklin Strickland, which has entered into a partial settlement agreement, sent her remains to Tri-State. The materials that Franklin Strickland returned to Mr. Shirley were, according to the G.B.I., not human cremated remains, but cement.

This Court has determined, after thorough analysis, that the named plaintiffs have standing to assert the certified claims on behalf of the class members, against all named defendants. As the Court found,

> In summary, the Court concludes that the named Plaintiffs have standing to bring claims on behalf of the class members for:
> (1) breach of contract; (2) fraudulent conduct as to the Tri-State Defendants; (3) negligence; (4) willful interference with remains and

intentional mishandling of a corpse; (5) negligent interference with remains and mishandling of a corpse; and (6) intentional infliction of emotional distress. The Court further concludes that the named Plaintiffs have standing to sue all named Defendants, including both Funeral Home Defendants and the Tri-State Defendants.

215 F.R.D. 660, 668.

## IV.   **JURISDICTION**

The Court's jurisdiction over this matter is not contested. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based on diversity in citizenship and the amount in controversy.

Class Representative Carol Bechtel is a citizen of Idaho. Class Representative Paula Yockel is a citizen of Pennsylvania. Class Representative Thomas G. Conyers is a citizen of Ohio. Class Representative Kathi Kelly is a citizen of New Hampshire. Class Representative Linda Hamil is a citizen of Kentucky. Class Representative Thomas Edkins, M.D. is a citizen of Pennsylvania. Class Representative Richard Reid is a citizen of Arkansas. Class Representative James Shirley, a citizen and resident of Nebraska.

The Marsh defendants are citizens of Georgia. The funeral home defendants are citizens of Georgia, Alabama, and Tennessee.

## V.   **TRIAL STRUCTURE**

This Court has divided the trial process into two phases: liability and damages. The common issues of law and fact relating to liability were certified for

classwide determination.  The individualized issues of damages are reserved for

adjudication in follow-up trial(s) to the extent liability is decided by the Phase I

jury in the class members' favor.  The Phase I jury will complete and return a

verdict form for each defendant, thereby protecting the defendants' due process

rights.  In re Tri-State Crematory Litigation, 215 F.R.D. 660, 685-688.

      Plaintiffs respectfully request that the Court instruct the jury, at the

outset of the trial, on the status of this action as a class action, and the phased

structure of the trial, so that they will understand the context of the proceedings

and their role as trier of fact on liability.  Plaintiffs have prepared and attached a,

"Preliminary Instruction Regarding Class Action and Trial Structure" as

Exhibit "A" hereto for the Court's consideration.

      The division of trial into class and individual phases is well

established under Rule 23.  See Mullen v. Treasure Chest Casino, 186 F.3d 620 at

628 (5th Cir. 1999), and cases discussed in the class certification decision herein,

inter alia, at 215 F.R.D. 660, 696.  This Court carefully scrutinized the issues in

this case, as presented by both sides, to determine whether the use of a two-phase

trial structure would comport with the Seventh Amendment, and concluded that,

absent any evidence of negligence on the part of plaintiffs, bifurcation of trial into

liability and damages phases would not violate the re-examination clause.  215

F.R.D. at 700: "Because Defendants have produced no evidence of negligence on

the part of Plaintiffs, the Court finds that bifurcation of this litigation does not present any Seventh Amendment problems." Id. It has been nearly one year since this finding. Discovery has since continued, and been completed. No evidence of any such plaintiffs' negligence has been adduced (and none would be expected) to disturb the basis for this ruling.

Bifurcation of class actions into common and individual phases has most recently been endorsed by Judge Easterbrook, writing for the Seventh Circuit in Allen v. International Truck and Engine Corp., ___ F.3d ___, 2004 U.S. App. LEXIS 2437 (7th Cir. Feb. 13, 2004), which reversed a district court ruling that the Seventh Amendment foreclosed class certification where individualized damages determinations would be required. In Allen, an employment discrimination case presenting a more complicated Rule 23(b)(2)/(b)(3) hybrid class situation than the straightforward 23(b)(3) class motion the Court resolved herein, the Seventh Circuit prescribed the bifurcation solution that this Court has already implemented:

> Just as in a single-person . . . suit . . . a jury will resolve common factual disputes . . . once one jury (in individual or class litigation) has resolved the factual disputes, principles of issue preclusion can bind the defendant to that outcome in future litigation consistent with the seventh amendment . . . even if some other issues, such as assessment of damages for each [plaintiff] must be handled individually.

