# ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:   TRI-STATE CREMATORY   :
         LITIGATION            :   MDL DOCKET NO. 1467
                               :

## FUNERAL HOMES DEFENDANTS' TRIAL BRIEF

COME NOW, the Funeral Home Defendants, collectively and individually[1],

---

[1] At this stage of the litigation the following funeral homes remain defendants in the case: Erwin Pettit Funeral Home, Inc., Bob Foster D/b/a Foster &Son Funeral Home, Cumberland Funeral Home, Inc., d/b/a/ Cumberland Funeral Home, Dean Lay Funeral Home, Gilmore Funeral Home, LLC, Hardwick & Sons Funeral Home, Inc., J. Avery Bryan Funeral Home, Inc., R. D. Moore Funeral Home, Inc., Ryan Funeral Home, Inc., SCI Georgia Funeral Services, Inc., d/b/a J.D. Hill Funeral Home, SCI Georgia Funeral Services, Inc., d/b/a Jennings Funeral Home, SCI Georgia Funeral Services, Inc., d/b/a Jennings Heritage Chapel Funeral Home, SCI Georgia Funeral Services, Inc., d/b/a Parnick Jennings Funeral Home, SCI Georgia Funeral Services, Inc., f/d/b/a Erwin Pettit Funeral Home, SCI Georgia Funeral Services, Inc., f/d/b/a J. Avery Bryan of Chickamauga, SCI Georgia Funeral Services, Inc., f/d/b/a Kenemer Brothers Funeral Home, SCI Georgia Funeral Services, Inc., f/d/b/a Wallis Stewart Funeral Home, SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home-East Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home-North Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home-Valley View Chapel, SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Home-West Chapel, SCI Tennessee Funeral Services, Inc., d/b/a Fike Funeral Home, Wallis Stewart Funeral Home, Sequatchie Valley Memorial Funeral Home & Gardens, Inc., Taylor Funeral Home of Chattanooga, Inc., Thomas and Son Funeral Home, Inc., Turner Funeral Home, Inc., Wallis-Wilbanks Funeral Home, LLC, Wann Funeral Home, Inc., and W.L. Wilson & Sons Funeral Home, Inc.

*1035*

and file this Trial Brief, reviewing Plaintiffs' claims and evidence for trial and showing the Court as follows:

## I.    Plaintiffs' Breach of Contract Claims.

According to Plaintiffs' breach of contract claim, the Funeral Home Defendants "breached their express written and oral contracts, implied contracts with and promises to the plaintiffs, the class and their decedents by improperly handling or causing the improper handling of the decedents' remains as described herein, and by failing to disclose the true nature of Tri-State's practices and procedures." Plaintiffs' Amended Complaint ¶ 118.  Plaintiffs have not identified which contract provisions were breached, but based on Plaintiffs' earlier arguments, Plaintiffs apparently are alleging that the funeral services contracts were breached because the remains at issue were not cremated or were adulterated.  Plaintiffs also allege that certain of their class members are uncertain if the contracts were fulfilled or not.

"The elements for a breach of contract claim in Georgia are merely 'the breach and the resultant damages to the party who has the right to complain about the contract being broken.'"    Odem  v. Pace Academy, 235 Ga. App. 648, 654, 510 S.E.2d 326, 331 (1998)(quoting Budget Rent-A-Car of Atlanta, Inc. v. Webb, 220 Ga. App. 278, 279, 469 S.E.2d 712, 713 (1996)).   "In order to maintain a suit on a contract, privity of contract must exist between parties to the contract.  Sofet v.

Roberts, 185 Ga. App. 451, 452, 364 S.E.2d 595, 596 (1987)(citing Stein Steel &

Supply Co. v. Goode Constr. Co., 83 Ga. App. 821, 822, 65 S.E.2d 183 (1951))."

Class Certification Order, p. 37.

In Phase I of the trial, Plaintiffs must prove that the Funeral Home Defendants

breached the funeral services contracts at issue.  Accordingly, Plaintiffs will have to

introduce all of the funeral contracts at issue and prove how they were breached.

Moreover, Plaintiffs will have to prove privity of contract exists between the parties.

The contracts themselves should show the only class members entitled to pursue a

breach of contract claim.

The Funeral Home Defendants anticipate moving for directed verdict on all

claims by Plaintiffs who do not have any direct proof their contracts were breached

but only are uncertain on the issue.  Plaintiffs are required to prove the contracts have

been  breached and how.  Uncertainty does not prove a breach of contract.

Pursuant to the Courts' Orders on the Funeral Home Defendants' summary

judgment motions, all breach of contract claims prior to February 26, 1996 are time-

barred.  Thus, the evidence presented at trial must relate only to contracts allegedly

breached from February 26, 1996 to February 15, 2002.  Accordingly, the evidence

presented as to these  breach of contract claims should be limited to that time period

and only the Funeral Homes who still have such claims pending against them.

## II.   Plaintiffs' Negligence Claims.

According to the Court's Class Certification Order, "Plaintiffs have alleged the existence of facts that may state two types of negligence claims: (1) a negligence claim based on the existence of a contract; and (2) a negligence claim based on interference with the right to burial." Order, p. 43. In their case outline in the Pretrial Order, Plaintiffs describe their negligence claims as follows:

> The class members contend that the funeral homes failed to fulfill their contractual obligations and, moreover, were negligent in selecting and in failing to supervise and monitor Tri-State Crematory adequately. In addition, the class contends that the defendants' negligent and wanton acts and omissions described above amounted to and resulted in the mishandling of the remains entrusted to them.

Pretrial Order, Attachment C, Plaintiffs' Case Outline.

In the Court's Orders on the Funeral Home Defendants' summary judgment motions, the Court found that a jury question exists concerning whether the Funeral Homes were "negligent in selecting Tri-State Crematory to perform cremations." See, e.g., Order on Summary Judgment Motion of SCI Tennessee Funeral Services, Inc. d/b/a Chattanooga Funeral Homes-East, North, West and Valley View Chapels and Fike Funeral Home ("SCI Tennessee Order"), p. 20. In affidavits in support of their summary judgment motions, the Funeral Home Defendants presented facts to show

that their funeral directors and employees did not personally mishandle remains at any time. See, e.g., Affidavit of J. Parnick Jennings, Jr. ¶ 15 ("I have never, willfully or intentionally or otherwise, interfered with human remains or mishandled a corpse, nor an I aware of any employee of Parnick Jennings has ever done so.").   Plaintiffs did not dispute these facts.  The Court has ruled that the intentional interference with remains question can be presented to the jury based on whether the Funeral Homes "should have responsibility for the actions of Tri-State Crematory in intentionally mishandling corpses and interfering with the right of burial." See, e.g., SCI Tennessee Order, p. 31.

