IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE
CREMATORY LITIGATION                      MDL DOCKET NO. 1467

## REPORT AND RECOMMENDATION

**I.**    **Introduction**

On November 23, 2004, Class Counsel filed a "Motion for Judicial Guidance" [1301], seeking a determination whether class member Rich Heinsman properly "opted out" of the settlement of claims against Franklin-Strickland Funeral Home ("FSFH") and could, therefore, pursue his own action against that defendant.  In an Order [1306] dated January 6, 2005, the Honorable Harold L. Murphy, United States District Judge, referred the instant Motion [1301] to the undersigned pursuant to 28 U.S.C. § 636(b).

Having been advised of that referral before it was formally made, the undersigned received testimony from Mr. Heinsman at a December 6, 2004, hearing held in connection with a separate referral [1297] concerning settlement proceeds. See Transcript [1304] (hereafter "Tr.").  At the conclusion of that hearing, the Court

granted FSFH's request for additional discovery and directed the parties to submit a discovery and briefing schedule.   Tr. 98-106.   The parties did not submit a discovery schedule (because they apparently did not conduct further discovery), but notified the Court by letter dated January 27, 2005 [1308], that FSFH would submit a response brief by February 15, 2005, with any reply due within ten days thereafter. FSFH filed a brief.   See "Franklin-Strickland Funeral Home, Inc.'s Response in Opposition to Motion for Judicial Guidance Seeking Approval of Class Member Heinsman's Untimely Request to 'Opt Out' of Settlement Subclass" [1311] (hereafter "FSFH's Resp.").[1]   As of this date, there have been no further submissions from either Class Counsel or Mr. Heinsman.

## II.   **Relevant Facts**

On March 17, 2003, the District Court certified a plaintiff class consisting of any next of kin of any decedents delivered for cremation to defendant Tri-State Crematory from the years 1988 to 2002 or parties to any contracts with any defendant regarding funeral arrangements for a decedent delivered to Tri-State

---

[1] FSFH also submitted a "Supplement to Response in Opposition to Motion for Judicial Guidance" [1312] containing two case citations that had been left out of its earlier Response [1311].

Crematory from 1988 to 2002 (hereafter the "Class").  See Class Cert. Order [368] at 92.  In an Order Approving Sample Notice [516], entered September 26, 2003, the District Court approved a notice to be sent to Class members.  According to the "Class Action Notice" attached to that Order, a Class member who wished to leave the Class was required to

> personally sign and mail a written "request for exclusion" that includes your full name and current address, your decedent's name, and your relationship to the decedent.  Your request for exclusion must be mailed to "Class Counsel, Tri-State Crematory Litigation, P.O. Box 0548, Nashville, Tennessee  37212-9998" and must be postmarked no later than November 8, 2003.

Order [516], Class Action Notice, p. 2.[2]

Mr. Heinsman is a criminal defense lawyer in Chattanooga, Tennessee.  Tr. 72-73.  He was the surviving spouse of Donna Heinsman, and is a member of the Class.  Mr. Heinsman did not submit a written request for exclusion from the Class by the above-mentioned postmark deadline of November 8, 2003.  Id. at 92-93.

---

[2] Exhibit 1 attached to that Order [516], which is a notice intended for newspaper publication, requires that written exclusions be "postmarked by 5:00 p.m. ET on November 8, 2003."  Id.; see also Tr. Ex. 25.  However, the "Draft IVR Message" attached to that Order [516] would be used to inform callers to the Tri-State Crematory Class Action Information Center that a written request for exclusion from the Class would have to be postmarked "no later than November 8, 2003."  See attachment to Order [516].

3

On January 15, 2004, Class Counsel and Counsel for FSFH filed a "Partial Settlement Agreement Regarding Claims Against Franklin-Strickland Funeral Home, Inc." [911] (hereafter the "Partial Settlement Agreement").  This filing included the terms of the settlement and other items attached thereto as exhibits, including a "Class Member Claim Form" (Ex. A); a "Notice of Class Action and Proposed Partial Class Action Settlement" (Ex. B); and a "Notice Plan for Proposed Class Action Settlement" (Ex. C).

Also on January 15, 2004, the District Court entered an "Order Granting Preliminary Approval of Partial Settlement With Franklin Strickland Funeral Home, Inc. and Julian Peeples Memorial Chapel, Inc., d/b/a Julian Peeples Funeral Home and Approving and Directing Notice Thereof" [912]; see also Tr. Ex. 23.  For the purpose of conducting the settlement approval process pursuant to Fed. R. Civ. P. 23(e), the District Court designated a settlement subclass of the previously certified Class, but limited its members to those with claims against a particular funeral home, such as FSFH.  Order [912] at 3; see also Partial Settlement Agreement [911] at 10.