2004 U.S. App. LEXIS 2437, **6-9.

## VI.   CLASS MEMBERS' CONTENTIONS

The class members contend that:

1. The funeral home defendants were negligent in their selection, supervision, and/or monitoring of Tri-State Crematory.

2. The funeral home defendants mishandled remains entrusted to them by the class.

3. The funeral home defendants breached their contracts with class members.

4. The funeral home defendants' acts and omissions were wanton and/or reckless.

5. Defendants Brent Marsh and Ray Marsh, individually and formerly doing business as Tri-State Crematory, were negligent in providing cremation services.

6. Defendants Brent Marsh and Ray Marsh, individually and formerly doing business as Tri-State Crematory, mishandled remains.

7. Defendants Brent Marsh and Ray Marsh, individually and formerly doing business as Tri-State Crematory, acted wantonly and/or recklessly.

8. The funeral home defendants are liable for the acts and omissions of Ray Marsh and Brent Marsh.

## VI.   LEGAL STANDARDS

### A.   Breach of Contract

During the liability phase trial, the class will demonstrate that the funeral home defendants breached enforceable agreements.  The class will establish that (1) the parties had standing to make the contract, (2) there was consideration for the contract, (3) the parties agreed to the terms of the contract and

(4) the contract concerned a lawful subject matter.  O.C.G.A. § 13-1-1.

Regarding every decedent at issue in this trial, the funeral homes agreed to provide respectful, and lawful disposition services, including cremation, and, thereby, to provide peace of mind, and certainty to the class members with whom they contracted that this had been accomplished, and their loved ones honored.  The existence and terms of these contracts will be established by documents from the defendants' own files, testimony from class members, and expert testimony from Charles Crawford and Dr. Gary Laderman.

Through proof from the investigative authorities, testimony of class members and the testimony of expert witnesses Dr. William Bass and Dr. John Williams, the class will establish that funeral home defendants breached their contracts.

The Court has determined that these liability issues:  The defendants' contractual duty, to whom it was owed, whether sending the remains to Tri-State was a breach, and whether the funeral homes were liable in content for mishandling of remains by the Tri-State Defendants, are common liability issues, to be determined in Phase One.  216 F.R.D. at 692.

**B.**     **Negligence**

The class members will demonstrate, by the preponderance of the evidence that (a) the defendants owed, "[a] legal duty to conform to a standard of

conduct raised by the law for the protection of others against unreasonable risks of harm;" (b) that the defendants committed, "a breach of this standard;" and (c) that there exists, "a legally attributable causal connection between the conduct and the resulting injury."  As to the damages phase, should these common liability issues be determined in plaintiffs' favor, they will demonstrate causation of damages:  the existence of "some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach."  Wilson v. Mallard Creek Holdings, 238 Ga. App. 746, 519 S.E.2d 925, 926 (1999).

### 1.    **Duty**

Georgia law imposes a duty owed by those hired to perform disposition services to use the utmost care and skill.  As the Georgia Court of Appeals has explained, "[T]here exists a legal duty, enforceable by the next of kin, which requires that a party contractually obligated to handle a corpse, do so non-negligently and with the utmost dignity."  Mayer v. Turner, 142 Ga. App. 63, 64, 234 S.E.2d 853 (Ga. Ct. App. 1977).  In determining what constitutes "ordinary care," the circumstances and the magnitude of the danger must be considered."  Beard v. Audio Visual Serv., Inc., 260 Ga. App. 476, 580 S.E.2d 272, 273 (2003).

In this case, the scope of the duties owed by the defendants will be established by the expert testimony of Charles Crawford and David Kirkland, as well as by the testimony of the defendants and their experts.  This proof will set

forth the actions a reasonably prudent funeral home would take in selecting and

monitoring a third-party crematory, and what steps a reasonably prudent crematory

operator would take in performing cremations.

### 2.   **Breach**

The funeral home defendants breached their duties of care in their

selection, supervision and monitoring to Tri-State.  The Marsh defendants

breached their duties of care in negligently performing cremations.  The funeral

home defendants' breaches of duty will be established by the expert testimony

from Charles Crawford, by the admissions of the defendants and their experts, and

by the testimony of lay witnesses, such as Paul Rollins and Russell Friburg, who

will testify, for instance, regarding what a funeral director would have found upon

inspecting the premises.  The defendants' breaches will further be established by

the testimony of the investigative authorities, the class members and experts

Dr. William Bass and Dr. John Williams regarding what occurred at Tri-State.