Thus, it appears that Plaintiffs' negligence claims against the Funeral Home Defendants consist of the following two types of negligence:

(1) The Funeral Home Defendants were allegedly negligent in selecting and in failing to supervise and monitor Tri-State Crematory adequately.  This would qualify as negligence under the contract, although Plaintiffs may argue that these facts show negligent mishandling of remains. In any event, these allegations are based solely on the actions of the Funeral Home Defendants.

(2) The Funeral Home Defendants were allegedly negligent based on the actions of independent contractors Tri-State Crematory and the Marsh Defendants (collectively "Tri-State Defendants"), specifically the alleged negligent mishandling of remains by

these independent contractors. Because the Tri-State Defendants are independent contractors, the Funeral Home Defendants can be held liable for their torts only "[i]f the wrongful act is the violation of a duty imposed by express contract" upon the Funeral Home or "[i]f the wrongful act is the violation of a duty imposed by contract." See, e.g., SCI Tennessee Order, pp. 27-29.

Plaintiffs' negligence claims and the proof applicable to these claims raise a number of issues, which will be examined herein.

## A.   General Elements of Negligence

"'To state a cause of action for negligence in Georgia, the following elements are essential: '(1) A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.' Bradley Ctr., Inc. v. Wessner, 250 Ga. 199, 200, 296 S.E.2d 693, 695 (1982)(quoting Lee St. Auto Sales, Inc. v. Warren, 102 Ga. App. 345, 116 S.E.2d 243 (1960)); accord Wilson v. Mallard Creek Holdings, 238 Ga. App. 746, 747, 519 S.E.2d 925, 926 (1999)." Class Certification Order, p. 72.

In Phase I of the trial, only issues applicable to elements one and two of

Plaintiffs' negligence claims will be considered.  Specifically, a jury must consider whether the Funeral Home Defendants had a legal duty to conform to a standard of conduct raised by the law for the protection of the Plaintiffs against unreasonable risks of harm and whether the Funeral Homes  breached this standard.

A key element of a negligence claim is a party's failure to exercise ordinary care.  "[O]rdinary [care] is that degree of care which is exercised by ordinarily prudent persons under the same or similar circumstances."  O.C.G.A. § 51-1-2.  "'Exactly what constitutes 'ordinary care' varies with the circumstances and the magnitude of the danger to be guarded against.  Since it is impossible to prescribe definite rules in advance for every combination of circumstances which may arise, the details of the standard must be filled in each particular case.  But, to be negligent, the conduct must be unreasonable in light of the recognizable risk of harm.'"  Jackson v. Post Properties, Inc., 236 Ga. App. 701, 702, 513 S.E.2d 259, 262 (1999)(citations omitted).

In other words, "'the legal duty to exercise ordinary care arises from the foreseeable, unreasonable risk of harm from such conduct.  Negligence is predicated on what should be anticipated, rather than on what happened, because one is not bound to anticipate or foresee and provide against what is unlikely, remote, slightly probable, or slightly possible.'"  Hodges v. Putzel Electric Contractors, 260 Ga. App.

590, 594-595, 580 S.E.2d 243, 247-248 (2003)(quoting <u>Davis v. Blockbuster, Inc.,</u> 258 Ga. App. 677, 678-679(1), 575 S.E.2d 1 (2002)). <u>See also</u> SCI Tennessee Order, p. 19.

As to the negligence claims based on the actions of the Tri-State Defendants, the liability analysis also requires a determination whether the actions of Tri-State were unforeseeable and were intervening criminal acts. "Where the intervening criminal acts of third parties are unforeseeable, they will not give rise to liability." <u>Bradley Ctr., Inc.,</u> 250 Ga. at 202, 296 S.E.2d at 696. "'The general rule that the intervening criminal act of a third person will insulate a defendant from liability for an original act of negligence does not apply when it is alleged that the defendant had reason to anticipate the criminal act.'" <u>Id.,</u> 250 Ga. at 202-203, 296 S.E.2d at 696 (quoting <u>Atlantic Coast Line R. Co. v. Godard,</u> 211 Ga. 373, 377, 86 S.E.2d 311 (1955)). The issues of foreseeability and intervening criminal acts will be examined in more detail under separate headings herein.

Plaintiffs have the burden of proof as to the elements of their negligence claims.

> No matter how innocent the plaintiff may be, he is not entitled to recover unless the defendant did something that it should not have done, or failed to do something that it should have done pursuant to the duty owed to the plaintiff. For these reasons, the mere occurrence of an unfortunate event is not sufficient to authorize an inference of

> negligence. A plaintiff must come forward with specific facts establishing a breach of duty, as well as the other elements of negligence, and may not rest upon generalized allegations.

Hodges, 260 Ga. App. at 594-595, 580 S.E.2d at 247-248 (quoting Davis v.

Blockbuster, Inc., 258 Ga. App. 677, 678-679(1), 575 S.E.2d 1 (2002)).

It appears that to show the standard of care and any alleged breach of this

standard by the Funeral Home Defendants and the Tri-State Defendants, the Plaintiffs

will rely on the testimony of individuals such as Charles Crawford as to the standard

of care of crematory operators and funeral directors.

> The law imposes upon persons performing engineering and other professional and skilled services the obligation to exercise a reasonable degree of care, skill and ability, which generally is taken and considered to be such a degree of care and skill, as under similar conditions and like surrounding circumstances, is ordinarily employed by their respective professions. This standard of care properly is the subject of expert opinion.

Marquis Towers, Inc. v. Highland Group, 2004 WL 178596 (Ga. App. Jan. 30, 2004)

at *2.

Now the separate negligence claims against the Funeral Home Defendants and

the applicable legal and evidentiary issues will be examined.

**B.    Plaintiffs' Negligence Claims Against
Funeral Home Defendants Only**

As already discussed, this negligence claim is based solely on the actions of the

individual funeral home defendants. Presumably Plaintiffs will argue that the Funeral Home Defendants breached the standard of care because they used Tri-State Crematory, allegedly an unlicensed crematory, and failed to monitor the cremation activities of Tri-State which allegedly failed to meet the standard of care for a crematory operating in Georgia during that time period. Under these allegations, the Funeral Home Defendants allegedly breached the standard of care when they retained Tri-State Crematory to perform cremations. Of course, based on the Cremation Authorization forms, the Plaintiffs knew that Tri-State Crematory was the facility being used for the cremations.

These allegations bring up several legal and evidentiary issues impacted by the Court's ruling on the statute of limitations. Although the Funeral Home Defendants do not agree with the Court on this issue and are reserving their rights to challenge the issue, if necessary, the Funeral Home Defendants will not reiterate their arguments in this Trial Brief. Instead, this Trial Brief must examine how the Court's statute of limitations ruling affects the legal and evidentiary issues that will arise at trial.