That Order [912] also approved forms of "Notice of Class Action and Proposed Partial Class Settlement" for dissemination commencing no later than January 19, 2004.  Id. at 5 and Ex. A thereto.  The District Court's Order stated that

"Settlement Class Members may exclude themselves from the Class ('opt out') by submitting their exclusion requests, in the manner specified in the Class Action Notice, not later than the postmarked date of February 23, 2004." Order [912] at 5.[3] The Order also set a Formal Fairness Hearing for February 27, 2004. Id. at 6.

Pursuant to that Order [912], notice of the partial class action settlement was published, inter alia, in the *Chattanooga Times Free Press* Metro Section, page B7, on January 25, 2004. Tr. Ex. 22. Mr. Heinsman testified that he receives that newspaper, but not see that notice. Tr. 95-96. Notice of the partial class action settlement was also mailed to subclass members. Transcript [1086] of February 27, 2004, Final Fairness Hearing at 7. Mr. Heinsman testified that he received the "Notice of Class Action and Proposed Partial Class Action Settlement," which

---

[3] The forms submitted by the parties and approved by the Court contained minor variations similar to those discussed supra at note 2. For example, the "Notice of Class Action and Proposed Partial Class Action Settlement" for the FSFH settlement subclass states that written requests for exclusion must be "postmarked no later than February 23, 2004." Order [912] Ex. A, p. 3; see also Tr. Ex. 23. However, the "Legal Notice" for newspaper publication states that all "written, signed exclusions must be postmarked by 5:00 p.m. ET on February 23, 2004." Order [912] Ex. B; see also Tr. Ex. 22. The Partial Settlement Agreement [911] negotiated by the parties states that, for an opt out to be valid, "the original Request for Exclusion must be properly executed and mailed to Class Counsel, postmarked on or before midnight on the last day of the Opt Out Period." Id. at 9. The end of the opt out period was, as noted above, February 23, 2004.

AO 72A

(Rev.8/8

2)

informed him that the deadline to opt out was February 23, 2004.  Tr. 72-73, 80, 85,

97; see also Tr. Ex. 24.  Because he was not sure whether he would opt out at the

time he received that notice, Mr. Heinsman scanned into his computer an opt-out

form that he received from his attorney and noted the February 23 deadline on his

calendar.  Tr. 73-74, 83.[4]

Shortly before midnight on February 23, Mr. Heinsman noticed the deadline

on his calendar, realized that he had not yet mailed his opt-out form, and decided that

he would do so.  Tr. 73, 86, 88-89.  He looked for a "clean" copy of the form but

could not find one.  Id.  He had apparently signed the opt-out form before scanning

it into his computer.  Thus, he printed it, re-signed it, dated it, and rushed from his

house to the nearest Post Office, which was located on Shallowford Road in

---

[4] Mr. Heinsman was apparently confused over when he received the opt-out form that he used here.  The law office of David Randolph Smith represents Mr. Heinsman.  Attorney Smith prepared and sent out the form that Mr. Heinsman completed here in November 2003, when there was concern that some of his clients were going to opt out of the litigation Class.  However, none of them did.  Tr. 94. No form was created for use in opting out of the FSFH settlement subclass.  Id. at 95.  Thus, Mr. Heinsman did not receive an opt-out form from his attorney in conjunction with the Notice of Class Action and Proposed Partial Class Action Settlement.  Instead, what likely happened is that, when Mr. Heinsman realized that the deadline (i.e., February 23, 2004) was upon him, he recalled his earlier receipt of a form (created for opting out of the litigation Class), located it in his computer, printed it, and used it to opt out of the settlement subclass.

AO 72A

(Rev.8/8

2)

Chattanooga.  Id.; see also Tr. Ex. 21 (original executed opt-out form).[5]  That opt-

out form provides as follows:

<u>OPT-OUT:  EXCLUSION FROM CLASS MEMBER STATUS</u>

Name:  *Rich Heinsman*                                                                

Address:  *525 E 4th St. Chattanooga, TN  37403*                          

Decedent (loved one's) name:  *Donna Heinsman Ph.D.*                   

Your relationship to Decedent (loved one):  wife                        


   I hereby request to be excluded (opted out) as a class member from the federal class action filed in the United States District Court for the Northern District of Georgia (Rome Division), entitled *In Re: Tri-State Crematory Litigation,* MDL Docket No. 1467.