### 3.   **Proximate Cause and Foreseeability**

A proximate cause is that which puts into operation other causal

forces that are the direct consequences of the original act of negligence.  Proximate

cause may also be found where an intervening act could reasonably have been

foreseen by the original wrongdoer.  Eubanks v. Business Equip. Ctr. Of Atlanta,

Inc., 288 S.E.2d 273 (1982).

The particular consequences that occurred or the precise injuries sustained by a plaintiff need not have been foreseen by defendant. <u>Henderson v. Nolting First Mortgage Corp.</u>, 184 Ga. 724, 193 S.E. 347 (1937). "It is sufficient if, by exercise of reasonable care, the defendant might have foreseen that some injury would result from his act or omission, or that consequences of a generally injurious nature might have been expected." <u>Id.</u> at 737; <u>see also</u> <u>Smith v. Commercial Transp., Inc.</u>, 220 Ga. App. 866, 867, 740 S.E.2d 446 (Ga. Ct. App. 1996), *cert. denied,* (May 31, 1996) ("[T]he relevant inquiry is not whether the exact intervening negligent act was foreseeable, but whether, as a general matter, the original negligent actor should have anticipated that this general type of harm might result.")

In this case, the fact that harm could arise from the funeral homes' negligence in selecting and supervising Tri-State was foreseeable. This is established by the admissions of the defendants, such as, for instance, John Hargis of Wann Funeral Home, who readily admitted to knowledge of prior mishandling incidents. This is further shown by the testimony of lay witnesses such as Charles Brewer, and by expert testimony from Charles Crawford. The record will amply demonstrate a prevalence of broad public and industry attention directed to the many previous cases of crematories mishandling mass numbers of bodies. <u>See</u> <u>TGM Ashley Lakes, Inc. v. Jennings</u>, 590 S.E.2d 807, 813 (Ga. Ct. App. 2003).

The funeral home defendants have argued that the Marshes' criminal acts are the proximate cause of the class members' injuries, which broke the chain of causation between the funeral homes' negligent conduct and the injuries to the class. This rule regarding intervening criminal acts has been applied to other forms of criminal activity, but is not applicable in this case. The cases upon which the defendants rely, are premises liability cases. In those cases, Georgia courts have held that land owners cannot be liable for injuries caused by unforeseeable criminal acts of third parties. The rule might apply in this case if trespassers parachuted onto the Tri-State premises and desecrated the bodies. That might be an unforeseeable intervening criminal act that absolved the funeral home defendants of liability, assuming all due care was taken to secure the premises and prevent trespass or vandalism.

Unlike the premises liability scenario, however, the conduct of Marshes at Tri State for which criminal charges are pending was undertaken within the course and scope of the Marsh's contractual relationship with the funeral home defendants. The criminal charges arose from Marsh improper performance of precisely the job they were retained by the funeral home defendants to perform on behalf of the class members. There is no authority for application of the rule regarding criminal acts in this situation.

Furthermore, even if the rule regarding intervening criminal actions

were applicable in these circumstances, the widely recognized exception to the rule that criminal acts which were foreseeable do not break the chain of causation is equally applicable. Walker v. Sturbridge Partners, Ltd., 221 Ga. App. 36, 40, 470 S.E.2d 738 (Ga. Ct. App. 1996). As discussed above, the admission of the defendants and the testimony of Charles Crawford establishes that mishandling incidents were well known in the funeral home industry, and that other funeral home directors took measures to prevent such occurrences. The Marshes' actions were thus foreseeable, and the funeral home defendants cannot rely on the criminal nature of those actions to protect them from liability.

### 4.    **Joint and Several Liability**

Under Georgia law, if liable, the funeral homes and the Marsh defendants are jointly liable. The proximate cause of an injury may be two separate and distinct acts of negligence of different persons. Where two or more causes happen together in bringing about an injury, there can be a recovery against one or all of the responsible parties. "The mere fact that the injury would not have been sustained if only one of the acts of negligence had occurred" does not of itself prevent or limit the other act from constituting the proximate cause. Tallman v. Green, 74 Ga. App. 731, 734, 41 S.E.2d 339, 341 (1947). If all acts of negligence contributed in bringing about the injury, "they together constitute the proximate cause." Id.