In its Order filed February 10, 2004, the Court ruled as follows:

> In this case, however, the Court is not applying the discovery rule to Plaintiffs' tort claims. Specifically, the Court is not finding that Plaintiffs' injuries occurred at the time Plaintiffs' decedents arrived at Tri-State Crematory,

10

> and that Plaintiffs simply did not discover those injuries until law enforcement officers began to find uncremated bodies at Tri-State Crematory.  Instead, the Court is concluding that Plaintiffs' injuries themselves did not occur until the discovery of the uncremated bodies at Tri-State Crematory on February 15, 2002.  Plaintiffs' tort claims thus did not accrue until that date.

Order, p. 6.  See also Order, p. 5 ("[T]he next-of-kin sustained no injury until the discoveries at Tri-State Crematory on February 15, 2002.  The next-of-kin therefore could not have maintained their claims to a successful result until that date.").

The claims against the Funeral Home Defendants alone appear to be based on their alleged breach of duty in using Tri-State at all.  This alleged breach of duty would have arisen at the time the Funeral Home Defendants retained Tri-State to handle the cremation and when the Plaintiffs paid for this cremation.  If no breach of duty occurred at that time and the Plaintiffs were not damaged by paying for this cremation, the Funeral Home Defendants contend that the Plaintiffs have failed to state a cause of action against them alone.

Georgia courts have held that for a negligence claim, the breach of duty triggers the claim, not when the extent of the resulting injury is discovered.

> It is true that a personal-injury action based upon negligence has a two-year statute of limitation, and there are holdings that the statute of limitation begins to run from the breach of duty and not when the extent of the resulting injury is ascertained. Lavender v. Spetalnick, 161 Ga. App. 75, 76, 289 S.E.2d 291 (1982).  However, it has

11

> also been held that a continuing tort cause of action does
> not accrue so as to cause the statute of limitation to run
> until the plaintiff discovers, or with reasonable diligence
> should have discovered, both the injury and cause thereof.
> King v. Seitzingers, Inc., 160 Ga. App. 318, 287 S.E.2d
> 252 (1981) and cits.

McAuley v. Wills, 251 Ga. 3, 4, 303 S.E.2d 258, 259 (1983).

The first Georgia case to find that a breach of duty is the trigger for a

negligence statute of limitations is Mobley v. Murray Co., 178 Ga. 388, 173 S.E. 680

(1934). In that case, the Georgia Supreme Court found that "the true test to determine

when the cause of action accrued is 'to ascertain the time when the plaintiff could

first have maintained his action to a successful result.'" Id., 178 Ga. at 388, 173 S.E.

at 680 (quoting C.J. 810 § 153). The Mobley Court goes on to hold that a "right of

action has its inception from the time when there has been a breach of duty which

would entitle the injured party to file a suit, without regard to whether any actual

damage has in fact resulted." Id., 173 S.E. at 683. Moreover, "'[i]n an action for

negligence or unskillfulness, the statute of limitations commences to run from the

time the negligence or unskillful act was committed and plaintiff's ignorance of the

negligence or unskillfulness cannot affect the bar of the statute." Id., 173 Ga. at 388,

173 S.E. at 680 (syllabus by the Court). A number of Courts applying Georgia law

have cited the Mobley Court's holding as support for their decisions. See Jankowki

v. Taylor, Bishop & Lee, 246 Ga. 804, 273 S.E.2d 16 (1980)(physical precedent

12

only)(legal malpractice claim); <u>Shapiro v. Southern Can Co.</u>, 185 Ga. App. 677, 365

S.E.2d 518 (1988)(fraud claim); <u>Cleveland Lumber Co. v. Proctor & Schwartz, Inc.</u>,

397 F. Supp. 1088 (N.D. Ga. 1975)(negligent design or manufacture claims).

Certain of the cases citing the <u>Mobley</u> decision reconcile cases where the

personal injury did not occur until later.   For example, in <u>Cheney v. Syntex</u>

<u>Laboratories, Inc.</u>, 277 F. Supp. 386 (N.D. Ga. 1967), the Court found that plaintiff's

statute of limitations began to run when she ingested the medicinal compound

negligently manufactured and distributed by defendant.   The Court then stated as

follows:

> In seeking to avoid this result, plaintiff cites <u>Chitty v. Horne-Wilson, Inc.</u>, 92 Ga. App. 716, 89 S.E.2d 816 to the effect that the cause of action could not have arisen, and consequently the statute of limitations could not have begun to run, until the injury was sustained; and by arguing that the only injury complained of (pulmonary embolism) was not suffered until April 26[th], plaintiff urges that the statute could not commence to run until that date.
>
> The Chitty case involved injuries from a furnace explosion and, so far as the court can determine, was properly decided on its facts.   In that case the statute could not start to run until the day of the explosion because, until it exploded, plaintiff had suffered no injuries whatsoever, and consequently had no damages to sue for, nominal or otherwise.   Here, however, despite the fact that plaintiff sues only for the embolism which occurred on April 26[th], she affirmatively alleged injuries resulting from the same negligence and for which damages might have been recovered as early as April 20[th].

13

Id., 277 F. Supp. at 387-388. See also Wellston Co. v. Sam N. Hodges, Jr. & Co., 114

Ga. App. 424, 151 S.E.2d 481 (1966)(In a situation where the defendant's act did not

constitute a breach of any legal duty owed to the plaintiff and was not in and of itself

a legal injury against the plaintiff, the "plaintiff's right of action did not, and could

not accrue until the resulting damage actually occurred.").

In this case, as the Court has concluded, Plaintiffs did not suffer any injuries

until the uncremated remains were discovered on the Tri-State Crematory

property. Further, they could not have maintained their actions to a successful

result until then. February Order, p. 5. Thus, the Funeral Home Defendants did

not breach any duty or cause Plaintiffs any legal injury in simply selecting and

failing to monitor Tri-State Crematory and the Marsh Defendants, independent of

any actions by the Tri-State Defendants. This conclusion is supported by the

following analysis as to when a breach of duty constitutes a legal injury:

> The test to be applied in determining when the statute of
> limitations begins to run against an action sounding in tort
> is in whether the act causing the damage is in and of itself
> an invasion of some right of the plaintiff, and thus
> **constitutes a legal injury and gives rise to a cause of
> action**. If the act is of itself not unlawful in this sense, and
> a recovery is sought only on account of damage
> subsequently accruing from and consequent upon the act,
> the cause of action accrues and the statute begins to run
> only when the damage is sustained; but if the act causing
> such subsequent damage is of itself unlawful in the sense
> that it constitutes a legal injury to the plaintiff, and is thus

14

> a completed wrong, the cause of action accrues and the statute begins to run from the time the act is committed however slight the actual damage then may be.