       *Rich Heinsman*                      
       Signature

       *Rich Heinsman*
       *2/23/04*

Tr. Ex. 21 (Mr. Heinsman's handwritten responses in italics).

---

[5] Mr. Heinsman's Affidavit (filed as Exhibit B to the Mot. for Jud. Guid.) has some attachments related to his opt-out form.  Exhibit B to that Affidavit at page 1 reflects that Mr. Heinsman printed the form from his computer at 11:34 p.m. on February 23, 2004.  See also Tr. 75.  Exhibit C to that Affidavit is a printout from the internet site Mapquest reflecting that it was 10.17 miles from Mr. Heinsman's home to the Shallowford Road Post Office.  See also Tr. 76.

AO 72A

(Rev.8/8

2)

The customer service windows at the Shallowford Road Post Office were closed when Mr. Heinsman arrived.  Tr. 81-82; see also Aff. of James R. Corkern ¶¶ 4-5 (filed as Ex. B to FSFH's Resp.).  Thus, Mr. Heinsman drove his vehicle into a gated area behind the building and stopped at the loading dock located just inside the gate.[6]  At 11:52 p.m., Mr. Heinsman entered the building through a door that had been blocked open.  Tr. 62, 81-82.  He then handed the envelope containing the executed opt-out form to an unidentified postal worker that he recognized from prior visits.  Id. at 73, 89-90.  Mr. Heinsman informed the postal worker that the envelope had to be postmarked by midnight.  Id.  at 73.  The postal worker asked Mr. Heinsman which door he had used to enter.  Mr. Heinsman gestured to a door that had been blocked open, to which the postal worked replied with something like, "Okay."  Id. at 73-74.

On February 27, 2004, a Final Fairness Hearing was held before the District Court.  See Transcript [1086].  At that hearing, Class Counsel represented that notice had been effected as required by Court Order; reported that no objections and

---

[6] To generate business for his law practice, Mr. Heinsman made regular (i.e., once per week) bulk mailings to potential clients using the Shallowford Road Post Office.  Tr. 73.  He had entered the rear area of the building to drop off these bulk mailings.  Id. at 81-82.

8

comments had been filed; and requested approved of the final settlement and counsel's application for fees and costs. <u>Id.</u> at 6.  After inquiry about the kind of notice that had been utilized, the District Court orally approved the FSFH partial settlement. <u>Id.</u> at 7.  Concurrently therewith, the District Court executed an "Order and Judgment of Final Approval of Franklin-Strickland Funeral Home, Inc. and Julian Peeples Memorial Chapel, Inc., d/b/a Julian Peeples Funeral Home Partial Settlements" [1068]; <u>see also</u> Tr. Ex. 23A.  That Order states in relevant part as follows:

> The Court has reviewed and considered the reports and presentations of the Notice Administrator and Class Counsel as submitted in writing, and as made at the Final Approval Hearing, has noted that no member[] of . . . the Franklin-Strickland Funeral Home, Inc. Settlement Subclass . . . has timely excluded himself or herself, and that no member has submitted written objection to any aspect of the proposed settlement.

Order [1068] at 4-5.[7]

The District Court then found and ordered, <u>inter alia</u>, that the FSFH partial settlement was fair, reasonable and adequate under Fed. R. Civ. P. 23(e)(1)(C) and

---

[7] Counsel for FSFH represented at the hearing that, in the days leading up to the Final Fairness Hearing on February 27, he had several conversations with Class Counsel over whether any members of the settlement subclass had opted out.  He was informed that no one had.  Tr. 60-61.

9

in the best interests of the settling parties; that the Order and Judgment constituted final approval of the FSFH partial settlement; and that persons included within the FSFH settlement subclass definition who had not timely requested exclusion were members of the settlement subclass and were bound by this Court's Judgment pursuant to Fed. R. Civ. P. 23(b)(3), 23(c)(3), and 23(e).  Order [1068] at 5-6.  The District Court retained jurisdiction over the Partial Settlement Agreement, the parties thereto, and the members of the settlement subclass for purposes of implementation, administration, interpretation, and enforcement of the partial settlement.  Id. at 6-7. Class Counsel were directed to proceed with implementation of the terms of the Partial Settlement Agreement.  Id. at 7.  In consideration of the ongoing performance and satisfaction of the terms and conditions of the Partial Settlement Agreement, the District Court dismissed FSFH from the litigation with prejudice, and released it from the claims of the FSFH settlement subclass, as set forth in the Partial Settlement Agreement.  Id.