C.    **Negligent Mishandling of a Corpse**

The class will establish that the defendants negligently breached, "a contract to carry out the expressed wishes of the next-of-kin regarding the disposition of that dead body." Wages v. Amisub of Georgia, 235 Ga. App. 156, 157, 508 S.E.2d 783 (Ga. Ct. App. 1998); Board of Regents v. Oglesby, 2003 WL 22746216, *5 (Ga. Ct. App. 2003).  As noted above, "there exists a legal duty, enforceable by the next of kin, which requires that a party contractually obligated to handle a corpse, do so non-negligently and with the utmost dignity." Mayer v. Turner, 142 Ga. App. 63, 64, 234 S.E.2d 853 (Ga. Ct. App. 1977).

The class members' expressed wishes for the disposition of their loved ones' remains will be established by the defendants' documents, the testimony of the class members, and the admissions of the defendants.  The breach of these obligations will be established by the testimony of the investigative authorities and expert witnesses, including Dr. William Bass and Dr. John Williams.

D.    **Willful Interference with Remains**

A claim of willful interference with remains requires malicious, willful or wanton conduct on the part of the defendant.  Bauer v. North Fulton Med. Ctr, 241 Ga. App. 568, 574, 527 S.E.2d 240 (Ga. Ct. App. 1999).  "To show willful or wanton conduct, one must demonstrate that a defendant's acts evidenced

a willful intention to inflict the injury or else were so charged with indifference to the consequences as to justify finding a wantonness equivalent in spirit to actual intent." Pyle v. Pyle, 243 Ga. App. 398, 400, 531 S.E.2d 738 (2000), *cert. denied*, (Sept. 29, 2001); see also McNeal Loftis, Inc. v. Helmey, 218 Ga. App. 628, 629, 462 S.E.2d 789 (1995). Meanwhile, "an act may be malicious, not because of personal hate or ill-will, but because of the state of mind which is reckless of law and of the legal rights of citizens." Moody v. Dykes, 269 Ga. 217, 221, n. 5, 496 S.E.2d 907 (1998).[1]

In this case, the Marsh defendants' malicious, reckless and wanton

---

[1] Wilful or malicious misconduct as described is that level of misconduct which suffices for punitive damages in all states that recognize them, and constitutes the type of "reprehensible" conduct that warrants punitive damages under prevailing Supreme Court jurisprudence. State Farm v. Campbell, 538 U.S. 408, 123 S. Ct. 1313, 1821 (2003). Because the calculation of punitive damages in a particular case depends on the harm to the plaintiff as well as the reprehensibility of the conduct itself, State Farm, 123 S. Ct. at 1522, and because state laws vary, this Court exercised its discretion not to certify punitive damages in this case. 215 F.R.D. at 679. A Phase I jury determination as to the nature of each defendant's conduct may be used in a follow-on damages trial, if otherwise appropriate, to support a punitive damages award on proper proof of plaintiffs' resulting harm and other individual factors. Although the Supreme Court recently held in Cooper Industries, Inc. v. Leatherman Tool Group, 532 U.S. 524, 121 S. Ct. 1678 (2001), that the Seventh Amendment's re-examination clause is not implicated by a punitive damages determination because the calculation of a punitive damages award is not a "fact," and hence the renewed scrutiny of defendants' conduct by subsequent juries would not be improper, the determination of the common issue of the quality of each defendant's conduct in Phase I means it would not be necessary. See Allen v. Int'l Truck and Engine, id. (bifurcation and issue preclusion).

behavior is established in this case by the testimony of the investigative authorities. The funeral home defendants' recklessness, wantonness, and utter disregard of the consequences of their actions is established by their lack of reasonable record keeping and identification procedures.  Each funeral home, moreover, either affirmatively chose to use an unlicensed crematory lacking appropriately trained personnel, or never bothered to investigate whether Tri-State was licensed, whether it employed competent, trained personnel, or whether it properly carried out cremations.  There is considerable evidence of the squalid physical dilapidation of Tri-State's premises — a place that no family or reasonably prudent funeral home director would choose for the performance of the sacred duties entrusted to the defendants.  The failures of the funeral homes are all the more egregious, wanton and reckless considering the widespread knowledge within the funeral industry of prior crematory mishandling cases.