Barrett v. Jackson, 44 Ga. App. 611, 162 S.E. 308, 309 (1932). See also Risner v. R.L. Daniell & Assocs. P.C., 231 Ga. App. 750, 752-753, 500 S.E.2d 634, 636 (1998)(same quote); Mears v. Gulfstream Aerospace Corp., 225 Ga. App. 636, 638, 484 S.E.2d 659, 663 (1997)(same quote); Fraser v. Atlanta Title & Trust Co., 66 Ga. App. 630, 19 S.E.2d 38, 39 (1942)(same quote).

Moreover, as the Court has concluded, Plaintiffs were not damaged by these alleged breaches of duty by the Funeral Homes or they would seek damages, whether nominal or pursuant to payments under the contract. See Everhart v. Rich's, Inc., 229 Ga. 798, 798 194 S.E.2d 425, 426 (1972)("The breach of a duty to warn occurs at the time of the sale and delivery of the goods, and the statute of limitation with respect to that breach begins to run at that time. However, on a tort claim for personal injury the statute of limitations begins to run at the time the tortious act and damage therefrom occur.")(syllabus by the Court). Thus, at the start of trial, the Funeral Homes will seek dismissal of Plaintiffs' negligence claims based only on the activities of the Funeral Home Defendants.

### 1. Licensing of Tri-State

In all likelihood, Plaintiffs will contend that the Funeral Home Defendants

breached the applicable standard of care by using an unlicensed crematory, Tri-State

Crematory. The Funeral Home Defendants contend that there was no requirement

under Georgia law from 1988 to 2002 that crematories be licensed. In the Hearing

on February 19, 2004 on motions in limine, the Court ruled as follows:

> The Court denies that motion [prohibiting counsel from
> speaking of the unlicensed crematory], and whether or not
> a funeral - the crematory was licensed may well go the
> issue of negligence and the standard of care required of −
> well, go the standard of care required of the Defendant
> Funeral Homes. I've already spoken to you about the fact
> the Court does not at this point consider the lack of
> licensing to be negligence per se on the part of operators of
> the crematory.

Hearing Transcript, p. 40.

At trial, Plaintiffs will probably argue that the Funeral Homes' use of an

unlicensed crematory breached the standard of care, causing Plaintiffs' legal injury,

but if Georgia law did not require crematories or, specifically, Tri-State to be

licensed, there cannot be any violation of the standard of care. Thus, there is still the

following unanswered question: did Georgia law require Tri-State to be licensed and,

if so when. This question is a matter of statutory construction and an issue for the

Court. Accordingly, the Funeral Home Defendants will review the arguments on the

issue.

In 1990, the Georgia General Assembly extensively revised the statutory

provisions relating to funeral directors and embalmers.  For the first time, the statutory provisions reference cremations.  For example, the statute defined "crematory" as "a place that is owned by a funeral director or funeral establishment where cremation is performed and which is open to the public." O.C.G.A. § 43-18-1(6)(1990 version).  Also added was a provision regarding licensing for certain crematories:

> (a)  It shall be unlawful for any person, firm, corporation, or association to operate a crematory without first obtaining a license from the board in accordance with this article. The crematory must be at a specific address or location and must have the following minimum equipment, facilities, and personnel:
>
> > (1)  A room with seating for a minimum of 30 people in which funeral services may be conducted;
> >
> > (2)  A display room containing an adequate supply of urns;
> >
> > (3)  Rolling stock consisting of at least one operable motor hearse either owned or leased by said firm with current Georgia registration;
> >
> > (4)  At least one operable retort for cremation; and
> >
> > (5)  At least one church truck.

O.C.G.A. § 43-18-72(a)(1990 version).  At that time, in 1990, only three crematories operated in Georgia.  Deposition of John Massey ("Massey Depo."), pp. 150-151.

Two years later, in 1992, a provision was added to O.C.G.A. § 43-18-72, which

stated as follows:

> (g)   Notwithstanding any other provision of this
> chapter to the contrary, no person operating a
> crematory on January 1, 1992, shall be
> required until July 1, 1994 to obtain a license
> from the board to operate such crematory.

O.C.G.A. § 43-18-72(g).   Thus, under the plain language of this provision, a

crematory, such as Tri-State, operating on January 1, 1992, would not be subject to

any licensing provision, if at all, until July 1, 1994.  See State v. English, 276 Ga.

343, 348, 578 S.E.2d 413, 418 (2003)("This Court is to construe the statute to give

sensible and intelligent effect to all of its provisions and to refrain from any

interpretation which renders any part of the statute meaningless.").

Also, in 1992, the General Assembly added the following provision:

> It shall be unlawful for any person to incinerate or cremate
> a dead body or parts thereof provided, however, that the
> provisions of this subsection shall not apply to a crematory
> licensed by the State Board of Funeral Service pursuant to
> Chapter 18, Title 43 or to a hospital, clinic, laboratory, or
> other facility authorized by the Department of Human
> Resources and in a manner approved by the Commissioner
> of Human Resources.   A person who violates the
> provisions of subsection (a) of this code shall be guilty of
> a misdemeanor.

O.C.G.A. § 31-25-5(a).

Plaintiffs propose that this Court ignore O.C.G.A. § 43-18-72(g), which stated

18

that no crematory operating in January 1, 1992 had to worry about licensing until July

1, 1994 and just focus on O.C.G.A. § 31-25-5(a). These provisions, which were

implemented in the same year, must be read together. "Under the established rules

of statutory construction, we cannot ignore the clear language of either statute.

Statutes in pari materia must be construed together and harmonized, if possible, so

as to ascertain and give effect to the legislative intent." In Interest of C.P., 217 Ga.

App. 505, 506, 458 S.E.2d 166, 168 (1995). See also Lawson v. State, 224 Ga. App.

645, 647, 481 S.E.2d 856, 860 (1997)("Under the rules of statutory construction, we

must construe all related statutes together, give meaning to each part of the statute,

and avoid constructions which result in surplusage and meaningless language.").

Accordingly, under its terms, O.C.G.A. § 31-25-5(a) defers to the Funeral Service

Board or the Department of Human Resources  regarding whether a crematory or

facility is permitted to cremate remains. Moreover, there is no evidence that Tri-State

was ever sanctioned under O.C.G.A. § 31-25-5(a). The statute places the burden on

the Georgia officials to punish facilities which are operating illegally.

After July 1, 1994, Tri-State did not obtain any license. The Georgia Board of

Funeral Service, although aware of Tri-State's operations and unlicensed status after

1994, did not stop Tri-State from cremating bodies. Massey Depo., pp. 15, 88-89,

165. John Massey, an inspector of the Georgia Board of Funeral Services, testified

that Tri-State did not fit the definition of a crematory because it was not owned by a funeral director and was not open to the public.  Massey Depo., pp. 24, 66, 114.