When Class Counsel returned to their litigation "war room" at a local hotel following the Final Fairness Hearing, they received notice from their Nashville office that the envelope containing Mr. Heinsman's opt-out form had arrived that morning. Tr. 63.  It is undisputed that the properly addressed, stamped envelope containing

AO 72A

(Rev.8/8 2)

Mr. Heinsman's executed opt-out form does <u>not</u> bear a postmark.  Tr. Ex. 21 (original envelope).[8]  Class Counsel explained that, when they made representations to the District Court that no settlement subclass member had opted out, they did not know that an envelope containing Mr. Heinsman's opt-out form had been received. <u>Id.</u> at 63-64; <u>see also</u> Mot. for Jud. Guid. [1301] ¶¶ 1-3.

Counsel for FSFH represents that payments were made on behalf of the funeral home in accordance with the terms of the Partial Settlement Agreement. FSFH's Resp. at 5.  However, it was not until March 17, 2004, that Class Counsel notified FSFH's Counsel that Mr. Heinsman had sought to be excluded.  <u>Id.</u> FSFH's Counsel asserted at the hearing held before the undersigned that they had not previously been provided a copy of Mr. Heinsman's opt-out form (although they had been provided with a copy of the envelope in question).  Tr. 77.

Mr. Heinsman's deposition had been taken in the Tri-State litigation on July 23, 2003.  Tr. 78.  He was represented at that deposition by David Randolph Smith's law firm, which is on the steering committee of the Tri-State Multi-District Litigation.  <u>Id.</u>

---

[8] Although neither party could explain why this envelope was not postmarked, Mr. Heinsman testified that two or three pieces per week of the bulk mail he sends is returned to him without a postmark.  Tr. 74.

11

at 78-79.  At that time, Mr. Heinsman had a suit pending against FSFH in the Circuit Court for Hamilton County, Tennessee.  Id. at 78-80; FSFH's Resp. at Ex. A (Heinsman Depo. excerpts), pp. 119-22.  However, his attorney would not allow him to answer questions about that lawsuit on the basis of attorney-client privilege.  Id. FSFH's Counsel represents that on March 31, 2004, an Order was entered in Hamilton County Circuit Court, Docket No. 03 C 378, dismissing Mr. Heinsman's suit without prejudice.  FSFH's Resp. at 5.  Subsequently, in late-November 2004, Class Counsel filed the instant Motion [1301].  Thereafter, on January 6, 2005, Mr. Heinsman filed a new action against FSFH in Hamilton County Circuit Court, Docket No. 05 C 131, seeking damages arising out of the events that occurred at the Tri-State Crematory.  FSFH's Resp. at 5.

### III.   <u>Analysis</u>

The undersigned begins this analysis with recognition that a final judgment was entered with regard to the claims of the settlement subclass against FSFH on February 27, 2004.  See Order [1068].  That Order states that the District Court had reviewed and considered the reports and presentations of the Notice Administrator and Class Counsel as submitted in writing, and as made at the Final Approval Hearing, and had noted that no member of the FSFH settlement subclass had timely

12

excluded himself from the proposed settlement.  Id. at 4-5.  Moreover, the District

Court found and ordered, inter alia, that persons included within the FSFH settlement

subclass definition who had not timely requested exclusion were members of the

settlement subclass and were bound by this Court's judgment.  Id. at 5-6.  Finally,

the District Court retained jurisdiction over the Partial Settlement Agreement, the

parties thereto, and the members of the settlement subclass for purposes of

implementation, administration, interpretation, and enforcement of the partial

settlement.  Id. at 7.[9]

---

[9] Even without such retention of jurisdiction, The All-Writs Act, 28 U.S.C.  §
1651(a), provides:  "The Supreme Court and all courts established by Act of
Congress may issue all writs necessary or appropriate in aid of their respective
jurisdictions and agreeable to the usages and principles of law."  A federal court thus
retains the power "to effectuate and prevent the frustration of orders it has previously
issued in its exercise of jurisdiction otherwise obtained."  United States v. New York
Tel. Co., 434 U.S. 159, 172, 98 S. Ct. 364, 372 (1977).  See also Henson v. Ciba-
Geigy Corp., 261 F.3d 1065, 1068 (11th Cir. 2001) ("[A] district court has the
authority . . . to enjoin a party to litigation before it from prosecuting an action in
contravention of a settlement agreement over which the district court has retained
jurisdiction."); Wesch v. Folsom, 6 F.3d 1465, 1470 (11th Cir. 1993) (noting that the
All-Writs Act "empowers federal courts to issue injunctions to protect or effectuate
their judgments").  Federal courts may invoke the authority conferred by the All-
Writs Act to enjoin parties from prosecuting separate litigation to protect the integrity
of a judgment entered in a class action and to avoid re-litigation of issues resolved by
a class action.  See Demint v. NationsBank Corp., 208 F.R.D. 639, 644 (M.D. Fla.
2002).