     **E.**     <u>**The Funeral Homes' Duties Were Not Delegable**</u>

       Duties imposed by statute are not non-delegable.  O.C.G.A. § 51-2-5(4).  Under the Georgia Code, for reasons of public health and safety, *only* licensed funeral directors could arrange for, direct and have responsibility for final disposition of deceased humans, by burial or cremation.  Thus, such obligations are non-delegable.  <u>Smith v. Poteet</u>, 127 Ga. App. 735, 738, 195 S.E.2d 213 (1972) ("[S]uch services cannot be delegated or contracted to unlicensed individual,"

construing provisions relating to funeral directors in Code §§ 84-801, 84-803, 84-804, 84-809, 105-501, 105-502, subd.5).

An employer is liable for the negligence of a contractor if the wrongful act is the violation of a duty imposed by express contract upon the employer. O.C.G.A. § 51-2-5(3). The funeral home's obligations were expressly imposed by their contracts with the class members. The defendants' documents show that each funeral home expressly agreed and contracted to "take possession of" the deceased's remains, "arrange for cremation" and ensure that "the cremation, processing and disposition of the remains" would be "in accordance with all governing laws." These expressly undertaken responsibilities were not delegable, and the funeral homes remain liable for the actions of the Marsh defendants.

An employer is liable for the negligence of a contractor if, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others, however carefully performed. O.C.G.A. § 51-2-5(2). The testimony of expert witnesses, and the defendants themselves, establishes performing cremation, by its very nature, is dangerous, and that human remains present serious biohazards to the general public in the form of bacterial and viral infections that can escape with leaking bodily fluids. Thus, the funeral home's

obligations were not delegable and they remain liable for the Marsh defendants' actions.

F.   **Adverse Inference Arising From Spoliation of Evidence**

The well-established doctrine of spoliation of evidence raises a presumption that the evidence would have been harmful to the individual alleged to have destroyed, altered, or mishandled it.  Lane v. Montgomery Elevator Co., 225 Ga. App. 523, 525, 484 S.E.2d 249 (Ga. Ct. App. 1997); see also Bennett v. Assoc. Food Stores, Inc., 118 Ga. App. 711, 716, 165 S.E.2d 581 (Ga. Ct. App. 1968).  Spoliation has been defined as the failure to preserve or the destruction of necessary evidence.  Bridgestone/Firestone N. American Tire, LLC v. Campbell, 258 Ga. App. 767, 768, 574 S.E.2d 923 (Ga. Ct. App. 2002), *cert. denied,* (Feb. 24, 2003) ("Spoliation refers to the destruction or failure to preserve evidence that is necessary to contemplated or pending litigation.").

In this case, no reasonable identification documentation exists regarding the decedents entrusted to the defendants, because the Marsh defendants and the funeral homes failed to preserve this information.  This is established by the admissions of the funeral homes, and the testimony of experts such as Charles Crawford and David Kirkland.  An instruction to the jury on the adverse inferences that may be drawn from spoliation of evidence may be warranted.

G.    **Adverse Inference Arising From Pleading The Fifth Amendment**

The Marsh defendants will likely decline to answer questions at trial on the grounds of their Fifth Amendment privilege against self-incrimination.  In that circumstance, it would be appropriate to instruct the jury that it is permitted, though not required, to draw the inference that the withheld information would have been unfavorable to the party withholding it.  Simpson v. Simpson, 233 Ga. 17, 20, 209 S.E.2d 611, (1974) ("Georgia cases do not hold that it is impermissible to draw an unfavorable inference in a civil case from the privileged refusal to testify in that case.  There is considerable authority that such an inference can be drawn in civil cases."); In re Matter of Robert A. Meier, 256 Ga. 72, 73, 344 S.E.2d 212 (1986).