Under Georgia law, "[i]t is a 'well settled principle that public officials shall be presumed to have performed their duties and acted in good faith unless clearly proven otherwise.'" Narramore v. The State, 181 Ga. App. 254, 255, 351 S.E.2d 643, 644 (1986)(quoting Richmond County Hosp. Auth. v. Richmond County, 255 Ga. 183, 192, 336 S.E.2d 562, 569 (1985)).  In other words, "[u]nless the contrary appears, it is presumed that a public official performs his duties in a proper manner." Scott v. DeKalb County Hospital Auth., 169 Ga. App. 257, 258, 312 S.E.2d 154, 155 (1983).  Although the Georgia State Board of Funeral Service was aware Tri-State was operating without a license, the Board did not close Tri-State Crematory.  Either the Board concluded that Tri-State was de facto licensed or that Tri-State was not required to have a license.  In any event, the operations of Tri-State fell under the Board's jurisdiction, and the Board, by allowing Tri-State to operate, gave its tacit approval for Tri-State to perform cremations.

There is no evidence that the Board or any of its agents, servants, employees, or officers failed to carry out any duties or responsibilities any of them had regarding the Marsh Defendants, their licensing, or the operation of the crematory.  The operation of the crematory, with or without a license, was a subject matter within the

20

jurisdiction of the Board. To date there has been no determination by any court or agency of competent jurisdiction declaring any action or inaction on the part of the Board with respect to the Marsh Defendants to be invalid, improper, and/or unlawful. Additionally, the trial of the subject case is neither the proper nor permitted forum for challenging the actions of the Board with respect to the Marsh Defendants. Thus, there being no proof to the contrary existing, the actions by the Board regarding the Marsh Defendants, their licensing, and the operation of the crematory must be accepted by the Court as valid, lawful, and proper, and the attempt to introduce evidence by the Plaintiffs in an effort to now collaterally attack the Board's actions should not be permitted. Therefore, the Funeral Home Defendants contend and the law requires the conclusion that under Georgia law from 1988 to 2002 there was no requirement that the crematory was required to be licensed and that it was lawfully permitted by the Board to operate without a license.

### 2.    Evidence From Funeral Home Defendants Who Have Settled

In the hearing on February 19, 2004, the Court denied the Funeral Home Defendants' Motion in Limine to exclude evidence regarding settling Funeral Homes. The Court pointed out that this evidence may be relevant to the Plaintiffs' claims against Tri-State Crematory and the Marsh Defendants. Hearing Transcript, pp. 41-

42. The Funeral Home Defendants have filed a Motion to Dismiss Without Prejudice the cross claims against the Marsh Defendants.  To the extent evidence regarding Tri-State and the Marshes and their failure to perform for the Plaintiffs is presented to prove any claims against unrelated Funeral Home Defendants, these Defendants anticipate objecting to such testimony on grounds of relevancy or seeking to limit this testimony.

The Funeral Home Defendants are not attempting to preclude Plaintiff class members from testifying regarding the allegations against the Marsh Defendants and Tri-State Crematory.  The Funeral Home Defendants are entirely cognizant that such claims by various class members survive any settlement with any Funeral Home. However, Plaintiffs[2] should be prohibited from introducing any evidence from any class members regarding their own allegations against any particular Funeral Home with whom they have already settled.  Their claims of alleged mishandling, deviation from the applicable standard of care, and breach of contract are now rendered moot by virtue of their settlement with that particular Funeral Home.  Indeed, due to the settlement between Plaintiffs and a settled Funeral Home, the claims of those class members against that Funeral Home no longer exist.   Plaintiffs should be limited to

_____

[2] The same argument applies to the Marsh Defendants, should they attempt to use this evidence.

introducing only evidence of "surviving" Plaintiffs against remaining Funeral Home Defendants.

In the same vein, Plaintiffs should also be prohibited from introducing any evidence regarding a settled Funeral Home's relationship with Tri-State, the Home's relationship with the decedent and respective next of kin, and the standard of care and actions of such settled Funeral Homes. If a Funeral Home has settled with Plaintiff class members, evidence of that Funeral Home's conduct insofar as Tri-State and the Marsh family is concerned, as well the Funeral Home's standard of care in general, is no longer of importance or relevant to any aspect of the upcoming trial. Plaintiffs claim that such evidence is relevant and admissible, including the number of decedents settled Funeral Homes sent to Tri-State over the years and the identification procedures of such settling Funeral Homes. Plaintiffs have offered no coherent, recognizable explanation for the use of such evidence in connection with the Marsh and Tri-State Defendants beyond simply stating such evidence is "relevant." Clearly, the Plaintiffs are simply planning on utilizing evidence from settled Funeral Homes to boot-strap their allegations against the remaining Funeral Home Defendants by suggesting that if one, settled Funeral Home Defendant had a large number of decedents sent to Tri-State without the alleged proper identification, the rest of the Funeral Home Defendants at trial did as well. This type of evidence is prejudicial to

the remaining Funeral Home Defendants standing trial - particularly those which only sent bodies prior to 1997 - and will confuse the jury, and delay and lengthen the trial unnecessarily.

Incredulously, Plaintiffs claim that evidence from the settling Funeral Homes regarding the "condition of the Tri-State premises" and the "manner in which the Marsh Defendants transacted business" is relevant to whether the *remaining* Funeral Home Defendants met the standard of care in selecting, monitoring, and supervising Tri-State. As this Court has made clear on many occasions, the Funeral Home Defendants *are not a Defendants' class* - at least one class member must prove the allegations against each and every Funeral Home Defendant. The Plaintiffs must make out their allegations of mishandling, deviation from the applicable standard of care and their remaining tort claims against every single Funeral Home Defendant at trial. Plaintiffs cannot be permitted to prove their case against each and every Funeral Home Defendant by using broad, brush strokes in the form of generalized evidence and evidence pertaining to unrelated, settled Funeral Home Defendants. Each and every Funeral Home Defendant - both remaining and settled - have unique circumstances. Each had a different time period in which they utilized the services of Tri-State Crematory, the number of decedents each home sent to the crematory, the unique relationships each home had with Ray and/or Brent Marsh, and their

transportation and identification procedures. Each Funeral Home Defendant was on the premises of Tri-State Crematory at different times and for different occasions. None of the Funeral Home Defendants which have settled with Plaintiffs are qualified to provide testimony regarding the standard of care that applied to the remaining Funeral Home Defendants. Additionally, none of the Funeral Home Defendants which have settled can offer testimony regarding the practices or procedures of the remaining Funeral Home Defendants. Plaintiffs have not alleged nor produced any evidence of any conspiracy within the Funeral Home Defendants sufficient to allow the settled funeral homes to testify regarding the actions and practices of the remaining Funeral Home Defendants.