AO 72A

(Rev.8/8
2)

The District Court made the finding that no member of the settlement subclass had timely opted out based on representations of Class Counsel, who were the ones charged in the Partial Settlement Agreement with receipt of any opt-out notices. <u>See</u> Partial Settlement Agreement [911] at 9, 19-20.  Therefore, given the current posture of this litigation, Mr. Heinsman cannot pursue any claims against FSFH in Tennessee state court because he is bound by the judgment and his claims against defendant have been released.

Thus, in order for Mr. Heinsman to pursue his state court action, he must obtain relief from the judgment under Fed. R. Civ. P. 60(b)(1), which provides in relevant part as follows:

> **(b)     Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc**.  On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect . . . .

Fed. R. Civ. P. 60(b)(1).

However, Mr. Heinsman has not filed a Motion under that Rule.  Instead, he has filed the instant Motion for Judicial Guidance [1301].  FSFH points out that the instant Motion is not the proper vehicle in which to raise Mr. Heinsman's contentions, given that a judgment has already been entered.  Tr. 61.  Although the

14

Court agrees that Class Counsel employed improper nomenclature, the Motion for Judicial Guidance has focused the issue for decision.   Moreover, the Court is sensitive to Class Counsel's predicament.   They could not directly attack the judgment that they had sought, but they still were obliged to represent their client. Therefore, the undersigned will consider the instant Motion as one seeking relief from judgment without regard to the title placed upon it.  <u>See</u> Fed. R. Civ. P. 1 (the Rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"); <u>Bros., Inc. v. W. E. Grace Mfg. Co.</u>, 320 F.2d 594, 606 (5th Cir. 1963) ("The relief sought, that to be granted, or within the power of the Court to grant, should be determined by substance, not a label.").

Construing the Motion for Judicial Guidance as one filed under Fed. R. Civ. P. 60(b)(1), Mr. Heinsman argues that he should be relieved from the judgment because he substantially complied with the requirements to opt out of the settlement subclass by mailing his written exclusion before midnight on February 23, 2004.  He contends that the failure to obtain a postmark on his envelope should be excused, given that he made it to the Post Office with eight minutes to spare, and that it was not his fault that a postmark was not applied.  Mot. for Jud. Guid. [1301] at 2.

15

AO 72A

(Rev.8/8

2)

The seminal case in this area is <u>Pioneer Investment Servs. Co. v. Brunswick</u> <u>Assocs. Ltd. P'ship</u>, 507 U.S. 380, 113 S. Ct. 1489 (1993).  In that decision, the Supreme Court held that a party seeking relief from judgment bears the burden of showing that his neglect was excusable.[10]  That "determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." <u>Id.</u> at 395, 113 S. Ct. at 1498.  A court making this determination is to consider the following factors:  (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was within the reasonable control of the movant; and (4) whether the movant acted in good faith.  <u>Id.</u>

"The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments and the 'incessant command of the court's conscience that justice be done in light of *all* the facts.'" <u>Tessmer v.</u> <u>Walker</u>, 833 F.2d 925, 926 (11th Cir. 1987) (quoting <u>Banker's Mortgage Co. v.</u> <u>United States</u>, 423 F.2d 73, 77 (5th Cir. 1970)).  Thus, carelessness by a litigant does

---

[10] Although <u>Pioneer</u> construed a Bankruptcy Rule, it expressly indicated that the definition in the bankruptcy context paralleled that of Rule 60(b).  <u>Pioneer</u>, 507 U.S. at 393, 113 S. Ct. at 1497.

16

not afford a basis for relief under Rule 60(b)(1).  Pelican Prod. Corp. v. Marino, 893

F.2d 1143, 1146 (10th Cir. 1990); see also Lomas & Nettleton Co. v. Wiseley, 884

F.2d 965, 967 (7th Cir. 1989) ("Rule 60(b)(1)'s reference to 'inadvertence or

excusable neglect' does not authorize relief from the consequences of negligence or

carelessness.  Rather, it requires some justification for an error, beyond a mere failure

to exercise due care.") (citation omitted).

Moreover, other important considerations apply when dealing with a Rule

60(b) motion in the context of a class action.  As stated by one court,

> A too liberal application of Rule 60(b) in class actions would undermine
> the finality of judgment entered therein and would discourage settlement
> of such actions.  Defendants will be loath to offer substantial sums of
> money in compromise settlement of class actions unless they can rely
> on the notice provisions of Rule 23 to bind class members.   Courts
> favor the settlement of controversies; fair compromise settlements are
> particularly important in complex, multiparty litigation which is likely to
> require many months of court time over a period of years.