Dated this 24 day of February, 2004          Respectfully submitted,


LIEFF, CABRASER, HEIMANN &
BERNSTEIN, LLP
Elizabeth J. Cabraser                        McCAMY, PHILLIPS, TUGGLE &
Embarcadero Center West                      FORDHAM, LLP
275 Battery Street, 30th Floor               Robert H. Smalley, III
San Francisco, CA  94111-3339                P.O. Box 1105
Telephone:  (415) 956-1000                   Dalton, Georgia
Facsimile:  (415) 956-1008                   Telephone:  (706) 278-4499
                                             Facsimile:  (706) 278-5002

*Plaintiffs' Lead Counsel*

                                             *Plaintiffs' Liaison Counsel*


Kathryn E. Barnett                           DOFFERMYRE, SHIELDS,
Elizabeth Alexander                          CANFIELD, KNOWLES & DEVINE
3319 West End Avenue, Suite 600              Leslie Bryan
Nashville, Tennessee  37203                  Suite 1600, 1355 Peachtree Street
Telephone:  (615) 313-9000                   Atlanta, Georgia  30309
Facsimile:  (615) 313-9965

BARRETT LAW OFFICE                           SHUMAKER, WITT, GAITHER &
Charles Barrett                              WHITAKER
3319 West End Avenue, 6th Floor              William G. Colvin
Nashville, Tennessee  37203                  Suite 500, First Tennessee Building
                                             701 Market Street
                                             Chattanooga, Tennessee  37402


Charles Graddick                             Robert M. Darroch
SIMS, GRADDICK & DODSON, P.C.                MABRY & MCCLELLAND, LLP
205 St. Emanuel Street                       Tenth Floor, 2200
Mobile, Alabama  36602                       Century Parkway, N.E.
                                             Atlanta, Georgia  30345

DAVID RANDOLPH SMITH &
ASSOCIATES
David Randolph Smith
J. Allen Murphy, Jr.
1910 Acklen Avenue
Hillsboro Village
Nashville, Tennessee 37212

THE FLEISSNER FIRM
Phillip A. Fleissner
600 Georgia Avenue
Chattanooga, Tennessee 37402

COPPEDGE & LEMAN
Warren N. Coppedge, Jr.
Joseph Leman
508 s. Thornton Ave.
Dalton, GA  30720

*Plaintiffs' Steering Committee*

## Plaintiffs' Trial Brief — Exhibit "A"

## Proposed Preliminary Jury Instruction on Class Action and Trial Structure

This is a class action.  It is brought for all the next-of-kin of the decedents where remains were sent to Tri-State for cremation.  There are approximately [_____] people in the class.  In cases involving many people with similar claims, a class action enables the issues of fact that are common to the class to be decided in one trial instead of many, to save time and money, and to assure consistent results.  Earlier in the case, I decided which issues are common, and who is in the class.  I designated several individual plaintiffs to represent the class — you may see them as witnesses in this trial — and I appointed lawyers to serve as class counsel.  In doing so, I did not make any decision or reach any conclusion on the merits of the case.  I did not decide who is right on the facts, or who should prevail.  That is for you to decide in this trial.  I defined the class as follows:

> All those who are or were next of kin of any decedents delivered for cremation to Defendant Tri-State Crematory from the years 1988 to 2002; all persons or entities who were parties to any contract with any Defendant regarding funeral arrangements for a decedent who was delivered for cremation to Defendant Tri-State Crematory from 1988 to 2002 whose claim is not barred by the applicable statute of limitations; and a subclass defined as the next of kin of decedents whose uncremated or otherwise desecrated remains have been removed from the property of Defendant Tri-State Crematory or the property surrounding Defendant Tri-State.

This is a trial on liability only.  At the end of the trial, which we expect to last about _____ days, you will be given fuller instructions on the law that applies to this case, and you will decide and answer a series of questions. These relate to the liability of each defendant.

You will be not be asked to decide or award damages.  If you decide in plaintiffs' favor, one or more other juries will later determine damages, which each of the class members will have to prove.

Not all of the Funeral Homes who sent remains to Tri-State Crematory are defendants in this trial.  Some were not sued, and others have settled.  Settlements are voluntary resolutions:  they are not admissions or findings of wrongdoing.

305181.1

## PROOF OF SERVICE BY MAIL

I hereby certify that a copy of the foregoing was served by postage prepaid United States mail on the _24_ of February, 2004 addressed to those listed below:

_____
Robert H. Smalley, III

J. Anderson Davis, Esq.
Brinson, Askew, Berry, Seigler,
Richardson & Davis, LLP
PO Box 5513
Rome, GA  30162

*Funeral Home Defendants*
*Lead/Liaison Counsel*

Frank E. Jenkins, III
Jenkins & Olson, PC
15 South Public Square
Cartersville, GA 30120

McCracken K. Poston, Jr., Esq.
Attorney at Law
62 Nance Lane
PO Box 1130
Ringgold, GA  30736

291656.1