Contrary to Plaintiffs' belief, the condition of the Tri-State premises from the perspective of settled Funeral Home representatives is irrelevant to the specific proof Plaintiffs must establish regarding each and every Funeral Home Defendant at trial. Furthermore, evidence pertaining to the manner in which the Marsh Defendants transacted business with a *settled Funeral Home* is completely irrelevant to the issue of whether any *remaining* Funeral Home met the standard of care in selecting, monitoring and supervising Tri-State. Again, Plaintiffs must establish that each and every Funeral Home at trial departed from the standard of care in selecting, monitoring and supervising Tri-State; whether or not settled Funeral Homes departed

from this standard of care is completely irrelevant, and is a separate and distinct question apart from the actions and alleged omissions of the rest of the Funeral Home Defendants. Even more problematic is the time associated with the introduction of such unnecessary evidence - evidence from settled Funeral Homes would only confuse the issues for the jury, delay the trial, and prejudice the Funeral Home Defendants who are actually standing trial.

C.    **Plaintiffs' Negligence Claims Against Funeral Home Defendants Based on the Alleged Actions of the Tri-State Defendants**

Pursuant to this negligence claim, Plaintiffs will attempt to hold the Funeral Home Defendants liable for the actions of the Tri-State Defendants. Plaintiffs allege that the Tri-State Defendants negligently mishandled remains sent there for cremation by, for example, failing to cremate the remains and returning adulterated remains.

The Court has already ruled that the Tri-State Defendants were independent contractors, not agents, of the Funeral Home Defendants. See, e.g., SCI Tennessee Order, p. 27; Order on Funeral Home Defendants' Motion for Reconsideration, filed January 7, 2004, p. 5 ("In its December 19, 2003, Orders, the Court clearly found that Tri-State Crematory was an independent contractor, rather than an agent, of Funeral Home Defendants. This ruling applies to all of Plaintiffs' claims.").

"As a general rule an employer is not liable for the torts of an independent

26

contractor. O.C.G.A. § 51-2-4." <u>Widner v. Brookins, Inc.</u>, 236 Ga. App. 563, 564, 512 S.E.2d 405, 406 (1999). Pursuant to O.C.G.A. § 51-2-5, the Court has found that the Funeral Home Defendants may be liable for the negligence of the Tri-State Defendants, even though independent contractors, in the following two specific situations:

> An employer is liable for the negligence of a contractor:
>
> (3)   If the wrongful act is the violation of a duty imposed by express contract upon the employer; [or]
>
> (4)   If the wrongful act is the violation of a duty imposed by statute.

O.C.G.A. § 51-2-5 (3) and (4). Each of these situations will be examined herein.

**1.     Violation of a Duty Imposed by Express Contract**

In <u>Toys 'R' Us, Inc. v. Atlanta Economic Dev. Corp.</u>, 195 Ga. App. 195, 196, 393 S.E.2d 44, 47 (1990), the Georgia Court of Appeals found that O.C.G.A. § 51-2-5(3) requires "an express obligation by the employer to be responsible for the independent contractor's conduct." "Also, the cases which have construed the statutory exception in the Georgia Code above cited have emphasized the word 'express' and the necessity that such contractual obligation be placed upon the particular employer as opposed to any independent contractor." <u>Fields v. B&B Pipeline Co.</u>, 147 Ga. App. 875, 876-877, 250 S.E.2d 582, 583 (1978)(citations

omitted).  See also Faubion .v Piedmont Engineering & Constr. Corp., 178 Ga. App.

256, 259, 342 S.E.2d 718, 720 (1986)("[A]bsent an express contractual duty,

Piedmont cannot be held liable for damage caused by the collateral torts of

independent contractors.").

At trial, Plaintiffs will have to identify provisions in the funeral services

contracts at issue which provide for "an express obligation" by each Funeral Home

to be responsible for the conduct of the Tri-State Defendants.  Then the jury will

decide if such "an express obligation" exists.

### 2.    Violation of a Duty Imposed by Statute

Under O.C.G.A. § 51-2-5 (4), any statutory duty at issue must be clearly stated.

For example, a nondelegable duty of the owner or occupier of land to an invitee is

created in O.C.G.A. § 51-3-1 which provides as follows:

> Where an owner or occupier of land, by express or implied
> invitation, induces or leads others to come upon his
> premises for any lawful purpose, he is liable in damages to
> such persons for injuries caused by his failure to exercise
> ordinary care in keeping the premises and approaches safe.

See FPI Atlanta, L.P. v. Seaton, 240 Ga. App. 880, 886, 524 S.E.2d 524, 530 (1999)

("O.C.G.A. § 51-3-1 imposes a personal nondelegable duty upon the landlord to keep

the premises and approaches safe when it retains possession and control."); see also

Perry v. Soil Remediation, Inc., 221 Ga. App. 386, 389, 471 S.E.2d 320,

322(1996)(Statutory duty to transport waste found in regulation stating that "owner or occupant of any premises . . . *shall be responsible* for the collection and transportation of all solid waste accumulated at the premises.")(emphasis added).

Plaintiffs have not identified the statutes at issue for this question. In its Summary Judgment Orders, however, the Court found that "[o]ne of the duties includes an obligation to ensure that bodies are labeled and tagged properly. O.C.G.A. § 43-18-8." See, e.g., SCI Tennessee Order, p. 29. "The evidence in this case, viewed in the light most favorable to Plaintiffs, indicated that bodies and remains were not tagged properly at the Tri-State Crematory. Under those circumstances, a genuine dispute exists concerning whether Defendant SCI Tennessee may have liability for the wrongful acts of Tri-State Crematory." Id. The statute referenced by the Court was enacted in 1995. Therefore, the Funeral Home Defendants maintain that it would not apply to claims prior to 1995. As for claims after 1995, the jury will have to decide whether the statute imposes a duty on the Funeral Home Defendants, making them liable for the actions of the Tri-State Defendants in allegedly failing to properly tag the remains.

### 3.    Foreseeability of Tri-State Defendants' Actions

The standard applied to whether actions of the Tri-State Defendants were foreseeable is a subjective standard, not an objective one. For example, in Griffin v.