In re Four Seasons Secs. Laws Litig., 59 F.R.D. 667, 677-78 (D. Okla. 1973), rev'd

on other gds, 502 F.2d 834 (10th Cir. 1974); accord Denney v. Jenkens & Gilchrist,

No. 03 Civ. 5460 (SAS), 2005 WL 388562, at *23 (S.D.N.Y Feb. 18, 2005); In re

Prudential Secs. Ltd. P'ships. Litig., 164 F.R.D. 362, 371-72 (S.D.N.Y. 1996); In re

AO 72A

(Rev.8/8

2)

<u>VMS Limited P'ship Secs. Litig.</u>, No. 90 C 2412, 1995 WL 355722, at *2 (N.D. Ill. June 12, 1995).

The undersigned's research has uncovered one district court decision discussing a situation similar to that presented here. <u>In re New England Mut. Life Ins. Co. Sales Pracs. Litig.</u>, 204 F.R.D. 6 (D. Mass. 2001) (hereafter "<u>New England</u>"). After a class was certified in that case, the parties entered into a settlement agreement. <u>Id.</u> at 9. The district court approved a notice package that was mailed to policyholders. "In order to be excluded from the class and avoid being bound by the settlement agreement, Class Members were required to 'opt out' by mailing a written request for exclusion, postmarked by September 5, 2000." <u>Id.</u> at 10. A list of persons who had opted out was provided to the district court. After conducting a fairness hearing on October 4, 2000, the district court issued a final order approving the class action settlement. <u>Id.</u> However, before September 5, 2000,

> the Nabors Plaintiffs, Plaintiff Battles, the Primer Plaintiffs and the Singletary Plaintiffs all notified their counsel of their desire to be excluded from the class settlement and to pursue individual claims in the state courts of Mississippi. At the time these plaintiffs were all represented by the same counsel. Counsel created opt-out forms containing all the required information for effectuating that desire. Lesa Rickman, a paralegal employed by Plaintiffs' counsel, gathered these forms and placed them in a single large envelope, affixing appropriate postage using standard 33-cent stamps. According to her affidavit,

18

> which is uncontested by the defendants, Ms. Rickman delivered the envelope by hand to the United States Postal Service's General Mail Facility in Jackson, Mississippi before 5:00 p.m. on September 5, 2000. The envelope was not postmarked until September 6, 2000, and the Defendants therefore concluded that the opt-outs were not timely and that the plaintiffs were bound by the settlement.

Id. at 10.

Apparently unaware of defendants' position on the validity of their opt-out notices, plaintiffs instituted Mississippi state court actions. Defendants removed the cases to federal court under the All Writs Act (see supra note 9), and then had them stayed and transferred to the District of Massachusetts. One of the plaintiffs filed a Motion for Enlargement and for Relief from Judgment under Fed. R. Civ. P. 6(b) and 60(b), later joined by some of the other plaintiffs whose opt-out notices were deemed untimely by defendants.[11] New England, 204 F.R.D. at 10-11.

The issue was whether the failure to ensure that the envelope containing the opt-out forms was postmarked by September 5, 2000, constituted excusable neglect.

---

[11] The district court noted that, because a final judgment had been entered in the case on October 4, 2000, a motion under Fed. R. Civ. P. 6(b) seeking an enlargement of time to file an opt-in notice would be fruitless. Therefore, the court treated the motions as having been filed under Fed. R. Civ. P. 60(b). "As a practical matter, because the standard applicable to these facts under either rule is that of excusable neglect, the analysis for both rules is identical." New England, 204 F.R.D. at 11.

AO 72A

(Rev.8/8 2)

<u>New England</u>, 204 F.R.D. at 12.  An order of the district court that the omission was excusable neglect and that the plaintiffs were entitled to relief pursuant to Rule 60(b) would have allowed the Mississippi state actions to go forward.  On the other hand, an order finding that the omission was not excusable neglect would have limited them to their allotted recovery under the settlement agreement.  <u>Id.</u>

In order to resolve this issue, the district court applied the four factors of the <u>Pioneer</u> standard, listed <u>supra</u>.  The district court found no suggestion in the record that plaintiffs had engaged in bad faith (factor four), and noted that they had missed the postmark deadline by one only day (factor two).  <u>New England</u>, 204 F.R.D. at 13.  The district court found, however, that the parties had bargained for a specific deadline, and that defendants had paid a high price for finality.  Because the defendants were entitled to the benefit of the certainty and finality contemplated by Fed. R. Civ. P. 23, their settlement with the class representatives, and the court's final judgment, the second factor weighed in defendants' favor.