Fowler, 260 Ga. App. 443, 579 S.E.2d 848 (2003), an attorney was accused of a breach of his fiduciary duty to his client for, among other things, failing to warn the client of his concerns about the appointment of a particular trustee to handle certain estate trusts. The court held that, even in a case involving the heightened obligation of a lawyer to his client, i.e., a fiduciary relationship, foreseeability is still an essential for liability to attach. The court noted that "there [was] no evidence in the record demonstrating [the lawyer's] awareness of any facts that would lead him to conclude that [the trustee] was untrustworthy." Id., 260 Ga. App. at 448; 579 S.E.2d at 852. Indeed, the court found that, even in the face of the *lawyer's suspicions about the trustee*, the lawyer could not be held liable for the trustee's "intervening act of making an unauthorized withdrawal from [the plaintiff's] trust." Id., 260 Ga. App. at 449; 579 S.E.2d at 852. See also Stegall v. Central Georgia Electric Membership Corp., 221 Ga. App. 187, 191, 470 S.E.2d 782, 786 (1996)("The acts and statements of third parties which resulted in the breaker being turned on over two months later by a person or persons other than an agent of EMC constituted an intervening act that, as a matter of law, was not foreseeable to EMC particularly in view of the detailed warning given Michelle Stegall by Yost.").

Moreover, the incident causing harm must be probable, not totally unexpected.

"'(A) wrongdoer is not responsible for a consequence

> which is merely possible, according to occasional
> experience, but only for a consequence which is probable,
> according to ordinary and usual experience. The natural
> and probable consequences are those which human
> foresight can foresee, because they happen so frequently
> that they may be expected to happen again. The possible
> consequences are those which happen so infrequently that
> they are not expected to happen again. *A man's
> responsibility for his negligence must end somewhere.*'
> [Cit.] (Emphasis supplied) Rustin Stamp etc. v. Ray Bros.,
> 175 Ga. App. 30, 31-32 (1), 332 S.E.2d 341 (1985)."

Jacobs v. Taylor, 190 Ga. App. 520, 525-26, 379 S.E.2d 563, 567 (1989) (emphasis in original).

The same analysis applies to determine whether a criminal act is foreseeable. For example, a fraternity would be liable for an attack on a visitor if the fraternity had reason to anticipate the misconduct of the guest inflicting the injury but nevertheless failed to exercise ordinary care to prevent the attack. Thus, the plaintiff was required to present evidence that the attack on plaintiff was foreseeable to the fraternity. See Rigdon v. Kappa Alpha Fraternity, 256 Ga. App. 499, 568 S.E.2d 790 (2002).

In Davis v. Blockbuster, Inc., 258 Ga. App. 677, 575 S.E.2d 1 (2002), the Georgia Court of Appeals ruled that Blockbuster, Inc. could not have reasonably foreseen that a third party would record pornographic content on a children's video. The Court of Appeals upheld the trial court's order which stated as follows:

> Plaintiffs have neither offered nor presented before this

> Court any evidence whatsoever that this type of criminal action could have been reasonably anticipated by the Defendant. On the contrary the only evidence before the Court is that Defendant had no reason to know, believe, or suspect that the content or subject matter contained on the Video was anything other than the movie that was identified on the label of the Video.

Id., 258 Ga. App. at 679-680, 575 S.E.2d at 3.

In Aldridge v. Tillman, 237 Ga. App. 600, 516 S.E.2d 303 (1999), the Georgia

Court of Appeals provides a detailed analysis of when a criminal act is foreseeable.

> A criminal act by a third party may be foreseeable if the incident causing the injury is

>> substantially similar in type to previous criminal activities occurring on or near the premises at issue so that a reasonable owner or occupier of those premises would take ordinary precautions to protect his or her [guest] against the risk imposed by that type of activity [because the risk of harm is reasonably foreseeable from such prior acts]. [Cits.]

> Doe v. Briargate Apts., supra, 227 Ga. App. at 409, 489 S.E.2d 170. For a criminal act to be substantially similar, it does not have to be identical. However, the prior crimes "should have put an ordinarily prudent person on notice that [Aldridge was] facing increased risks." Matt v. Days Inns of America, supra, 212 Ga. App. at 794, 443 S.E.2d 290. "All that is required is that the prior incident be sufficient to attract [Mrs. Tillman's] attention to the dangerous condition which resulted in the litigated incident." (Citation and punctuation omitted.) Id. at 794-

795, 443 S.E.2d 290.

> The test is whether the prior criminal activity was sufficiently and substantially similar to demonstrate [Mrs. Tillman's] knowledge that conditions on [her] property subjected [Aldridge] to unreasonable risk of criminal attack so that [Mrs. Tillman] had reasonable grounds to apprehend that the present criminal act was foreseeable.

> (Citations and punctuation omitted.) Millan v. Residence Inn by Marriott, supra, 226 Ga. App. at 828, 487 S.E.2d 431.

Id., 237 Ga. App. at 604, 516 S.E.2d at 308 (1999).

Another case, Woodall v. Rivermont Apts. Ltd. Partnership, 239 Ga. App. 36, 37-38, 520 S.E.2d 741, 743 (1999), also discusses the foreseeability of criminal acts in the landlord tenant context.

> In determining whether previous criminal acts are substantially similar to the occurrence causing harm, thereby establishing the foreseeability of risk, the court must inquire into the location, nature and extent of the prior criminal activities and their likeness, proximity or other relationship to the crime in question. While the prior criminal activity must be substantially similar to the particular crime in question, that does not mean identical. What is required is that the prior incident be sufficient to attract the landlord's attention to the dangerous condition which resulted in the litigated incident.

Id.

Any intervening criminal acts of the Tri-State Defendants would insulate the

Funeral Home Defendants from liability if the criminal acts were not foreseeable:

> "[G]enerally an intervening criminal act by a third party
> insulates a proprietor from liability, but even an
> independent criminal act could render the proprietor liable
> 'if the defendant (original wrongdoer) had reasonable
> grounds for apprehending that such criminal act would be
> committed' or 'is reasonably to be anticipated.'" Even in
> such circumstances, however, the "'true ground of liability
> . . . is the *superior* knowledge of the proprietor of the
> existence of a condition that may subject the invitee to an
> unreasonable risk of harm.'"

Griffin v. AAA Auto Club South, Inc., 221 Ga. App. 1, 470 S.E.2d 474

(1996)(citations omitted)(emphasis in original).

At trial, the Funeral Home Defendants will present testimony that the funeral

directors did not and could not foresee the actions of the Tri-State Defendants, and

these actions constitute intervening criminal acts, shielding the Funeral Home

Defendants from liability.

## III.   Plaintiffs' Willful Interference with Remains and Intentional Mishandling of a Corpse Claims

In Georgia, a willful interference with remains claim is based in the "quasi-

property right" in the body of the deceased by the next of kin. See Hill v. City of Fort

Valley, 251 Ga. App. 615, 554 S.E.2d 783 (2001); McCoy v. Georgia Baptist Hospital,

167 Ga. App. 495, 306 S.E.2d 746 (1983); Rivers v. Greenwood Cemetery, 194 Ga.

524, 22 S.E.2d 134 (1942). This quasi-property right is not pecuniary in nature; it only encompasses the power to ensure that a corpse is "orderly handled and laid to rest, nothing more." Bauer v. North Fulton Medical Center, Inc., 241 Ga. App. 568, 571, 527 S.E.2d 240, 244 (1999). The spouses of the decedents or, if there is no spouse, the next of kin, are the only parties permitted to raise this claim. See Habersham Memorial Park, Inc. v. Moore, 164 Ga. App. 676, 678, 297 S.E.2d 315, 318 (1982); Pollard v. Phelps, 56 Ga. App. 408, 193 S.E. 102 (1937).