The district court also found that the third factor (the reason for the delay), weighed in defendants' favor:

> Miss Rickman's affidavit is uncontested.  I therefore assume that she did, in fact, deliver the envelope to the post office before 5:00 p.m. on September 5.  The United States Postal Service defines a postmark as

20

a "postal cancellation imprint on letters flats (sic) and parcels.  The
imprint shows date and the name, state and ZIP Code of the post office
or sectional center facility that accepted custody of the mailpiece."
UNITED STATES POSTAL SERVICE, GLOSSARY OF POSTAL
TERMS, Publication No. 32 at 90 (May, 1997).  According to this
definition, the post office arguably did not accept custody of the
envelope until September 6.  Neither party has offered any explanation
for this discrepancy.  It is well-established that the party that selects the
mode of transmission undertakes the risks associated with that method.
In this case, that means the plaintiffs bore the risk that the envelope
would not be timely postmarked, and should have or could have taken
further steps to ensure compliance.   Although it may in some
circumstances be reasonable to assume that a package deposited before
5:00 p.m. will be postmarked that day, when the postmark itself has
some legal significance a better course, and one that would have
negated any need for this litigation, would have been to ensure that the
envelope was delivered substantially before 5:00 p.m.  . . .  Regardless
of what steps might have been taken, the risks associated with leaving
the envelope at the post office rest with the plaintiffs and militate toward
denying their motions.

Id. at 14.

The final factor, and the one of most importance to the district court, was the

danger of prejudice to defendants if plaintiffs' motions were granted.  New England,

204 F.R.D. at 14.  According to the district court, defendants' potential liability could

be substantially different if plaintiffs were allowed to pursue their state court actions

rather than being bound by the terms of the settlement.  Granting Rule 60(b) relief in

the case would expose defendants to the very liability that they had hoped to avoid

AO 72A

(Rev.8/8

2)

21

by entering into a settlement.   Thus, after weighing the equities, the district court denied Rule 60(b) relief.  Id.

The issue here is whether Mr. Heinsman's failure to ensure that the envelope containing his opt-out form was postmarked by February 23, 2004, constitutes excusable neglect.  Application of the four Pioneer factors, considered in light of the discussion in New England, leads inexorably to the conclusion that his neglect is not excusable.  Thus, the instant Motion for Judicial Guidance [1301] should be denied.

There is no suggestion in the record that Mr. Heinsman (or his attorney) engaged in bad faith (factor four).  As for factor two (the length of the delay), unlike the situation in New England, where a delay of only one day in obtaining a postmark on an envelope that had been deposited in the mail before the deadline was fatal,  the envelope containing Mr. Heinsman's opt-out form has never been postmarked.  Although the undersigned assumes that the envelope was given to a Post Office employee before midnight on February 23, 2004, the failure to obtain a postmark is not something that can be overlooked.  The District Court's Order [912] granting preliminary approval of the partial settlement with FSFH provides as follows: "Settlement Class Members may exclude themselves from the Class ('opt out') by submitting their exclusion requests, in the manner specified in the Class Action

22

Notice, **not later than the postmarked date of February 23, 2004**."  Order [912]

at 5 (emphasis added).[12]   There has not been compliance with the District Court's

Order because the envelope bears no postmark.

Moreover, the parties themselves bargained for a postmark as an indicia of

timeliness.  See Partial Settlement Agreement [911] at 9 ("To be valid, the original

Request for Exclusion must be properly executed and mailed to Class Counsel,

postmarked on or before midnight on the last day of the Opt Out Period.").  This

Court cannot write that requirement out of their bargain.  See Dahingo v. Royal

Caribbean Cruises, Ltd., 312 F. Supp. 2d 440, 448 (S.D.N.Y. 2004) ("'It is an

elementary principle of contract law that when parties bargain for a mutually-accepted

───────────────────

[12] Unfortunately, the "manner expressed in the Class Action Notice" contains contradictory deadlines, although they both require a postmark by February 23, 2004. Specifically, the "Notice of Class Action and Proposed Partial Class Action Settlement" states that written requests for exclusion must be "postmarked no later than February 23, 2004." Order [912] Ex. A, p. 3.  However, the "Legal Notice" for newspaper publication states that all "written, signed exclusions must be postmarked by 5:00 p.m. ET on February 23, 2004." Id. Ex. B.  The evidence shows that Mr. Heinsman did not see the newspaper notice; however, he received a copy of the Notice of Class Action and Proposed Partial Class Action Settlement.  Given this deadline discrepancy in the two forms of notice, and the fact that Mr. Heinsman was unaware of the earlier deadline, he should not be held to the 5:00 p.m. postmark requirement; instead, the envelope containing his exclusion request should have borne a postmark no later than February 23, 2004.