For an intentional mishandling of a corpse claim, "[a] demonstration of mere negligence is not sufficient to show wilful or wanton behavior. In order to prove wilful or wanton conduct, a plaintiff must demonstrate that a defendants' acts were 'such as to evidence a wilful intention to inflict the injury, or else [were] so reckless or so charged with indifference to the consequences . . . to justify . . . finding a wantonness equivalent in spirit to actual intent.'" McNeal Loftis, Inc. v. Helmey, 218 Ga. App. 628, 629, 462 S.E.2d 789, 790 (1995).

The Court has ruled that the jury will be presented the issue of whether the Funeral Home Defendants can be held liable "for the actions of Tri-State Crematory in intentionally mishandling corpses and interfering with the right of burial." See SCI Tennessee Order, p. 31. This decision "is based on the duties that [a Funeral Home] owed under its agreements with Plaintiffs and its relationship with Plaintiffs to dispose

of Plaintiffs' decedents properly." Id., p. 31 n.1.

Counsel for the Funeral Homes have found only one situation under Georgia case law where an entity has been held liable for the intentional torts of its independent contractors.

> "(E)ven though hirers of an independent security or protective agency have generally been held not liable for negligent torts of agency personnel, where the hirer did not exercise control over them, hirers have been held liable for intentional torts of the agency's personnel committed, in the scope of the agency's employment, against the hirer's invitees. (Cits.)" Noble v. Sears Roebuck & Co., 33 Cal App.3d 654, 109 Cal. Rptr. 269, 73 A.L.R.3d 1164 (1973). See Annot., Liability of One Hiring Private Investigator, 73 ALR3d 1175. This principle appears to have been followed in Ellenburg v. Pinkerton's Inc., 125 Ga. App. 648, 188 S.E.2d 911 (1972), where the employer of a private detective agency was held liable to a third person for an invasion of privacy committed during the course of an investigation by the agency's personnel, despite the fact that the agency was employed as an independent contractor. Accord, Greenbaum v. Brooks, 110 Ga. App. 661(2), 139 S.E.2d 432 (1964). See also McLeod v. Dean, 270 F. Supp. 855 (D.C.N.Y. 1967).

United States Shoe Corp. v. Jones, 149 Ga. App. 595, 596-597, 255 S.E.2d 73, 75 (1979).

In Peachtree-Cain Co. v. McBee Peachtree-Harris Co., 254 Ga. 91, 327 S.E.2d 188 (1985), the Georgia Supreme Court upheld the decision in United States Shoe Corp. v. Jones. "Having determined that OCGA § 51-2-5 does not represent an

exclusive list of exceptions to OCGA § 51-2-4, we now expressly approve the Court of Appeals' creation in <u>United States Shoe Corporation v. Jones</u>, supra, 149 Ga. App. 595, 255 S.E.2d 73 and in the instant cases of an additional exception to our general rule of nonliability." <u>Id.</u>, 254 Ga. at 94, 327 S.E.2d at 191. Thus, the Court held that liability could be imposed "upon property owners for the intentional torts committed by the personnel of an independent security agency, where the security agency was hired by the property owners to protect their premises." <u>Id.</u>

No Georgia decision has found a similar exception whereby funeral homes can be liable for the intentional torts of their independent contractors. For this claim, the Funeral Home Defendants also rely on the foreseeability/intervening criminal act issues outlined in the negligence section.

## IV.  Plaintiffs' Negligent Interference with Remains and Mishandling of a Corpse Claims.

In <u>Wages v. Amisub of Georgia</u>, 235 Ga. App. 156, 157, 508 S.E.2d 783, 784 (1998), the Georgia Court of Appeals outlines the two elements for a claim of negligent mishandling of a corpse. "'The first is the 'quasi-property' right that exists in the dead body of a relative. The second is the negligent breach of a contract to carry out the expressed wishes of the next of kin regarding the disposition of that dead body[, i.e., burial, cremation, or anatomical donation.'" <u>Id.</u> (quoting <u>McCoy v. Ga.</u>

Baptist Hosp., 167 Ga. App. 495, 497, 306 S.E.2d 746, 746 (1983)).  In such a case, "the next of kin must be known and have asserted some proprietary interest in the corpse, and the defendant must have had a reasonable opportunity to comply with such expressed wishes after pronouncement of the cause of death, autopsy, postmortem investigation, or embalming."  Id., 235 Ga. App. at 158, 508 S.E.2d at 785.  In other words, the next of kin must prove the existence of some agreement or contract whereby they expressed their wishes regarding the disposition of the decedent's body. Id., 235 Ga. App. at 157-158, 508 S.E.2d at 785.

The issues for negligent interference with remains are the same as for Plaintiffs' negligence claims.  Therefore, the Funeral Home Defendants incorporate herein all of the legal and evidentiary issues outlined in the negligence section.

Respectfully submitted this 24th day of February, 2004.

**BRINSON, ASKEW, BERRY, SEIGLER, RICHARDSON & DAVIS, LLP**

The Omberg House
615 West First Street
Post Office Box 5513
Rome, GA 30162-5513
Phone  706/291-8853
Fax 706/234-3574

Robert M. Brinson
Georgia Bar No. 082900

By: _____

J. Anderson Davis
Georgia Bar No. 211077

Lead and Liaison Counsel for
Defendant Funeral Homes

142657.1                              38

## CERTIFICATE OF SERVICE

This is to certify that I have this day served counsel for all parties with a copy of the within and foregoing **Funeral Home Defendants' Trial Brief** by causing a copy of same to be placed in first class U.S. mail with adequate postage affixed thereto and addressed as follows:

Robert H. Smalley, III, Esquire
McCAMY, PHILLIPS, TUGGLE & FORDHAM, LLP
Post Office Box 1105
Dalton, GA 30720-1105
Liaison for Plaintiffs

McCracken Poston, Jr., Esquire          Frank E. Jenkins, III, Esquire
OFFICE McCRACKEN POSTON               JENKINS & OLSON
Post Office Box 1130                  15 Public Square, South
Ringgold, GA 30736                    Cartersville, GA 30120-3350
Liaison/Lead Counsel for             Liaison/Lead Counsel for
Tri-State Crematory, Inc.            the Marsh Family

This 24th day of February, 2004.

J. Anderson Davis