23

AO 72A

(Rev.8/8

2)

date, that date has a special legal significance to the agreement.'") (quoting <u>New England</u>, 204 F.R.D. at 13).   This second factor thus weighs against relief from judgment.

The third <u>Pioneer</u> factor – the reason for the delay – should more accurately be analyzed here as the reason for Mr. Heinsman's failure to obtain a postmark.  That failure has not been explained.  However, his late-night delivery of the letter to an unidentified postal worker likely had something to do with it.  As discussed in <u>New England</u>, the party that selects the mode of transmission undertakes the risks associated with that method.  This means that Mr. Heinsman bore the risk that the envelope would not be postmarked, and he should have or could have taken further steps to ensure compliance.  When a postmark itself has some legal significance, a better course (and one that would have negated any need for the instant Motion), would have been to ensure that the envelope was delivered earlier in the day, when the public window was open.  Because the risks associated with leaving the envelope with an unidentified post office employee in the middle of the night rests with Mr. Heinsman, this factor weighs in favor of denying the instant Motion.

Finally, the danger of prejudice to the defendant (factor one) if this Motion were to be granted sways the undersigned as it did the district court in <u>New England</u>.

AO 72A

(Rev.8/8

2)

FSFH's settlement was premised, in part, upon its belief that no members of the settlement subclass had opted out and that it would not be defending separately filed actions.  If this Motion were granted, FSFH would face the prospect of defending a state court action filed by Mr. Heinsman and suffering the costs and expenses associated with it.  Also, FSFH calculated its settlement payments to include sums for settlement of claims as to decedent Donna Heinsman, and those monies have been paid on its behalf to the settlement subclass.  FSFH's Resp. at 18.  To give effect to Mr. Heinsman's untimely request for exclusion would expose FSFH to unwarranted prejudice.  Therefore, this final factor weighs in favor of rejecting relief from judgment.  Given that three of the four <u>Pioneer</u> factors favor denial of the instant Motion, the undersigned makes such a recommendation to the District Court.

**IV.**   **<u>Conclusion</u>**

For the reasons explained above, the undersigned **REPORTS** that Mr. Rich Heinsman failed to comply with the requirements to opt out of the FSFH settlement subclass and that this failure does not constitute excusable neglect.  Therefore, the undersigned **RECOMMENDS** that the instant Motion for Judicial Guidance [1301] be **DENIED**.  The undersigned further **RECOMMENDS** that Mr. Heinsman be

AO 72A

(Rev.8/8

2)

25

**ENJOINED** from pursing an action in Tennessee State Court, as he is a member of the settlement subclass, subject to the terms of the Partial Settlement Agreement, and bound by this Court's final judgment.

The Clerk is **DIRECTED** to serve this **FINAL REPORT AND RECOMMENDATION** and its accompanying **ORDER FOR SERVICE OF FINAL REPORT AND RECOMMENDATION** upon counsel and upon Mr. Rich Heinsman at the following address:  525 East 4th Street, Chattanooga, TN 37403.  The Clerk is further **DIRECTED** to terminate the referral to the undersigned of disputes over settlement proceeds [1297] and the instant Motion for Judicial Guidance [1301].

**SO RECOMMENDED**, this 22nd day of March, 2005.


/s/ _____
WALTER E. JOHNSON
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/8

2)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

IN RE:  TRI-STATE
CREMATORY LITIGATION                      MDL DOCKET NO. 1467

**ORDER FOR SERVICE OF**
**<u>FINAL REPORT AND RECOMMENDATION</u>**

Let this Final Report and Recommendation of the United States Magistrate Judge, made in accordance with 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72(b), and the Court's Local Rule 72.1B, be filed and a copy, together with a copy of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any, to the Final Report and Recommendation within ten days of the receipt of this Order.  Should objections be filed, they shall specify with particularity the alleged error(s) made (including reference by page number to any transcripts if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court, and

any appellate review of factual findings will be limited to a plain error review.  United States v. Slay, 714 F.2d 1093, 1095 (11th Cir. 1983) (per curiam).

The Clerk is directed to submit the Final Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

**SO ORDERED**, this 22nd day of March, 2005.


/s/_____
**WALTER E. JOHNSON**
**UNITED STATES MAGISTRATE JUDGE**

AO 72A

(Rev.8/8

2)

2